TERRY GODDARD
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

DEBORAH A. BIGBEE
ASSISTANT ATTORNEY GENERAL
CAPITAL LITIGATION SECTION
1275 W. WASHINGTON
PHOENIX, ARIZONA 85007–2997
TELEPHONE: (602) 542–4686
(STATE BAR NUMBER 021347)
E-MAIL: CADocket@azag.gov

ATTORNEYS FOR RESPONDENTS

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| EARL BALL,<br><br>            Petitioner,<br><br>      -vs-<br><br>DORA B. SCHRIRO, et al.,<br><br>            Respondents. | CIV 07–491–TUC–DCB<br><br>ANSWER TO PETITION FOR<br>WRIT OF HABEAS CORPUS LIMITED<br>TO AFFIRMATIVE DEFENSES |

Respondents, pursuant to Rules 5 and 11 of the Rules Governing § 2254 Cases, and this Court's order of November 8, 2007, hereby answer the Petition for Writ of Habeas Corpus. For the reasons set forth in the following Memorandum of Points and Authorities, Respondents respectfully request that the petition be denied and dismissed with prejudice.

DATED this 4th day of February, 2008.

RESPECTFULLY SUBMITTED,

TERRY GODDARD
ATTORNEY GENERAL

s/DEBORAH A. BIGBEE
ASSISTANT ATTORNEY GENERAL
ATTORNEYS FOR RESPONDENTS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF TRANSCRIPTS AND RECORD.

Pursuant to Rule 5 of the Rules Governing § 2254 cases, Respondents have reproduced and submitted as exhibits the following portions of the state court record: all relevant and available pleadings, transcripts, and orders filed in Cochise County Cause Numbers CR 98−296 and CR 98−345 (consolidated) and all relevant and available pleadings and orders from Petitioner's appellate and post−conviction relief proceedings in the state courts (Exhibits A–EEE).[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND.

On June 2, 1998, Detective Joe Knoblock of the Cochise County Sheriff's Department executed a search warrant on Petitioner's various residences. (Ex. A at 2−4.) Based on two pornographic videotapes and 15 pornographic photographs seized during those searches, Petitioner was indicted in two criminal cases. (*Id.* at 2−3, 5−7.)

The first indictment, filed on June 19, 1998 in Cause Number CR−98−296, charged Petitioner with one count of sexual exploitation of a minor for possession of a videotape containing child pornography (the "'296 Indictment"). (Ex. B.) The second indictment, filed on July 24, 1998 in Cause Number CR−98−345, charged Petitioner with an additional sixteen counts of sexual exploitation of a minor, one count for possession of a second videotape containing child pornography and fifteen counts for possession of photographs reflecting child pornography (the "'345 Indictment"). (Ex. C.) All seventeen counts were class 2 felonies and were alleged to be "dangerous crime[s] against children" pursuant to

---

[1] For the Court's convenience in reviewing citations, counsel for Respondents has sequentially numbered the bottom right corner of each page of the submitted exhibits. In accordance with this District's Clerk of Court, the names of minor victims have been redacted from exhibits and are limited to initials in the text of this Answer.

A.R.S. § 13−604.01. (Exs. B; C.) On January 4, 1999, both cases were consolidated for trial. (Ex. D at 14.)[2]

## A. RELEVANT PRETRIAL PROCEEDINGS

The '296 Indictment was remanded twice for a re−determination of probable cause. (Ex. E at 16, 23−24.) The Grand Jury returned the same charge on each subsequent indictment. (*Id.* at 19−20, 25−27.) On May 13, 1999, Petitioner filed a third Motion to Remand the '296 Indictment for a Determination of Probable Cause (the "Third Motion to Remand"). (Ex. F.)[3] The State opposed Petitioner's Third Motion to Remand. (Ex. G.)

After the submission of voluminous exhibits by both the State and Petitioner and a hearing (Ex. H at 59−68), the trial court denied Petitioner's Third Motion to Remand on August 13, 1999. (Ex. I.) Petitioner did not challenge the trial court's decision denying his Third Motion to Remand by filing a special action in the Court of Appeals *before trial*. (*See* Ex. J at 73−74, 77, 89, 95.)

On August 11, 1999, six days before trial, Petitioner filed a Motion to Continue Trial in order to "investigat[e] . . . the issue of whether these charges [pending against Petitioner] are barred by the statute of limitations." (Ex. K at 99.) The State opposed Petitioner's request for a continuance. (Ex. H at 56−57.) On August 12, 1999, after a hearing, the trial court denied Petitioner's motion to

_____

[2] Petitioner filed a myriad of motions, both procedural and substantive, before and after his trials. Respondents' Answer addresses only those motions and proceedings relevant to the issues presented by, and the claims alleged in, Petitioner's federal Petition for Writ of Habeas Corpus.

[3] Petitioner attached more than 300 pages of exhibits to his Third Motion to Remand. Because Petitioner has procedurally defaulted his grand jury claim (*see infra* at Part IV), Respondents have not included such exhibits. If this Court orders a merits response to Petitioner's grand jury claim, Respondents will provide a response and submit the omitted exhibits. For the same reason, Respondents have also omitted voluminous exhibits attached to the State's opposition to Petitioner's Third Motion to Remand.

1  continue trial, based on its determination that sexual exploitation of a minor based
2  on *possession* of child pornography is a continuing offense, and thus "as long as
3  there is a possession there is the commission of the offense." (*Id.* at 58.)

4  **B.  PETITIONER'S FIRST TRIAL**

5  During Petitioner's first trial, Petitioner stipulated that "the child who
6  appear[s] in the videotape [charged in case number '296 and the video charged in
7  case '345] was at the time a minor" under the age of 15 years. (Ex. L at 102−03,
8  105−07.)  At trial, L.B. and J.B., the minors who appeared in the pornographic
9  photographs and videotapes testified.  L.B. identified herself in the photographs,
10  and indicated that she was 11 to 12 years old at the time.  (Ex. A at 8.)  J.B.
11  identified herself in the videotapes, and testified that she was 10 years old at the
12  time. (Ex. M at 109−14.)

13  On August 23, 1999, a jury found Petitioner guilty of two counts of sexual
14  exploitation of a minor based on his knowing possession of two pornographic
15  videotapes. (Ex. N at 116−119, 122.)  The jury was not able to reach verdicts on
16  the remaining fifteen counts related to Petitioner's possession of pornographic
17  photographs, and the trial court declared a mistrial on those counts. (*Id.* at 117,
18  123.)

19  On August 24, 1999, the trial court granted Petitioner's pre−trial motion to
20  dismiss the A.R.S. §13−604.01 "dangerous crimes against children" allegations
21  from each of the 17 counts alleged in the '296 and '345 Indictments. (Ex. O.)
22  Relying on *State v. Jansing*, 918 P.2d 1081 (Ariz. App. 1996), and *State v.*
23  *Williams*, 854 P.2d 131 (Ariz. 1993), the court determined that the offense of
24  possession of pornographic visual materials is not an offense committed "against"
25  a child. (*Id.*)

26

27

28

On October 4, 1999, at sentencing for the two guilty verdicts, the trial court imposed an aggravated, ten−year term of imprisonment on each of the two convictions, to be served consecutively.[4] (Ex. P at 126−30, 133−34, 136.)

On October 21, 1999, Petitioner filed a notice of appeal for each count of conviction for sexual exploitation of a minor based on knowing possession of pornographic videotapes. (Ex. R at 142−43.)[5] On January 19, 2000, the Court of Appeals granted Petitioner's motion to stay that appeal, pending a determination of his Rule 32 petition for post−conviction relief. (Ex. S at 152.)

On November 5, 1999, Petitioner filed a Motion to Vacate convictions on the two counts of sexual exploitation of a minor based on knowing possession of pornographic videotapes. (Ex. T.) Relying on A.R.S. § 13−107(B), Petitioner argued that the trial court lacked jurisdiction to try him on both counts because the seven−year statute of limitations was triggered in 1989, when the Cochise County Sheriff's Department "actually discovered or should have discovered through the exercise of reasonable diligence the existence of [both] videotapes." (*Id.* at 161−62.) Alternatively, Petitioner argued that the doctrine of "continuing offenses" did not prevent the statute of limitations from running because "the elements of possession of the videotapes were completed as of the date the State first gained knowledge of the offense in March of 1989." (*Id.* at 165.)

On November 16, 1999, the State responded to Petitioner's Motion to Vacate, arguing that the jury's verdict could not be set aside based on Petitioner's

---

[4] At the October 4, 1999 sentencing hearing, a 1.5 year prison term was also imposed for a felony conviction in a separate case against Petitioner. The Arizona Court of Appeals upheld that sentence in *State v. Ball*, No. 2 CA−CR 1999−0480 (memorandum decision filed April 29, 2004). *See* Ex. Q.

[5] The State also filed notices of appeal and notices of cross−appeals regarding some of the trial court's rulings. *See id.* at 144−151.

1  "speculation" that the videotapes seized on June 2, 1998 "are the same ones
2  referred to in the unexecuted search warrant." (Ex. U at 214−15.) Alternatively,
3  the State argued, Petitioner's motion "fails because it is predicated on the false
4  hypothesis that 'the only reason' [Petitioner] continued to produce, possess and
5  exhibit child pornography . . . was due to the State's allegedly negligent failure to
6  catch him" in 1989. (*Id.* at 215.) The State also argued that the offense of sexual
7  exploitation of a minor based on the knowing possession of child pornography is a
8  continuing offense, and thus the statute of limitations did not start running until
9  June 2, 1998, when the State confiscated the pornographic visual depictions from
10 Petitioner. (*Id.* at 215−16.)

11     On November 24, 1999, following an evidentiary hearing, the trial court
12 denied Petitioner's Motion to Vacate. (Ex. V.) Petitioner did not file a notice of
13 appeal from the trial court's separately appealable order denying his Motion to
14 Vacate the Judgment of convictions. (Ex. J at 75, 78−79, 88, 95.)

15 **C.    PETITIONER'S SECOND TRIAL**

16     In December 1999, Petitioner was retried on the fifteen counts of sexual
17 exploitation of a minor for knowing possession of pornographic photographs. At
18 the second trial, L.B. testified that she and her mother began living with Petitioner
19 when she was 8 years old. (Ex. W at 222.) L.B. identified all fifteen pornographic
20 photographs charged in the '345 Indictment, and identified herself in each of the
21 photographs as being 12 or 13 years old. (*Id.* at 223−25.) Some of the
22 photographs also included L.B.'s mother, R.K., and another woman, T.T. (*Id.*
23 at 224.) With respect to each of the photographs, Petitioner was either the
24 photographer or a participant in the photograph. (*Id.* at 224−25.)

25     On December 15, 1999, a jury found Petitioner guilty of 10 of the remaining
26 15 counts of sexual exploitation of a minor based on knowing possession of
27 pornographic photographs. (Ex. X at 227−230.)

28

On October 16, 2000, after the State proved Petitioner had one prior felony conviction and Petitioner waived counsel (Ex. Y at 232, 234), the trial court sentenced Petitioner to 10 presumptive 9.25−year terms of imprisonment, to run concurrent to each other and to the previously−imposed sentences for sexual exploitation of a minor based on knowing possession of pornographic videotapes. (Ex. Z at 239.)

On November 1, 2000, Petitioner filed a notice of appeal with respect to his convictions on these ten counts of sexual exploitation of a minor based on knowing possession of pornographic photographs.[6] (Ex. AA at 243.)

## D. PETITIONER'S FIRST POST−CONVICTION RELIEF PROCEEDINGS

On January 4, 2000,[7] Petitioner filed a *pro se* Notice of Post−Conviction Relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. 32.[8] (Ex. BB.) On February 28, 2000, Petitioner filed a second *pro se* Notice of Post−Conviction Relief, together with a request for counsel and a *pro se* petition for post-conviction relief (the "First Petition for PCR"). (Ex. CC.)

Petitioner argued that the offense of possession of child pornography is not a "continuing crime," and that, because he possessed the pornography at issue before the statute prohibiting such conduct was enacted, the State's prosecution of his

---

[6] On October 25, 2000, the State filed a notice of appeal from several trial court rulings. *See* Ex. AA at 241−42.

[7] In accordance with the prison mailbox rule, Respondents have calculated the filing date of Petitioner's documents based on the date he handed documents to jail or prison authorities for mailing, not the date on which the court itself filed the document. *See Houston v. Lack*, 487 U.S. 266, 270–74 (1988); *Jenkins v. Johnson*, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003).

[8] Unless otherwise indicated, all further citations to Arizona Rules of Criminal Procedure will be referred to as "Rule," omitting the prefatory "Ariz.R.Crim.P."

conduct was prohibited as an ex−post facto law.  (*Id.* at 253−54.)  Petitioner also argued that "there may have been ineffective assistance of counsel in the representation of Petitioner as Defendant by the Office of the Cochise Public Defender," and that the trial court was without jurisdiction to hear the trial "as the statute of limitations had run for prosecution for possession of proscribed visual depictions."  (*Id.* at 255−56.)

The State responded to Petitioner's First Petition for PCR on March 3, 2000. (Ex. DD.)  The State argued that all issues raised by Petitioner were precluded pursuant to Rule 32.2(a)(3) or, alternatively, waived for failure to raise such issues at trial.  (*Id.* at 257.)  The State further argued that Petitioner's claims were without merit and failed to state colorable claims for relief.  (*Id.* at 258.)

On March 29, 2000, the trial court appointed PCR counsel Timothy B. Dickerson to represent Petitioner in his Rule 32 proceedings.  (Ex. EE.)[9]

On April 12, 2000, the State responded that Petitioner's First Petition for PCR was premature, as Petitioner had not yet been sentenced for the ten counts of conviction for sexual exploitation of a minor based on knowing possession of pornographic photographs.  (Ex. GG.)

On May 3, 2000, Petitioner filed a Motion for Extension of Time to File an Amended Petition for Post−Conviction Relief, on the grounds that (1) the Petition filed on February 28, 2000 was drafted by Petitioner without the assistance of counsel and (2) it "would be in the interest of the efficient administration of justice to wait until after [Petitioner's] sentencing on the remaining counts [related solely

_____

[9] On July 11, 2000, the Arizona Court of Appeals substituted counsel Dickerson as retained counsel in place of the Cochise County Public Defender's Office to represent Petitioner on his appeal.  (Ex. FF.)

to possession of exploitive photographs] before proceeding with the post−conviction relief proceeding." (Ex. HH at 264.)[10]

On June 20, 2000, Petitioner filed a *pro se* Supplement of Law to his First Petition for PCR (the "Supplement of Law") (Ex. II), which provided points and authorities in support of the three claims raised therein, including (1) Statute of Limitations (*id.* at 268−71); (2) *Ex Post Facto Law* (*id.* at 271−74; and (3) Ineffective Assistance of Counsel ("IAC") (*id.* at 275−76). In addition, Petitioner provided points and authorities in support of entirely new claims that were not previously alleged in his First Petition for PCR, including (1) prosecutorial misconduct (*id.* at 274−75); and (2) the trial court's failure to strike L.B.'s testimony (*id.* at 275.)

On June 29, 2000, the State filed a Motion to Strike Petitioner's Supplement of Law on the grounds that Petitioner was represented by PCR counsel Dickerson, and thus was not authorized to file premature pleadings in *pro per*. (Ex. JJ at 280.) On July 14, 2000, Petitioner filed a *pro se* Response to the State's Motion to Strike, requesting that the trial court consider his First Petition for PCR as a Motion to Vacate the Judgment that Petitioner was guilty of sexual exploitation of a minor based on knowing possession of pornographic photographs. (Ex. KK at 282.)

On October 16, 2000, the trial court denied Petitioner's Motion to Vacate Judgment based on the arguments set forth in the First Petition for PCR.[11] (Ex. Z at 236−37.) Petitioner did not appeal from the trial court's separately appealable

---

[10] This request was duplicated several times. The trial court granted each of Petitioner's requests for extensions of time. (*See* Ex. J at 79 (#s 70, 73−74), 80 (#s 86−87), 83 (#s 20−21, 24−25, 37−38), 87.)

[11] In addition, the trial court approved a stipulation substituting counsel Harriet Levitt for counsel Dickerson in Petitioner's Rule 32 proceedings. (Ex. Z at 240.)

order denying his Motion to Vacate, but instead appealed only from "the Judgment and Sentence of [the trial court] entered on October 16, 2000 in Counts 1 through 10." (*See* Ex. AA at 243; *see also* Ex. ZZ at 439−41.)

**E.     PETITIONER'S SECOND POST−CONVICTION RELIEF PROCEEDING**

On December 12, 2000, Petitioner filed a *pro se* Motion for an Evidentiary Hearing pursuant to Rule 32.8 and a *pro se* Petition for Post Conviction Relief (the "Second Petition for PCR"). (Ex. LL.) The Second Petition for PCR asserted the same four claims previously alleged in Petitioner's First Petition for PCR, as follows:

A. "The conviction or the sentence was in violation of the Constitution of the United States or the State of Arizona, Rule 32.1(a)";

B. "The court was without jurisdiction to render judgment, Rule 32.1(b)";

C. "Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence, Rule 32.1(e)"; and

D. "There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence, Rule 32.1(g)".

(*Id.* at 285.)

Petitioner argued that the offense of possession of pornographic photographs is not a "continuing crime," and, because he possessed the pornographic photographs before any statute prohibited such conduct, his prosecution was prohibited as an ex−post facto law. (*Id.* at 285−87, 292−95.) Petitioner also argued that "there may have been ineffective assistance of counsel in the representation of Petitioner as Defendant by the Office of the Cochise Public Defender," and that the trial court was without jurisdiction to try him for the crimes because the statute of limitations had expired. (*Id.* at 288−92.) Petitioner further alleged claims for prosecutorial misconduct (*id.* at 295−96) and the trial court's failure to strike victim L.B.'s testimony (*id.* at 296), as well as a new claim that the

State improperly withheld exculpatory information from the Grand Jury (*id.* at 298−99). In his IAC claim, Petitioner did not refer to his Sixth Amendment right to counsel or any federal law, and he failed to provide any factual allegations except a conclusory claim that "[t]he performance of both counsels was inadequate and ineffective." (*Id.* at 296.)

On January 26, 2001, Petitioner filed a *pro se* Motion to Revisit Motion to Vacate Judgment, which the trial court interpreted as a motion to reconsider Petitioner's Motion to Vacate Judgment. (Exs. MM; OO.) Relying on Arizona's and the United States Constitution's *Ex Post Facto* Clauses, Petitioner argued that his judgment of conviction for ten counts of sexual exploitation of a minor based on knowing possession of pornographic photographs should be vacated, because "possession" of pornographic materials was not a crime until 1983 and Petitioner had possession of the pornographic photographs since 1981. (Ex. MM at 326−28.) The State responded that Petitioner's *pro se* Motion to Revisit Motion to Vacate should be denied because the case "is now on appeal" and Petitioner "is represented by counsel, and must deal with the courts through counsel." (Ex. NN at 329.) On June 4, 2001, the trial court denied Petitioner's *pro se* motion to reconsider the denial of his Motion to Vacate Judgment. (Ex. OO at 331.) Petitioner did not appeal the trial court's order denying his motion to reconsider the Motion to Vacate Judgment. (*See* Ex. J at 80, 84, 86, 94.)

On February 13, 2001, the State responded to Petitioner's Second Petition for PCR, arguing that Rule 32.2(a)(1) precluded Petitioner from post−conviction relief on all claims except his IAC claim because he was free to pursue such claims on appeal. (Ex. PP at 332.) The State also argued that Petitioner's IAC claim was not colorable for failure to state a legal or factual basis. (*Id.*)

On February 20, 2001, Petitioner replied to the State's response to his Second Petition for PCR. (Ex. QQ.) Petitioner argued that the issues in his Second Petition for PCR had "not been previously raised," because his First

Petition for PCR was found to be premature. (*Id.* at 334.) Petitioner further argued that his IAC claim was to be decided by the court, not the State. (*Id.*)

On June 4, 2001, the trial court summarily denied Petitioner's Second Petition for PCR on the grounds that, with one exception (his IAC claim), all of his claims were precluded under Rule 32.2(a)(1) because they were raisable on appeal or on post−trial motion under Rule 24, which had already been denied. (Ex. RR at 338.) The trial court rejected Petitioner's IAC claim on the grounds that he "fail[ed] to satisfy his burden of ineffective counsel under the *Strickland*" v. *Washington*, 466 U.S. 668 (1984), analysis, because he did not "specify acts and omissions of counsel that allegedly constituted ineffective assistance," nor did he show "that the deficient performance prejudiced his defense." (*Id.* at 337−38.) The court further stated that Petitioner's IAC claim was not colorable because he failed to raise any factors demonstrating that his counsel's representation fell below the prevailing standards. (*Id.* at 339.)

On July 3, 2001, Petitioner filed a Petition for Review in the Arizona Court of Appeals, in which he raised the following 6 claims:

1. Exculpatory information withheld from Grand Jury.

2. Abuse of discretion by both Judge Borowiec and Judge Fell.

3. Legislative intent, as well as [Petitioner's] intent.

4. Statute of limitations.

5. Ex−Post Facto law.

6. Ineffective assistance of counsel.

(Ex. SS at 341.)[12]

---

[12] On July 24, 2001, the Court of Appeals consolidated Petitioner's petition for review with his direct appeal on each of his twelve convictions. (Ex. YY.)

In claim 1, Petitioner argued that his "due process rights" and his "right to a 'fair and impartial' presentation of the evidence before the Grand Jury" were violated when the State withheld "material exculpatory evidence" from the Grand Jury. (*Id.* at 342.)

In claim 2, Petitioner cited only state law to support his argument that Judges Borowiec and Fell "impaired his due process rights to a fair trial" by not taking adequate corrective measures to diminish prejudice that resulted from the prosecutor's improper references to Petitioner. (*Id.* at 345−47.) Similarly, in claim 3, Petitioner relied only on state law in arguing that his right to due process was violated because possession of "the pictorial representations" was not a crime initially and Petitioner did not have a guilty state of mind. (*Id.* at 347−48.)

In claim 4, Petitioner failed to argue that the alleged expiration of the statute of limitations violated any of his federal rights, and instead cited federal law only to explain the purpose of the statute of limitations and to show how federal courts interpret *federal* statutes of limitations. (*Id.* at 349−50.) Petitioner relied on Arizona law alone to support his argument that "the statute of limitations is applicable to the case at bar, and these prosecutions should be dismissed with prejudice." (*Id.* at 350−55.)

Relying on the United States Constitution's *Ex Post Facto* Clause, Petitioner argued in claim 5 that his due process rights were violated because his "initial possession of any visual medium described was <u>not</u> a crime," and the State was prohibited from "retroactively" making it a crime. (*Id.* at 355−58, emphasis in original.)

In claim 6, Petitioner argued that "[t]he performance of both counsels was in adequate [sic] and ineffective," because "both expended considerable time and energy in asking the court for permission to be let off the case" when they discovered that an attorney from the Cochise County Defender's Office had previously represented Petitioner's son and daughter. (*Id.* at 358−59.) On July 5,

1  2001, Petitioner filed a Supplement to his Petition for Review, which attached the
2  trial court's order summarily dismissing his Second Petition for PCR. (Ex. TT.)

3  **F.    PETITIONER'S DIRECT APPEAL**

4          On November 29, 2000, the trial court appointed counsel Harriette Levitt to
5  represent Petitioner on appeal. (Ex. UU.) On March 13, 2002, at the request of
6  both counsel Levitt and Petitioner, the trial court appointed counsel Gail Natale to
7  represent Petitioner on appeal. (Ex. VV.)

8          After receiving several extensions of time, Petitioner filed his opening brief
9  on May 2, 2005 (Ex. WW), arguing, *inter alia*, the following: (1) "[t]he
10  aggravated sentence imposed by the trial court violated the Sixth Amendment" (*id.*
11  at 373, 391−95; *see also* Ex. XX at 417−26); and (2) "[t]he trial court lacked
12  jurisdiction to try [Petitioner] for the crime of sexual exploitation of a minor
13  because the State of Arizona commenced the case more than seven years after it
14  discovered the violation" (Ex. WW at 373, 396−98; Ex. XX at 426−28). In
15  addition, because the Court of Appeals had consolidated Petitioner's Petition for
16  Review of the trial court's denial of his Second Petition with his direct appeal (*see*
17  Ex. YY), Petitioner presented the following issues: (1) the state failed to present
18  exculpatory evidence to the Grand Jury that returned the '296 Indictment; and (2)
19  defense counsel provided IAC. (*See* Ex. ZZ at 448−51.)

20          On August 31, 2006, the Arizona Court of Appeals issued an unpublished
21  memorandum decision affirming Petitioner's convictions and sentences and
22  granting review of his Petition for Review of the trial court's decision dismissing
23  his Second Petition for PCR, but denying relief on all claims. (Ex. ZZ.) On
24  October 5, 2006, the Court of Appeals granted Petitioner's Motion for an
25  Extension of Time to File a Petition for Review to the Arizona Supreme Court to
26  January 3, 2007. (Ex. AAA.) On November 28, 2006, Petitioner filed an untimely
27  Motion for Reconsideration of the Court of Appeals' August 31, 2006 decision,
28  arguing that the court erred in rejecting his *Blakely*, statute of limitations, and *ex*

*post facto* arguments. (Ex. BBB.) The Court of Appeals denied Petitioner's Motion for Reconsideration on December 13, 2006. (Ex. CCC.)

On January 12, 2007, Petitioner filed a Petition for Review of the Court of Appeals' August 31, 2006 decision by the Arizona Supreme Court. (Ex. DDD.) On June 25, 2007, the Arizona Supreme Court denied review without comment. (Ex. EEE.)

## G.   THE INSTANT FEDERAL PETITION

Petitioner filed the instant federal habeas Petition with this Court on September 27, 2007, raising, as this Court has found,[13] the following four claims:

> 1.       The trial prosecutor failed to present exculpatory evidence to the Grand Jury;
>
> 2.       Petitioner's sentence violates *Blakely*;
>
> 3.       The trial court erred in not finding the allegations against Petitioner barred by the statute of limitations; and
>
> 4.       Petitioner's trial and appellate counsel were ineffective.

(Dkt. 5 at 1.)

In addition, Petitioner filed a "Supplemental Filing of Points and Authorities in Support of Petition for Writ of Habeas Corpus" (the "Supplemental Filing") on November 20, 2007 (*see* dkt. 8), which does not "supplement" his federal Petition in accordance with Fed.R.Civ.P. 15(d). Instead, Petitioner's Supplemental Filing sets forth arguments in support of three *new* claims not currently alleged in his pending federal habeas Petition: (1) Ground V: Petitioner's convictions under A.R.S. §13−3553 violate the federal *Ex Post Facto* Clause; (2) Ground VI: A.R.S. § 13−3553 is unconstitutionally vague and overbroad; and (3) Ground VII: Appellate counsel provided IAC by failing to raise various issues on appeal.

---

[13] *See* Dkt. 5 at 1.

Respondents submit that Petitioner's Supplemental Filing is procedurally improper, and thus should be dismissed or stricken, for two reasons. First, although a party may freely offer an amendment at any time before a responsive pleading is served, supplements always require leave of the court. *See* Fed.R.Civ.P. 15(d) ("Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading . . . ."); *see also* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §1504, at 186 (2d ed. 1990). Second, Petitioner has failed to indicate whether he has exhausted available state court remedies with respect to the three claims/arguments briefed in his Supplemental Filing. The burden of pleading that a claim has been exhausted lies with the petitioner. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981). Although this Court previously found that Petitioner alleged to have presented the four claims set forth in the instant Petition (*see* dkt. 5 at 1), no such finding has been made with respect to the three new claims/arguments set forth in Petitioner's Supplemental Filing. Moreover, because the new claims/arguments do not appear to be based on "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented," the Supplemental Filing is not "supplemental" within the terms of Fed.R.Civ.P. 15(d).

## III.     PETITIONER'S PETITION IS TIMELY.

Because Petitioner filed his federal habeas petition after April 24, 1996, the provisions of the Anti-Terrorism and Effective Death Penalty Act ("the AEDPA") apply to his case. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001). The AEDPA imposes a 1−year statute of limitations that commences on the date the state−court judgment becomes final. 28 U.S. C. § 2244(d)(1).

In the present case, Petitioner timely appealed his convictions and sentences to both the Arizona Court of Appeals and the Arizona Supreme Court (Exs. R

at 142−43; AA at 243; DDD), rendering his judgment of conviction and sentence final 90 days after June 25, 2007, the date the Arizona Supreme Court denied review (Ex. EEE). *See Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999) (period of "direct review" under § 2244(d)(1)(A) includes 90–day period during which defendant can file petition for writ of certiorari from U.S. Supreme Court). Thus, Petitioner's state court convictions became final on September 23, 2007, and the one–year limitations period commenced the following day, September 24, 2007. *See* 28 U.S.C. § 2244(d)(1)(A); *Bowen*, 188 F.3d at 1158–59. Absent any tolling, Petitioner was required to file his federal habeas petition on or before September 23, 2008. *See* 28 U.S.C. § 2244(d)(1)(A); *Malcolm v. Payne*, 281 F.3d 951, 955 (9th Cir. 2002); *Patterson*, 251 F.3d at 1245–46. Because Petitioner filed his federal habeas petition on October 1, 2007, long before the September 23, 2008 expiration of the 1−year statute of limitations, Petitioner's federal Petition is timely under § 2244(d)(1).

## IV. EXHAUSTION OF STATE REMEDIES.

Petitioner has procedurally defaulted on three claims set forth in his pending federal habeas Petition. In addition, without waiving Respondents' objection to Petitioner's Supplemental Filing, *see supra* at Part II(G), Petitioner has procedurally defaulted all three claims set forth in his Supplemental Filing. These three (or six) claims should therefore be dismissed with prejudice.

Six of Petitioner's claims are procedurally defaulted for the following reasons: (1) the State courts imposed a procedural bar to avoid reaching their merits (Ground I, Ground IV, Subclaims C, D, E, F, and H, and Ground V); (2) Petitioner failed to "fairly present" the federal legal theory of Ground III to the state courts and any effort to return to the state courts and properly exhaust the federal legal theories of such claim now would be futile; (3) Petitioner failed to "fairly present" Ground III to the state courts and any effort to return to the state courts and properly exhaust such claim now would be futile; and (4) Petitioner

failed to properly exhaust Ground IV, Subclaims A, B and G, Ground VI and Ground VII and any effort to return to the state courts and properly exhaust such claims now would be futile. Because Petitioner's procedural defaults cannot be excused, this Court should deny and dismiss with prejudice Grounds I, III, and IV, V, VI, and VII.

## A. PETITIONER'S CLAIMS ARE PROCEDURALLY DEFAULTED.

A federal court will consider a petitioner's application for a writ of habeas corpus only if "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The exhaustion requirement "protect[s] the state courts' role in the enforcement of federal law" by affording them the opportunity to resolve issues of federal law before those issues are presented to the federal court. *Rose v. Lundy*, 455 U.S. 509, 518 (1982). Proper exhaustion requires a petitioner to "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), raising his or her claim "in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting the court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). An Arizona petitioner must raise his or her claim to the Arizona Supreme Court, which is empowered with discretionary review over all criminal appeals in non–capital cases and all summary dismissals of petitions for post–conviction relief, in order to satisfy the exhaustion requirement.[14] *See* Ariz.

---

[14] *Baldwin* implicitly overrules the Ninth Circuit's opinion in *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999), which held that an Arizona prisoner who has not been sentenced to death or life imprisonment need only raise his or her claims to the Arizona Court of Appeals to satisfy the exhaustion requirement. The Ninth Circuit's three-judge pronouncement is irreconcilable with *Baldwin*'s language directing a petitioner to raise his or her claim in each state court, "including a state supreme court with powers of discretionary review." 541 U.S. at 29 (emphasis added and parentheses deleted); *see also Boerckel*, 526 U.S. at 843–48 (holding that where the state court of last resort has

(continued ...)

R. Crim. P. 32.9(c); *cf. State v. Ikirt,* 770 P.2d 1159, 1163 (1987) (supp. op.) (Arizona Supreme Court's review of Court of Appeals' decisions "is a matter of discretion" and such review is "part of the appeal process").

Proper exhaustion also requires a petitioner to have "fairly presented" to the state courts the *exact* federal claim he raises on habeas by describing the facts and federal legal theory upon which the claim is based. *See, e.g., Picard v. Connor*, 404 U.S. 270, 275–78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). Indeed, a claim is only "fairly presented" to the state courts when a petitioner has "'alert[ed] the state courts to the fact that [he or she] was asserting a claim under the United States Constitution.'" *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (quoting *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999)); *see Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

However, claims that have not been fairly presented in state court are procedurally defaulted and cannot be considered on federal collateral review. *See generally, Murray v. Carrier*, 477 U.S. 478, 485–92 (1986). Procedural default can be established under two circumstances. First, a claim is procedurally defaulted when a petitioner has attempted to raise it in state court but the state court has applied a procedural bar. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802–05 (1991); *Martinez–Villareal v. Lewis*, 80 F.3d 1301, 1305–06 (9th Cir. 1996); *see also Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005) (procedural default "'applies to bar federal habeas review when the state court has declined to address

---

( ... continued)

discretionary control over its docket, comity is served and the federal exhaustion rule satisfied by "requiring state prisoners to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); *Galvan v. Alaska Dep't of Corr.*, 397 F.3d 1198, 1201–02 (9th Cir. 2005) (following *Boerckel* and *Baldwin*).

the petitioner's federal claims because he failed to meet state procedural requirements'") (quoting *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995)).  Second, a procedural default may arise when a petitioner has not raised a claim in state court, but a return to state court to exhaust the claim would be futile in light of state procedural rules.  *See Teague v. Lane*, 489 U.S. 288, 297–99 (1989); *Reed v. Ross*, 468 U.S. 1, 10–11 (1984); *see also Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas.").

Arizona's procedural default rules are strictly and regularly applied, and typically render any attempt to return to state court and present additional claims futile.  *See* Ariz. R. Crim. P. 32.2 and 32.4(a) (successive post–conviction relief proceeding allowed only under limited circumstances); *see also Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of Arizona Rules of Criminal Procedure); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th 1992) (en banc) (rejecting assertion that Arizona courts' application of procedural default rules had been "unpredictable and irregular"); *State v. Mata*, 916 P.2d 1035, 1050–52 (1996) (waiver and preclusion rules strictly applied in post–conviction proceedings).

### GROUND I:  GRAND JURY CLAIM

In Ground I, Petitioner argues that the prosecutor improperly withheld exculpatory evidence from the Grand Jury.  (Dkt. 1 at 6.)  Ground I is procedurally defaulted because both the trial court and the Arizona Court of Appeals imposed a procedural bar to avoid reaching the merits of Ground I, which constitutes an independent and adequate state law ground barring federal review.  *See Ylst*, 501 U.S. at 802−05.

Petitioner initially raised Ground I before his first trial, on May 13, 1999, by filing a Third Motion to Remand with respect to the '296 Indictment. (Ex. F.) After the trial court denied Petitioner's Third Motion to Remand (Ex. I), Petitioner did not challenge the trial court's ruling by filing a special action in the Arizona Court of Appeals *before trial*. (Ex. J at 73−74, 77, 89, 95.)

Petitioner also raised Ground I in his Second Petition for PCR, by alleging that the State improperly withheld exculpatory information from the Grand Jury (Ex. LL at 298−99). On June 4, 2001, the trial court summarily denied Petitioner's Second Petition on the grounds that, with the exception of his IAC claim, all of his claims were precluded by Rule 32.2(a)(1) because they were raisable on appeal or on post−trial motion. (Ex. RR at 338.) *See State v. Murray*, 906 P.2d 542, 565 (1995) ("[t]o obtain review of a denial of redetermination of probable cause, a defendant must seek relief before trial by special action").

In his Petition for Review by the Arizona Court of Appeals, Petitioner included his claim that exculpatory information had been withheld from the Grand Jury. (Ex. SS at 341−45.) Like the trial court, the Court of Appeals rejected Petitioner's Grand Jury Claim by imposing a procedural bar:

> The trial court correctly concluded that each of [Petitioner's] claims except the ineffective assistance of counsel claim was waived or precluded under Rule 32.2(a). First, "[t]o obtain review of a denial of redetermination of probable cause, a defendant must seek relief before trial by special action." *State v. Murray*, 184 Ariz. 9, 32, 906 P.2d 542, 565 (1995). The only exception to this rule is when the state "knew [the indictment] was partially based on perjured, material testimony." *Id.* In those cases, the defendant may challenge the indictment on appeal. [In his Second Petition, Petitioner] argued only that material exculpatory evidence was withheld, not that perjured testimony was presented to secure his indictment. Therefore, the trial court properly found this claim was precluded. *See Murray.*

1    (Ex. ZZ at 449.)  The Arizona Supreme Court implicitly adopted this procedural
2    bar when it denied review of Petitioner's grand jury claim without comment.  (Exs.
3    DDD at 478; EEE.)  *See Ylst*, 501 U.S. at 802 (when last reasoned state court
4    decision imposes a procedural default, court presumes on habeas that subsequent
5    decision rejecting claim did not consider merits).

6          This Court must defer to the state courts' conclusion that Petitioner was
7    procedurally barred from raising the instant grand jury claim *after trial* because
8    this issue is a matter of state law.  *See e.g., Poland v. Stewart*, 169 F.3d 573, 584
9    (9th Cir. 1999) ("Poland further argues that the trial court improperly applied
10   Arizona Rule of Criminal Procedure 32.2 in holding these claims defaulted, since
11   the conditions for inferring waiver under the rule were not satisfied.  Federal
12   habeas courts lack jurisdiction, however, to review state court applications of state
13   procedural rules."); *see also Thomas v. Lewis*, 945 F.2d 1119, 1121–23 (9th Cir.
14   1991) (finding procedural default where the Arizona Court of Appeals held that
15   habeas petitioner had waived claims by failing to raise issues on direct appeal or in
16   first petition for post-conviction relief).  Because Petitioner presented Ground I to
17   the Arizona courts in a procedurally defective manner, Ground I is procedurally
18   defaulted.  *See Ylst*, 501 U.S. at 802–05; *Insyxiengmay*, 403 F.3d at 665; *see also*
19   *Coleman*, 501 U.S. at 735 n.1.

20          **GROUND III: STATUTE OF LIMITATIONS**

21          In Ground III, Petitioner argues that the trial court erred by "ruling that the
22   acts depicted on the tapes were barred by the statute of limitations, but refused to
23   grant the same ruling on the completed act of possession or to allow the issue to be
24   argued based on the same law."[15]  (Dkt. 1 at 8.)  Ground III is unexhausted but

25   _____

26   [15] The statute of limitations for sexual exploitation of a minor based on possession of
27   child pornography was deleted in 2001.  *See* 2001 Ariz. Sess. Laws, chpts. 183, §1, 271,
     §1.
28

procedurally defaulted for two reasons. First, in arguing this claim to the trial court and the Arizona Court of Appeals, Petitioner did not "fairly present" any federal or constitutional violation upon which Ground III is based.[16] Second, Ground III is not properly exhausted, and is now procedurally defaulted, because neither Petitioner's direct appeal nor his Petition for Review of the trial court's dismissal of his Second Petition for PCR "fairly presented" the statute of limitations claim to the Arizona courts. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).

### FEDERAL CLAIM NOT FAIRLY PRESENTED

Petitioner raised Ground III in his Motion to Vacate filed on November 5, 1999, after he was convicted of two counts of sexual exploitation of a minor based on knowing possession of pornographic videotapes. (Ex. T at 161−65.) Petitioner's Motion to Vacate did not assert a violation of his federal rights, but instead relied solely on the violation of an Arizona statute — A.R.S. § 13−107(B) (Arizona's statute of limitations) — to support his argument that the trial court lacked jurisdiction over him because the statute of limitations had expired. (*Id.* at 161−62.) Petitioner also argued that the doctrine of "continuing offenses" did not prevent the statute of limitations from running (*see id.* at 165−67), but never asserted that his federal rights were violated by the trial court's application of such doctrine or otherwise. (*Id.*) In both his First and Second Petitions for PCR, Petitioner presented the very same arguments as his Motion to Vacate, and asserted

_____

[16] Nor does he assert a federal violation in the instant Petition. *See* Dkt. 1 at 8. Petitioner's failure to allege a federal violation is likely because a state court's alleged failure to properly interpret or apply a *state* statute of limitations does not violate due process or, indeed, any other provision of the United States Constitution or a federal statute. Thus, Petitioner's claim that the applicable statute of limitations had run when he was charged with sexual exploitation of a minor based on possession of child pornography is non−cognizable in this federal habeas proceeding because it is an issue of state law. *See infra* at Part V.

only that the State had violated the statute of limitations, not any of his federal or constitutional rights. (Exs. CC at 255−56; II at 268−71; LL at 289−92.)

Similarly, in his direct appeal to the Arizona Court of Appeals, Petitioner relied solely on the Arizona statute of limitations (A.R.S. § 13−107) to support his argument that the trial court lacked jurisdiction to try him for sexual exploitation of a minor based on possession, and urged the Court of Appeals to "construe the statute of limitation . . . 'liberally in [his] favor.'" (Exs. WW at 396−98; XX at 426−28.) In his Petition for Review by the Court of Appeals, Petitioner cited to federal case law, but only to explain the purpose of the statute of limitations and only in the context of federal courts' interpretation of *federal* statutes of limitations. (Ex. SS at 349−51.) More importantly, the thrust of Petitioner's argument was *not* that his federal rights had been violated, but that the trial court had misinterpreted Arizona's statute of limitations. (*See id.* at 351−55.) Petitioner repeated this very same argument in his Motion for Reconsideration of the Arizona Court of Appeals' denial of his Petition for Review and in his Petition for Review to the Arizona Supreme Court. (Exs. BBB at 456−62; DDD 471−74.) Indeed, Petitioner's Petition for Review to the Arizona Supreme Court sums up the reason he claimed that Arizona's lower courts misapplied Arizona's statute of limitations: "The law *in Arizona on this issue* is abundantly clear and equally well−settled that the seven year statute of limitations is jurisdictional, rendering a court without power to act upon the matter." (Ex. DDD at 472.)

As shown above, although Petitioner argued to both the Arizona Court of Appeals and the Arizona Supreme Court that the trial court misapplied Arizona's state statute of limitations by presiding over his trial and permitting both juries to render guilty verdicts, he never alerted *any* Arizona court that he was raising a *federal constitutional claim* (Exs. T at 161−67; CC at 255−56; II at 268−71; LL at 289−92; WW at 396−98; XX at 426−28; SS at 349−51; BBB at 456−62; DDD 471−74). *See Gray*, 518 U.S. at 162–63; *Picard*, 404 U.S. at 275–78; *Castillo v.*

*McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) ("[Petitioner] must have characterized the claims he raised in state proceedings specifically as federal claims.") (internal cite and quotation omitted); *Shumway*, 223 F.3d at 987. Nor did Petitioner reference any federal law or cases which hold that a state court error in applying a state statute of limitations violates a federal right (Exs. T at 161−67; CC at 255−56; II at 268−71; LL at 289−92; WW at 396−98; XX at 426−28; SS at 349−51; BBB at 456−62; DDD 471−74). *See Insyxiengmay*, 403 F.3d at 668 ("In this circuit, the petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law."). Because Petitioner never referred to or analyzed this claim in the context of a federal constitutional claim, he failed to fairly present Ground III to the trial court, the Arizona Court of Appeals and the Arizona Supreme Court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (It is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made.").

Petitioner cannot now return to state court and properly exhaust any federal legal theory regarding Ground III because this claim is not among the limited number of claims cognizable in a successive or untimely petition for post–conviction relief. *See* Ariz. R. Crim. P. 32.2; Ariz. R. Crim. P. 32.4(a); *see also Ortiz*, 149 F.3d at 931–32; *Lewis*, 971 F.2d at 333; *Mata*, 916 P.2d at 1050–52. Because any effort by Petitioner to return to State court and properly exhaust this claim would be futile, Ground III is procedurally defaulted. *See Coleman*, 501 U.S. at 735 n.1.

### STATUTE OF LIMITATIONS CLAIM NOT FAIRLY PRESENTED

Alternatively, Petitioner failed to properly exhaust Ground III, and thus such claim is now procedurally defaulted, because Petitioner did not appeal from the trial court's orders denying his Motions to Vacate, in which his statute of limitations claim was made, and thus the Arizona Court of Appeals lacked

jurisdiction to address the merits of such claim (*see* Ariz.R.Crim.P. 31.2(a); 31.2(d)). (*See* Ex. ZZZ at 440−41.)

As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts in the manner required by the state courts, thereby "afford[ing] the state courts a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). Thus, not only must a federal claim be fairly presented, but it must also be presented in a procedurally appropriate manner. *Coleman*, 501 U.S. at 729–30; *Castille*, 489 U.S. at 351. In 1989, the Supreme Court in *Castille* granted *certiorari* to decide whether the presentation of claims to a State's highest court on discretionary review, without more, satisfies the exhaustion requirements of 28 U.S.C. §2254. *Castille*, 489 U.S. at 349. After noting that the petitioner had raised only state law claims to the intermediate state appellate court, the Supreme Court unanimously held that "where the [federal] claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons . . . [r]aising the claim in such a fashion does not . . . constitute fair presentation." *Id.* at 351.

Under *Castille*, Petitioner failed to provide the Arizona Court of Appeals a meaningful opportunity to consider the argument he presented in his Motions to Vacate: that the seven−year statute of limitations for sexual exploitation of a minor based on possession of child pornography had expired. Petitioner did not fairly present this argument to the Court of Appeals because he failed to timely file a notice of appeal from the trial court's denial of his Motions to Vacate, thereby depriving the Arizona Court of Appeals of jurisdiction to address such claim, (*see* Exs. J at 75, 78−80, 84, 86, 88, 94−95; AA at 243; OO at 331; ZZ at 439−41; *see also supra* at 7, 9). *Castille*, 489 U.S. at 351; *Coleman*, 501 U.S. at 732 (a prisoner who has failed to meet a state's procedural requirements for presenting his federal claims "has deprived the state courts of an opportunity to address those claims in

the first instance").  Petitioner's request that the Arizona Court of Appeals consider the statute of limitations argument previously presented in his Motions to Vacate — even though he failed to file a notice of appeal from the separately appealable orders denying such motions — is even more limiting than the form of discretionary review sought by the petitioner in *Castille* because the Arizona Court of Appeals lacked jurisdiction to consider such argument.  *See* Ariz.R.Crim.P. 31.2(a), 31.2(d); *People v. Wynn*, 562 P.2d 734, 736 (App. Ariz 1977) (under Arizona law, rulings on post−trial motions to vacate are separately appealable orders; court of appeals has no jurisdiction to proceed with merits of argument presented in post−trial motion to vacate unless notice of appeal is filed within 20 days of denial).  In *Castille*, by contrast, the merits of the petitioner's claims *could be* addressed if there were "special" or "important reasons" for doing so.  *See Castille*, 489 U.S. at 351.  Because Petitioner's failure to comply with Arizona's procedural requirements deprived the Arizona Court of Appeals of jurisdiction to address his statute of limitations argument, Ground III was not fairly presented to the Arizona state courts and is unexhausted.

Petitioner cannot now return to state court and properly exhaust Ground III because this claim is not among the limited number of claims cognizable in a successive or untimely petition for post−conviction relief.  *See* Ariz. R. Crim. P. 32.2; Ariz. R. Crim. P. 32.4(a); *see also Ortiz*, 149 F.3d at 931−32; *Lewis*, 971 F.2d at 333; *Mata*, 916 P.2d at 1050−52.  Because any effort by Petitioner to return to State court and properly exhaust this claim would be futile, Ground III is procedurally defaulted.  *See Coleman*, 501 U.S. at 735 n.1.

### GROUND IV:  INEFFECTIVE ASSISTANCE OF COUNSEL

In Ground IV of the instant Petition, Petitioner argues that "[b]oth trial and appellate counsel not only failed, but refused to raise the constitutional issues that have merit."  (Dkt. 1 at 9.)    Specifically, Petitioner contends appellate counsel presented ineffective assistance by (A) failing to challenge the trial court's decision

that Petitioner's "offenses were continuing offense[s] while the Court of Appeals held: '[Petitioner's] offenses were completed offenses" (Dkt. 1−3 at 17); and (B) failing to "raise the valid constitutional issues that Petitioner has filed a plethora of motions on, from 2001 to date" (*id.*). With respect to trial counsel, Petitioner alleges he received ineffective assistance when counsel (C) refused Petitioner's "request to be present at the examination of Laurie Ann (Abate) Ball and L.[B.]" (*id.* at 18); (D) learned that the county attorney had withheld exculpatory information from the Grand Jury (*id.*); (E) refused to ask for a mistrial when Judge Borowiec asked if Petitioner wished to move for a mistrial (*id.*); (F) denied Petitioner's request to file a special action or to withdraw from the case after the trial court denied the motion to continue trial to investigate the statute of limitations issue (*id.* at 18−19); (G) failed to challenge the trial court's decision that Petitioner's "offenses were continuing offense[s] while the Court of Appeals held: '[Petitioner's] offenses were completed offenses" (*id.* at 17); and (H) failed to "raise the valid constitutional issues that Petitioner has filed a plethora of motions on, from 2001 to date" (*id.*).

All eight subclaims within Ground IV are procedurally defaulted. Subclaims (A), (B) and (G) are unexhausted, and thus procedurally defaulted, because Petitioner never presented these subclaims to any Arizona state court and cannot now return to state court to exhaust such subclaims. Subclaims (C), (D), (E), (F), and (H) are procedurally defaulted because the Arizona Court of Appeals imposed a procedural bar to avoid reaching their merits, which constitutes an independent and adequate state law ground barring federal review. *See Ylst*, 501 U.S. at 802−05. Moreover, Petitioner failed to present any IAC claim (or subclaim) to the Arizona Supreme Court and, therefore, failed to properly exhaust such claim by raising it "in each appropriate state court." *Baldwin*, 541 U.S. at 29.

Petitioner raised a general IAC claim in his Second Petition for PCR by arguing that "there may have been ineffective assistance of counsel in the representation of Petitioner . . . by the Office of the Cochise County Public Defender." (Ex. LL at 288.) Petitioner's Second Petition for PCR did not provide any specific factual assertions, but instead generally alleged only that defense "counsel did not individually or collectively take remedial or corrective measures" "when [the prosecutor] was transgressing," and "expended considerable energy in asking the court for permission to be let off the case rather than filing certain post−trial motions." (*Id.* at 296−97.) The trial court rejected Petitioner's IAC claim on the grounds that he failed to satisfy *Strickland*," because Petitioner did not "specify acts and omissions of counsel that allegedly constituted ineffective assistance," nor did Petitioner show "that the deficient performance prejudiced his defense." (Ex. RR at 337−38.) The court further rejected Petitioner's general IAC claim as not colorable because he failed to demonstrate that counsel's representation fell below the prevailing standards. (*Id.* at 339.)

Petitioner also included an IAC claim in his Petition for Review by the Arizona Court of Appeals. (Ex. SS.) There, Petitioner argued that the performance of trial counsel "was in adequate [sic] and ineffective." (*Id.* at 358−59.) Unlike his Second Petition for PCR, however, Petitioner's Petition for Review alleged eight entirely new factual allegations of IAC: trial counsel's performance "fell well below the minimal standard of representation" when they (1) refused Petitioner's request to be present at the examination of two victims; (2) "learned that the county attorney had withheld exculpatory information from the Grand Jury"; (3) allowed the trial court to "give instructions to a hung jury over [Petitioner's] wishes"; (4) "recus[ed] Judge Conlogue 5 months later on information known before the December trial"; (5) "refus[ed] to ask for a mistrial" when Petitioner "wish[ed] to move for a mistrial"; (6) failed to pursue an *ex post*

*facto* law defense; (7) failed to file a Special Action after the statute of limitations defense was rejected; and (8) failed to file appropriate motions for relief.  (*Id.* at 358−60.)

The Arizona Court of Appeals rejected Petitioner's IAC claim for two reasons.  First, the Court of Appeals agreed with the trial court that Petitioner's Second Petition for PCR failed to state a colorable claim of IAC because Petitioner "merely stated he 'believes there may have been ineffective assistance of counsel' without saying how counsel had erred."  (Ex. ZZ at 450−51.)   Second, the Court of Appeals held that Petitioner had waived each of the eight specific allegations of IAC presented (for the first time) in his Petition for Review because he failed to present such allegations to the trial court.  (*Id.*)

### SUBCLAIMS A, B AND G ARE UNEXHAUSTED AND PROCEDURALLY DEFAULTED

Subclaims A, B and G are unexhausted, and now procedurally defaulted, because Petitioner did not raise any of these subclaims at any point in the state proceedings.  Petitioner has never alleged any wrongdoing by appellate counsel (subclaims A and B).  (*See* Exs. CC; II; LL; SS; DDD.)  Similarly, Petitioner never claimed that trial counsel was ineffective for failing to challenge the trial court's decision that Petitioner's "offenses were continuing offense[s] while the Court of Appeals held:  '[Petitioner's] offenses were completed offenses" (Dkt. 1−3 at 17).  Indeed, trial counsel no longer represented Petitioner in August 2006, when the Court of Appeals' decision was issued.  (*See* Exs. EE; FF; Z at 240; UU; VV; WW; XX; ZZ.)  This Court may not grant relief based upon federal claims that Petitioner *never* presented to the state courts.  *See e.g., Sims v. Singletary*, 155 F.3d 1297, 1317 (11th Cir. 1998); *Kurzawa v. Jordan*, 146 F.3d 435, 441 (7th Cir. 1998).  Because Petitioner failed to "invoke one complete round of [Arizona's] established appellate review process," these three subclaims are unexhausted.  *See O'Sullivan*, 526 U.S. at 845; *Baldwin*, 541 U.S. at 29; *Ikirt*, 170 P.2d at 1163.

Petitioner cannot now return to state court and properly exhaust subclaims A, B and G because they are not among the limited number of claims cognizable in a successive or untimely petition for post−conviction relief. *See* Ariz.R.Crim.P. 32.2; Ariz.R.Crim.P. 32.4(a); *see also Ortiz*, 149 F.3d at 931−32; *Lewis*, 971 F.2d at 333; *Mata*, 916 P.2d at 1050−52. Because any effort by Petitioner to return to State court and properly exhaust Subclaims A, B and G would be futile, these three subclaims are procedurally defaulted.

## SUBCLAIMS C, D, E, F, AND H ARE PROCEDURALLY DEFAULTED

Ground IV, Subclaims C, D, E, F, and H are procedurally defaulted because the Arizona Court of Appeals imposed a procedural bar to avoid reaching their merits, which constitutes an independent and adequate state law ground barring federal review. *See Ylst*, 501 U.S. at 802−05. When the Arizona Court of Appeals rejected Petitioner's IAC claim, it held that the following five allegations were waived for failure to first present such claims to the trial court: (1) refused Petitioner's request to be present at the examination of two victims (now subclaim C); (2) "learned that the county attorney had withheld exculpatory information from the Grand Jury" (now subclaim D); (5) "refus[ed] to ask for a mistrial" when Petitioner "wish[ed] to move for a mistrial" (now subclaim E); (7) failed to file a Special Action after the statute of limitations defense was rejected (now subclaim F); and (8) failed to file appropriate motions for relief (now subclaim H). (Exs. SS at 358−60; ZZ at 450−51.) As shown, Petitioner has raised each of these five allegations in the instant Petition, as subclaims C, D, E, F, and H. (Dkt. 1 at 9; Dkt. 1−3 at 17−19.)

This Court must defer to the Arizona Court of Appeals' conclusion that Petitioner was procedurally barred from raising these five subclaims in his Petition for Review, because this issue is a matter of state law. *See e.g., Poland*, 169 F.3d at 584 ("Poland further argues that the trial court improperly applied Arizona Rule of Criminal Procedure 32.2 in holding these claims defaulted, since the conditions

for inferring waiver under the rule were not satisfied. Federal habeas courts lack jurisdiction, however, to review state court applications of state procedural rules."); *see also Thomas*, 945 F.2d at 1121–23. Because Petitioner presented Subclaims C, D, E, F, and H to the Arizona courts in a procedurally defective manner, these five subclaims are procedurally defaulted. *See Ylst*, 501 U.S. at 802–05; *Insyxiengmay*, 403 F.3d at 665; *see also Coleman*, 501 U.S. at 735 n.1.

Alternatively, Ground IV (in its entirety) is unexhausted and procedurally defaulted because Petitioner did not raise Ground IV or any of its subclaims in his Petition for Review to the Arizona Supreme Court (*see* Ex. DDD), and therefore, failed to properly exhaust his entire IAC claim by raising it "in each appropriate state court." *See Baldwin*, 541 U.S. at 29. Moreover, Petitioner cannot return to the Arizona Supreme Court and satisfy the exhaustion requirement, as the time for seeking such review has long expired. *See* Ariz.R.Crim.P. 32.9(c) (petition for review from trial court's post−conviction relief ruling must be filed within 30 days). Because any effort to return to state court and satisfy the exhaustion requirement would be futile, Ground IV (in its entirety) is procedurally defaulted. *See Coleman*, 501 U.S. at 735, n.1.

**GROUND V: *EX POST FACTO* CLAUSE**

In Ground V, Petitioner argues that "Petitioner's initial possession of any visual medium described was <u>not</u> a crime, and cannot be retroactively made into a crime," without violating due process and the federal *Ex Post Facto* Clause. (Dkt. 8 at 6−8.) Ground V is procedurally defaulted because both the trial court and the Arizona Court of Appeals imposed a procedural bar to avoid reaching the merits of Ground V, which constitutes an independent and adequate state law ground barring federal review. *See Ylst*, 501 U.S. at 802−05. Moreover, Petitioner failed to present this argument to the Arizona Supreme Court and, therefore, failed to properly exhaust such claim by raising it "in each appropriate state court." *Baldwin*, 541 U.S. at 29.

Petitioner raised Ground V in his Second Petition for PCR. (Ex. LL at 285−87.) On June 4, 2001, the trial court summarily denied Petitioner's Second Petition on the grounds that, with the exception of his IAC claim, all of his claims were precluded by Rule 32.2(a)(1) because they were raisable on appeal or on post−trial motion. (Ex. RR at 338.)

In his Petition for Review to the Arizona Court of Appeals, Petitioner included his *Ex Post Facto* argument. (Ex. SS at 341, 355−58.) However, ignoring the trial court's June 4, 2001 order, Petitioner failed to raise his *Ex Post Facto* argument in his appellate briefs. (*See* Exs. WW at 373, 381−411; XX at 415−433.) Like the trial court, the Court of Appeals rejected Petitioner's *Ex Post Facto* argument by imposing the same procedural bar applied by the trial court under Rule 32.2(a)(1), which "precludes post−conviction relief on a claim based on any ground that could have been raised on appeal" (Ex. ZZ at 449):

> Next, [Petitioner] challenges A.R.S. § 13−3553, the statute under which he was convicted on two grounds. He claims that, regardless of the language of the statute, the legislature did not intend to criminalize the possession of child pornography. He also argues the statute as applied to him was an *ex post facto* law because he possessed the materials before the word "possessing" was added to the statute. Neither of these claims falls within the scope of Rule 32.1. *See Canion v. Cole*, 210 Ariz. 598, 115 P.3d 1261 (2005) (petitioner bears burden of raising post−conviction claims that are within provisions of Rule 32); *State v. Carriger*, 143 Ariz. 142, 692 P.2d 991, 994 (1984) ("The type of issues a petitioner may raise in a Rule 32 petition are limited by court rule."). Because they are outside the scope of Rule 32, these claims were required to have been raised on appeal, and the trial court properly found them precluded. *See* Ariz.R.Crim.P. 32.2(a)(3).

(Ex. ZZ at 450.)[17]

This Court must defer to the state courts' conclusions that Petitioner was procedurally barred from raising the instant *ex post facto* argument because this issue is a matter of state law. *See e.g., Poland v. Stewart*, 169 F.3d at 584 (Poland further argues that the trial court improperly applied Arizona Rule of Criminal Procedure 32.2 in holding these claims defaulted, since the conditions for inferring waiver under the rule were not satisfied. Federal habeas courts lack jurisdiction, however, to review state court applications of state procedural rules."); *see also Thomas*, 945 F.2d at 1121–23 (finding procedural default where the Arizona Court of Appeals held that habeas petitioner had waived claims by failing to raise issues on direct appeal or in first petition for post-conviction relief). Because Petitioner presented Ground V to the Arizona courts in a procedurally defective manner, Ground V is procedurally defaulted. *See Ylst*, 501 U.S. at 802–05; *Insyxiengmay*, 403 F.3d at 665; *see also Coleman*, 501 U.S. at 735 n.1.

_____

[17] Although Petitioner subsequently included his *ex post facto* claim in the Motion for Reconsideration filed *after* the Arizona Court of Appeals issued its decision denying relief (*see* Ex. BBB at 462−64), inclusion in his Motion for Reconsideration did not constitute fair presentation of his *ex post facto* claim to the Arizona appellate court. *See Castille*, 489 U.S. at 351; *Greene v. Lambert*, 288 F.3d 1081, 1087 n.2 (9th Cir. 2002) (claim raised for first time in discretionary motion for reconsideration and summarily denied not exhausted for federal habeas purposes). Under Arizona law, the opening brief in a criminal appeal is required to include an argument containing the contentions of the appellant with respect to the issues presented, and the reasons therefore, together with supporting citations. *See* Ariz.R.Crim.P. 31.13(c)(1)(iv). Failure to argue a claim in this manner constitutes abandonment, *State v. Smith*, 610 P.2d 46, 50 (Ariz. 1980); *State v. Blodgette*, 590 P.3d 931, 934 (Ariz. 1979), and waiver of such claim. In the present case, the Court of Appeals properly determined that Petitioner's appellate briefs failed to raise the issue of whether his convictions violated the federal *ex post facto* clause (*see* Ex. ZZ at 450; *see also* Exs. WW; XX). Because Petitioner failed to raise the *ex post facto* argument in his appellate briefs (as opposed to his Petition for Review), such argument was not properly asserted — and thus not "fairly presented" — in his Motion for Reconsideration. *See State v. McCall*, 677 P.2d 920, 936−37 (Ariz. 1983) ("The claim having been waived, it may not be asserted in a motion to reconsider.").

Alternatively, Ground V is unexhausted and procedurally defaulted because Petitioner did not raise Ground V in his Petition for Review to the Arizona Supreme Court (*see* Ex. DDD), and therefore, failed to properly exhaust this claim by raising it "in each appropriate state court." *See Baldwin*, 541 U.S. at 29. Moreover, Petitioner cannot return to the Arizona Supreme Court and satisfy the exhaustion requirement, as the time for seeking such review has long expired. *See* Ariz.R.Crim.P. 32.9(c) (petition for review from trial court's post−conviction relief ruling must be filed within 30 days). Because any effort to return to state court and satisfy the exhaustion requirement would be futile, Ground V is procedurally defaulted. *See Coleman*, 501 U.S. at 735, n.1.

### GROUND VI: A.R.S. §13−3553 IS VAGUE AND OVERBROAD

In Ground VI, Petitioner argues that "A.R.S. §13−3553 is facially overbroad because there are no exceptions, exemptions or defenses available to professionals with legitimate reasons for possessing child pornography." (Dkt. 8 at 10.) Ground VI is unexhausted, and thus procedurally defaulted, because Petitioner never presented this argument to any Arizona state court and cannot now return to state court to exhaust such claim. Moreover, Petitioner failed to present this argument to the Arizona Supreme Court and, therefore, failed to properly exhaust such claim by raising it "in each appropriate state court." *Baldwin*, 541 U.S. at 29.

Although Petitioner's Petition for Review to the Arizona Court of Appeals *did* argue that the Arizona "legislature did not intend to criminalize the possession of child pornography" (*see* Ex. ZZ at 450), Petitioner has never raised the *distinct* argument that A.R.S. §13−3553 is unconstitutionally vague and overbroad. (*See* Exs. CC at 255; II at 271−74; LL at 287−88, 292−95; RR at 336−37 (listing 11 issues raised by Second Petition for PCR); SS at 341−48; ZZ at 448, 450 (listing issues raised in Petition for Review.) This Court may not grant relief based upon federal claims that Petitioner *never* presented to the state courts. *See e.g., Sims*, 155 F.3d at 1317; *Kurzawa*, 146 F.3d at 441. Because Petitioner failed to "invoke

one complete round of [Arizona's] established appellate review process," Ground VI is unexhausted. *See O'Sullivan*, 526 U.S. at 845; *Baldwin*, 541 U.S. at 29; *Ikirt*, 170 P.2d at 1163.

Petitioner cannot now return to state court and properly exhaust Ground VI because it is not among the limited number of claims cognizable in a successive or untimely petition for post−conviction relief. *See* Ariz.R.Crim.P. 32.2; Ariz.R.Crim.P. 32.4(a); *see also Ortiz*, 149 F.3d at 931−32; *Lewis*, 971 F.2d at 333; *Mata*, 916 P.2d at 1050−52. Because any effort by Petitioner to return to State court and properly exhaust Ground VI would be futile, Ground VI is procedurally defaulted.

Alternatively, Ground VI is unexhausted and procedurally defaulted because Petitioner did not raise Ground VI in his Petition for Review to the Arizona Supreme Court (*see* Ex. DDD), and therefore, failed to properly exhaust this claim by raising it "in each appropriate state court." *See Baldwin*, 541 U.S. at 29. Moreover, Petitioner cannot return to the Arizona Supreme Court and satisfy the exhaustion requirement, as the time for seeking such review has long expired. *See* Ariz.R.Crim.P. 32.9(c) (petition for review from trial court's post−conviction relief ruling must be filed within 30 days). Because any effort to return to state court and satisfy the exhaustion requirement would be futile, Ground VI is procedurally defaulted. *See Coleman*, 501 U.S. at 735, n.1.

### GROUND VII: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In Ground VII, Petitioner argues that appellate counsel "refused to file" several issues of "first impression and of constitutional magnitude" "on direct appeal," resulting in IAC. (Dkt. 8 at 15.) Ground VII is unexhausted, and now procedurally defaulted, because Petitioner did not raise this argument at any point in the state proceedings. Moreover, Petitioner failed to present this argument to the Arizona Supreme Court and, therefore, failed to properly exhaust such claim by raising it "in each appropriate state court." *Baldwin*, 541 U.S. at 29.

Petitioner has never alleged any wrongdoing by appellate counsel. (*See* Exs. CC; II; LL; SS; ZZ at 450 (examining Petitioner's "claim of ineffective assistance of *trial counsel*"); DDD.) Similarly, Petitioner never alerted the Arizona courts that he wanted to remove appellate counsel Natale for failure to raise certain issues on appeal. This Court may not grant relief based upon federal claims that Petitioner *never* presented to the state courts. *See e.g., Sims*, 155 F.3d at 1317; *Kurzawa*, 146 F.3d at 441. Because Petitioner failed to "invoke one complete round of [Arizona's] established appellate review process," Ground VII is unexhausted. *See O'Sullivan*, 526 U.S. at 845; *Baldwin*, 541 U.S. at 29; *Ikirt*, 170 P.2d at 1163.

Petitioner cannot now return to state court and properly exhaust Ground VII because it is not among the limited number of claims cognizable in a successive or untimely petition for post−conviction relief. *See* Ariz.R.Crim.P. 32.2; Ariz.R.Crim.P. 32.4(a); *see also Ortiz*, 149 F.3d at 931−32; *Lewis*, 971 F.2d at 333; *Mata*, 916 P.2d at 1050−52. Because any effort by Petitioner to return to State court and properly exhaust Ground VII would be futile, Ground VII is procedurally defaulted.

Alternatively, Ground VII is unexhausted and procedurally defaulted because Petitioner did not raise Ground VII in his Petition for Review to the Arizona Supreme Court (*see* Ex. DDD), and therefore, failed to properly exhaust this claim by raising it "in each appropriate state court." *See Baldwin*, 541 U.S. at 29. Moreover, Petitioner cannot return to the Arizona Supreme Court and satisfy the exhaustion requirement, as the time for seeking such review has long expired. *See* Ariz.R.Crim.P. 32.9(c) (petition for review from trial court's post−conviction relief ruling must be filed within 30 days). Because any effort to return to state court and satisfy the exhaustion requirement would be futile, Ground VII is procedurally defaulted. *See Coleman*, 501 U.S. at 735, n.1.

## B. PETITIONER'S PROCEDURAL DEFAULTS CANNOT BE EXCUSED.

A federal court may not review the merits of a procedurally defaulted claim unless the petitioner demonstrates "cause and prejudice," *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 907−08 (9th Cir. 1986), or a fundamental "miscarriage of justice." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "Cause" requires a showing that an external, objective factor impeded a petitioner's compliance with state procedural rules. *See Murray*, 477 U.S. at 488. "Prejudice" requires a showing that the alleged constitutional violation "worked to [the petitioner's] actual and substantial disadvantage, injecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis deleted). And, to prove a fundamental "miscarriage of justice," a petitioner must show by clear and convincing evidence that no reasonable jury could have found the petitioner guilty of the offense. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner has not suggested an external, objective factor that reasonably prevented him from properly raising Grounds I, III, IV, V, VI, or VII in the state courts. (*See* Dkt. 1−1−3.) Petitioner's *pro per* status does not excuse his failure to properly present his claims —indeed, the law is well−established that a defendant's *pro per* status and lack of legal proficiency do not establish "cause" for his failure to present a federal claim to state court. *See, e.g., Kibler v. Walters*, 220 F.3d 1151, 1154 (9th Cir. 2000); *Steele v. Young*, 11 F.3d 1518, 1522 (10th Cir. 1993); *Saahir v. Collins*, 956 F.2d 115, 118−19 (5th Cir. 1992)[18]    Thus, Petitioner has not

---

[18] As the Ninth Circuit and many other courts have observed, ineffective assistance of counsel in collateral proceedings does not constitute cause for a procedural default because "the right to counsel does not extend to state collateral proceedings or federal habeas proceedings." *Martinez−Villareal*, 80 F.3d at 1306; *see also Armstrong v. Iowa*, 418 F.3d 924, 927 (8th Cir. 2005); *Thomas v. Gibson*, 218 F.3d 1213, 1222 (10th Cir. 2000); *Weeks v. Angelone*, 176 F.3d 249, 272−73 (4th Cir. 1999); *Nevius v. Sumner*, 105

(continued ...)

established "cause and prejudice" for his procedural defaults.  *See Murray*, 477 U.S. at 488; *see also Hughes*, 800 F.2d at 907−08.

Likewise, Petitioner has not established that a "fundamental miscarriage of justice" occurred.  *See Sawyer*, 505 U.S. at 339.  In fact, Petitioner does not deny that he committed any of the offenses at issue here, and does not suggest that a reasonable jury could have failed to find him guilty of the offenses.  *See Schlup*, 513 U.S. at 327.  For the foregoing reasons, Petitioner's procedural defaults cannot be excused.

## V.   GROUNDS II AND III ARE NOT COGNIZABLE IN FEDERAL HABEAS

Grounds II and III of the instant Petition should be dismissed with prejudice because they are state law claims, and thus not cognizable in this federal habeas corpus proceeding.

### GROUND II:   *BLAKELY* CLAIM BASED ON IMPROPER APPLICATION OF A.R.S. § 13−604.01

In Ground II, Petitioner argues that "the trial court [properly] ruled that A.R.S. §13−604.01 did not apply to [his] case, so there was no grounds for imposing an aggravated sentence of 10 years," and "Blakely should apply to [his] sentence."  (Dkt. 1 at 7; Dkt. 1−3 at 4.)  As indicated by the briefing attached to Petitioner's federal Petition, this single claim implicates two separate arguments: (1) "the allegation pursuant to §13−604.01[, which the Court of Appeals held was proper,] must be dismissed" "because personal possession of visual material is not an offense 'committed against a minor'" (Dkt. 1−3 at 1 ("The Arizona Court of Appeals overruled the Arizona Supreme Court . . . [b]y overturning Judge

_____
( ... continued)
F.3d 453, 459 (9th Cir. 1996) (citing *Coleman*, 501 U.S. at 755−57); *Hill v. Jones*, 81 F.3d 1015, 1024−26 (11th Cir 1996).  Thus, by extension, a defendant's *pro per* status cannot possibly constitute cause.

1 Borowiec's ruling")); and (2) "the aggravated sentences imposed by the trial court
2 violate [Petitioner's] Sixth Amendment right under *Blakely*" (Dkt. 1−3 at 16.)

3      The first part of Petitioner's argument — that the Arizona Court of Appeals
4 erred "[b]y overturning Judge Borowiec's ruling of August 24, 1999, . . . that
5 A.R.S. [§] 13−604.01 did not apply to possession under [A.R.S. §]
6 13−3553(A)(2)" (*see* Dkt. 1−3 at 1−4) does not implicate Petitioner's federal or
7 constitutional rights as specified in involved in *Blakely* and is an issue of state law
8 not cognizable in this federal habeas proceeding. Thus, to the extent Petitioner is
9 requesting relief based on the Arizona Court of Appeals' determination that his
10 sentence did not violate *Blakely*, because Petitioner should have been sentenced
11 under section 604.01 and did not receive a sentence in excess of section 604.01's
12 statutory maximum term of 17 years, Ground II is not cognizable on federal habeas
13 review and should not be reviewed by this Court. *Lewis v. Jeffers*, 497 U.S. 764,
14 780 (1990) (holding that, "Federal habeas corpus relief does not lie for errors of
15 state law."); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *see also*
16 *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("Federal courts entertaining
17 petitions for writs of habeas corpus are bound by the construction placed on a
18 State's criminal statutes by the courts of that State").

19      However, in the event this Court construes Ground II to encompass an
20 argument that Petitioner's sentence for sexual exploitation of a minor based on
21 possession of pornographic videotapes was improperly enhanced by aggravating
22 factors not found by the jury and not admitted by Petitioner, and thus his sentence
23 violates *Blakely*, Respondents address the merits of Ground II, *infra* at Part VI.

24      **GROUND III: STATUTE OF LIMITATIONS CLAIM**

25      In Ground III, Petitioner argues that the trial court erred by "ruling that the
26 acts depicted on the tapes were barred by the statute of limitations, but refused to
27 grant the same ruling on the completed act of possession or to allow the issue to be
28 argued based on the same law." (Dkt. 1 at 8.) Ground III does not present a

federal claim cognizable in the instant habeas proceeding because a state court's alleged failure to properly apply a *state* statute of limitations does not violate due process or, indeed, any provision of the federal Constitution or a federal statute.

Petitioner raised Ground III in the following pleadings: (1) Motion to Vacate filed on November 5, 1999 (Ex. T at 164−67), (2) First Petition for PCR (Exs. CC at 255−56; II at 268−71), (3) Second Petition for PCR (Ex. LL at 289−92), (4) direct appeal opening and reply briefs (Exs. WW at 396−98; XX at 426−28), (5) Petition for Review by the Court of Appeals (Ex. SS 349−55), (6) Motion for Reconsideration by the Court of Appeals (Ex. BBB at 456−62), and (7) Petition for Review by the Arizona Supreme Court (Ex. DDD at 471−74.) However, none of these pleadings cited any *federal* law to support Petitioner's claim that the trial court lacked jurisdiction to try him for the relevant crimes because Arizona's state statute of limitations had expired.[19] In his Motion to Vacate and his First and Second Petitions for PCR, Petitioner relied solely on his argument that, pursuant to A.R.S. §13−107(B), Arizona's statute of limitations was triggered in 1989 because, if the State had exercised reasonable diligence, it would have discovered Petitioner's possession of child pornography in 1989. (Exs. T at 162; CC at 255−56; II at 268−71; LL at 289−92.) In his direct appeal, Petitions for Review and Motion for Reconsideration, Petitioner consistently claimed that the trial court had misinterpreted, misconstrued, and misapplied Arizona's *state* statute of limitations (A.R.S. §13−107). (*See* Exs. WW at 396−98; XX at 426−28; SS at 351−55; BBB at 456−62; DDD at 471−74.)

_____

[19] Petitioner cited federal law in his Petitions for Review and Motion for Reconsideration, but only to explain the purpose of statute of limitations and only in the context of federal courts' interpretation of *federal* statutes of limitations. (Exs. SS at 349−51; BBB at 457−59; DDD at 474.)

The reason Petitioner never relied on federal law to support his statute of limitations claim is because the Arizona courts' construction, interpretation and application of Arizona's *state* statute of limitations does not present a constitutional or federal issue, and thus is not cognizable in the instant proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67−68 (1991) (violations of state law and procedure which do not infringe on specific federal constitutional protections are not cognizable claims under §2254); *Bonin v. Calderon*, 77 F.3d 1155, 1161 (9th Cir. 1996) (federal habeas relief does not lie for errors of state law unless error amounts to deprivation of petitioner's federal constitutional rights); *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved"). Because a state court's failure to properly interpret or apply a *state* statute of limitations does not violate due process or any other provision of the United States Constitution or a federal statute, such claim does not provide a basis for granting a federal writ of habeas corpus. *See Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000); *Wilson v. Mitchell*, 250 F.3d 388, 396−97 (6th Cir. 2001); *Humphrey v. Cain*, 120 F.3d 526, 534 (5th Cir. 1997). Thus, Ground III of the instant Petition should be dismissed with prejudice as not cognizable in this federal habeas proceeding.

. . . .

. . . .

. . . .

## VI. MERITS DISCUSSION OF GROUND II[20]

### A. AEDPA STANDARD OF REVIEW

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412−13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court . . . ." *Robinson v. Ignacio*, 360 F.3d 1044,1055 (9th Cir. 2004).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Taylor*, 529 U.S. at 405−06. "A state court' decision can involve an 'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule but then applies it

---

[20] Respondents believe that each of Petitioner's claims is either precluded or not cognizable in this federal habeas proceeding. *See* Parts IV, V. Given that Ground II has already been explained, Respondents elect to address this claim on the merits, even though this Court ordered an answer on only affirmative defenses. *See* Dkt. 5. Respondents respectfully request notice and an opportunity to respond to Petitioner's remaining claims on the merits, in the event this Court finds any other claims not precluded or cognizable in this federal habeas proceeding.

to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002).

## B.   APPLICATION

In *Blakely*, the Supreme Court applied the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." The Court explained in *Blakely* that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (citations omitted) (emphasis in original).   Thus, a judge may not impose a sentence in excess of what the jury's factual findings or the defendant's own admissions allow. *See id.*

Petitioner raised a *Blakely* claim in his opening brief on appeal by arguing that "[t]he aggravated sentence imposed by the trial court violated the Sixth Amendment." (Ex. WW at 391−95.)  In the only reasoned decision on this issue in the state court, the Arizona Court of Appeals found that *Blakely* relief was not warranted because the trial court erred by failing to sentence Petitioner pursuant to Arizona's "dangerous crimes against children" statute, A.R.S. §13−604.01.   The Court of Appeals determined that Petitioner should have been sentenced under Arizona's "dangerous crimes against children" statute, A.R.S. §13−604.01, *not* because that statute *designated* sexual exploitation of a minor based on possession of pornographic videotapes a "dangerous crime against children," but, instead, because A.R.S. § 13−3553(C) specifically requires any person found guilty of sexual exploitation of a minor based on knowing possession of any visual

depition of a minor "engaged in exploitive exhibition or other sexual conduct" shall be punished pursuant to A.R.S. §13−604.01 "if the minor is under fifteen years of age." (Ex. ZZ at 438−39.) The Court of Appeals explained its rationale as follows:

> [Petitioner] was found guilty of violating A.R.S. § 13−3553(A)(2) and sentenced to [two] consecutive, aggravated, ten−year prison terms [for possession of the pornographic videotapes]. The State proved [Petitioner] had one prior felony conviction after his second trial, making the [ten concurrent] 9.25−year prison terms he received [for possession of the pornographic photographs] presumptive sentences under A.R.S. §13−604(B). Because *Blakely* is not implicated when a defendant receives presumptive sentences, we address only [Petitioner's] aggravated sentences. *See State v. Johnson*, 210 Ariz. 438, 111 P.3d 1038 ) (App. 2005).[21]
>
> Section 13−3553(C) provides, as it did when [Petitioner] committed these crimes, that a person convicted under it be sentenced pursuant to A.R.S. § 13−604.01 if the minor is "under fifteen years of age," [which would have resulted in a maximum statutory term for the videotape−based offenses of seventeen years]. *See* 1996 Ariz.Sess.Laws, ch. 112, § 3. Neither [Petitioner] nor the State has mentioned that, at trial, the jury was given a stipulation that the victim, J., had been between the ages of ten and twelve at the time the videotapes were made. Former §13−604.01(C), now (D), set the presumptive sentence at seventeen years for an adult with no predicate felony convictions, [because Petitioner's offenses were completed offenses instead of prepatory, and thus were dangerous crimes against children "in the first degree," *see* former A.R.S. § 13−604.01(K)(1), 1997 Ariz.Sess.Laws, ch. 179, §1]. Because [Petitioner] stipulated to J.'s age, and the jury was instructed that the stipulation was binding, it could not have found that J. was fifteen years or older, which would have removed [Petitioner] from the dangerous crimes against children statute. *See* A.R.S. § 13−3553(B); 1996 Ariz.Sess.Laws, ch. 112, §3; *see also Boynton v. Anderson*, 205 Ariz. 45, 66 P.3d 88 (App. 2003) (a crime may be punishable under §13−604.01 without being

---

[21] Petitioner does not challenge the ten concurrent 9.25−year prison terms he received for possession of pornographic photographs. *See* Dkt. 1−3 at 13−15.

designated a dangerous crime against children if certain enumerated circumstances exist). Thus, the statutory maximum sentence [Petitioner] could have received was seventeen years. *See* former A.R.S. § 13−604.01(C); 1997 Ariz.Sess.Laws, ch. 179, §1. But, because the trial court determined, contrary to the plain language of former §13−3553(B), that the offenses were not [designated] dangerous crimes against children, it sentenced [Petitioner] to ten−year terms, [which the State appealed but failed to brief]. Thus, the error that occurred in [Petitioner's] sentences was in his favor and does not warrant *Blakely* relief. *See Johnson*; *Miranda−Cabrera*.

(Ex. ZZ at 438−39.)

Petitioner has made no showing that the Arizona Court of Appeals' determination was contrary to or an unreasonable application of *Blakely*, or that it was based on an unreasonable determination of the facts. Thus, federal habeas relief on Ground II must be denied.

First, Petitioner has failed to demonstrate that the Arizona Court of Appeals' determination was contrary to or an unreasonable application of *Blakely* because that court determined that Petitioner had not been sentenced in excess of section 604.01's statutory maximum term of seventeen years. Instead, the trial court's error in not applying section 604.01 resulted in a windfall to Petitioner because, if he had been properly sentenced under then−section 604.01(C), he would have received a presumptive term of seventeen years on each count, rather than ten years on each count, which he received. (Ex. ZZ 438−39.) Because the Arizona appeals court determined that Petitioner was not sentenced in excess of the statutory maximum of then−section 604.01(C), the court's conclusion was *not* contrary to or an unreasonable application of *Blakely*. *See Blakely*, 542 U.S. at 490 (holding, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.").

1   Similary, Petitioner has not shown that the Court of Appeals' decision was

2   based on an unreasonable determination of the facts.  Petitioner argues that the

3   Court of Appeals erroneously determined that he should have been sentenced

4   under section 604.01 because "[f]or purposes of imposing these enhanced

5   sanctions, a 'dangerous crime against children' is defined as any one of fifteen

6   enumerated crimes or prepatory offenses, including sexual exploitation of a minor,

7   but only if 'committed against' a minor under fifteen years of age."[22]  (Dkt. 1−3

8   at 1−2.)  Petitioner's argument fails because, as the Arizona Court of Appeals

9   noted, a crime may be punishable under the sentencing scheme set forth in section

10  604.01 without being designated a dangerous crime against children if certain

11  enumerated circumstances exist.  (*See* Ex.ZZ at 439, citing *Boynton v. Anderson*,

12  66 P.3d at 92, ¶15 (holding that luring a minor for sexual exploitation, though not a

13  dangerous crime against children for purposes of statute providing enhanced

14  penalties for such crimes, is nonetheless punishable under that sentencing scheme

15  based on provision making enhanced penalties applicable to dangerous crimes

16  against children "or" luring a minor for sexual exploitation)).  One such

17  circumstance occurs when a defendant is convicted of sexual exploitation of a

18  minor based on possession of a visual depiction of a minor "engaged in exploitive

19  exhibition or other sexual conduct" *and* the minor involved is "under fifteen years

20  of age."  *See* A.R.S. §13−3553(C) (1996).  Because Petitioner *stipulated* that J.B.,

21  the minor at issue in both videotapes, was under the age of fifteen at the time she

22  was filmed (*see* Ex. L), the Arizona Court of Appeals correctly determined that

23  section 13−3553(C) required Petitioner to be sentenced pursuant to section 604.01.

24

25

26

_____

27  [22] As noted in Part V, *supra*, this is a pure issue of state law, not cognizable in the instant
    federal habeas proceeding.

28

1    Thus, the Arizona appellate court's decision was not based on an unreasonable
2    determination of the facts.

3        Petitioner is not entitled to habeas relief on Ground II.  Thus, this claim
4    should be denied and dismissed with prejudice.

5    **VII.   CONCLUSION.**

6        Based on the foregoing authorities and arguments, Respondents respectfully
7    request that the Petition for Writ of Habeas Corpus be denied and dismissed with
8    prejudice.

9        RESPECTFULLY SUBMITTED this 4th day of February, 2008.

10                                TERRY GODDARD
11                                ATTORNEY GENERAL

12

13                                s/ DEBORAH A. BIGBEE
                                  ASSISTANT ATTORNEY GENERAL
14                                CAPITAL LITIGATION SECTION

15                                ATTORNEYS FOR RESPONDENTS

16

17

18

19

20

21

22

23

24

25

26

27

28

I hereby certify that on this 4th day of February, 2008, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing.

s/_____
DEBORAH A. BIGBEE
*************

A copy of the foregoing was deposited for mailing
this 4th day of February, 2008, to:


EARL BALL, #153335
Florence/South Unit
P.O. Box 8400
Florence, Arizona 85232


Petitioner, *Pro Se*

s/_____
Liz Gallagher


CRM99–1557
132955

# LIST OF EXHIBITS

Exhibit A.   Reporter's Transcript of Proceedings held August 18, 1999

Exhibit B.   Indictment in Case No. 98−0296, filed June 19, 1998

Exhibit C.   Indictment in Case No. 98−0345, filed July 24, 1998

Exhibit D.   Minute Order, dated January 4, 1999

Exhibit E.   Minute Orders, dated September 30, 1998, October 16, 1998, April 9, 1999, and April 26, 1999; Indictments in Case No. 98−0296 filed October 16, 1998 and April 2, 1999; Court of Appeals Order dated February 11, 1999

Exhibit F.   Defendant's Third Motion to Remand for Redetermination of Probable Cause, filed May 13, 1999

Exhibit G.   Response to Defendant's Third Motion to Remand for Redetermination of Probable Cause, filed May 24, 1999

Exhibit H.   Reporter's Transcript of Proceedings held August 12, 1999

Exhibit I.   Minute Order dated August 13, 1999

Exhibit J.   Docket Sheet

Exhibit K.   Motion to Continue Trial filed August 11, 1999

Exhibit L.   Reporter's Transcript of Reading of Indictment and Opening Statements, dated August 18, 1999 and Reporter's Transcript of Closing Arguments, dated August 20, 1999

Exhibit M.   Reporter's Transcript of Proceedings Held August 19, 1999

Exhibit N.   Reporter's Transcript of Proceedings Held August 23, 1999; Verdicts of Guilt filed August 23, 1999; Minute Order dated August 23, 1999

Exhibit O.   Minute Order dated August 24, 1999

Exhibit P.   Reporter's Transcript of Proceedings Held October 4, 1999 and Minute Orders dated October 4, 1999 and October 20, 1999

Exhibit Q.   Unpublished Memorandum Decision in 2CA−CR 1999−0480

Exhibit R.   Notice of Appeal filed October 21, 1999; Notice of Appeal filed
             October 25, 1999; Notice of Cross

Exhibit S.   Court of Appeals Order dated January 19, 2000

Exhibit T.   Motion to Vacate Judgment filed November 5, 1999

Exhibit U.   Opposition to Motion to Dismiss

Exhibit V.   Minute Entries dated November 23, 1999 and November 24, 1999.

Exhibit W.   Reporter's Transcript of Proceedings Held December 10, 1999

Exhibit X.   Minute Entry, dated December 15, 1999

Exhibit Y.   Minute Order, dated January 3, 2000 and Defendant's *pro se* Motion
             to Waive Counsel, dated July 25, 2000

Exhibit Z.   Reporter's Transcript of Proceedings Held October 16, 2000

Exhibit AA. Notice of Appeal, filed October 25, 2000; Notice of Appeal, filed
             November 1, 2000

Exhibit BB. Notice of Post−Conviction Relief, dated January 4, 2000

Exhibit CC. Notice For Post−Convicted Relief and Petition for Post−Conviction
             Relief, dated February 28, 2000

Exhibit DD. Response to Petition for Post−Conviction Relief, filed March 3, 2000

Exhibit EE.  Minute Order, dated March 29, 2000

Exhibit FF.  Court of Appeals Order, dated July 11, 2000

Exhibit GG. Response to Petition for Post−Conviction Relief, filed April 12, 2000

Exhibit HH. Motion for Extension of Time for Filing Amended Petition for
             Post−Conviction Relief, filed May 3, 2000

Exhibit II.  *Pro se* Supplement of Law to Petition for Post−Conviction Relief,
             dated June 20, 2000

Exhibit JJ.  Motion to Strike, filed June 29, 2000

Exhibit KK. Response to State's Motion to Strike

Exhibit LL.  *Pro Se* Motion for Evidentiary Hearing and Petition for
              Post−Conviction Relief, dated December 12, 2000

Exhibit MM.        *Pro Se* Motion to Revisit Motion to Vacate Judgment, dated
                    January 26, 2001

Exhibit NN. Opposition to Motion to Revisit Motion to Vacate Judgment, filed
              February 1, 2001

Exhibit OO. Minute Order, dated June 4, 2001

Exhibit PP.  Response to Petition for Post−Conviction Relief, filed February 13,
              2001

Exhibit QQ. *Pro Se* Response to State's Response to Petition for Post−Conviction
              Relief, dated February 20, 2001

Exhibit RR.  Minute Order, dated June 4, 2001

Exhibit SS.  *Pro Se* Petition for Review by Court of Appeals, dated July 3, 2001

Exhibit TT.  *Pro Se* Supplement to Petition for Review by Court of Appeals, dated
              July 5, 2001

Exhibit UU. Order for Appointment of Counsel, filed November 29, 2000

Exhibit VV. Notice Re:  Appointment of Counsel, dated March 13, 2002

Exhibit WW.        Appellant's Supplemental Opening Brief, filed May 2, 2005

Exhibit XX. Reply Brief of Appellant, filed September 26, 2005

Exhibit YY. Court of Appeals Order, filed July 24, 2001

Exhibit ZZ.  Unpublished Memorandum Decision in 2 CA−CR 1999−0481 and 2
              CA−CR 2001−0279−PR, filed August 31, 2006

Exhibit AAA.        Court of Appeals Order, dated October 5, 2006

Exhibit BBB.        *Pro Se* Motion for Reconsideration, dated November 28, 2006

Exhibit CCC.        Court of Appeals Order, dated December 13, 2006

Exhibit DDD.        *Pro Se* Petition for Review by the Arizona Supreme Court,
                     dated January 12, 2007

| | |
|---|---|
| 1 | Exhibit EEE.  Arizona Supreme Court Order, dated June 25, 2007 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |