Cygnus Systems, Inc. v. Microsoft Corporation, et al                    Doc. 57 Att. 1

# EXHIBIT N

Dockets.Justia.com

1   IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2   IN AND FOR THE COUNTY OF COCHISE

3

4   STATE OF ARIZONA,
          Plaintiff,

5   vs.                                  CR98000296
                                         CR98000345
6   EARL BALL,
          Defendant.

7

8

9   REPORTER'S TRANSCRIPT OF PROCEEDINGS
          August 23, 1999

10

11

12

13  APPEARANCES:        MR. DAVID FLANNIGAN
                        Deputy County Attorney
14                      For the State

15                      MR. MARK SUAGEE
                        Public Defender
16                      MS. DONNA BECHMAN
                        Deputy Public Defender
17                      For the Defendant

18

19                              COPY

20

21  BEFORE:  THE HONORABLE MATTHEW W. BOROWIEC

22

23                      Merle Rhodes Briefer
                        Court Reporter, Division One
24                      Cochise County Superior Court
                        Drawer CT, Bisbee, Arizona
25                      520-432-9332

1    THE BAILIFF:   Thank you.

2    THE COURT:    So am I correct that you have arrived at a
3    verdict on two counts?

4    THE FOREMAN:    That's correct.

5    THE COURT:    Then they read as follows, omitting the
6    formal parts:

7        We the jury, duly impaneled and sworn in the above-
8    entitled action, upon our oaths, do find the defendant, Earl Ball,
9    guilty of committing sexual exploitation of a minor by knowingly
10   possessing in a travel trailer next to his main residence on
11   Highway 191 near Sunsites, Arizona, a videotape in which a minor
12   is engaged in exploitive exhibition or other sexual conduct, on or
13   about the 2nd day of June, 1998.

14       And we the jury, duly impaneled and sworn in the
15   above-entitled action, upon our oaths, do find the defendant, Earl
16   Ball, guilty of committing sexual exploitation of a minor by
17   knowingly possessing a videotape, to wit:  Item 9502-11A, in
18   which a minor is engaged in exploitive exhibition or other sexual
19   conduct on or about the 2nd day of June, 1998.

20       Either counsel wish to have the jury polled?

21   MR. SUAGEE:   Yes, Your Honor.

22   THE COURT:    The clerk will poll the jury on those two
23   questions.

24

25       (Whereupon, the clerk polled the jury

1  and received an affirmative response from each juror

2  that the verdicts read were in fact, their verdicts.)

3

4  THE COURT:  All right.

5  By reason of the verdict, it is ordered that the

6  defendant is remanded on these two counts to the custody of the

7  sheriff pending sentencing, which is set for Monday, the 20th day

8  of September, 1999, at 10:00 a.m. in Division One of this court.

9  Ordered there be a presentence investigation and

10  report.

11  I want to thank you very much for your work.  You

12  have been with us for a few days.

13  Obviously, you had some problems with some of the

14  counts — in case number CR98000345, Counts II through XVI.

15  With regard to those counts, it is ordered there is a

16  mistrial as to those 15 counts.

17  And are all of you — this is kind of an unusual case.

18  Are all of you okay?

19  In that sense, what I'm asking is can you return to

20  work tomorrow and of course, having been engaged in this for the

21  last few days and most of last week, do you think your

22  adjustment back to work and back to your regular life would be

23  okay, or do any of you feel you would need some counseling?

24  You are all okay?

25  If you feel you need some counseling, would you call 

## SUPERIOR COURT OF ARIZONA, COUNTY OF COCHISE

Case No: CR98000296 **VERDICT**

STATE OF ARIZONA, Plaintiff, vs. EARL BALL, Defendant.

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, GUILTY of committing sexual exploitation of a minor by knowingly possessing, in a travel trailer next to his main residence on Highway 191 near Sunsites, AZ, a videotape in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

**FILED**

Time_____ /s/

AUG 2 3 1999

DENISE LUNDIN
CLERK SUPERIOR COURT
BY_____ DEPUTY

_____
FOREMAN

## SUPERIOR COURT OF ARIZONA, COUNTY OF COCHISE

Case No: CR98000345 **VERDICT**

STATE OF ARIZONA, Plaintiff, vs. EARL BALL, Defendant.

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, GUILTY of committing sexual exploitation of a minor by knowingly possessing a videotape, to wit: item #9502-11A, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.



Time _____ **FILED**

AUG 2 3 1999 _____ M

DENISE I. LUNDIN
CLERK SUPERIOR COURT
BY _____ DEPUTY

_____

**FOREMAN**

OFFICE DISTRIBUTION
| | APPEALS
| | BOND: REFUND/FORFEITURE
| | FINES/ATTY. FEES/RESTITUTION
| | CHANGE OF VENUE
| | JURY FEES
| | ATTORNEY: APPT & CLAIMS
| | SUPPORT
| | PROBATION
| | MAILED

# SUPERIOR COURT OF ARIZONA
## COUNTY OF COCHISE

### Date August 23, 1999

**FILED**

Time_____ M

SEP 7 1999

DENISE L LUNDIN
CLERK SUPERIOR COURT
BY_____ DEPUTY

9-9-99

CASE:    **STATE OF ARIZONA**    vs.    **EARL BALL**

MINUTE ENTRY ACTION:    **EVENT CODE 910 JURY TRIAL (DELIBERATIONS)**
CASE NO: **CR98000296 MAIN CASE (CR98000345)**

JUDGE **HONORABLE MATTHEW W. BOROWIEC**
DIVISION **One**
COURT REPORTER **Merle R. Briefer**
ADDRESS & PHONE

DENISE I. LUNDIN, CLERK

By **Stephanie L. Williams 8-30-99**, Deputy
Docketed by _____

PRESENT:    State present by David P. Flannigan, Deputy County Attorney
Defendant present in person and by Mark A. Suagee, Public Defender, and Donna M. Bechman,
Deputy Public Defender

The jury returned to the jury room at approximately 9:00 a.m. and resumed deliberations.

    *        *        *        *        *        *        *

A question from the jury was marked as court's exhibit M.

The video tape of Earl Ball's interview was given to the jury to view

    *        *        *        *        *        *        *

The following proceedings commenced in court's chambers at 10:32 a.m. with the presence of Mr.

Flannigan, Mr. Suagee, Ms. Bechman and Patrick D. Cash, Foreman. The defendant is not present.

The court addressed Mr. Cash with regard to the information on his jury slip that he has a felony

conviction.

Mr. Cash acknowledged the court that his felony conviction was in 1991 for aggravated assault. Mr.

Cash acknowledged to the court that his civil rights have been restored and he does vote.

Mr. Flannigan examined Mr. Cash.

Mr. Cash acknowledged to the court that he was on probation for 18 months.

The court directed that Mr. Cash return to the jury room and resume deliberations.

The court advised counsel that Mr. Cash is not disabled.

Proceedings terminated at 10:35 a.m.

\*          \*          \*          \*          \*          \*          \*

The jury went to lunch escorted by the bailiffs at approximately 12:00 p.m.

\*          \*          \*          \*          \*          \*          \*

The following proceedings commenced in court's chambers at 1:04 p.m. with the presence of Mr. Flannigan, Mr. Suagee, Ms. Bechman and the defendant.

THE RECORD MAY SHOW the issue raised previously as to Mr. Cash's felony conviction has been satisfied. Pursuant to A.R.S. Section 13-912 there was an automatic restoration of Mr. Cash's rights as it was a first offense and the state is not pursuing the issue further.

Mr. Flannigan advised the court that Mr. Cash had another conviction after that but the same was designated a misdemeanor.

The court advised counsel that he will allow the jury to continue deliberating through tomorrow due to the seventeen counts.

If counsel wish to have the court make inquiry of the jury before 5:00 p.m. this date they shall notify the court and request the same by 4:30 p.m. this date.

Proceedings terminated.

\*          \*          \*          \*          \*          \*          \*

The jury returned from lunch and resumed deliberations at approximately 1:15 p.m.

\*          \*          \*          \*          \*          \*          \*

A note from the jury was marked as court's exhibit N.

Court reconvened at 4:21 p.m. with the presence of Mr. Flannigan, Mr. Suagee, Ms. Bechman, the defendant and the jury seated in the jury box.

The court addressed the Foreman, Mr. Cash, with regard to the note from the jury stating that they cannot reach a decision on all counts.

Mr. Cash acknowledged to the court that the jury has reached a decision on some of the counts. (12)

The jury acknowledged that further deliberations would not result in verdicts.

In response to inquiry by the court, the jury acknowledged through their Foreman that they have

agreed upon two verdicts. The verdicts so agreed upon were received and read by the court:

### (OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above-entitled action, upon our oaths do find the
defendant EARL BALL, GUILTY of committing sexual exploitation of a minor by knowingly possessing, in
a travel trailer next to his main residence on Highway 191 near Sunsites, AZ, a videotape in which a minor
is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/s/ Patrick D. Cash
Foreman.

### (OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above-entitled action, upon our oaths do find the
defendant EARL BALL, GUILTY of committing sexual exploitation of a minor by knowingly possessing a
videotape, to wit: item #9502-11A, in which a minor is engaged in exploitive exhibition or other sexual
conduct, on or about the 2nd day of June, 1998.

/s/ Patrick D. Cash
Foreman.

At the request of Mr. Suagee, the clerk polled the jury and received an affirmative response from

each juror that the verdicts read were in fact their verdicts.

By reason of the verdicts, it is

ORDERED remanding the defendant to the custody of the Cochise County Sheriff pending sentencing

as to the two counts referenced above.

It is further ORDERED setting this matter for entry of judgment of guilt and sentencing on

MONDAY, SEPTEMBER 20, 1999, at 10:30 a.m. in Division One of this court.

It is further ORDERED a pre-sentence investigation and report shall be made by the probation

department.

The court thanked the jury for their service.

(122)

It is ORDERED the court declares a mistrial as to Counts II-XVI in the indictment in CR98000345.

Upon inquiry from the court, the jury acknowledged to the court that they do not need a debriefing in this matter.

The court directed the jurors to notify his office if they feel they need some counseling.

The court released the jurors from the admonition.

The court directed the alternates be notified of the verdicts and that they are released from the admonition.

A ruling will need to be made as to whether the crimes are dangerous crimes against children.

Court adjourned at 4:28 p.m.

xc: County Attorney--Flannigan
    Public Defender--Suagee/Beckman
    APO
    Cochise County Jail (certified)

123

# EXHIBIT O

**FILED**

Time_____M

AUG 2 5 1999

DENISE I. LUNDIN
CLERK SUPERIOR COURT
BY_____DEPUTY

## SUPERIOR COURT OF ARIZONA
### COUNTY OF COCHISE
### DATE: August 24, 1999

[ ] APPEALS
[ ] BONDS: REFUND/FORFEITURE
[ ] FINES/ATT'Y FEES/RESTITUTION
[ ] CHANGE OF VENUE
[ ] JURY FEES
[ ] ATTORNEY: APPT & CLAIMS
[ ] SUPPORT
[ ] DIVISION
[ ] SEALED

$8-26-99$

**CASE: STATE OF ARIZONA, Plaintiff, vs. EARL BALL, Defendant.**

**MINUTE ENTRY ACTION: DECISION ON DEFENDANT'S MOTION TO DISMISS ALLEGATION FILED PURSUANT TO A.R.S. § 13-604.01.**
**CASE NO: CR98000296 MAIN CASE (CR98000345)**

| | |
|---|---|
| JUDGE: HONORABLE MATTHEW W. BOROWIEC | DENISE I. LUNDIN, CLERK |
| DIVISION: ONE | By Stephanie L. Williams, Deputy, 08/24/99 |
| | Docketed by _____ |

---

IN CHAMBERS:

Defendant moved this court to dismiss allegations pursuant to A.R.S. § 13-604.01 in the various counts in the above numbered actions, relying on rulings in State v. Jansing, 186 Ariz. 63, 918 P.2d 1081 (App. 1996), and State v. Williams, 175 Ariz. 98, 854 P.2d 131 (1993). Both cases, interpreting legislative intent, make the point that the cited statute applies only to "crimes in which a child is the target of the criminal conduct."

Defendant argues as to the cases extant the defendant is charged with knowingly possessing videos and photographs only, implying there is no particular child the target of the criminal conduct, and therefore, no child victim.

The court notes that A.R.S. § 13-604.01.L.1.(g), lists "sexual exploitation of a minor" as one of the offenses within the definition of "dangerous crime against children." The court also notes that A.R.S. §§ 13-3552 and 13-3553 are the only statutes dealing with sexual exploitation of a minor, the former being a commercial sexual exploitation, which by its terms actually requires an interaction with a minor person. A.R.S. § 13-3553, likewise may by its terms require the involvement of a minor person in subsection A.1., thereof, but subsection A.2., deals only with . . . "distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual or print medium in which minors are engaged in exploitive exhibition or other sexual conduct."

The court finds that subsection A.2., of A.R.S. § 13-3553, does not relate to crimes in which a child is the target of the criminal conduct, said conduct being the knowing possession of pornographic material. By reason thereof, it is

**ORDERED**, defendant's motion is **GRANTED.**

---

Cc: County Attorney--Flannigan
Public Defender--Bechman/Suagee
APO

# EXHIBIT P

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCHISE

STATE OF ARIZONA,
    Plaintiff,

vs.
                CR98000296
                CR98000345
EARL BALL,
    Defendant.

REPORTER'S TRANSCRIPT OF PROCEEDINGS
October 4, 1999

APPEARANCES:      MR. DAVID FLANNIGAN
                    Deputy County Attorney
                    For the State

                    MR. MARK SUAGEE
                    Public Defender
                    MS. DONNA BECHMAN
                    Deputy Public Defender
                    For the Defendant

BEFORE:  THE HONORABLE MATTHEW W. BOROWIEC

Merle Rhodes Briefer
Court Reporter, Division One
Cochise County Superior Court
Drawer CT, Bisbee, Arizona
520-432-9332

1    under Taylor. The sentences should be concurrent for those two

2    offenses.

3         THE COURT:    Any legal cause why sentence should not be

4    imposed at this time?

5         MR. SUAGEE:  No, Your Honor.

6         THE COURT:    You are Earl Ball?

7         DEFENDANT BALL:  Yes, sir.

8         THE COURT:    Earl Ball, Sr., I guess?

9         MR. FLANNIGAN:    Judge, I think the defendant has the

10   right to address the court, and I don't know if M██ W█████████

11   wants to say anything.

12        THE COURT:    I think she did.

13        MR. SUAGEE:  Mr. Ball does not wish to speak.

14        THE COURT:    Do you have something you would like to

15   say in your own behalf?

16        DEFENDANT BALL:  No, Your Honor.

17        THE COURT:    You were convicted by a jury — let me see

18   if I can find out when these things happened.

19             In case CR98000296 and 98000345, you were convicted

20   in two counts; that is, that on the 1st day of April, 1998, you were

21   convicted of committing the crime of sexual exploitation of a

22   minor by knowingly possessing in a travel trailer next to your

23   main residence on Highway 191 near Sunsites, Arizona, a

24   videotape in which a minor is engaged in exploitive exhibition or

25   other sexual conduct on or about the 2nd day of June, 1998.

1    That's a class 2 felony.

2    You were also convicted of committing sexual

3    exploitation of a minor by knowingly possessing a videotape, to

4    wit: Item 9502-11A in which a minor is engaged in exploitive

5    exhibition or other sexual conduct on or about the 2nd day of

6    June, 1998, a class 2 felony.

7    And on July 15, 1999, you were convicted of the crime

8    of committing sexual conduct with a minor by knowingly engaging

9    in sexual intercourse or oral sexual contact with M█████

10   W████████, a person under 18 years of age, on or about the 1st

11   day of April, 1998.

12   That's a class 6 felony.

13   By reason of the verdicts in those three charges, it is

14   the judgment of this court that you are guilty of these crimes, and

15   the state has already made its recommendation.

16   Any legal cause why sentence should not be imposed

17   at this time?

18   MR. FLANNIGAN:   No.

19   MR. SUAGEE:   No.

20   THE COURT:   All right.

21   I have considered the circumstances presented to the

22   court, and there were more than these three charges in the two

23   trials that have been before this court, and one of the trials was

24   somewhat lengthy, and I have considered the — as I would

25   describe it, the unrepentive and abiding lifestyle of Mr. Ball, such

1  that his conduct was something in which he believed he was

2  entitled, and the manner in which he used women and children,

3  his habitual sexually abusive lifestyle, the psychological and

4  emotional harm to victims, his preying and influencing younger

5  persons to get involved in these sexual activities.

6  With regard to the charge in CR98000296, that is

7  sexual exploitation of a minor by knowingly possessing a

8  videotape in which a minor is engaged in exploitive exhibition or

9  other sexual conduct, a class 2 felony, the court finds that the

10  neither — excuse me — that the aggravating circumstances are

11  sufficiently substantial to call for a greater term than the

12  prescribed sentence and there are no sufficient mitigating

13  circumstances.

14  Likewise, with regard to the charge in CR98000345, for

15  the same reasons — that's the sexual exploitation of a minor by

16  knowingly possessing a videotape, a class 2 felony, the aggravated

17  circumstances are sufficiently substantial to call for a greater term

18  than the prescribed sentence, and there are no sufficient

19  mitigating circumstances; and likewise with regard to

20  CR99000131, committing sexual conduct with a minor, those in

21  violation of ARS section 13-1405(A), 13-1401, 13-701 and 13-801.

22  With regard to the charge in CR98000296, it is the

23  judgment and sentence of the court that the defendant be

24  imprisoned for the aggravated term of 10 years.

25  With regard to the charge in CR98000345, sexual     128

1    exploitation of a minor by knowingly possessing a videotape, it's

2    the judgment and sentence of the court that the defendant be

3    imprisoned for the aggravated term of 10 years.

4           And with regard to the sexual conduct with a minor, a

5    class 6 felony, the court finds that the aggravating circumstances

6    are sufficiently substantial to call for a greater term than that

7    prescribed, and there are no sufficient mitigating circumstances.

8           Defendant shall be imprisoned for the aggravated term

9    of one and a half years.

10          It is further ordered that the sentence imposed in

11    CR98000345 shall run consecutive to the sentence imposed in

12    CR98000296, and the sentence imposed in CR99000131 shall run

13    consecutive to the sentences imposed in CR98000296 and

14    98000345.

15          The record shows in the presentence report that the

16    defendant has been in custody for 460 days.

17          Is that for all three counts? Is that true?

18          MR. SUAGEE: Your Honor, I think it's 482 because we

19    had a two week continuance. That's the time period.

20          MR. FLANNIGAN: Judge, he was originally arrested on

21    296 and remains in custody on that. Thereafter he was charged

22    with 245 and thereafter with 131.

23          THE COURT: Say that again, counsel.

24          MR. FLANNIGAN: All right. Back in 1998, when he was

25    arrested in June of 1998, he was charged with 296.

1    Within a short time after that, he was charged with

2   98000345. It wasn't until this year, 1999, that he was charged

3   with 131.

4       THE COURT:   What are the credits to be attributed?

5       MR. FLANNIGAN:   The 482 days applies only to 296.

6       THE COURT:   All right. Let me check that out.

7       Wait a minute. How many days did you say?

8       MR. SUAGEE:   482.

9       THE COURT:   I have 421, counsel.

10      I'm sorry. That's June of 1998?

11      MR. SUAGEE:   Yes. We added the two weeks to the

12  period that the probation office came up with.

13      THE COURT:   482 days credit is given with regard to

14  CR98000296.

15      How much credit is there now with regard to

16  98000345?

17      MR. FLANNIGAN:   It's our position there is no credit since

18  these are running consecutively.

19      THE COURT:   He was incarcerated in any event.

20      MR. FLANNIGAN:   Yes.

21      THE COURT:   CR99000131, he was still incarcerated?

22      MR. FLANNIGAN:   Yes.

23      THE COURT:   That credit applies only to the first count.

24  No credit for the second count.

25      Further ordered that the defendant will serve, once   130

CCN.

99-155-7
Secctconneu

OFFICE DISTRIBUTION
| | APPEALS
| | BONDS: REFUND/FORFEITURE
|xx| FINES/ATTY. FEES/RESTITUTION
| | ATTORNEY: APPT & CLAIMS
|xx| COUNTY ATTY./David Flannigan
|xx| DEFENSE ATTY./Mark Suagee
|xx| ARIZONA DEPART OF CORRECTIONS
|xx| C.C.S.O.JAIL
|xx| ADULT PROBATION DEPARTMENT
| | MAILED
X

**SUPERIOR COURT OF ARIZONA**
COUNTY OF COCHISE

Date: **October 4, 1999**

FILED

99 OCT 13 PM 3: 20

MEEN

10-13-99

CASE: **STATE OF ARIZONA**, Plaintiff          VS.          **EARL BALL**, Defendant
Date of Birth: **01/16/39**

## SENTENCE OF IMPRISONMENT          CASE NO: **CR98000296/CR98000345**

JUDGE HONORABLE MATTHEW W. BOROWIEC
DIVISION **One**
COURT REPORTER **Merle R. Briefer**
ADDRESS & PHONE

DENISE I. LUNDIN, CLERK

By **Ginger O'Leary** (10/13/99), Deputy
Docketed by          MEED

**10:39 am**   The State is represented by Deputy County Attorney David Flannigan;
the Defendant is present with counsel, Mark Suagee, Public Defender, and
Donna Bechman, Deputy Public Defender

Let the record reflect that the Court has reviewed the Sentencing Memorandum submitted by the Defense.

Let the record further reflect that the Court has reviewed the Addendum which was submitted by the Adult Probation Officer.

Mr. Suagee presented a statement on behalf of the Defendant.

Mr. Flannigan presented the State's recommendations.

The Defendant is advised of the charge, the determination of guilt and is given the opportunity to speak.

Pursuant to A.R.S. Section 13-607, the Court finds as follows:

|XX| **JURY TRIAL** The determination of guilt was based upon verdicts of guilt dated August 23, 1999, after a jury trial.

See amendment dated 10/20/99
Re: page 4 Felony class + Count

No. **CR98000296/CR98000345**    STATE vs **EARL BALL**

Having found no legal cause to delay rendition of judgment and pronouncement of sentence, the Court enters the following judgment and sentence:

IT IS THE JUDGMENT OF THE COURT that the Defendant is guilty of the following crime, that upon due consideration of the facts, law and circumstances relevant here, the Court finds that suspension of sentence and a term of probation are not appropriate and that a sentence of imprisonment with the Department of Corrections is appropriate.

THE COURT FURTHER FINDS that there are circumstances sufficiently substantial to call for a **aggravated term** as indicated on the following page. These circumstances are stated by the Court on the record.

AS PUNISHMENT, **IT IS ORDERED** that the Defendant is sentenced to a term of imprisonment and is committed to the Arizona Department of Corrections as follows:

| One | October 4, 1999 | HONORABLE MATTHEW W. BOROWIEC | Ginger O'Leary |
|-----|-----------------|-------------------------------|----------------|
| Div | Date | Judge | Deputy |

No. **CR98000296/CR98000345**   STATE vs **EARL BALL**

OFFENSE:

Committed sexual exploitation of a minor by knowingly possessing, in a travel trailer next to his main residence on Highway 191 near Sunsites, AZ, a videotape in which a minor is engaged in exploitive exhibition or other sexual conduct.

FELONY CLASS:

Two (2), and Count I of the Indictment in CR98000296.

IN VIOLATION OF A.R.S. §:   **13-3553(A)(2), 13-3551, 13-701 and 13-801.**

DATE OF OFFENSE:   Committed on or about the 2nd day of June, 1998.

SENTENCE:

The Defendant shall be committed to the Arizona Department of Corrections for the term of ten (10) years.

| | | |
|---|---|---|
| | MITIGATED | | | PRESUMPTIVE    |XX| AGGRAVATED |
| |XX| NONDANGEROUS | | | DANGEROUS PURSUANT TO A.R.S. §13-604 |
| |XX| NONREPETITIVE | | | REPETITIVE PURSUANT TO A.R.S. §13-604 |
| | | NONDANGEROUS BUT VIOLATIVE OF A.R.S. §13-604.01(B) |
| | | DANGEROUS AND VIOLATIVE OF A.R.S.§13-604.01(A) |

This sentence is to date from this date, October 4, 1999. The Defendant is to be given credit for **four hundred and eighty two (482)** days served prior to sentencing.

**IT IS FURTHER ORDERED:** that the Defendant must serve 85% of the sentence imposed before he is eligible for any type of release.

**IT IS FURTHER ORDERED:** that pursuant to A.R.S.Section 13-603(I), the Defendant will be required to do mandatory community supervision sentence--one day for every seven days sentenced to.

133

No. CR98000296/CR98000345   STATE vs EARL BALL

OFFENSE:   Committed sexual exploitation of a minor by knowingly possessing a videotape, to wit: item #9502-11A, in which a minor is engaged in exploitive exhibition or other sexual conduct.

FELONY CLASS:   Two (2), and Count II of the Indictment in CR98000345.

IN VIOLATION OF A.R.S. §:   13-3553(A)(2), 13-3551, 13-701 and 13-801.

DATE OF OFFENSE:   Committed on or about the 2nd day of June, 1998.

SENTENCE:   The Defendant shall be committed to the Arizona Department of Corrections for the term of ten (10) years.

| | MITIGATED | | | PRESUMPTIVE | |XX| AGGRAVATED

|XX| NONDANGEROUS | | | DANGEROUS PURSUANT TO A.R.S. §13-604

|XX| NONREPETITIVE | | | REPETITIVE PURSUANT TO A.R.S. §13-604

| | NONDANGEROUS BUT VIOLATIVE OF A.R.S. §13-604.01(B)

| | DANGEROUS AND VIOLATIVE OF A.R.S. §13-604.01(A)

This sentence is to date from this date, October 4, 1999. The Defendant is to be given credit for zero (0) days served prior to sentencing.

　　　IT IS FURTHER ORDERED: that the Defendant must serve 85% of the sentence imposed before he is eligible for any type of release.

　　　IT IS FURTHER ORDERED: that pursuant to A.R.S. Section 13-603(I), the Defendant will be required to do mandatory community supervision sentence--one day for every seven days sentenced to.

　　　IT IS FURTHER ORDERED: that this sentence shall run consecutively with the sentencing imposed in Cochise County Cause Number CR98000345 (see preceding page).

No. **CR98000296/CR98000345** STATE vs **EARL BALL**

The Defendant was advised of his right to review this matter pursuant to post-conviction relief and written notice of those rights was provided to the Defendant.

**ORDERED: CONTINUING** the Defendant in the custody of the Sheriff of Cochise County until resolution of the Defendant's Motion for Retrial in CR98000296, and then **AUTHORIZING** the Sheriff to deliver the Defendant to the custody of the Arizona Department of Corrections and authorizing the Department of Corrections to carry out the term of imprisonment set forth herein.

**ORDERED** that the Clerk of the Superior Court shall remit to the Department of Corrections a copy of this Order, together with all pre-sentence reports, probation violation reports, medical and psychological reports relating to the Defendant and involving this cause.

Let the record reflect that the Defendant's fingerprint is permanently affixed to this sentencing order in open Court.

FILED: Notice of Rights of Review After Conviction, signed by the Defendant.

**11:02 a.m.** Hearing Concludes.

JUDGE OF THE SUPERIOR COURT

OFFICE DISTRIBUTION
[ ] APPEALS
[ ] BONDS: REFUND/FORFEITURE
[ ] FINES/ATTY. FEES/RESTITUTION
[ ] CHANGE OF VENUE
[ ] JURY FEES
[ ] ATTORNEY: APPT & CLERKS
[ ] SUPPORT
[ ] DIVISION

**SUPERIOR COURT OF ARIZONA**
COUNTY OF COCHISE

Date: **October 20, 1999**

FILED

99 OCT 20 PM 1: 44

CLERK _____ COURT
BY _____

10-20-99

CASE:            **STATE OF ARIZONA**, Plaintiff        -vs-        **EARL BALL**, Defendant

MINUTE ENTRY ACTION: **ORDER AMENDING SENTENCE OF IMPRISONMENT** CASE NO: **CR98000296/CR98000345**

JUDGE **HONORABLE MATTHEW W. BOROWIEC**
DIVISION **One**
COURT REPORTER
ADDRESS & PHONE

**DENISE I. LUNDIN, CLERK**

By **Ginger O'Leary, 10/20/99,** Deputy
Docketed by _____

PRESENT: ---------------------------------------------

**IT IS ORDERED: AMENDING** the Sentence of Impriosonment dated October 4, 1999, page 4,

to reflect the following:

FELONY CLASS:        Two (2), and **Count I** of the Indictment in CR980000345.

xc:        David Flannigan, Deputy County Attorney
           Mark Suagee, Public Defender
           Donna Bechman, Deputy Public Defender
           APO
           CCSO/Jail
           Arizona Department of Corrections



# EXHIBIT Q

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


FILED BY CLERK

APR 2 9 2004

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,       )
                            )       2 CA-CR 1999-0480
            Appellee,       )       DEPARTMENT A
                            )
        v.                  )       MEMORANDUM DECISION
                            )       Not for Publication
EARL BALL,                  )       Rule 111, Rules of
                            )       the Supreme Court
            Appellant.      )
_____)

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CR99000131

Honorable Matthew W. Borowiec, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
    By Randall M. Howe and John L. Saccoman                     Phoenix
                                                    Attorneys for Appellee

Harriette P. Levitt                                             Tucson
                                                    Attorney for Appellant
and

Gail Gianasi Natale                                            Phoenix
                                                    Attorney for Appellant

---

F L Ó R E Z, Judge.

¶1        Appellant Earl Ball was charged with two counts of sexual assault and one count of sexual conduct with a minor under the age of eighteen. A jury found him guilty only of the charge of sexual conduct with a minor. The trial court sentenced him to an aggravated prison term of 1.5 years, to be served consecutively to sentences imposed in two other cases. Ball raises two issues on appeal, neither of which we find meritorious.

¶2        We do not address Ball's argument that he was subjected to selective prosecution, which he erroneously refers to as vindictive prosecution,[1] because he did not raise the issue below. Therefore, Ball has waived the issue on appeal. *See State v. Bolton*, 182 Ariz. 290, 896 P.2d 830 (1995).

¶3        Ball next contends the trial court erred in imposing an aggravated sentence, arguing the court improperly relied on evidence related to the charges of which he was acquitted and there was no evidence his victim had suffered the psychological or emotional harm contemplated by A.R.S. § 13-702. We disagree. Ball was sentenced in this case at the same time as he was sentenced in two other cases, both for convictions of sexual exploitation of a minor. The trial court imposed aggravated sentences in all three based on the same aggravating circumstances. The court stated as follows:

---

[1] As the state points out, Ball has confused the terms. "'Prosecutorial vindictiveness' occurs when the government retaliates against a defendant for exercising a constitutional or statutory right." *State v. Brun*, 190 Ariz. 505, 506, 950 P.2d 164, 165 (App. 1997). On the other hand, "[t]o prevail on a claim of selective prosecution, . . . the accused must show: (1) other similarly situated people were not charged with the crime he is accused of; and (2) the decision to charge him with that crime was made based on an impermissible ground, like race or religion." *State v. Montano*, 204 Ariz. 413, ¶ 78, 65 P.3d 61, 76 (2003).

138

> I have considered the circumstances presented to the
> court, and there were more than these three charges in the two
> trials that have been before this court, and one of the trials was
> somewhat lengthy, and I have considered the—as I would
> describe it, the unrepentive [sic] and abiding lifestyle of Mr.
> Ball, such that his conduct was something in which he believed
> he was entitled, and the manner in which he used women and
> children, his habitual sexually abusive lifestyle, the
> psychological and emotional harm to victims, his preying [on]
> and influencing younger persons to get involved in these sexual
> activities.

¶4    Before a trial court may impose an aggravated sentence, it must find that

aggravating factors exist and that those factors outweigh any mitigating factors. § 13-702(B),

(D). A trial court has great discretion in sentencing, and we will not disturb its decision on

appeal absent an abuse of that discretion. *State v. Anderson*, 199 Ariz. 187, 16 P.3d 214

(App. 2000). In determining the appropriate sentence, a trial court "may consider all

information possible about the defendant's past conduct." *State v. Kelly*, 122 Ariz. 495, 498,

595 P.2d 1040, 1043 (App. 1979). The information a court may consider is "not necessarily

restricted to . . . only evidence admissible at trial." *Id.* So long as reasonable evidence

supports the aggravating factors found, we will affirm a trial court's imposition of an

aggravated sentence. *State v. Viramontes*, 204 Ariz. 360, 64 P.3d 188 (2003).

¶5    The trial court here heard evidence that Ball had enticed his son's seventeen-

year-old girlfriend to run away from home and travel to Nevada with him on the pretext his

son would travel with them. The court also heard evidence that Ball had repeatedly sexually

assaulted her in Nevada and then had brought her back to Arizona to live in his house with

139

his wife and children while he continued his sexual assaults. Moreover, the trial court presided at Ball's trial of two consolidated cases in which he was convicted of sexual exploitation of a minor by possessing videotapes that apparently depicted him engaging in sexual intercourse with a young girl. Ball was sentenced on those cases at the same time he was sentenced in this case.

¶6　　　　　Without elaboration, Ball asserts the trial court could not rely on the charges on which the jury acquitted him in the consolidated cases. But Ball was not acquitted of those charges. Those cases involved seventeen counts of sexual exploitation of a minor by possessing videotapes. Although the jury found Ball guilty of two counts, it did not acquit him on the other counts; the jurors were simply unable to reach a verdict on them. Moreover, the jury's inability to find Ball guilty beyond a reasonable doubt of those charges did not preclude the trial court from finding that sufficient reasonable evidence had been presented about Ball's abusive lifestyle to warrant imposition of an aggravated sentence. We find no error.

¶7　　　　　Nor did the court err in finding as an aggravating factor the psychological or emotional harm the victim had suffered. *See* § 13-702(C)(9). Ball is correct that the evidence at trial showed the victim had had emotional problems before she met him. But the court also considered a letter the victim wrote for sentencing in which she stated that she was emotionally unable to attend the sentencing hearing and had asked her parents to attend in her place. In that letter, she wrote: "I want to state here and now that I have always told the

4

truth, and I am telling the truth when I am telling the court that this is a vicious and dangerous person. Words cannot explain how my experience with this man has affected me emotionally." In addition, the record reflects the victim's mother made a statement on the date originally set for sentencing at which the court continued the sentencing hearing. Because the record contains no transcript of that hearing, we presume the mother's statement supports the trial court's finding that the emotional harm to the victim constituted an aggravating factor. *See State v. Brown*, 188 Ariz. 358, 936 P.2d 181 (App. 1997); *State v. Rivera*, 168 Ariz. 102, 811 P.2d 354 (App. 1990).

¶8        Having found no abuse of discretion in the trial court's imposition of an aggravated sentence, *see Anderson*, we affirm Ball's conviction and sentence.

M. JAN FLÓREZ, Judge

CONCURRING:

J. WILLIAM BRAMMER, JR., Presiding Judge

JOSEPH W. HOWARD, Judge

# EXHIBIT R

# SUPERIOR COURT
## COCHISE COUNTY, ARIZONA

FILED

99 OCT 21 PM 3:57

---

STATE OF ARIZONA,
                                    Plaintiff
        v.

.....EARL..BALL.........................................

.......................................................
                            Defendant(s).

No.   CR98000345

## NOTICE OF APPEAL
## FROM SUPERIOR COURT

*CR99-296*
*main*
*case*

---

NOTICE IS HEREBY GIVEN that .......EARL..BALL.......................................... appeals from the

☒ Following judgment[s] of guilt in the above entitled case: Sexual exploitation of a
   minor by possessing videotape with minor engaged in exploitive exhibition
☐ Following sentence[s] imposed in the above entitled case:

☐ Other:

entered in the superior court, .....................Cochise............................................................ county,

on .......October..4................, 19..99....

.....October..21,..1999.........................
Date

Defendant, attorney for the defendant,
or prosecutor

## ATTACHMENT

(1) The name and address of the defendant or defendants who appeal or against whom the
    state appeals:     Earl Ball, Cochise County Jail, Bisbee, AZ

(2) The name and address of the attorney for the defendant or defendants:
    Office of Cochise County Public Defender, P.O. Box 1818, Bisbee, AZ

(3) The name and address of any co-defendant at trial. (If the address is not known, so
    state):

(4) The defendant or defendants who appeal or against whom the state appeals were ☒
    were not ☐ represented by appointed counsel at the determination of guilt or at sen-
    tencing.

(147)

# SUPERIOR COURT

## COCHISE COUNTY, ARIZONA

FILED

99 OCT 21 PM 3:57

BILL ... COURT
No. CR98000296

STATE OF ARIZONA,

              Plaintiff

      v.

EARL BALL .................................................

................................................... Defendant(s),

**NOTICE OF APPEAL
FROM SUPERIOR COURT**

NOTICE IS HEREBY GIVEN that ...EARL BALL................................................... appeals from the

☒ Following judgment[s] of guilt in the above entitled case: Sexual exploitation of a minor by possessing a videotape with minor in exploitive exhibition
☐ Following sentence[s] imposed in the above entitled case:

☐ Other:

entered in the superior court, ...................................................,...Cochise............ county,

on ...........October 4........... , 19 99 ....

October...21, 1999..............................
Date

_Defendant, attorney for the defendant, or prosecutor_

## ATTACHMENT

(1) The name and address of the defendant or defendants who appeal or against whom the state appeals:   Earl Ball, Cochise County Jail, Bisbee, AZ

(2) The name and address of the attorney for the defendant or defendants:
  Office of Cochise County Public Defender, P.O. Box 1818, Bisbee, AZ

(3) The name and address of any co-defendant at trial. (If the address is not known, so state):

(4) The defendant or defendants who appeal or against whom the state appeals were ☒ were not ☐ represented by appointed counsel at the determination of guilt or at sentencing.

(143)

CHRIS M. ROLL
Cochise County Attorney
BY: DAVID P. FLANNIGAN
BAR NO. 007162
P.O. Drawer CA
Bisbee, Arizona 85603
(520) 432-9377
Attorney for the State

FILED

99 [?] [?]

[signature]

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCHISE

STATE OF ARIZONA )
                 )        NO. CR98000296
        Plaintiff, )
                 )
   vs.           )        NOTICE OF APPEAL FROM
                 )          SUPERIOR COURT
EARL BALL,       )
                 )
        Defendant. )
                 )
                 )

NOTICE IS HEREBY GIVEN that the State of Arizona appeals from the

( ) Following judgments(s) of guilt in the above entitled case:

(x) Following sentence(s) imposed in the above entitled case: See other, below.

(x) Other: 1) The trial court's designation of the charge in the Indictment as not being a offense involving dangerous crimes against children under A.R.S. §13-604.01.

2) The trial court's refusal to allow amendment of the Indictment to allege a prior conviction on 15 July 1999 for sexual conduct with a child, a class 6 felony, in Cochise County Criminal Case CR99000131 upon designating the charge in this case not to allege a dangerous crimes against children offense.

Entered in the Superior Court, Cochise County, on 4 October, 1999.

This appeal in whole is based upon violation of substantial right of the victim, J████

B██. The State certifies that the said victim has requested this appeal on that basis. Rule

- 1 -

144

1    31.2(d), Arizona Rules of Criminal Procedure; Rule 3(b) Superior Court Rules of Appellate

2    Procedure -Criminal.

3         The defendant against whom the State appeals was represented by appointed counsel

4    at the determination of guilt and at sentencing.

5

6    _25 OCTOBER 1999_          ~~Dan~~ P. Slannigan
           (DATE)              DAVID P. FLANNIGAN
7                              Deputy County Attorney

8

9         The name and address of the defendant or defendants who appeal or against whom the
     State appeals: Earl Ball, Cochise County Jail.
10        The name and address of the attorney for the defendant or defendants: Mark Suagee
     and Donna Beckman, P.O. Box 1818, Bisbee, Arizona 85603
11        The name and address of any codefendant at trial. None.
          Appellate Court: Arizona Court of Appeals, Division 2, State Office Complex, 400 W.
12   Congress, Tucson, Arizona 85701-1374

13
     Copies of the foregoing
14   mailed/delivered this 25th
     day of October, 1999, to:

15
     Hon. Matthew W. Borowiec
16   Judge of the Superior Court
     Division I

17
     Public Defender's Office
18   P.O. Box 1818
     Bisbee, Arizona 85603

19
     Earl Ball
20   C/o County Jail
     204 N. Judd
21   Bisbee, Arizona 85603

22

23

24

25

- 2

145

1

2  CHRIS M. ROLL
   Cochise County Attorney
   BY: DAVID P. FLANNIGAN

3  BAR NO. 007162
   P.O. Drawer CA

4  Bisbee, Arizona 85603
   (520) 432-9377

5  Attorney for the State

6

7  IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8  IN AND FOR THE COUNTY OF COCHISE

9  STATE OF ARIZONA         )  NO. CR98000345
                            )  CIR 98-296 main
10            Plaintiff,    )            case
                            )
11       vs.                )  NOTICE OF APPEAL FROM
                            )  SUPERIOR COURT
12  EARL BALL,              )
                            )
13            Defendant.    )
                            )
14  _____   )

15      NOTICE IS HEREBY GIVEN that the State of Arizona appeals from the

16      ( ) Following judgments(s) of guilt in the above entitled case:

17      (x) Following sentence(s) imposed in the above entitled case: See other, below.

18      (x) Other:  1) The trial court's designation of Count I of the indictment as not being a
        offense involving dangerous crimes against children under A.R.S. §13-604.01.

19

20      2) The trial court's refusal to allow amendment of the indictment to allege a prior
        conviction on 15 July 1999 for sexual conduct with a child, a class 6 felony, in Cochise

21      County Criminal Case CR99000131 upon designating the charge in this case not to
        allege a dangerous crimes against children offense.

22  Entered in the Superior Court, Cochise County, on 4 October, 1999.

23      This appeal in whole is based upon violation of substantial right of the victim, J▓▓▓

24  B▓. The State certifies that the said victim has requested this appeal on that basis. Rule

25

                                    - 1

146

1  31.2(d), Arizona Rules of Criminal Procedure; Rule 3(b) Superior Court Rules of Appellate

2  Procedure -Criminal.

3  The defendant against whom the State appeals was represented by appointed counsel

4  at the determination of guilt and at sentencing.

5

6  25 OCTOBER 1999

   (DATE)

   DAVID P. FLANNIGAN
   Deputy County Attorney

7

8

9  The name and address of the defendant or defendants who appeal or against whom the
   State appeals: Earl Ball, Cochise County Jail.

10         The name and address of the attorney for the defendant or defendants:  Mark Suagee
   and Donna Beckman, P.O. Box 1818, Bisbee, Arizona 85603

11         The name and address of any codefendant at trial.  None.
           Appellate Court:  Arizona Court of Appeals, Division 2, State Office Complex, 400 W.

12  Congress, Tucson, Arizona 85701-1374

13
   Copies of the foregoing
14  mailed/delivered this 25
   day of October, 1999, to:

15
   Hon. Matthew W. Borowiec
16  Judge of the Superior Court
   Division I

17
   Public Defender's Office
18  P.O. Box 1818
   Bisbee, Arizona 85603

19
   Earl Ball
20  C/o County Jail
   204 N. Judd
21  Bisbee, Arizona 85603

22

23

24

25

- 2

147

1  CHRIS M. ROLL
2  Cochise County Attorney
   BY: DAVID P. FLANNIGAN
3  BAR NO. 007162
   P.O. Drawer CA
4  Bisbee, Arizona 85603
   (520) 432-9377
5  Attorney for the State

6

7          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8              IN AND FOR THE COUNTY OF COCHISE

9  STATE OF ARIZONA          )
                             )      NO. CR98000296
10                Plaintiff,  )
                             )
11    vs.                    )
                             )      NOTICE OF CROSS-APPEAL
12  EARL BALL,               )      FROM SUPERIOR COURT
                             )
13                Defendant.  )
                             )
14  _____     )

15      NOTICE IS HEREBY GIVEN that the State of Arizona appeals from the

16      ( ) Following judgments(s) of guilt in the above entitled case:

17      (x) Following sentence(s) imposed in the above entitled case: See other, below.

18      (x) Other: 1) The trial court's designation of the charge in the Indictment as not being a
        offense involving dangerous crimes against children under A.R.S. §13-604.01.
19

20         2) The trial court's refusal to allow amendment of the Indictment to allege a prior
        conviction on 15 July 1999 for sexual conduct with a child, a class 6 felony, in Cochise
21      County Criminal Case CR99000131 upon designating the charge in this case not to
        allege a dangerous crimes against children offense.

22  Entered in the Superior Court, Cochise County, on 4 October 1999.

23      This appeal in whole is based upon violation of substantial right of the victim, J████

24  B██ The State certifies that the said victim has requested this appeal on that basis. Rule

25

                              - 1

1  31.2(d), Arizona Rules of Criminal Procedure; Rule 3(b) Superior Court Rules of Appellate

2  Procedure -Criminal.

3  The defendant who appeals was represented by appointed counsel at the determination

4  of guilt and at sentencing.

5

6  ___25 OCTOBER 1999___                    *Davil P. Flannigan*
                                           DAVID P. FLANNIGAN
        (DATE)                             Deputy County Attorney

7

8

9  The name and address of the defendant or defendants who appeal or against whom the
   State appeals: Earl Ball, Cochise County Jail.

10         The name and address of the attorney for the defendant or defendants: Mark Suagee
   and Donna Beckman, P.O. Box 1818, Bisbee, Arizona 85603

11         The name and address of any codefendant at trial. None.
           Appellate Court: Arizona Court of Appeals, Division 2, State Office Complex, 400 W.

12  Congress, Tucson, Arizona 85701-1374

13

14  Copies of the foregoing
    mailed/delivered this 25
    day of October, 1999, to:

15
    Hon. Matthew W. Borowiec
16  Judge of the Superior Court
    Division I

17
    Public Defender's Office
18  P.O. Box 1818
    Bisbee, Arizona 85603

19
    Earl Ball
20  C/o County Jail
    204 N. Judd
21  Bisbee, Arizona 85603

22

23

24

25

                                    - 2 -

(149)

1

2  CHRIS M. ROLL
   Cochise County Attorney
   BY: DAVID P. FLANNIGAN
3  BAR NO. 007162
   P.O. Drawer CA
4  Bisbee, Arizona 85603
   (520) 432-9377
5  Attorney for the State

6

7                  IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8                      IN AND FOR THE COUNTY OF COCHISE

9
   STATE OF ARIZONA              )
10                               )   NO. CR98000345
                    Plaintiff,   )   CR98-296 main
11                               )        case
          vs.                    )
12                               )   NOTICE OF CROSS-APPEAL
   EARL BALL,                    )      FROM SUPERIOR COURT
13                               )
                    Defendant.   )
14                               )
                                 )

15         NOTICE IS HEREBY GIVEN that the State of Arizona appeals from the

16     ( ) Following judgments(s) of guilt in the above entitled case:

17     (x) Following sentence(s) imposed in the above entitled case: See other, below.

18     (x) Other:  1) The trial court's designation of Count I of the Indictment as not being a
       offense involving dangerous crimes against children under A.R.S. §13-604.01.
19
       2) The trial court's refusal to allow amendment of the Indictment to allege a prior
20     conviction on 15 July 1999 for sexual conduct with a child, a class 6 felony, in Cochise
       County Criminal Case CR99000131 upon designating the charge in this case not to
21     allege a dangerous crimes against children offense.

22  Entered in the Superior Court, Cochise County, on 4 October 1999.

23        This appeal in whole is based upon violation of substantial right of the victim, J█████

24  B██  The State certifies that the said victim has requested this appeal on that basis. Rule

25

                                    - 1 -

                                                                                    150

1  31.2(d), Arizona Rules of Criminal Procedure; Rule 3(b) Superior Court Rules of Appellate

2  Procedure -Criminal.

3      The defendant who appeals was represented by appointed counsel at the determination

4  of guilt and at sentencing.

5

6  _25 OCTOBER 1999_          David P. Flannigan
        (DATE)                 DAVID P. FLANNIGAN
7                              Deputy County Attorney

8

9      The name and address of the defendant or defendants who appeal or against whom the
   State appeals: Earl Ball, Cochise County Jail.
10      The name and address of the attorney for the defendant or defendants: Mark Suagee
   and Donna Beckman, P.O. Box 1818, Bisbee, Arizona 85603
11      The name and address of any codefendant at trial. None.
        Appellate Court: Arizona Court of Appeals, Division 2, State Office Complex, 400 W.
12  Congress, Tucson, Arizona 85701-1374

13
   Copies of the foregoing
14  mailed/delivered this _25_
   day of October, 1999, to:

15
   Hon. Matthew W. Borowiec
16  Judge of the Superior Court
   Division I
17
   Public Defender's Office
18  P.O. Box 1818
   Bisbee, Arizona 85603
19
   Earl Ball
20  C/o County Jail
   204 N. Judd
21  Bisbee, Arizona 85603

22

23

24

25

                                   - 2

                                                                    151

# EXHIBIT S

$307$

99-1557
W Succoman



COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

O R D E R

2 CA-CR 99-0481
Department B

Cochise County
Cause Nos. CR98000296/CR98000345

RE: STATE OF ARIZONA v. EARL BALL

Pursuant to **"Motion to Stay Appeal,"**

ORDERED: The above-entitled appeal is stayed and jurisdiction is revested
in the trial court pending determination of the petition for post-conviction
relief pursuant to Rule 32, Ariz. R. Crim. P.

FURTHER ORDERED: Within twenty (20) days of completion of the Rule 32
proceedings in the trial court, Appellant shall so notify this court in writing
and jurisdiction shall revest in this court pursuant to Rule 31.4(a)(2), Ariz.
R. Crim. P. In the event the Rule 32 proceedings have not been completed by
**May 18, 2000**, Appellant shall notify this court in writing on or before that
date, informing this court of the status of the Rule 32 proceedings. In the
event such notice is not received by **May 18, 2000**, this court will automatically
issue an order vacating the stay, revesting jurisdiction in this court, and
reinstating the appeal.

Chief Judge Espinosa and Judge Howard concurring.

DATED: January 19, 2000

J. William Brammer, Jr.
Presiding Judge

152

Copies to:

Attention: Paul J. McMurdie
THE ATTORNEY GENERAL'S OFFICE
1275 W. Washington
Phoenix, AZ 85007

Chris Roll
DEPUTY COUNTY ATTORNEY
P.O. Drawer CA
Bisbee, AZ 85603

Attention: Donna M. Bechman
         Mark A. Suagee
COCHISE COUNTY PUBLIC DEFENDER
P.O. Box 1818
Bisbee, AZ 85603

Hon. Matthew W. Borowiec, Judge
Cochise County Superior Court
P.O. Drawer CT - Div. 1
Bisbee, AZ 85603

Denise I. Lundin, Clerk
Cochise County Superior Court
P.O. Drawer CK
Bisbee, AZ 85603



RECEIVED
JAN 2 0 2000
CRIMINAL APPEALS
ATTORNEY GENERAL

**EXHIBIT T**

1    LAW OFFICES OF THE
      COCHISE COUNTY PUBLIC DEFENDER
2    P.O. BOX 1818
      BISBEE, ARIZONA 85603
3    (520) 432-9263

4    MARK A. SUAGEE
      DONNA M. BECHMAN
5     attorneys for defendant Earl Ball

FILED

99 NOV -5 PH 2: 43

6

7          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

             IN AND FOR THE COUNTY OF COCHISE

8

9    STATE OF ARIZONA,               )     No. CR98000296 *(main)*
                                       )     No. CR98000345
10           Plaintiff,           )
                                         )   **MOTION TO VACATE JUDGMENT**
11             vs.                 )
                                         )   *[ORAL ARGUMENT REQUESTED]*
12    EARL BALL,                   )
                                         )
13          Defendant.        )    [Hon. Matthew Borowiec
                                         )      DIVISION I]

14         COMES NOW the defendant, Earl Ball, by and through his attorneys, Mark A. Suagee and

15   Donna M. Bechman, and hereby moves, pursuant to Rule 24.2(a)(1), Arizona Rules of Criminal

16   Procedure, to vacate judgment of guilt in the above-captioned actions, entered on October 4, 1999, on

17   the grounds that this Court was without jurisdiction to entertain these matters, the indictments having

18   been filed in violation of A.R.S. §13-107(B)(1), (C), (D), and (E), and the actions therefore having been

19   barred by the applicable statute of limitations, as is more fully discussed in the attached Memorandum

20   of Points and Authorities.

21         RESPECTFULLY SUBMITTED this 5th day of November, 1999.

22

23                             Law Offices
                            COCHISE COUNTY PUBLIC DEFENDER

24

25

                            MARK A. SUAGEE
26                             Public Defender

27

                            DONNA M. BECHMAN
28                             Assistant Public Defender

154

copies of the foregoing
delivered this _____ day of November, 1999:

Hon. Matthew Borowiec
Division I
Cochise County Superior Court
Bisbee, AZ 85603
*Interoffice Mail*

David Flannigan
Deputy County Attorney
Cochise County Attorney's Office
Bisbee, AZ 85603
*Interoffice Mail*

Earl Ball
c/o Cochise County Jail
Bisbee, AZ 85603
*Interoffice Mail*

155

# MEMORANDUM OF POINTS AND AUTHORITIES

## Procedural Background:

On June 19, 1998, the State filed its indictment in CR-98000296, a one-count indictment alleging that, on or about the 2nd day of June 1998, Mr. Ball had committed the offense of sexual exploitation of a minor by knowingly possessing a videotape depicting a child involved in sexual activity (hereinafter, "the 296 videotape"), in violation of A.R.S. §13-3553(A)(2).

Thereafter, on July 24, 1998, the State filed a second indictment, CR-98000345, alleging in sixteen separate counts, possession by Mr. Ball of a second sexually exploitive videotape (hereinafter, "the 345 videotape"), as well as fifteen separate still photographs which purportedly depict a minor engaged in sexual activity. The second indictment also alleges that the offenses were committed on or about June 2, 1998, in violation of A.R.S. §13-3553(A)(2).

The two indictments were consolidated for purposes of trial, which commenced August 17, 1999. Just days prior to the trial[1], defense counsel became aware for the first time of the possible existence of a police report and/or search warrant dated in 1989 or 1990 which referenced the possession by Mr. Ball of two homemade videotapes depicting a child named J████ at approximately age 10 engaged in sexual activity with Mr. Ball and an adult female, identified as D████. Defense counsel's motion to continue trial to pursue a statute of limitations defense was denied, and trial proceeded on August 17th.

During the course of trial, evidence was presented in support of the State's position that Mr. Ball was in possession –in June of 1998– of a homemade videotape (the 296 videotape) depicting a girl approximately 10 years of age named J████ engaged in sexual activity with Mr. Ball and D████, as well as a second homemade videotape (the 345 videotape) which (in relevant part) duplicated a short portion of the 296 videotape depicting sexual activity between J████, Mr. Ball and D████. Evidence

---

[1] Defense interview of Department of Economic Security (CPS) employee Steve Pike was conducted on August 11, 1999, primarily in reference to his possible involvement as a witness in CR-99000176. CR-99000176 was later dismissed by the Court as being barred by the statute of limitations. Information provided during this interview, previously unknown to counsel, indicated that CR-98000296 and CR-98000345 are also barred by the statute of limitations.

3

156

1   was also presented as to CR-98000345 with respect to 15 separate photographs depicting a young

2   woman approximately 16 years of age named L██████[2]. At the conclusion of the trial, Mr. Ball was found

3   guilty of possessing the 296 videotape and the 345 videotape on or about **June 2, 1998**, and, on

4   October 4, 1999, was sentenced to serve a term of 10 years as to each offense in the Department of

5   Corrections, said terms to be served consecutively. Subsequent to the jury's verdict but prior to

6   sentencing, prosecutor David Flannigan made available to defense counsel copies of police reports and

7   a search warrant, dated **1989 and 1990**, which reference the two videotapes depicting J████ at

8   approximately age 10 engaging in sexual activity with Mr. Ball and D██████[3]

9         Because it is has now become abundantly clear that the State knew of the existence of these

10   videotapes as far back as **March of 1989**, the court was without jurisdiction to hear the matters

11   presented in CR-98000296 and CR-98000345, and the judgments therefore must be vacated as having

12   been rendered in violation of A.R.S. §13-107.

13

14   **Factual Background:**

15         Facts developed pursuant to defense investigation into other pending matters have revealed the

16   existence of two Investigative Reports drafted by then Cochise County Sheriff's Detective James Allaire

17   in 1989 and again in 1990, both of which reference sexual activity between Earl Ball and a minor then

18   living in the home, as well as the existence of two homemade videotapes depicting that activity.

19         Detective Allaire's first report, dated March 23, 1989 and attached hereto as Exhibit "A",

20   discloses that the detective participated in an investigation initiated when Earl Ball's son, M████, then

21   age 15 years, ran away from home and reported to sheriff's deputies that he had been sexually abused

22   by his father. M████ also reported that he had been made to perform oral sex upon his father's wife,

23   D████, then age 26, his father's "live-in girlfriend", L████ A████ then age 22, his brother E.J., then

24

25        [2]The photographs are the subject of counts 2 through 16 in CR-98000345; as to these counts, the jury was unable to reach a verdict, and retrial of these counts is scheduled for December 7, 1999.

26        [3]Testimony at trial from State's witnesses M████ B██ E.J. B██ Laurie Ball and J████████ B██

27   revealed that the two videotapes which were seized in June of 1998 were made in the Phoenix area in approximately 1984 are the only homemade pornographic videotapes depicting Mr. Ball, J████ as a child, and

28   D████ which have ever existed.

(157)

age 11, a friend S████ W███, and his "adopted sister" J███, then age 16. M███ also advised sheriff's deputies and Detective Allaire that there were "two VCR tapes filmed at home depicting J███ (sic) having sex with Earl. M███ was allowed to view these VCR tapes in the R.V. while he was forced to participate sexually with his father and J███ (sic). (See Exhibit "A" at page 4).

Based upon the information provided by M███ B██, Detective Allaire sought and obtained a Search Warrant (see Affidavit and Search Warrant dated March 23, 1989, attached hereto as Exhibit "B"). The Affidavit and Search Warrant attested to the fact (under oath) that the detective was "satisfied there is probable cause to believe that" on the premises of the Ball residence on Quinn Road in the Kansas Settlement area, there existed "2 video cassettes taped at home containing sexual activity involving Earl Ball, D████ B██ and an under legal age J███████ B██" The Warrant was duly signed by the Justice of the Peace, Justice Court, Precinct No. 4.

The detective apparently interviewed D███ B██ and L███ A██ (the 26 year-old wife and the 22 year-old girlfriend of the nearly 50 year-old Earl Ball). It is evident (although inexplicable) that no attempts were made to interview either Earl Ball or the minors then living in the home, J██ and E.J., nor to ascertain from them whether pornographic visual material (video or photographs) depicting minors was being displayed to them or were otherwise present in the home. The detective, in a recent, September 13, 1999, telephonic interview with David Flannigan stated that he was satisfied after speaking with D███ (one of the adults alleged to have been participating in sex acts with the child) that M███ had been lying, and agreed that he took no steps whatsoever and made no effort at all to speak with the purported child-victim, then 16 year old J███, or the alleged perpetrator, Earl Ball (see Transcript of September 13, 1999 interview with James Allaire, attached hereto as Exhibit "C", at 3: 11-18; 6: 9-22).

Even more inexplicably, despite the obtaining of a valid Search Warrant, and despite the detective's attestation under oath as to the existence of probable cause, the detective advises in his March, 1989 report that he simply did not believe that the visual materials existed: "The Search Warrant was not executed due to the falsification of information provided. I don't believe that tapes of Family

158

1    Participation exist." (See Exhibit "B"). The detective then referred M█████B██ to juvenile probation

2    for the offense of providing a false report to law enforcement officers. Indeed, during the course of the

3    September, 1999 interview with James Allaire (now retired from the sheriff's department and employed

4    as a truck driver), the former detective agreed that he declined to serve the search warrant and, in fact,

5    failed to conduct any investigation whatsoever, stating: "You know, it just, the conclusion I came with

6    the whole investigation was that this was all made up." (See Exhibit "C", attached hereto and

7    incorporated herein, at 3:17-18). Mr. Allaire also stated, as to the search warrant: "I kept it in my

8    pocket . . . I had decided . . . that there wasn't any need me even serving that search warrant. That we

9    were not going to find anything there." (See Exhibit " C " at 7: 23 - 8: 5).

10          Just over one year later, a second attempt was made to encourage the sheriff's department to

11    investigate improper sexual activity involving a child at the Ball household in May of 1990, after E.J.

12    B██, Earl Ball's younger son, ran away from home and reported to Sheriff's deputies that he had been

13    physically abused. Detective Allaire's report, #90-1092 (attached hereto as Exhibit "D"), indicates that

14    in May of 1990, the detective made contact with members of the Ball family, then living on Kimsey Road

15    in the Kansas Settlement area, after E.J. reported that he had been physically abused with a "Hot Shot

16    Sabre Six" cattle prod. During the course of the investigation, the detective apparently interviewed, in

17    addition to 12 year-old E.J., D█████(the 26 year old "wife" of Earl Ball, and of whom it had been

18    alleged just one year earlier participation in videotaped sex acts with a child), L███ A███ (age 22 and

19    the "live-in girlfriend" of Earl Ball), and M████ B██ (whom the detective had labeled a liar in his 1989

20    report), now 16 years old.

21          According to the detective's report, D█████ did admit to the detective that there was a 16 year-

22    old girl, "J███████ W█████", also living at the property, and described J█████ as an "adopted-type

23    daughter of Earl Ball, Sr., with a child from an acquaintance at the Elfrida School" (see Exhibit "D" at

24    page 4). Detective Allaire goes on to state in his report that "M████ B██ says J███ is Earl, Sr.'s

25    girlfriend and Earl, Sr. is the father of J███'s child". (see Exhibit "D", at page 4). The detective,

26    inquiring into the whereabouts of Earl Ball, Sr. was advised by D█████ that Earl Ball had left that same

27    morning with son M████ and 16 year-old J███ to spend several days in Phoenix. The detective's

28



1  report (and, apparently, all pretense at investigation) ended after D███ claimed that everyone in the
2  family had used the cattle prod "to zap each other during horseplay" (see Exhibit "D" at page 7), and a
3  physician reviewed the matter and concluded that "he had no knowledge of a cattle prod inflicting these
4  type of injuries". The detective does indicate that he referred E.J. B█ to D.E.S. (see Exhibit "D" at
5  page 9), but no further effort at inquiry is made into the matter of the 16 year-old "adopted-type"
6  daughter with a baby (who was alleged to have been fathered by fifty-year old Earl Ball)[4] –the same girl
7  who was said, just over a year previously, to have appeared in two homemade pornographic videotapes
8  engaging in sex with Earl Ball and D███.

9  　　　Because the State of Arizona, by and through the Cochise County Sheriff's Department, *knew*
10  *or should have known, through even minimal follow-up investigation in March of 1989 or, at*
11  *the latest, May of 1990,* of the existence of the two homemade videotapes depicting 10 year-old
12  J███ engaging in sexual activity with Earl Ball and D███, the indictments of June 19, 1998
13  (CR98000296) and July 24, 1998 (CR98000345) exceed the applicable statute of limitations;
14  consequently, this Court was without jurisdiction to conduct the trial of the consolidated matters, the jury
15  was without legal authority to render a verdict, and this Court has no option but to vacate its judgment
16  of guilt and sentence of October 4, 1999.

17

18  **Law & Argument:**

19  　　　I.　　BECAUSE THE STATE OF ARIZONA DISCOVERED, OR SHOULD
20  　　　HAVE DISCOVERED, AS EARLY AS MARCH OF 1989, THE EXISTENCE
21  　　　OF THE TWO HOMEMADE VIDEOTAPES DEPICTING J███
22  　　　ENGAGED IN SEXUAL ACTIVITY WITH MR. BALL AND D███.
    　　　THIS COURT WAS WITHOUT JURISDICTION TO RENDER JUDGMENT
    　　　BASED ON INDICTMENTS FILED IN 1998.

23

24

25  　.[4]The child, R███ was born October 23, 1989, making J███ approximately two months
26  pregnant at the time of Detective Allaire's cursory "investigation" in March of 1989. DNA evidence has since
    revealed that Earl Ball not only fathered J███ but also R███ and a second child born on June 24, 1991 to
27  J███ J███████. The conception of the two children was charged as incest and sexual conduct with a
    minor in CR-99000176; however, the indictment was dismissed by this Court has having been barred by the
28  statute of limitations, based on the same evidence and argument presented herein.

(160)

A.R.S. §13-107 provides in pertinent part:

**B.** Except as otherwise provided in this section, prosecutions for other offenses must be commenced within the following periods *after actual discovery by the state* or the political subdivision having jurisdiction of the offense *or discovery . . . which should have occurred with the exercise of reasonable diligence,* whichever first occurs:

1. For a class 2 through class 6 felony, seven years.

. . .

**C.** For purposes of subsection B, a prosecution is commenced when an indictment, information or complaint is filed.
[Emphasis supplied].

The law in Arizona on this issue is abundantly clear and equally well-settled that the seven-year statute of limitations is jurisdictional, rendering a court without power to act upon the matter; further, such statutes are unquestionably to be *"construed liberally in favor of the accused and against the prosecution."* (State v. Fogel (1972) 16 Ariz. App. 246, 248, 492 P.2d 742, 744).

It is also the current state of the law that the Arizona criminal statutes of limitations begin to run "when the State, or a political subdivision of the State having jurisdiction, actually discovers or should have discovered that the offense occurred." (State v. Escobar-Mendez (Ariz. App. Div. 1 1999) 1999 WL 92460, 1 CA-CR 97-0999, February 25, 1999).

In the instant case, it is indisputable that the Cochise County Sheriff's Department is a "political subdivision of the state":

A political subdivision of the State typically has the following attributes: (1) it exists for the purpose of discharging some function of local government, (2) it has a prescribed geographic area, and (3) it possesses authority for subordinate self-government by officers selected by it. (State v. Escobar-Mendez, supra).

"Political subdivisions of the State" typically include the Department of Economic Services/Child Protective Services (Gomez v. Maricopa County (1993) 175 Ariz. 469, 857 P.2d 1323), state school districts (Az. Dept. of Revenue v. M. Greenberg Construction (1995) 182 Ariz. 397, 897 P.2d 699), and community college districts (Sorenson v. Superior Court (1927) 31 Ariz. 421, 254 P. 230). And,

8

(16)

in Az. Civil Rights Division v. Olson (1982) 132 Ariz. 20, 643 P.2d 723, the Court stated that there was no doubt but that the Yavapai County Sheriff's Office was a "political subdivision of the state".

Accordingly, the statute of limitations began to run for the offense of Earl Ball's possession of the two homemade videotapes depicting 10 year-old J███ having sex with Earl Ball and D███ when the Cochise County Sheriff's Department *actually discovered or should have discovered through the exercise of reasonable diligence* the existence of those videotapes, and indeed, that discovery is first documented in Detective Allaire's report of March of 1989. That the detective apparently did nothing to follow-up on the assertions in no way mitigates against the fact that the information was available to the State and the State was in possession of such knowledge beginning in March of 1989.

Although Mr. Ball suggests that the State was in possession of actual knowledge of the commission of this offense in March of 1989, it is can also be argued that, regardless of "actual discovery" on any given specific date, the statute of limitations began to run when the State *should* have discovered, with the exercise of reasonable diligence, the commission of this offense; in other words, in March of 1989 when Detective Allaire filed his first report and obtained a search warrant to seize these videotapes.

While "reasonable diligence" is to be determined on a case-by-case basis, "the general standard **is whether the State took reasonable steps to pursue the matter, or failed to follow-up on significant leads."** (State v. Escobar-Mendez, supra). In Escobar-Mendez, the court noted that the case detective, while investigating a seemingly unrelated case, received a tip, and interviewed the victim less than a month after receiving the tip; the grand jury indicted the defendant less than ten months later: "In other words, as soon as one significant lead came to the State's attention, the matter was vigorously investigated, and prosecution expeditiously commenced". Here, however, there is no indication that Sheriff's deputies ever interviewed or even attempted to locate either the child J███ or Earl Ball until subsequent to June of 1998, when a search pursuant to warrant revealed the existence of the videotapes which were the very subject of the March 1989, inexplicably *unexecuted* Search Warrant.

Such conduct exhibited here by the State and its law enforcement officers in light of the 1989 and 1990 allegations can only be characterized as a dilatory absence of any investigation, follow-up,

9



1 or the pursuit of leads, and a wholesale lack of diligence; the State may not disregard information, and
2 nearly ten years later, decide that information was of some interest after all. This is the precise situation
3 §13-107 was designed to prevent.

4    Cases addressing the exercise of "reasonable diligence" (or lack thereof) include: Snow v.
5 Superior Court (1995) 183 Ariz. 320, 325, 903 P.2d 628, 633, holding in a Rule 8 context that the
6 State's failure to contact defendant's nearest relative who had been listed by the defendant as a contact
7 person showed lack of diligence in locating him; Humble v. Superior Court (1993) 179 Ariz. 409, 414,
8 880 P.2d 629, 634, holding that failure to follow-up on any of four significant leads shows lack of
9 diligence; and State v. Armstrong (1989) 160 Ariz. 159, 161, 771 P.2d 889, 891, holding that no effort
10 to check MVD records or speak with a neighbor or to telephone the defendant shows lack of diligence.

11    In the instant case, there is no suggestion that Detective Allaire took any steps to discuss the
12 allegations of the existence of these two homemade videotapes with Earl Ball or the child, J████, and
13 there is nothing to suggest that either Mr. Ball or J████ were in any way unavailable for follow-up
14 interview or investigation; indeed when Mr. Ball was ultimately arrested, he was living within a few miles
15 of the residence occupied by the Ball family in 1989 and 1990, and had not moved away from the
16 Pearce/Sunsites area of Cochise County. Further, because J████ was born to J████ and Earl Ball in
17 June of 1991, it is evident that J████ remained at the Ball residence for more than a year after the May,
18 1990 visit by Detective Allaire.

19    As stated in Snow v. Superior Court, supra, 183 Ariz. at 324, in a Rule 8 context:

20    . . . the State must show either that it has exercised due diligence to locate the defendant
21    or that the defendant has attempted to avoid apprehension or prosecution.

22

23    Because there is absolutely no evidence to suggest that Mr. Ball was attempting to avoid
24 apprehension, but indeed was living openly with his family in Cochise County from 1988 until his arrest
25 in 1998, it is incumbent upon the State to demonstrate "due diligence". Given that "characteristic of
26 cases of inadequate diligence is the state's failure to pursue significant leads" (State v. Armstrong,
27 supra,), and, in light of the fact that no effort was apparently made to serve the search warrant or to

28

10

(163)

interview Mr. Ball or J███, it can hardly be said that the state exercised *any* diligence at all in this regard.

## II. THE STATUTE OF LIMITATIONS FOR THIS OFFENSE BEGINS TO RUN WHEN THE CRIME IS COMPLETE; THEREFORE, THE "DOCTRINE OF CONTINUING OFFENSES" MAY NOT BE USED TO CIRCUMVENT THE LAW WHICH MANDATES RESTRAINT IN LABELING CRIMES AS "CONTINUING OFFENSES"

It is anticipated that the State may attempt to justify its inexcusably dilatory filing of these indictments by attempting to rely on the "doctrine of continuing offenses"; that is, to assert that Mr. Ball began to commit this offense at the time the videotapes were made, and that the crime continued to be committed until the tapes were seized by sheriff's deputies in June of 1998. Although there appears to be no case law from Arizona courts illuminating this issue, there is a rather abundant body of law from the United States Supreme Court and federal district courts which establishes the absurdity of this position.

The Supreme Court, as well as numerous federal jurisdictions, urging "restraint in labeling crimes as continuing offenses" have long since recognized the "tension between the doctrine of continuing offenses and the policy of repose embodied in statutes of limitations" (United States v. Bailey (U.S. Dist.Col. 1980) 444 U.S. 394, 414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575), and the leading case in this area, Toussie v. United States (U.S.N.Y. 1970) 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156, reversing the lower court, sets forth the applicable law:

> In deciding when the statute of limitations begins to run in a given case several considerations guide our decision. The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.... These principles indicate ·that **the doctrine of continuing offenses should be applied only in limited circumstances since . . . the tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent;** the latter, for all practical purposes, extends the statute beyond its stated term. (Toussie v. United States, supra, 397 U.S. at 114, 90 S.Ct. at 860, citations omitted, emphasis supplied).

11

1    In Toussie, where the defendant fell within the age group of males required to register for the

2    draft, but willfully failed to do so, the Supreme Court held that the indictment alleging failure to register,

3    which was filed in excess of the five-year statute of limitations period, was barred, and that the

4    defendant could not be held to have committed a continuing offense, despite the fact that he continued

5    to fail to register throughout the relevant time period, stating: "While it is true that the regulation does in

6    explicit terms refer to registration as a continuing duty, we cannot give it the effect of making this criminal

7    offense a continuing one." (Ibid., 397 U.S. at 120-121, 90 S.Ct. at 863).

8        Similarly, here, where the State may arguably be accurate in its suggestion that Mr. Ball was

9    continuously in possession of the videotapes from the time they were made until the time they were seized

10   in June of 1998, that alone is insufficient to render this offense a "continuing" one for purposes of

11   extending the statute of limitations period. This is true because offenses are typically presumed to be

12   complete "as soon as every element in the crime occurs, and the statute of limitations begins to run from

13   that date." (Ibid., 397 U.S. at 114-115, 90 S.Ct. at 860; see also Pendergast v. United States (1943)

14   317 U.S. 412, 418, 63 S.Ct. 268, 271, 87 L.Ed. 368). Where, as here, the elements of possession of

15   the videotapes were completed as of the date the State first gained knowledge of the offense in March

16   of 1989, and no additional conduct or criminal activity on the part of Mr. Ball can be said to have taken

17   place, the statute of limitations may not be extended from seven years to nine years simply to cover-up

18   a less than diligent law enforcement investigation.

19       Offenses typically considered to be "continuing offenses" and which, therefore, toll the running

20   of the statute of limitations include the original "continuing offense" of conspiracy, which continues as

21   long as the conspirators engage in overt acts in furtherance of their plot (see, United States v. Kissel

22   (1910) 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed.2d 931, as well as kidnapping (see, United States v.

23   Garcia (9th Cir. 1988) 854 F.2d 340, 343-44, and escape (see, United States v. Bailey, supra, 444 U.S.

24   394, 100 S. Ct. 624, 62 L.Ed.2d 575). And, in Toussie, both the dissenting opinion and the majority

25   opinion describe the basis for the presumption *against* finding an offense a continuous one:

26       Since the continuing-offense concept too freely applied can lead to tension with the
27       purpose of the statute of limitations, we should undoubtedly approach the task of
         statutory interpretation with a **presumption against a finding that an offense is a**

28

12

1     continuous one.

2     . . .

3 **Our own cases distinguish the "instantaneous" from the "continuing" offense**
**on the theory that in the former case, the illegal aim is attained as soon as every**
4 **element of the crime has occurred, whereas in the latter case, the unlawful**
**course of conduct is set on foot by a single impulse and operated by an**
5 **unintermittent force until the ultimate illegal objective is finally attained.** (Ibid.
(dissenting opinion), 397 U.S. 112 at 135-136, 90 S.Ct. at 870, citations omitted,
6 emphasis supplied).[5]

7     More recently, in United States v. Yashar (7th Cir. 1999) 166 F.3d 873, the Seventh Circuit
8 further limited the definition of a continuing offense for purposes of the statute of limitations, ruling that
9 the statutes of limitations for prosecuting substantive federal offenses starts after each element of the
10 crime has occurred, and is not extended just because the crime charged is characterized by the
11 prosecution as a continuing course of conduct. The Yashar court noted that almost any action that
12 extends over time could fall within an expansive definition of a "continuing offense," depending upon how
13 the prosecutor chose to charge the case, and acknowledged the "inappropriate power" which such a
14 result would bestow upon the prosecution: "In that manner, the statute of limitations, designed as a
15 control on governmental action, would instead be defined by it." (Ibid., 166 F.3d at 878).

16     Such is precisely the result the State would suggest is appropriate here, where the State had
17 actual knowledge of the existence of the videotapes as far back as March of 1989, *and indeed was in*
18 *possession of a valid search warrant to seize the tapes at that time*, but instead chose to do nothing
19 until June of 1998. The State, by its conduct in failing to diligently investigate and prosecute, may not
20 dictate when the statute of limitations should begin to run. In other words, the "continuous" negligence
21 on the part of the State as a result of its "continuous" knowledge may have resulted in "continuous"
22 possession by Mr. Ball, but that hardly permits the State to frustrate the purpose of the statute of
23 limitations, which, in part, is to encourage diligent investigation and prosecution. To hold otherwise

24

25     [5]The dissenting opinion, authored by Justice White, suggests that, because the relevant statute requires
26 males between the age of 18 and 26 years to register for the draft, the statute of limitations for prosecutions
for failing to register should not run until five years after the individual has turned 26 years of age, a position
27 which the majority rejects. Similarly, here, the State would suggest that the statute of limitations for possession
of unlawful visual materials should not begun to run until five years after the materials are seized by law
28 enforcement, regardless of when law enforcement first discovered the offense of possession.

13

166

1  would be to do as <u>Toussie</u> and <u>Yashir</u> prohibit, permitting the prosecution to avoid the running of the
2  statute of limitations by charging an on-going course of conduct, or claiming the nature of the offense is
3  a continuing one.

4

5  <u>Conclusion</u>:

6       Construing the applicable seven-year statute of limitations liberally in favor of Earl Ball and
7  against the State, and following the well-established presumption *against* defining an offense as a
8  "continuing" one, it can hardly be disputed that this Court was without jurisdiction to conduct trial in CR-
9  98000296 and CR-98000345, that the jury's verdict was therefore contrary to law, and that the
10 judgments of guilt must be vacated. While it may be that "every statute of limitations, of course, may
11 permit a rogue to escape" (<u>Pendergast v. United States</u> (1943) 317 U.S. 412, 418, 63 S.Ct. 268, 271,
12 87 L.Ed.368), it is equally abhorrent to permit the State to suggest that the statute of limitations should
13 be tolled because of its own inexcusably dilatory conduct.

14

15

16       RESPECTFULLY SUBMITTED   this 5th day of November, 1999.

17
18                         Law Offices
                           COCHISE COUNTY PUBLIC DEFENDER
19
20                         MARK A. SUAGEE
                           Public Defender
21
22
23                         DONNA M. BECHMAN
                           Deputy Public Defender
24
25
26
27
28
                              14

1

2

3   copies of the foregoing
    delivered this ___ of November, 1999:

4

5

6   Hon. Matthew Borowiec
    Cochise County Superior Court
    Division I
7   Bisbee, AZ

8

9   David Flannigan
    Deputy County Attorney
10  Cochise County Attorney's Office
    Bisbee, AZ

11

12
    Earl Ball
13  c/o Cochise County Jail
    Bisbee, AZ

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

168

# EXHIBIT "A"

169

| NAME OF REPORTING AGENCY | NCIC/ORI NAME | NAME, LAST, FIRST FULL, MIDDLE (OR FIRM NAME IF BUSINESS) | OR/CASE # |
|---|---|---|---|
| COCHISE CO.S.D. | FALSE REPORTING | STATE OF ARIZONA | 89-0618 |

**S U S P E C T**

NAME, LAST, FIRST FULL, MIDDLE:
Bxxx, Kxxxxx Exx

HCR, BOX 8
QUINN ROAD, PEARCE-SUNSITES

| SEX | RACE | D.O.B. |
|---|---|---|
| M | W | 6-26-73 |

RES. PHONE: N/A

| DATE/TIME OCCURRED | VICTIMS OCCUPATION |
|---|---|
| 3-23-89  1300 Hrs. | |

| CLOTHING (DESCRIBE) | DATE/TIME REPORTED TO POLICE | LOCATION OF OCCURANCE | GRID # |
|---|---|---|---|
| | 3-23-89  1300 Hrs. | SHERIFF'S OFFICE-WILLCOX. | |

| OR DL/SOC. SEC. NO. | PERSON REPORTING | RES. PHONE | DATE/TIME OF REPORT |
|---|---|---|---|
| JUVENILE REFERRAL | Kxxxxx Bxx | 826-3055 | 3-23-89 |

| ADDRESS | BUS. PHONE | ZIP CODE |
|---|---|---|
| PEARCE-SUNSITES | N/A | 13-2907 |

| REPORTING OFFICER | SERIAL # | CRIME NAME |
|---|---|---|
| JAMES ALLAIRE | 7201 | FALSE REPORTING |

N/A

THIS REPORT IS RESTRICTED TO CRIMINAL JUSTICE AGENCIES AND AUTHORIZED NON-C.J. AGENCIES ONLY. SECONDARY DISSEMINATION TO UNAUTHORIZED AGENCIES IS PROHIBITED BY PRIVACY LAWS.

JAMES ALLAIRE #7201- DETECTIVE

Copy No.
REL BY CCSO

4-21-89 ymt

170

| COCHISE CO.S.D. | FALSE REPORTING | | 89-0618 | 2 |
|---|---|---|---|---|

REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE
FINDINGS INCLUDING DISPOSITION OF EVIDENCE.
LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED.

DISTRIBUTION:

RECORDS DIVISION: BISBEE S.O.

CANDY AMMANN-JUVENILE PROBATION, WILLCOX

CASE OFFICER: DETECTIVE JAMES ALLAIRE #7201 -WILLCOX

SYNOPSIS:

On March 23, 1989, MICHAEL EARL BALL committed False Reporting
by knowingly making false accusations for personal gain in
violation of A.R.S. 13-2907, a Class 1 misdemeanor.

SUSPECT:

MICHAEL EARL BALL       DOB/4-26-73

HGR BLU H

QUINN ROAD

PEARCE-SUNSITES, AZ.

INVESTIGATIVE LEADS:

LAURIE ABATE  (3-28-65)  QUINN ROAD  PEARCE-SUNSITES, AZ.

DANETTE BALL  (10-21-62) QUINN ROAD  PEARCE-SUNSITES, AZ.

EVIDENCE:

Newspaper article from THE ARIZONA DAILY STAR

DISSEMINATION IS RESTRICTED TO CRIMINAL JUSTICE
AGENCIES AND AUTHORIZED NON-CJ AGENCIES ONLY.
SECONDARY DISSEMINATION TO UNAUTHORIZED AGEN-
CIES IS PROHIBITED BY PRIVACY AND SECURITY LAWS.
20.21

Copy No. _____

REL BY CCSO _____

JAMES ALLAIRE #7201 DETECTIVE

(171)

| 1. NAME OF REPORTING AGENCY | 2. TYPE OF REPORT | | 4. CONN. UP # | 5. OR/CASE # | 6. PAGE NO. |
|---|---|---|---|---|---|
| COCHISE CO.S.D. | FALSE REPORTING | | | 89-0618 | 3 |

| 3. ITEM NO. | 7. QUAN. | 8. | REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE FINDINGS INCLUDING DISPOSITION OF EVIDENCE. LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED. | 9. SERIAL NUMBER |
|---|---|---|---|---|

VI.    <u>NARRATIVE:</u>

On 3-23-89, at 7 A.M., Sergeant SELF was dispatched to a child abuse victim.

Sergeant SELF was unable to locate the victim-Reporter on this call.

On March 23, 1989, 11:30A.M., Sergeant SELF was dispatched to the Sunsites

Fire Department to meet with the Victim-Reporter. M██████ B██ was picked

up at the Fire Department and transported to the Sheriff's Department in

Willcox.

On March 23, 1989, at 1300 Hours, I was contacted by Sergeant SELF and requested

to investigate this case. M██████ B██ was claiming to have been sexually

abused by his father, EARL BALL.

Arriving at the Sheriff's Office, I met with Sergeant SELF. Sergeant SELF

had obtained a Written Statement from M██████ B██ and also a previous state-

ment that M██████ B██ had written earlier in the day.

After reading these Statements, I inteviewed M██████ B██ in my office for

about one and a half (1½) hours. M██████ B██ depicted in his story that he

had lived most of his life inthe custody of his natural mother, JEANNE BALL.

JEANNE BALL died of kidney failure on October 23, 1988, in Phoenix and M██████

began living with his natural father and 26 year old Step-Mother, DA████ B██.

M██████ B██ alleged that beginning about the age of seven (7) years old he

was introduced to sex by his father. M██████ told of having to perform oral

sex on his Step-Mother, DA█████, his father's 22 year olf girl friend, L█████,

his father, his brother, E.J., his adopted sister, J█████, and a friend,

S██████ W█████.

M██████ B██ told of having to perform Sexual Acts at his father's direction

with D█████, L█████ and J█████.

DISSEMINATION IS RESTRICTED TO CRIMINAL JUSTICE AGENCIES AND AUTHORIZED NON-CJ AGENCIES ONLY. SECONDARY DISSEMINATION TO UNAUTHORIZED AGENCIES IS PROHIBITED BY PRIVACY AND SECURITY LAWS.

| SUPERVISOR APPROVING | SERIAL NO | 13. REPORTING OFFICER(S) | BADGE NO. | DIVISION | 15. PERSON REPORTING (SIGNATURE) | |
|---|---|---|---|---|---|---|
| SGT. H.W. ROTHROCK C612/8110 | | JAMES ALLAIRE #7201 DETECTIVE | | | REL BY CCSO | 172 |

| 1. NAME OF REPORTING AGENCY | 2. TYPE OF REPORT | | 3. CONN. UP # | 4. SO/CASE # | 5. PAGE NO. |
|---|---|---|---|---|---|
| COCHISE CO.S.D. | FALSE REPORTING | | | 89-0618 | 4 |

| 4. ITEM NO. | b. QUAN. | c. | REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE FINDINGS INCLUDING DISPOSITION OF EVIDENCE. LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED. | | SERIAL NUMBER |
|---|---|---|---|---|---|

VI.     NARRATIVE:(CONTINUED)

M▇▇▇▇, B▇▇ generalized these Sex Acts as having to assist his father perform

Sexually with the women in the house. During the interview, M▇▇▇▇ described

himself as being physically abused by his father, using a shovel-handle to whip

him and over-working him at the house especially making him do more than his

11 years old brother. M▇▇▇▇ complained that his Step-Mother is abusing him

by making him clear weeks and brush and run 375 laps around the place. M▇▇▇▇

said his father was due to arrive tonight and would physically abuse him

terribly upon learning he hadn't completed the previous days tasks as directed

by his Step-Mother.

As I was interviewing M▇▇▇▇, I had him draw the attached sketch of the

residence and depict the sleeping arrangements of the household. M▇▇▇▇

said D▇▇▇▇ and L▇▇▇▇ sleep at one end of the trailer house, with M▇▇▇▇

and E.J. B▇▇ at the other end. An unrelated friend, J▇▇ R▇▇▇▇, slept

on the couch in the living room (middle) with the father, EARL, sleeping in

the R.V., with J▇▇▇.

M▇▇▇▇ told me that his father had a large set of Pornographic Videos depicting

a preacher in different sexual acts. ALSO, two (2) V.C.R. tapes were filmed

at home depicting J▇▇▇ having sex with EARL. M▇▇▇▇ was allowed to view

these V.C.R. tapes in the R.V., while he was forced to participate sexually with

his father and J▇▇▇.

M▇▇▇▇ also said he had received some PLAYBOY MAGAZINES from a friend, had

read them however, was forced by his Step-Mother to get rid of them. M▇▇▇▇

said he had sold them to a friend for money.

DISSEMINATION IS RESTRICTED TO CRIMINAL JUSTICE AGENCIES AND AUTHORIZED NON-C-J AGENCIES ONLY. SECONDARY DISSEMINATION TO UNAUTHORIZED AGEN-CIES IS PROHIBITED BY PRIVACY AND SECURITY LAWS. 20.21

Copy No.

SGT. R. A. ROTHROCK C512/3110    JAMES ALLAIRE #201 DETECTIVE    REC BY CCSO

173

**CONTINUATION SHEET**

| 1. NAME OF REPORTING AGENCY | 2. TYPE OF REPORT | 3. CORR. UP # | 4. DR/CASE # | 5. PAGE NO |
|---|---|---|---|---|
| COCHISE CO.S.D. | FALSE REPORTING | | 89-0618 | 5 |

| 6. ITEM NO. | 7. QUAN. | 8. | REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE FINDINGS INCLUDING DISPOSITION OF EVIDENCE. LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED. | 9. SERIAL NUMBER |
|---|---|---|---|---|

VI.

NARRATIVE:(CONTINUED)

During the interview M████ told me of hearing on the news about a woman
that received over 500 years prison time for having sex with her children.
M████ questioned if his father and Step-Mother would be treated the same.
Based upon my experience from investigating sex crimes and knowledge learned
in schools, I determined M████ B██ was not being truthful and the allegations
of sexual conduct nor did there exist information to show physical abuse.
M████ B██ developed the idea of a Sex Complaint because of the news item.
(Attached)

M████ could not verbally describe the sexual acts he was alleging. His
verbalization corresponded with articles printed in Playboy Magazines.
M████ depicted oral and homosexual acts committed by his father, however,
M████ could not provide graphic information concerning the allegations:
ie orgasm's were stated as cumin, however, he couldn't depict what would
happen.

During the interview M████ depicts life at home as a continual all encompassing
orgie directed and dictated over by the father. However, the father's best
friend and resident, J███ R█████, is excluded from all activities and sleeps
by himself on the couch.

Reviewing M████ B██'s Written Statements, there is only a short depiction
of sexual abuse with most of the statement trying to convince listeners his
is badly abused, rather than disciplined.

Using this information and reading the LAW regarding False Reporting, I con-
fronted M████ B██ about his making up stories. M████ would not change
his story even after I promised he would be

DISSEMINATION IS RESTRICTED TO CRIMINAL JUSTICE
AGENCIES AND AUTHORIZES NON-CJ AGENCIES ONLY.
SECONDARY DISSEMINATION TO UNAUTHORIZED AGEN-
CIES IS PROHIBITED BY STATUTE LINE SECURITY LAW.

| | | 20.21 | | |
|---|---|---|---|---|
| R.W.ROT-RCC- C612/8110 | JAMES ALLAIRE #7201 DETECTIVE | | | 174 |
| | | COPY NO. | | |
| | | REL BY CCSO | | |

| 1. NAME OF REPORTING AGENCY | 2. TYPE OF REPORT | 3. CONN. UP # | 4. DR/CASE # | 5. PAGE NO. |
|---|---|---|---|---|
| COCHISE CO.S.D. | FALSE REPORTING | | 89-0618 | 6 |

| 6. ITEM NO. | 7. QUAR. | 8. REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE FINDINGS INCLUDING DISPOSITION OF EVIDENCE. LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED. | SERIAL NUMBER |
|---|---|---|---|

VI.    NARRATIVE: (CONTINUED)

(continuing) I continued the investigation and determined more precisely that he was lying.

Furing the interview I was notified by Sergeant SELF that a call was received from D███ B██ declaring M████ B██ as a runaway.

I obtained a Search Warrant #4C5900885 from Justice Court #4 in Willcox to search the residence and R.V. (Motorhome) of EARL BALL.

Department of Economic Security (D.E.S.) worker, FRED WILSON, was contacted to place M████ B██ for the night in a Foster home.

Accompanied by Mr. FRED WILSON and Deputy NOLAND, I went to the BALL residence. A Home Visit was conducted with D████ B██, E.J. B██ (Age 11) and L████ A████. None of the allegations from M████ B██ could be substantiated. No physical abuse could be determined to have occurred to M████ B██.

D████ B██ did express concern that she was unable to physically control M████ and that his behavior was disruptive to the family.

The Search Warrant was not executed due to the falsification of information provided. I don't believe that tapes of Family Participation exist.

M████ B██ was referred to the Juvenile Probation for False Reporting.

Counseling through Department of Economic Security is suggested for M████ B██.

DISSEMINATION IS RESTRICTED TO CRIMINAL JUSTICE AGENCIES AND AUTHORIZED NON-C-J AGENCIES ONLY. SECONDARY DISSEMINATION TO UNAUTHORIZED AGENCIES IS PROHIBITED BY PRIVACY AND SECURITY LAWS.

VII.    ATTACHMENTS:

1.    Search Warrant & Affidavit for Search Warrant
2.  2  Statements from M████ B██, & 2 pages w/residence diagrams.
3.    Newspaper article
4.    JUVENILE REFERRAL for FALSE REPORTING.

| SGT. R.W.ROTHROCK C612/8110 | JAMES ALLAIRE #7201 DETECTIVE | | | |
|---|---|---|---|---|

175

# EXHIBIT "B"

176

JUSTICE COURT, PRECINCT _4_

COUNTY OF COCHISE, STATE OF ARIZONA

## AFFIDAVIT FOR
## SEARCH WARRANT

No. _405913895_

YOUR AFFIANT, _James McHaire_ , A PEACE OFFICER IN THE STATE OF
ARIZONA AND EMPLOYED BY THE COCHISE COUNTY SHERIFF'S DEPARTMENT, BEING FIRST
DULY SWORN, UPON OATH, DEPOSES AND SAYS:

THAT ON or about the _1st_ day of _MARCH_ , 19_84_, a public offense in
violation of _13 - 1405_ , Arizona Revised Statutes, (was)
(~~is being~~) committed in the County of Cochise, State of Arizona.

YOUR AFFIANT (has probable cause to believe) (~~is positive~~) that:

( ) on the person of:

(X) in and upon the premises (including all buildings, structures, rooms,
equipment, and vehicles used in connection or located within the curtilage
of said premises) known and described as:
_Mobile Home Residence, light brown in color, situated on_
_Queen St. South of Sunsites. Queen St. Extends West_
_from UU. th Mobile Residence is the first mobile Home_
_Paralell with Queen Road on the South Side._

( ) in vehicle(s) described as: _a white Cross Country type_
_a white 30 ft motor home with Cross Country type_
_decorated with blue and grey stripe. painted down natural the_
_way described as silve metalic type. A CB antenna is on the drivers_
_Sice. J._

there is certain property or things

( ) which are stolen or embezzled

(X) which were used as a means for committing a public offense

(X) which are being possessed with intent to use as a means of committing a public offense

( ) which are in the possession of _____ to whom it was delivered for
the purpose of concealing it or preventing it from being discovered

( ) which consists of any item or constitutes any evidence which tends to show that a public
offense has been committed, such being more fully described in the affidavit.

THAT SAID PROPERTY OR THINGS ARE DESCRIBED AS FOLLOWS:
_Video Cassette tapes Containing Sexual Acts of her_
_2 Video. Cassettes taped at Home Containing Sexual_
_Acts involving Earl Ball, ~~Jennette Ball~~, and_
_Michelle J█████████ ████████ █████_
_Video Camera Used to Photograph Sexual_
_Acts._

DISSEMINATION IS RESTRICTED TO CRIMINAL JUSTICE
AGENCIES AND AUTHORIZED NON-C-J AGENCIES ONLY.
SECONDARY DISSEMINATION TO UNAUTHORIZED AGEN-
CIES IS PROHIBITED BY PRIVACY AND SECURITY LAWS.

Copy No. ____

REL. BY CCSO ____

AND THAT THE facts tending to establish the foregoing grounds for issuance of a
Search Warrant are as follows:

▆▆▆▆ ▆▆▆ ▆▆▆, son of Earl Bell, has made Statements,
that Sexual acts have been Committed by Earl Bell
upon underage Persons, M▆▆▆ Earl B▆▆ and J▆▆▆
▆▆▆ (B▆▆)

During the Commission of the Crimes of Child Sexual
Conduct Committed by Earl Bell, Video Tapes
of Sexual acts were being shown on the television.

M▆▆▆ Earl Bell Has been shown Video Tapes!
Containing recordings of Sexual acts Committed
involving adults with J▆▆▆ ▆▆▆ (B▆▆) age 15.

M▆▆▆ Earl B▆▆ Knows these tapes are Kept in the
A/V has futher steps in because he has been
there this in storage many times before.

M▆▆▆ Earl B▆▆ has told Your affiant
that there is a video camera in the
residence owned by Earl Bell.

(Use additional continuation sheets if needed)

*(Signature of Affiant)* James Allair
Peace officer for the State of Arizona

SWORN TO AND SUBSCRIBED in my presence this 23 day of March, 1989.

*Al Ballva*

(Justice of the Peace)

DISSEMINATION IS RESTRICTED TO CRIMINAL JUSTICE
AGENCIES AND AUTHORIZED NON-C-J AGENCIES ONLY.
SECONDARY DISSEMINATION TO UNAUTHORIZED AGEN-
CIES IS PROHIBITED BY PRIVACY AND SECURITY LAWS.
20.21
Copy No. _____
REL BY CCSO _____

2.

178

IN THE JUSTICE COURT, PRECINCT NO. 4

COUNTY OF COCHISE, STATE OF ARIZONA

# SEARCH WARRANT

4C5960885

WARRANT NUMBER

TO ANY PEACE OFFICE IN THE STATE OF ARIZONA

Proof by affidavit having been made before me on this day by
_JAMES F. Allaire_, I am satisfied that there is
probable cause to believe that:

( ) on the person(s) of:

(X) in and upon the premises (including all buildings, structures,
rooms, equipment, and vehicles used in connection or located
within the curtilage of said premises) known and described as:
mobile Home Residence, Light Brown IN Color W Situated on
Quinn ST South of Sunsites Quinn ST Extends West For.
LLL. The mobile Residence is The First Mobile Home
Paralell To The Quinn Road on The South Side

( ) in vehicle(s) described as:
A White Sofr Motor Home with Cross Country Tire
decorated with Blue And Grey Stripes Slanted downward.
The Grey Described As Silver/metalic Type compressors.
A CB Antennae on The drivers Top door

there is now being concealed certain person(s), property or things, namely:
Video Cassette Tapes Containing Sexual Acts of People
2 Video Cassettes Taped At Home, Containing Sexual Is
involving EARL Ball, D█████ B██, And Un, other Copys
J████████ ████ (B██) used to Photograph Sexual Acts.
Video Camera used to Photograph Sexual Acts.
which person(s), property or things

( ) were stolen or embezzled

(X) were (are being) used as a means for committing a public offense

(X) is (are) being possessed with the intent to use as a means of
coming a public offense

( ) is (are) in the possession of _____ to whom it
was delivered for the purpose of concealing it or preventing it
from being discovered

(X) which constitutes evidence tending to show that a public offense
as described fully in the affidavit has been committed

( ) _____ is currently being sought on an
outstanding arrest warrant

DISSEMINATION IS RESTRICTED TO CRIMINAL JUSTICE
AGENCIES AND AUTHORIZED NON-CJ AGENCIES ONLY.
SECONDARY DISSEMINATION TO UNAUTHORIZED AGEN-
CIES IS PROHIBITED BY PRIVACY AND SECURITY LAWS
20.21

Copy No._____

REL BY DCSO_____

179

YOU ARE THEREFORE COMMANDED (in the daytime) (in the daytime or nighttime) to make a search of the herein above described person(s), premises or things and if you find such or any part thereof, to retain such in your custody in accordance with a.r.s. 13-3920.

YOU ARE FURTHER COMMANDED to make due return of this writ within five (5) days of the date thereof as directed by law in accordance with A.R.S. 13-3918.

GIVEN UNDER MY HAND or direction and dated this 23 day of _____March_____, 19 89.

_____al Bollm_____
JUSTICE OF THE PEACE

=============================================================

WARRANT RETURN AND/OR RECEIPT FOR SEIZED PROPERTY

I certify that I am a Peace Officer of the State of Arizona.

That on _____ day of _____, 19____, I executed this Search Warrant by searching the person(s), premises or things commanded therein.

I furnished a copy of the warrant, together with a receipt for the property no seized, to the person from whom it was taken or in whose possession it was found, or in the absence of such person, I left a copy of this warrant together with such receipt, in the place where the said property was found.

The following inventory contains a true and detailed account of all property taken under this warrant:

THE WARRANT WAS NOT EXECUTED
THE MOTOR HOME WAS GONE
ALL CONTENTS OF THE Complaintant
STATEMENT WERE DETERMINED
FALSE

_____
(Type or printed name of Officer)

_____
(Signature of Officer)

_____
(Official Title)

_____
(Date)

DISSEMINATION IS RESTRICTED TO CRIMINAL JUSTICE AGENCIES AND AUTHORIZED NON-C-J AGENCIES ONLY. SECONDARY DISSEMINATION TO UNAUTHORIZED AGENCIES IS PROHIBITED BY PRIVACY AND SECURITY LAWS.
20.21
Copy No. _____
REL BY DCSO _____

2.

# EXHIBIT "C"

*Q1: Joe Knoblock/Cochise County Sheriff's Department Detective*
*Q2: David Flannigan/Cochise County Attorney's Office*
*A1: James Allaire/Former Cochise County Sheriff Department Detective*

It's September 9th, I mean September 13, 1999. It's 10:40 hours. We are here at the Sheriff's

Office here in Willcox. Present for this Interview is myself, Detective Knoblock, David

Flannigan from the Cochise County Attorney's Office and James Tyke Allaire. James why don't

you go ahead and state your name and address.

A1:  Well, my given names is James Franklin Allaire and my address currently is: P.O. Box

105, sorry, P.O. Box 207. The street address is 105 Jockel Road in Harlee, Montana,

59821 and the phone number is 406-726-3963.

Q1:  Since you go by Tyke most of the time right?

A1   Tyke is my name that I am known by; my given name is James. Tyke is a name that I

have lived by for 47 years now.

Q1   Even Earl referred to you as Tyke in the interview.

Q1   Why don't you go ahead and give us your background, as far as your law enforcement

background.

1

2  A1   My law enforcement background, I began here in Cochise County with the Police

3        Department in Willcox in 1991 and in 1992, I went to the Cochise County Sheriff's

4        Department and I worked uniform there for a period of about eight years and then I was

5        investigator for the northern end of Cochise County Sheriff's Office for twelve years and

6        retired for them, from the Sheriff's Office in October of 1992. And stayed around this

7        area here until Spring of 94 and currently, I am out of Montana, I am a truck driver, I own

8        my own truck and I'm driving all over the United States.

9

10  Q1   Ah, when you were doing investigations, you one time became involved in an

11        investigation involving Earl Ball and his family.

12

13  A1   Yes, I did.

14

15  Q1   Ah, how did you get involved in that investigation?

16

17  AI   We began with that investigation with a young boy that was, ah reportedly runaway and

18        when he, when they caught up to him or he turned himself in, I don't remember exactly

19        how it was but he came to me as a kid that was runaway and having problems at home.

20        And, ah, he was depicting his home life as being the reason why he was running away.

21        And, trying to get some other way to get out of the house is basically the way I

22        interpreted it.

23

1   Q1   Who was this kid?

2

3   A1   That was M███ B███

4

5   Q1   M████ B██, Earl Ball's Son?

6

7   A1   Yes, that is the way it ended up being.

8

9   Q1   Ok, what were some of the allegations that M█████ was making?

10

11  A1   M█████ was making allegations at the time; the first I ever ran into him was that ah, he

12       was ah, the subject of sexual abuse out there. That he was being forced to have sex with

13       his step-mother and a girlfriend of his fathers and being involved sexually with his father

14       and ah, I saw out of this whole thing, during this same time, he was, ah relating some

15       documentary toting that he had watched, involving sexual of families and how the family

16       had ended up getting lengthy prison terms and that was what he was gearing up to get.

17       You know, it just, the conclusion I came with the whole investigation was that this was

18       all made up. Just for that purpose; in order to obtain his freedom away from the house.

19

20  Q1   You had more than one dealing with M█████, is that correct?

21

22  A1   There was one other occasion that I officially got involved with him, ah, one other

23       investigation and ah, that was a physical abuse depiction of the investigation and the

3

1    same basic conclusion that he was trying to utilize everything in the world to get away

2    from being at the house.

3

4    Q1    Ah, who, ah, when you say he was depicting sexual relations with his step mom and

5          another girlfriend of this father, who are these people?

6

7    A1    They were D████, and I don't know her last name, don't remember it and ah gal by the

8          name of L████ and they were living at the house at the time and ah, when I got out there

9          to see the residence, we went out to the residence to you know follow up with the

10         investigation you know, to go ahead with it, ah, that's when I ran into those two.

11

12   Q1    Who was depicted as ah being Earl's wife?

13

14   A1    D████, and the girlfriend was L████

15

16   Q1    D████ told you she was his wife?

17

18   A1    That's right.

19

20   Q1    Ah, did you ever ah, have contact with a girl by the name of J████?

21

22   A1    I knew of a J████ existing there and I don't recollect any contact with her or you know at

23         that point in time, I did meet J████. You know, in and around living in the community.



1  J███was being depicted as a supposed adopted daughter of Earl Ball's and the best way

2  I remember on that was Earl Ball, EJ B██, I mean ah, not Earl Ball but M███B██, E.J.

3  B█ and this J███kid was that these were all kids that were, no place to go, that

4  actually ended up being dumped on Earl Ball to raise up and the parents of ah, EJ and

5  M███, the mother that they had been living with had died and Earl was the only place

6  for him to go and the same with this ah, J███, that her mother had somehow succumbed

7  to whatever and she had ended up being left out there too and so that became an adopted

8  daughter.

9

10  Q1  But, there was never any knowledge of yours of being a legal adoption of J███by Earl.

11

12  A1  Oh, no and it never was depicted as being a legal adoption and it was something that you

13  know we had you know, it's not an unusual thing to run into adoptive, ah, you know this,

14  people took up kids to live with them all along. It wasn't an unusual thing.

15

16  Q1  Was there any indication that Earl was their father?

17

18  A1  No, there was nothing depicted that Earl was actually their father that I ever remember.

19  Adopted daughter was always the case there, now the boys, definitely, those were, that

20  was depicted right off the bat as having been Earl's Boys.

21

22  Q1  Ah, was there any indications that Earl was having sexual relations with J███

23

1  A1  I don't recollect any, you know anything coming in there. The only sexual, you know
2      somewhere along the line in there it came out that she was pregnant but it was a
3      boyfriend in Elfrida that did this. I never had a depiction that Earl was having sex with
4      her and her being of minor age, it didn't ah, you know it didn't come into it.

5
6  Q1  Ok, in a report that you did ah, it says M███ B██ says J███ is Earl Sr.'s Girlfriend
7      and Earl Sr. is the father of J███'s Children.

8
9  A1  That's what M███ was claiming but according to the girls, there was D███ and
10     L███ there was no sexual involvement with this girl, she was pregnant by a boy down
11     in Elfrida. And this led along, you know, my conclusion out of this whole investigation
12     was this M███ B██ at the time was that he was lying and making up the whole story. I
13     didn't have any indication that anything that he was telling me was true.
           b/c there was no follow-up l
14
15 Q1  In all of your dealings with M███, is that the indication that you got that his stories
16     were made up.

17
18 A1  He was lying and making up the stories all the way through and you know it began with
19     the first case there, it was totally being, wanting to get out of the house, the television
20     show that he had watched you know, the documentary, his trying to escape, trying to
21     become emancipated away from his housing and ah, ah, I just didn't believe that, that he
22     was, what had, what he was saying had occurred, had occurred.

23

6  187

1  Q1  When you, when you talked with L____ and D____, did you feel that their, what they

2  had told you was truthful and that?

3

4  A1  Yes, I didn't believe that they were trying to hide anything. I mean they were very

5  openly telling me you know that she was married, this was the girlfriend, the two of them

6  lived together and they were happy being ah, sharing the relationship with Earl.

7

8  Q1  Yeah, ah so other than M____'s allegations of this other sex with J____, there were no

9  other allegations that were ever made that you can think of.

10

11  A1  No, I never had any indication that she was having sex with Earl.

12

13  Q1  Ah, at one time you had obtained a search warrant. Ah, some kind of, go into detail what

14  you obtained the search warrant for, at Earl Ball's.

15

16  A1  Based on M____'s interview here, I obtained a search warrant, you know believing his

17  story, you know I obtained a search warrant here and then headed to the residence to do

18  the search warrant and do the interviews. Ah, it just, you know I actually was going on

19  what the boy told me. Having no other contact with the case at all other than what he had

20  told me, the distance traveled, I got the search warrant and headed out there to do it. I

21  showed up, that's when I come in contact with the two girls. We got to interviewing

22  them and talking with Earl. I had the search warrant with me but I didn't hit the house

23  with it. I kept it in my pocket you know, that was in some way wrong at the time. And

7 188

1  in talking with the girls and in finding out what was going on with M████, the problems

2  that they were having with M████. This documentary that M████ had watched,

3  everything was coming up, ah, I had decided, you know just through working out there,

4  that there wasn't any need me even serving that search warrant. That we were not going

5  to find anything there.

6

7  Q1  When you mean you were talking, you mean to the two women. Who were you talking

8       to?

9

10 A1  L████ and D████. They were at the house. They were at the house and ah, I you

11      know, I run right into them and they were just sitting there very calmly answered all the

12      questions I had, you know in reference to anything, when there was mention of video

13      tapes, they just flat told me that there wasn't any there. There wasn't any they had even

14      volunteered to let me go and look in the RV. And, ah, never needed to serve the search

15      warrant, it just wasn't there, I didn't think that, you know, by the time I got through then,

16      I didn't think there was a crime occurred. And just, you know, the more I dealt that, the

17      more I figured M████ to be really lying about the whole thing, trying to for his own

18      personal means, messing up the whole mess.

19

20 Q1  So, that's basically why you felt that, you didn't serve the search warrant because you felt

21      the grounds it was issued on was not there.

22

| 1 | A1 | Yeah, the crime hadn't occurred. Without a crime, there is no existence of a search warrant. |
| 2 | | |
| 3 | | |
| 4 | Q1 | Ah, when you say video tapes. What did, is that what you had listed in your search |
| 5 | | warrant was videotapes. |
| 6 | | |
| 7 | A1 | Yes, there was videotapes in there. There were supposed to be videotapes that they had |
| 8 | | ah, forced them to watch. |
| 9 | | |
| 10 | Q1 | Ah, who was supposed to be on the video tapes? |
| 11 | | |
| 12 | A1 | I don't remember that. I don't remember if there was any depiction I don't know whether |
| 13 | | it was.... |
| 14 | | |
| 15 | Q1 | Was there any mention that these videotapes involved child pornography. |
| 16 | | |
| 17 | A1 | No, not that I remember. |
| 18 | | |
| 19 | Q1 | They were just... |
| 20 | | |
| 21 | A1 | Just sex tapes. |
| 22 | | |
| 23 | Q1 | Just regular pornography, not child pornography. |

But - what . sort
contents of ?
warrant ?

9
190

1

2  A1   Yes, that's all that M█████ could come up with was just pornographic tapes.

3

4  Q1   Ah, Ah, and they were supposed to be, who did you say was supposed to be on these

5       videotapes?

6

7  A1   Pardon?

8

9  Q1   Who did you say you thought was on the videotapes that M█████ was talking about?

10

11  A1   I don't recollect, you know, I don't recall anything as being specific on the tapes.

12

13  Q1   Yeah, ok, but the ok, um, what led you to believe that you didn't believe M█████?

14

15  A1   Well, the experience I have had with working with runaway kids and sex crimes. We

16       were into, at that time; there through the 80's you know sex had become quite a family

17       function problem. And we were into a lot of different ones where kids were utilizing the

18       false accusations to obtain the personal goals of getting away from becoming

19       emancipated from the parents not having to be disciplined by parents and I mean this

20       isn't the only case that that occurred on and ah, you know kids were coming and telling

21       all kinds of wild and wooly things and then you make the arrest and a week later, they

22       recant their statements.

23

1    A1    Yeah.

2

3    A1    So, it wasn't an unusual occurrence to have kids come in and lie and especially depict a

4         molestation.

5

6    Q1    What did you feel about M████'s knowledge about sex in general?

7

8    A1    Sex in general, M██ had, I think, my opinion of it at that time was that he had watched,

9         or he had observed some pictures in a Playboy magazine or something, he had heard of

10        sex but when it come down to the actual acts of sexual intercourse, M████ had no idea

11        how it was done. His knowledge of sex was sex that he wasn't involved in.

12

13    Q1    Oh, ok, was there any sexual act that M████ talked about to you in reference when you

14        started talking about this?

15

16    A1    In specific, the only thing that I remember, the grossest thing of all. The only sexual act

17        that he could even depict was that he was forced to lie under the intercourse with one of

18        the women licking the genitals of Earl Ball while he was coming. And thorough

19        questioning of this, the boy couldn't even describe an orgasm or the ejaculation or

20        anything to do with the sex act itself, and it was just you know that became a made up

21        type of occurrence that I didn't believe in. I didn't believe his story. I didn't think he

22        even knew what sex, how it occurred.

23

11
192

1   Q1   Ah, M███ is making allegations about you now saying that one time you tried to

2        strangle him and that you were having sexual relations with D████

3

4   A1   That what?

5

6   Q1   Yeah, M███ now, is making allegations that at one time, you picked him up from being

7        runaway and you tried to strangle him and ah…

8

9   A1   I never touched that boy.  And, as far as sex with D███.  I never even approached

10       D███, I never even tried; I had no inclination to have sex with D███.  That never

11       occurred to me.

12

13  Q1   Yeah, well these are just some of the allegations that he is telling the defense.

14

15  A1   Those kind of allegations, I've been accused of that kind of stuff many year, many times

16       and it's not an unusual occurrence.

17

18  Q1   There was a gentleman involved with them by the name of R████.  What can you tell

19       us about J███ R████?

20

21  A1   I don't know anything about J██ R████.  It was mentioned in the report.  As I read

22       my report, it was mentioned that he was at the house and being there that night that it all

23       occurred.  I don't recollect, and I never met J██.  I don't believe J██ was at that house.

12
(193)

1    I don't remember his being there. But his being there at the time that M██████was

2    making up the stories came the thought in mind also because if they were having this

3    wild orgy involving everybody. Jerry didn't participate in it. And all the people, even

4    M██████, no J████ didn't participate. Well that is not the way things would come to, in

5    my mind you know as him being there and not even being in the room. Well that also

6    lended, in my mind the credibility you know of my thoughts that this boy was lying and

7    making up this whole store.

8

9    Q1   So M██████basically led you to believe when the sex act was taking place that it was like

10         a big orgy or...

11

12   A1   Yes, it was an orgy involving the two girls and M█████ B███and Earl Ball and that, but

13         when you tried to get him to describe the sexual acts that were occurring, he had no...he

14         didn't know what he was talking about, he couldn't depict nothing. He couldn't describe

15         it, he couldn't go through with it, he just, it was just a blank.

16

17   Q1   Did M██████ever say who this R██████ who he was supposed to be or what his

18         involvement?

19

20   A1   No, I never, just that he was there. Just a friend of the family is all I know.

21

22   Q1   Was there any mention by anybody of any photographs? Ah, of any photographs of

23         sexual photographs?

1

2  A1  No, I don't remember any photographs. I don't even remember the videotapes that were

3  being videotaped of the family; I don't recollect that at all.

4

5  Q1  Did he ever say how many videotapes? There was one part there where you referred to

6  as videotapes?

7

8  A1  No.

9

10  Q1  Um, Um, oh when you were involved with some of this type of stuff, was Steve Pike the

11  CPS Worker that was.

12

13  A1  Steve Pike was a CPS Worker that was working down here at time and I don't remember

14  if he worked with me on this case or when his involvement came into it. I know he was a

15  Child Protective Service Worker at the time and I worked pretty close with Child

16  Protective Services, so...

17

18  Q1  Yeah, so basically your main feeling was that M████ lied to you about everything. Did

19  you ever talk some with EJ?

20

21  A1  I'm sure that EJ was talked to but EJ didn't have much at all. EJ was a scared little kid

22  that didn't do much talking. You couldn't get much out of EJ at all.

23

1    Q1    Yeah, cause he would have been fairly young.

2

3    A1    Too young.

4

5    Q1    Just so we got it to make it clear, the videotapes that M███████ had talked about had

6          D██████ and L████ on him and nothing was ever mentioned about J█████ being a juvenile

7          being on the videotapes.

8

9    A1    I don't specifically remember, I didn't read it in the report but I don't remember the tapes

10         being depicted as being of them girls. I don't, you know I don't specifically remember

11         who the tapes were of.

12

13   Q1    Ok, but like I said, there was no mention of any child pornography?

14

15   A1    No, child pornography never came into it. The only portion of child sex involved would

16         have been involved with M█████ himself and ah, you know even the watching of the

17         tapes by M█████ would have been you know some type of a sex crime. And by that

18         time, I didn't know, I didn't believe any crime. I never knew that these tapes involved

19         this woman.

20

21   Q1    Did D██████ and L████ ever say who this boy was in Elfrida that J█████ was supposed to

22         be involved with.

23

15
(196)

1    A1    No, I never got a name. Not that I recollect, I never got a name on it.

2

3    Q1    Ok. Ah, and you said I think, just to make sure, D██████ and L█████ both denied the

4        existence of any kind of tapes?

5

6    A1    Yes, Yeah, they said they weren't out there.

7

8    Q1    Oh, have you ever before obtained search warrants and never executed them?

9

10    A1    Oh, yeah, it wasn't unusual.

11

12    Q1    Ok, in your twelve years of investigations, you have had that happen more than once.

13

14    A1    Oh, more than once, I'd get a search warrant based on someone's information, get out

15        there and find that the crime hadn't occurred.

16

17    Q1    Yeah, there was also a report one time about EJ had made allegations about a cattle prod

18        and a doctor's investigation or something like that?

19

20    A1    Yes, I investigated that myself and that was an abuse story that he was, and there again he

21        was depicting himself as being picked on and being over-disciplined, and being abused

22        and wanting to be taken out of the house. Taken out of their custody and control and

23        given over to anybody, just get him out of there. And, out of that, I left, I had been

1     working around cattle prods all my life myself working with cattle and so forth. And

2     cattle prods do not burn. You know and that was the whole thing. He was showing a

3     couple of marks on his chest and I don't know how they go there but through the

4     investigation and everything else, and I hit myself with a cattle prod, I went down and got

5     a cattle prod and hit myself with the damn thing, it would raise a welt. It would raise a

6     red welt from the contraction of the muscle; it's not a burn. It's a contraction of the

7     muscle and it ended up being a chemical reaction in the muscle that makes a redness and

8     that will last for maybe, it will stay red for maybe three or four hours. But the cattle

9     prods don't burn; there is no heat involved in them. So you know after doing all of that

10     and after checking with the doctor and everything else on that, I knew, you know here we

11     are again lying to get away from discipline. Trying to get out of the house.

12

13 Q1   Did you ever feel that, that M███████ and EJ that one would make allegations and the other

14     would lie to help cover-up for the other?

15

16 A1   Oh yes, oh yes, those two boys, you know they were trying to get out on their own and...

17

18 Q1   This is one, a copy of an affidavit of search warrant. There is one place on the affidavit

19     that it mentioned about two videotapes and J█████ and the underage girl or something?

20     Does that do you remember anything?

21

22 A1   Videotapes, these were home tapes. Well that's the information on the indictment, I

23     didn't remember it right off until I read it here, ah and that's what I wrote and they were

1    home tapes containing sexual tapes involving Earl Ball, D███ B██, and underage
2    J███ ████ B██ which, I didn't remember that. But I went out there just for
3    videotapes; I didn't even remember the camera up until I just read it now. But, ah this
4    was what, you know this is the information that was obtained from the boy, from
5    M████. That's what he told me that they involved this girl and you know the girls after,
6    I guess they were home tapes because that is what I put in the search warrant. That is the
7    information that the boy hit me with. Now, when I showed up out there and went to
8    investigating with the girls, talking to the girls, you know all of that. And you know.

9

10   Q1   Did you talk to Earl that day?

11

12   A1   I don't remember. I couldn't tell you.

13

14   Q1   Ah, just to go back over just to make, again, you know you said you had dealings with
15        M████. Why didn't you believe M████ again?

16

17   A1   The stories that M████ was telling of sexual abuse and later on with the physical abuse
18        were all in my own opinion depicted solely by a young boy that was trying to utilize
19        everything to get out from under parental discipline. One to get out of that house and to
20        get away from there but he had no idea where he wanted to go. And that he would falsify
21        and tell anything in the world that would obtain a goal. His most recollection was the
22        documentary on TV where the parents were involved with sex crimes and got a bunch of
23        years in jail. And that the stories that he was telling were this, I didn't believe him

1      because the allegations of sex, he could not describe. You know his depiction of sex acts

2      did not fit anything. This was a boy that didn't know sex acts. I mean I heard that sexual

3      intercourse occurred but he couldn't describe it. You know, if you'd seen sexual

4      intercourse you would be able to describe it. This boy couldn't describe anything to me.

5

6    Q1    Did M█████ ever show you a newspaper clipping? At one time I know he had a

7      newspaper clipping that showed, I don't know if it was out of the Tucson Paper where

8      someplace, somebody was sentenced to like 400 years.

9

10   A1    And that's exactly what was going on with the. I don't know if M█████ showed that to

11      me or what but that was the case he referred to. And I might have obtained that

12      newspaper clipping myself. But, that was the thing that was being referred to. It was

13      some kind of newspaper or documentary or something that he was referring to. He was

14      trying to utilize that to, you know. That is what give him the idea in other words to make

15      the allegations. That's where he got the idea for the allegations.

16

17    Q1    About how old would have M█████ been?

18

19   A1    Fifteen or sixteen.

20

21    Q1    I don't think I have any other questions. Is there anything else that you can think of Tyke

22      that would be helpful?

23

1  A1  No, no I can't think of anything in the world. I just can't understand you know, even to

2  this day, my best looking back on it. I would still say that the boy was lying to me.

3

4  Q1  Um, can you think of any other contact that you have had with the Ball Family?

5

6  A1  The only other contacts that I had with the Ball Family was that I would run into them in

7  the Sunsites Area, there at the grocery store, or at the Willcox Grocery Store. And the

8  girls would talk to me and you know the kids that were there that were involved, you

9  know Laurie's Kids talk about them but that was it. They never made any allegations or

10  even conversation of any wrongdoing by any of them.

11

12  Q1  When you retired in what 92, your cases on Earl Ball were closed.

13

14  A1  Oh yeah, they were closed and finished up. I wasn't doing any work on them. They

15  were done long, basically right after the reports were in.

16

17  Q1  Yeah, you cleared them with unsubstantiated.

18

19  A1  Unsubstantiated, you know, not there.

20

21  Q1  Ah, anything else? I don't have anything else. If you want to go ahead and shut the tape

22  off, it's ah 11:14 hours.

23

1

2

3

202

**EXHIBIT "D"**

203

C.I.S.D.    CHILD /

RUIN█████ FI█   D█████

HCR 3 BOX 2930, WILLCOX, ARIZONA

M   W   1025-2   5'1   105   HZL   BLD

N/A

N/A     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

N/A

BALL, EARL JR. (E.J.)

HCR-3 BOX 2930, WILLCOX, ARIZONA

M   W   12   112177   N/A

04-21-90

05-01-90   2330

E.J.

HCR 3 BOX 2930 WILLCOX

J. ALLAIRE

90-1092

384-4515

N/A

STUDENT

RESIDENCE

384-4515   05-1090

N/A   13-2030

7201   CHILD ABUSE

N/A

| | | | | | | N/A |
|---|---|---|---|---|---|---|

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | N/A |
|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
| ☐ | ☐ | ☐ | ☐ | ☐ | | N/A |
| ☐ | | | ☐ | ☐ | | |
| | | ☐ | | | | |
| | | ☐ | ☐ | ☒ CARGO SIX HOT SHOT | | |
| | | ☐ | ☐ | CATTLE PROD | N/A | |
| | | ☐ | ☐ | | | |

N/A

N/A

N/A

N/A

SPECIAL ATTENTION   ☐ ☒ ☐ ☐ ☐ ☐ ☐ ☐ ☐ ☐

CONNECTING REPORTS   ☐ ☐ ☐ ☒   CASE STATUS ☒ ☐ ☐ ☐ ☐ ☐ ☐

MEDICAL INFORMATION   R.B. PATTERSON   DRAWER B   WILLCOX, ARIZONA

USE CONTINUATION SHEET FOR NARRATIVE.

E. KELLOGG   C-9     JAMES ALLAIRE   7201   DETECTIVE

_James Allaire_ (signature)

204

90-1092

C.C.S.D.   CHILD ABUSE

REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE
FINDINGS INCLUDING DISPOSITION OF EVIDENCE.
LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED

DISTRIBUTION: BISBEE RECORDS

　　　　DETECTIVE JAMES ALLAIRE

　　　　　COUNTY ATTORNEY'S OFFICE

SYNOPSIS: On 05-01-90, ████ (E.J.) ████ ALLEGED HE HAD

BEEN PHYSICALLY ABUSED AS DEFINED IN A.R.S. 13-3623 BY ██

D██████ ████████-B███ AND M██████ E. B███ ON APRIL 21, 1990.

VICTIM: ███ (E.J.) B██████

　　　　WHITE JUVENILE MALE    11-21-77

　　　　HCR 3 BOX 2930, WILLCOX, ARIZONA

SUSPECTS: D████████-B███

　　　　W/F/5'1"/105/BLU/BLD/DOB 10-26-62/SS#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

　　　　HCR 3 BOX 2930, WILLCOX, ARIZONA    PH: 384-4515

　　　　M████████ B███

　　　　JUVENILE WHITE MALE    DOB 06-26-73

　　　　HCR 3 BOX 2930, WILLCOX, ARIZONA

INVESTIGATIVE LEADS: L████ A████ DOB 03-28-65

　　　　HCR 3 BOX 2930, WILLCOX, AZ

　　　　384-4515

JAMES ALLAIRE    7201    DETECTIVE

205

| S.D. | CHILD ABUSE | |
|---|---|---|

REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE
FINDINGS INCLUDING DISPOSITION OF EVIDENCE.
LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED.

INVESTIGATIVE LEADS CONTINUED:

███ ████ █████ ████, DOB 03-14-74

HCR 3 BOX 2930, WILLCOX, ARIZONA

/ DR. ROBERT B. PATTERSON, M.D.

DRAWER B, WILLCOX, ARIZONA

\ DAN PROS, 5441 WEST 125TH STREET, SAVAGE, MN

(612) 890-3520

\ LYNN HART, 3 A DOE RANCH ROAD, WILLCOX, AZ

826-3063

EVIDENCE: PHOTOGRAPH OF INJURIES ON E.J. BALL

(1/2 SHOT "SABRE SIX" CATTLE PROD

HISTORY: M█████ AND E██, B███ WERE RAISED IN THE PHOENIX

AREA BY THEIR NATURAL MOTHER, JEANNE, UNTIL OCTOBER, 1988.

WITH THE DEATH OF THE MOTHER, CUSTODY WAS GIVEN TO THE NATURAL

FATHER, EARL BALL, SR.  IN THE EARLY PART OF 1989 THE FAMILY

MOVED TO THE SUNSITES AREA.

THE FAMILY UNIT IS MADE UP OF THE FOLLOWING PEOPLE:

█████ ████████, AGE 26, HAS DECLARED SHE IS THE WIFE OF

EARL BALL, SR.

█████ █████, AGE 22, IS CALLED A LIVE-IN GIRLFRIEND OF

EARL BALL, SR WITH CHILDREN FATHERED BY HIM.

| JAMES ALLAIRE | 7201 | DETECTIVE |
|---|---|---|

C.S.D. | CHILD ABUSE

▸ REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE
  FINDINGS INCLUDING DISPOSITION OF EVIDENCE.
  LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED.

██████ ██████ ██████, AGE 16, IS DECLARED BY D██████ AND

█████ TO BE AN ADOPTED-TYPE DAUGHTER OF EARL BALL SR. WITH

ONE CHILD FROM AN ACQUAINTANCE AT THE SIERRA SCHOOL.

H██████ D██ SAYS ██████ IS EARL SR'S GIRLFRIEND AND EARL SR.

IS THE FATHER OF ██████ CHILD.

IN THE WILLCOX AREA, THE BALL FAMILY WAS FIRST INVESTIGATED

FOR SEXUAL ABUSE IN REPORT #89-0618 TITLED FALSE REPORTING

INITIATED BY M██████ B██. THE FAMILY WAS RESIDING ON QUINN

ROAD SOUTH OF SUNSITES.

ON SEPTEMBER 30, 1989, EARL BALL JR. WAS CHARGED AS A JUVENILE

FOR BURGLARY AND CRIMINAL DAMAGE FOR BREAKING INTO THE

RESIDENCE OF LYNN HART ON COE RANCH ROAD AT THE SOUTH END OF

KANSAS SETTLEMENT ROAD, DR #89-2173.

CURRENTLY THE FAMILY LIVES AT THE SOUTH WEST CORNER OF KIMSEY

ROAD IN THE KANSAS SETTLEMENT AREA.

NARRATION: ON MAY 01, 1990, AT 1700 HOURS, OFFICER FARNSWORTH

OF THE WILLCOX POLICE DEPARTMENT TOLD ME HE HAD LEARNED THAT

EARL B██ HAD FAILED TO TAKE THE SCHOOL BUS HOME ON THIS DAY.

OFFICER FARNSWORTH HAD NOT YET BEEN CONTACTED BY THE PARENTS

REPORTING HIM RUNAWAY. OFFICER FARNSWORTH WAS UNABLE TO LOCATE

THE PARENTS. I TOLD FARNSWORTH THAT I WASN'T AWARE OF WHERE

THE FAMILY LIVED.

JAMES ALLAIRE #201, DETECTIVE

207

| C.C.S.D. | CHILD ABUSE | |
|---|---|---|

L. REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE
FINDINGS INCLUDING DISPOSITION OF EVIDENCE.
LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED.

AT 2100 HOURS ON MAY 01, 1990, I RECEIVED A PHONE CALL FROM

D██████. D██████ SAID SHE HAD REPORTED E.J. AS A RUNAWAY TO

THE WILLCOX POLICE. D██████ SAID SHE HAD LEARNED THAT E.J.

MAY BE HIDING OUT NEAR "WHITING BROTHERS" GAS STATION IN

WILLCOX. D██████ SAID SHE HAD CONTACTED WILLCOX POLICE WITH

THE INFORMATION AND WAS NOT SATISFIED WITH THEIR RESPONSE.

I CALLED OFFICER FARNSWORTH AND LEARNED THAT HE HAD RECEIVED

INFORMATION THAT E.J., ASSISTED BY SOME FRIENDS, HAD TIED

HIMSELF UP TO GIVE THE APPEARANCE THAT HE HAD BEEN KIDNAPPED.

OFFICER FARNSWORTH HAD FOUND E.J. AND WAS TALKING TO HIM.

AROUND 2230 HOURS OFFICER FARNSWORTH TOLD ME THAT HE HAD SENT

E.J. TO BILL TEETERS RESIDENCE FOR THE NIGHT AND WOULD CONTACT

D██████ FOR HER APPROVAL. FARNSWORTH LATER CALLED ME TO SAY

THAT D██████ HAD OBJECTED AND WAS ENROUTE TO WILLCOX TO OBTAIN

E.J. OFFICER FARNSWORTH THEN TOLD ME THAT E.J. WAS COMPLAINING

THAT PHYSICAL ABUSE BY D██████ WAS THE CAUSE FOR HIM NOT GOING

HOME ON THE 1ST. E.J. CLAIMED THAT D██████ HAD USED A CATTLE

PROD ON HIM, LEAVING BURN MARKS.

OFFICER FARNSWORTH TOLD ME HE HAD CHECKED E.J.'S ALLEGATIONS

AND DETERMINED THAT MARKS EXISTED ON HIM THAT POSSIBLY WERE

INFLICTED BY A CATTLE PROD.

I ARRIVED AT THE POLICE STATION TO INVESTIGATE. E.J. SHOWED

ME SOME MARKS UPON THE CENTER OF HIS CHEST AND HIS RIGHT

SHOULDER. THESE MARKS WERE OF TWO DESCRIPTIONS. ONE TYPE

WAS OF A SMALL RED CIRCLE TYPE WITH AN APPROXIMATELY 1/4 to 1

INCH IN LENGTH SIMILAR TO AN OLD, HEALING BURN MARK.

JAMES ALLAIRE  #201  DETECTIVE

208

| NAME OF REPORTING AGENCY | TYPE OF REPORT | | CASE NO. | UCR NO. |
|---|---|---|---|---|
| C.C.S.D. | CHILD ABUSE | | | 90-1092 |

REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE FINDINGS INCLUDING DISPOSITION OF EVIDENCE. LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED.

THESE MARKS AS SHOWN BY E.J. WERE SPACED APPROXIMATELY 2 INCHES

APART. E.J. TOLD ME THAT HE HAD GOTTEN THESE MARKS ABOUT 10

DAYS PRIOR, ON THE SATURDAY ONE WEEK BEFORE LAST SATURDAY,

OR 04-21-90.

E.J. TOLD ME THE MARKS HAD BEEN INFLICTED BY D██████ USING

THE CATTLE PROD WHILE M██████ HELD HIM DOWN FOR HER. THIS

ACTION WAS A FORM OF PUNISHMENT FOR E.J. NOT DOING HIS CHORES.

E.J. SAID D██████ HAD SHOCKED HIM WITH THE CATTLE PROD ABOUT

100 TIMES.

I PHOTOGRAPHED THE MARKS ON E.J.'S CHEST WITH A 35 MM CAMERA.

THESE PHOTOGRAPHS WERE DONE UTILIZING THE ROOM LIGHTING AT

THE POLICE STATION AND THEN USING A FLASH ATTACHMENT AT

DIFFERENT ANGLES.

UPON COMPLETION OF THIS PHASE OF MY INVESTIGATION I ARRANGED

FOR E.J. TO SPEND THE NIGHT AT THE RESIDENCE OF BILL TOGRAMS

A PERSON WELL KNOWN TO ME.

AT 1:00 HOURS I INTERVIEWED THE STEPFATHER/SUSPECT, D██████

HALL AT THE POLICE STATION IN WILLCOX. D██████ HAD ARRIVED

TO PICK UP E.J.

I TOLD D██████ THAT I WAS INVESTIGATING SOME ALLEGATIONS OF

ABUSE THAT HAD BEEN ALLEGED BY E.J. I INFORMED D██████ THAT

I HAD PLACED E.J. IN A HOME FOR THE NIGHT AND WOULD REFER HIS

CUSTODY TO D.E.S. THE FOLLOWING MORNING.

I ASKED D██████ HOW HOME LIFE HAD BEEN WITH E.J. AND HOW SHE

FELT HE WAS DOING. D██████ SAID IT HAS BEEN REAL GOOD. SHE

WASN'T AWARE OF ANY PROBLEMS, ALTHOUGH RECENTLY E.J. HAD

| REPORTING OFFICER(S) | SERIAL NO. | | | |
|---|---|---|---|---|
| JAMES ALLAIRE | 7201 DETECTIVE | | | 209 |

REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE
FINDINGS INCLUDING DISPOSITION OF EVIDENCE.
LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED.

SERIAL NUMBER

MISSED A SCHOOL FIELD TRIP BECAUSE HE HAD NOT DONE HIS CHORES

AT HOME.

I ASKED D▓▓▓▓ HOW DISCIPLINE WAS ADMINSITERED TO E.J.

D▓▓▓▓ SAID MOST OF THE TIME HE WOULD BE YELLED AT AND

OCCASIONALLY A SPANKING WAS GIVEN.

I TOLD D▓▓▓▓ THAT E.J. HAD SOME MARKS ON HIS CHEST AREA AND

ASKED HER IF SHE COULD EXPLAIN HOW THEY HAD OCCURRED. D▓▓▓▓

SAID SHE COULD NOT EXPLAIN THEM BECAUSE SHE HAS NOT SEEN THE

MARKS. D▓▓▓▓ SAID SHE NORMALLY ONLY SEES HIS FACE AND ARMS

SINCE E.J. IS ALWAYS DRESSED WHEN AROUND HER. D▓▓▓▓ SAID

SHE HAS OCCASIONALLY SEEN SCRATCHES ON E.J.'S HANDS AND ARMS

FROM WORK OR PLAY INJURIES.

I ASKED D▓▓▓▓ HOW E.J. AND M▓▓▓▓ (OLDER BROTHER) WERE

GETTING ALONG TOGETHER. D▓▓▓▓ SAID SO-SO. D▓▓▓▓ SAID

THAT A FEW MONTHS BACK, WHEN E.J. WAS STILL GOING TO PEARCE

SCHOOL, M▓▓▓▓ HAD "BEAT THE SHIT OUT OF E.J.". D▓▓▓▓ DID

NOT KNOW WHAT THE BOYS WERE FIGHTING ABOUT. MOST OF THE

INJURIES FROM THIS FIGHT WERE ON E.J.'S FACE.

I ASKED D▓▓▓▓ IF ▓▓▓▓ AND E.J. PLAYED AROUND ZAPPING

EACH OTHER WITH A CATTLE PROD. D▓▓▓▓ TOLD ME THERE WAS A

CATTLE PROD AT THE RESIDENCE FOR USE IN MOVING THEIR SHEEP

AROUND THE FARM. THE BOYS HAVE USED THE PROD TO ZAP EACH

OTHER DURING HORSE PLAY AROUND THE HOUSE. D▓▓▓▓ INDICATED

TO ME IN CONVERSATION THAT EVERYONE AT THE HOUSE EXCLUDING

THE TWO BABIES HAS USED THE HOT SHOT TO ZAP EACH OTHER DURING

HORSE PLAY.

JAMES ALLAIRE | 7201 | DETECTIVE

210

REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE
FINDINGS INCLUDING DISPOSITION OF EVIDENCE.
LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED.

THESE OCCASIONS HAD OCCURRED IN FUN WHENEVER THE RECEIVING
PERSON WAS UNAWARE. D███████ WENT ON TO SAY THAT ON OCCASION
M███████ AND E.J. HAVE USED THE HOT SHOT ON EACH OTHER MORE
SERIOUSLY _ DURING OCCASIONS WHEN THEY HAD BEEN LEFT ALONE
AND WITH E.J. BEING THE SMALLER PERSON WAS THE RECEIVER MORE
THAN M███████. E.J. HAS COMPLAINED BEFORE ABOUT MICHAEL PICKING
ON HIM AND THE FAMILY HAS TRIED TO CONTROL THESE ACTIONS.

I ASKED D███████ IF SHE HAD EVER USED THE CATTLE PROD ON EITHER
BOY IN PARTICULAR, AS A FORM OF PUNISHMENT. D███████ SAID SHE
HAD ZAPPED THE BOYS OCCASIONALLY WHILE GOOFING AROUND WITH
THEM IN FUN. D███████ SAID TO HER KNOWLEDGE THE CATTLE PROD
HAD NOT EVER BEEN USED AS A FORM OF PUNISHMENT BY ANY OF THE
ADULTS IN THE HOME.

I ASKED BABETTE IF SHE HAS EVER SEEN ANY MARKS ON ANYONE LEFT
BY THE CATTLE PROD. D███████ SAID SHE HAD NOT RECEIVED ANY
MARKS ON HER WHEN SHE WAS ZAPPED. SHE HAD SEEN A MARK LEFT
ONE TIME ON M███████ A COUPLE OF DAYS AFTER THEY BOUGHT IT.
D███████ DESCRIBED THIS MARK AS A SMALL RED MARK SIMILAR TO A
CIGARETTE BURN.

I DESCRIBED THE MARKS ON E.J. TO D███████ AND TOLD HER OF HIS
ALLEGATIONS THAT SHE HAD ZAPPED HIM 100 TIMES 10 DAYS AGO.
WHILE M███████ HELD HIM DOWN. D███████ SAID SHE HAS NOT USED
THE CATTLE PROD AS A FORM OF DISCIPLINE AND COULD NOT REMEMBER
WHAT E.J. MIGHT HAVE BEEN DISCIPLINED FOR.

| L. COMPL. NO. | L. DR/CASE NO. | L. PAG |
|---|---|---|
| | 90-1092 | |

NAME OF REPORTING AGENCY: C.C.S.D.
TYPE OF REPORT: CHILD ABUSE

REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE FINDINGS INCLUDING DISPOSITION OF EVIDENCE.
LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED.

D██████ COULD OFFER NO REASON WHY E.J. WAS MAKING THE ALLEGATIONS NOR GIVE AN EXPLANATION AS TO WHY E.J. DID NOT COME HOME ON THE BUS TODAY. D█████ SAID THE BOYS HAVEN'T QUITE ACCEPTED THE RESPONSIBILITIES AND DIFFERENCES OF LIVING IN THE COUNTRY WITH THEIR FATHER. D██████ WENT ON TO SAY THAT E.J. HAD SOME PROBLEMS AT THE PEARCE SCHOOL AND A PSYCHOLOGIST HAD DEPICTED E.J. AS POSSIBLY SUICIDAL AND CAPABLE OF INFLICTING SELF INJURY TO OBTAIN HIS OWN DESIRES. FOR THIS REASON E.J. WAS TRANSFERRED TO THE WILLCOX SCHOOL TO PROVIDE HIM ADDITIONAL ASSISTANCE.

WHEN ASKED ABOUT EARL'S (THE FATHER) WHEREABOUTS, D██████ TOLD ME HE HAD LEFT THIS MORNING WITH M██████ AND J█████ TO SPEND SEVERAL DAYS IN PHOENIX TENDING TO THE FAMILY BUSINESS AND GETTING MICHAEL'S NEW GLASSES. D██████ SAID E.J. WAS LEFT AT HOME TO ASSIST WITH THE CHORES AND GO TO SCHOOL.

ON 05-02-90 AT 0630 AM, I REFERRED THE CUSTODY OF E.J. TO D.E.S. EXPLAINING MY INVESTIGATION UP TO THIS TIME. D.E.S. MADE ARRANGEMENTS FOR A MEDICAL EXAMINATION OF E.J. BY DOCTOR R.B. PATTERSON. DR. PATTERSON'S CONCLUSION FROM THE EXAMINATION (ATTACHED REPORT) WAS THAT THE MARKS WERE IDENTIFIABLE IN A PATTERN CONSISTANT WITH THE POINTS ON A CATTLE PROD AND POSSIBLY WERE INFLICTED BY A CATTLE PROD. DR. PATTERSON CONFERRED WITH D.E.S. THAT SIMILARITIES WERE NOTED BUT HE HAD NO KNOWLEDGE OF A CATTLE PROD INFLICTING THESE TYPE INJURIES.

ON 05-02-90 I RECEIVED A PHONE CALL FROM LYNN HART (DR 89-2173) MS. HART HAD RECEIVED A CALL FROM D██████ THE PREVIOUS EVENING

JAMES ALLAIRE    7201    DETECTIVE

212

| NAME OF REPORTING AGENCY | TYPE OF REPORT | | | COMM. OF # | | OFFENSE | PAGE |
|---|---|---|---|---|---|---|---|
| C.C.S.D. | CHILD ABUSE | | | | | 90-1092 | 10 |
| ITEM NO. | SUBM | | REPORT IN NARRATIVE FORM DETAILS OF THE OFFENSE AND INVESTIGATIVE FINDINGS INCLUDING DISPOSITION OF EVIDENCE. LIST AND IDENTIFY ALL PROPERTY AND ADDITIONAL PERSONS INVOLVED. | | | SERIAL NUMBER | |

DEPICTING E.J. AS A RUNAWAY. MS. HART WAS CONCERNED THAT E.J. MIGHT COME TO HER RESIDENCE TO DO FURTHER DAMAGE. I TOLD MS. HART THAT E.J. WAS IN OUR CUSTODY. MS. HART CONTINUED HER CONVERSATION WITH ME BY TELLING ME THAT E.J. WAS DANGEROUS AND WAS A LIAR. MS. HART DEPICTED E.J. WOULD LIE ABOUT EVERYTHING TO OBTAIN HIS OWN GAIN.

ON 05-04-90 I WENT TO THE RESIDENCE OF HALL'S IN THE KANSAS SETTLEMENT AREA. I OBTAINED FROM D███████ THE HOT SHOT. THIS HOT SHOT IS A SABRE SIX MODEL.

I AM FAMILIAR WITH THIS DEVICE FROM PERSONAL EXPERIENCE. I HAVE UTILIZED THIS TYPE OF DEVICE FOR MANY YEARS TO MOVE LIVESTOCK. I HAD ACCIDENTALLY ZAPPED MYSELF ON THE ARMS WITH THIS TYPE OF DEVICE. THIS TYPE OF DEVICE DID NOT LEAVE ANY MARKS ON ME.

I EXPERIMENTED WITH THE CATTLE PROD AND WAS ABLE TO PRODUCE AN ELECTRIC ARC OUT TO A DISTANCE OF 1/16 INCH ON THE BLADE OF MY POCKET KNIFE. THIS ARCING PRODUCED ENOUGH HEAT TO CAUSE A LIGHT BROWN DISCOLORATION ON THE RESIDUAL OILS AFTER FIVE SECONDS. TOUCHING THE BLADE WITH MY FINGER AFTER CONSTANTLY ARCING ONE MINUTE ON THE BLADE PRODUCED NO DISCERNABLE TEMPERATURE ON THE BLADE. DIRECT CONTACT PRODUCES A SENSATION OF PAIN FROM MUSCLE TISSUE CONTRACTION IF ZAPPED. HOWEVER, WOULD NOT LEAVE ANY RESIDUAL SCARRING OF TISSUE. WHILE AT THE RESIDENCE I TALKED WITH D███████ AND L██████ (THE GIRLFRIEND). NO ADDITIONAL INFORMATION WAS DEVELOPED FROM THIS CONVERSATION.

| | | REPORTING OFFICER | JAMES ALLAIRE | 731 | DETECTIVE | | |

# EXHIBIT U

CHRIS M. ROLL
Cochise County Attorney
BY: DAVID P. FLANNIGAN
BAR NO. 007162
P.O. Drawer CA
Bisbee, Arizona 85603
(520) 432-9377
Attorney for the State

FILED

99 NOV 16 PM 4:06

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCHISE

STATE OF ARIZONA                    )    NO. CR98000296
                                    )    NO. CR96000345
                    Plaintiff,      )
                                    )
        vs.                         )    OPPOSITION TO MOTION
                                    )    TO DISMISS
EARL BALL,                          )
                                    )
                    Defendant.      )
                                    )
_____)

COMES NOW, the Cochise County Attorney, CHRIS M. ROLL, by and through his

undersigned Deputy, DAVID P. FLANNIGAN and opposes the above entitled motion as follows:

Defendant's Motion should be denied as predicated upon unsupported conclusions and

contrary to the law.   Logically, the Motion must fail because it is premised upon the assumption

that since the State had information about two video tapes portraying J██████ B██ and other

women engaged in sex with Defendant Ball, that those must be the very same video tapes

seized from Mr. Ball's residence.  There are no grounds to make that leap of faith.  The

evidence showed that the tapes seized were created from other videos, and J██████ B██

appears in an identical segment as a child on both tapes and on one tape many years later as

an adult.  Indeed, J██████ testified that Ball had continued videotaping her until about five years

ago.  Accordingly, there exists no foundation to support the conjecture that the videotapes

seized are the same ones referred to in the unexecuted search warrant.  Nevertheless, the

whole of Defendant's argument is based upon the assumption that the two tapes seized are the

- 1

1   identical two tapes mentioned years before by M███████B██. There is no reason the set aside
2   the jury verdict upon such an unfounded speculation.

3       Logically, the defense position also fails because it is predicated on the false
4   hypothesis that "the only reason" Defendant Ball continued to produce, possess and exhibit
5   child pornography over the years was due to the State's allegedly negligent failure to catch him.
6   In other words, Defendant Ball wants to blame the State for his continuing illegal activities, and
7   takes the position that he is free to continue to commit crimes since he didn't get caught for
8   more than 7 years. Such alleged "grandfathered rights to commit crime" do not exist. Each day
9   the Defendant continues to possess the pornography is a new offense. If Defendant had gotten
10  rid of his pornography collection more than 7 years before being charged, the Statute of
11  Limitations might have some applicability. It has no application to the present case, and the
12  "liberal" construction in favor of the Defendant applied to a notion of zero weight is still entitled to
13  zero effect.

14      L███ █████, Defendant's ex-wife, testified that until the time of their separation the
15  Defendant would regularly exhibit the videotapes seized. Indeed, each exhibition was a re-
16  victimization of Defendant's daughter J████ B██. To suggest that he has the perfect right to
17  continue such activities is to ask this court to pervert totally any concept of justice.

18      There are no cases involving continuous possession interpreting the Arizona statute of
19  limitations. It is a well-established principle of law, however, that for crimes of a continuous
20  nature, such as possession of illegal contraband "the statute of limitations does not begin to run
21  from the occurrence of the initial act...but from the occurrence of the most recent act or until
22  such course of conduct terminates." 21 Am Jur, Criminal Law, Sec. 298 pp 352-353. ("A
23  'continuous offense' or 'continuing offense' is a continuous, unlawful act or series of acts set in
24  motion by a single impulse and operated by unintermittent force; it is a breach of criminal law,
25  not terminated by a single act or fact, but subsisting for a definite period and intended to cover
    or apply to successive similar obligations or occurrences.") In this regard, possession and

- 2

215

1   retention of stolen property were held to be continuous offenses that did not end until the police

2   recovered the stolen property, and that the statute of limitations did not begin to run until the

3   offense ended. State v. Lodermeier, (1992, SD) 481 NW2d 614, 24 ALR5th 810. See also

4   Morris v. State, 595 So. 2d 850 (Miss. 1991))("The sexual abuse of children has been

5   recognized as a continuing course of conduct and the statute of limitations does not begin to run

6   until such course of conduct terminates." See also 22 C.J.S. Criminal Law Sec. 201 Continuing

7   Offenses and cases cited there under.

8          Defendant would have the court to believe that there really is no crime constituting a

9   continuing course of conduct. Defendant's comparison of the crime of failure to register for the

10  draft with the possession of child pornography is especially ludicrous. Taken to its logical

11  conclusion no one could be prosecuted for possession of anything illegal if they could avoid

12  prosecution for seven years where the government might have had reason to know they had

13  such contraband. That is simply not the law, and all of Defendant's disputations to the contrary

14  do not make it the law. It is simply nothing more than legal double talk to argue as Defendant

15  does that the crime of continuing to possess illegal contraband is not a continuous crime.

16         Defendant's Motion is devoid of logical and legal merit and basically is asking this court

17  to create a great miscarriage of justice by setting aside a conviction duly decided and

18  prosecuted well within the applicable statute of limitations. The Motion, therefore, should be

19  denied.

20         RESPECTFULLY submitted this 15th day of November, 1999.

21

22                                          CHRIS M. ROLL
                                            Cochise County Attorney
23
                                            BY:
24                                          DAVID P. FLANNIGAN
                                            Deputy County Attorney
25


                                      - 3 -


216

1  Copies of the foregoing
   mailed/delivered this 16th
2  day of November, 1999, to:

3  Hon. Matthew W. Borowiec
   Judge of the Superior Court
4  Division I

5  Public Defender's Office

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 4

217

# EXHIBIT V

**FILED**

Time_____M

NOV 24 1999

DENISE I. LUNDIN
CLERK SUPERIOR COURT
BY _m. EEUlele_ DEPUTY

OFFICE DISTRIBUTION
[ ] APPEALS
[ ] BONDS: REFUND/FORFEITURE
[ ] FINES/ATTY. FEES/RESTITUTION
[ ] CHANGE OF VENUE
[ ] JURY FEES
[ ] ATTORNEY: APPT & CLAIMS
[ ] SUPPORT
[ ] DIVISION
[X] MAILED  11-24-99 sl—

**SUPERIOR COURT OF ARIZONA**
COUNTY OF COCHISE

Date November 23, 1999

CASE:　　**STATE OF ARIZONA**　　vs.　**EARL BALL**

MINUTE ENTRY ACTION:　**PENDING MOTIONS**　　CASE NO: **CR98000296 MAIN CASE (CR98000345)**

JUDGE HONORABLE MATTHEW W. BOROWIEC
DIVISION One
COURT REPORTER Merle R. Briefer
ADDRESS & PHONE

DENISE I. LUNDIN, CLERK

By Stephanie L. Williams 11/24/99, Deputy
Docketed by _____

PRESENT:　State present by David P. Flannigan, Deputy County Attorney
Defendant present in person and by Donna M. Bechman, Deputy Public Defender, and
Mark A. Suagee, Public Defender

The above-entitled matter came before the court at 1:36 p.m. for hearing on pending motions.

Counsel announced ready to proceed.

The court proceeded with the defendant's motion to vacate judgment.

Ms. Bechman presented argument in support of the defendant's motion to vacate judgment.

The court made inquiry of Ms. Bechman with regard to whether this is proper or if this should be

a court of appeals issue.

Ms. Bechman responded.

Mr. Suagee responded.

Upon inquiry from the court, Ms. Bechman advised that the motion is timely.

Mr. Flannigan presented argument in response to the defendant's motion to vacate judgment.

Ms. Bechman presented argument in reply.

Mr. Flannigan presented further argument.

It is ORDERED the defendant's motion to vacate judgment shall be taken under advisement.

The court addressed counsel with regard to the defendant's motion to preclude testimony of L████

████ B██.

Mr. Suagee requested the court proceed with the defendant's motion to dismiss.



The court agreed.

Mr. Suagee presented argument in support of the defendant's motion to dismiss.

Mr. Flannigan presented argument in response.

Mr. Suagee presented argument in reply.

It is ORDERED the defendant's motion to dismiss shall be taken under advisement.

The court proceeded with the defendant's motion to preclude testimony of L██████ B██.

Ms. Bechman presented argument in support of the defendant's motion to preclude testimony of L█████

█████ B██.

Mr. Flannigan presented argument in response.

Ms. Bechman presented argument in reply.

It is ORDERED the defendant's motion to preclude testimony of L█████ █████ B██ shall be taken

under advisement.

Mr. Flannigan addressed the court with regard to the state's motion to allege prior conviction.

It is ORDERED the state's motion to allege prior conviction shall be taken under advisement.

Proceedings terminated at 2:32 p.m.

xc:  County Attorney--Flannigan
     Public Defender--Bechman/Suagee



DRUCE DISTRIBUTION
| | APPEALS
| | BONDS: REFUND/FORFEITURE
| | FINES/ATTY. FEES/RESTITUTION
| | CHANGE OF VENUE
| | JURY FEES
| | ATTORNEY: APPT & CLAIMS
| | SUPPORT
| | DIVISION
|✗| MAILED 11-24-99 slw

SUPERIOR COURT OF ARIZONA
COUNTY OF COCHISE

Date November 24, 1999

# FILED

Time_____M

NOV 2 4 1999

DENISE I. LUNDIN
CLERK SUPERIOR COURT
BY _mEED/slw_ DEPUTY

CASE: **STATE OF ARIZONA** vs. **EARL BALL**

---

MINUTE ENTRY ACTION: **DECISION**

CASE NO: **CR98000296 MAIN CASE (CR98000345)**

---

JUDGE HONORABLE MATTHEW W. BOROWIEC
DIVISION **One**
COURT REPORTER
ADDRESS & PHONE

DENISE I. LUNDIN, CLERK

By Stephanie L. Williams 11/24/99, Deputy
Docketed by _____

---

PRESENT: ------------------------------

The court having considered defendant's motions to dismiss the indictment in CR98000345, to vacate

judgment and to preclude testimony of L▮▮▮▮ ▮▮▮▮▮ B▮▮, and good cause appearing, it is

ORDERED as follows:

1. The motion to dismiss is DENIED.

2. The motion to vacate judgment is DENIED.

3. The motion to preclude testimony of L▮▮▮▮ ▮▮▮▮▮ B▮▮ is reserved until such time as she is called

to testify, at which time an evidentiary hearing will be had to determine if in fact she is married to defendant.



xc: County Attorney--Flannigan
Public Defender--Bechman/Suagee

# EXHIBIT W

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2      IN AND FOR THE COUNTY OF COCHISE

3

4

5    STATE OF ARIZONA,             )        COPY
                                   )
6            Plaintiff,            )
                                   )
7            vs.                   )     No. CR98000296
                                   )
8    EARL BALL,                    )
                                   )
9            Defendant.            )
     _____)

10

11
                       December 10, 1999
12                      Bisbee, Arizona

13

14      BEFORE:  The Honorable MATTHEW W. BOROWIEC, Judge

15

16      REPORTER'S TRANSCRIPT OF EXCERPT OF PROCEEDINGS
                      JURY TRIAL - DAY ONE
17

18

19   APPEARANCES:

20   FOR THE PLAINTIFF:
     David Flannigan, Deputy County Attorney
21
     FOR THE DEFENDANT:
22   Donna Bechman, Deputy Public Defender

23

24                                    REPORTED BY:
                                      Penny Heins
25                                    CCR No. 50219

221

1                    THE COURT:  Yes, it may.

2           Q    BY MR. FLANNIGAN:  Okay.  Did there come a point

3    in time when you came to live with Earl Ball?

4           A    It was after my grandmother died.  And I was

5    around eight-and-a-half, I believe.

6           Q    And that was in Carson City?

7           A    Well, she still lived in Reno at the time.

8           Q    But when you went to live with Earl Ball.

9           A    Oh, yes, sir.

10          Q    And who was living there at his residence?

11          A    His wife Jeannie, my mother, and myself when I

12   moved there.  And occasionally, I had a small brother and

13   sister that my mom had visitation rights to, and they would

14   come visit.

15          Q    All right.  Now did there come a point when you

16   moved to your residence in Carson City, Nevada?

17          A    Yes, sir.

18          Q    Okay.  Where did you go?

19          A    Well, we traveled all over.  We was in California

20   and Nevada and we ended up in Canada.

21          Q    How old were you when you ended up in Canada?

22          A    I'm going to say approximately eleven.

23          Q    And what year was this?

24          A    I don't remember really what year it was.

25          Q    But you were born in '64, so would '75 sound

222

1  about right?

2      A    Somewhere in there, yes, sir.

3      Q    Okay. Whereabouts in Canada was it that you were

4  living?

5      A    Well, we first had the apartment in Vancouver,

6  British Columbia. And he also purchased a house in Langley,

7  British Columbia.

8      Q    How far was Langley from Vancouver?

9      A    I would say approximately 45 minute drive.

10     Q    And how long did you live there?

11     A    Oh geez. We went back and forth because he had

12 both places.

13     Q    Between Vancouver and Langley you mean?

14     A    Yes, sir.

15     Q    Yeah. But how long were you up there in Canada?

16     A    I would say at least three, three years.

17     Q    Now do you remember the place in Langley, what it

18 looked like?

19     A    Yes, sir, I do. It was, it was a two-story home.

20     Q    In the city?

21     A    No, it was kind of country. People had horses

22 and rabbits.

23     Q    Okay. Let me show you -- and you've seen these

24 before. This is state's exhibit -- it needs to be marked

25 actually.

1          Okay. State's Exhibit 12 for identification.

2    And just go through the pictures quickly and tell me if you

3    recognize the pictures, what it portrays?

4          A    Yes, sir, I do recognize the pictures.

5          Q    What are they?

6          A    They are sexual photographs of myself, my mother

7    R███ K█████, and T██████ T███████ (phonetic) and Earl Ball.

8          Q    What was, at this point what was your mother's

9    occupation and T██████'s?

10         A    They were both prostitutes.

11         Q    You appear in all of the photos? Did you notice

12   that, whether you appeared in all of them?

13         A    Yes, sir, I do.

14         Q    And there's a man that appears in the photos?

15         A    Yes, sir.

16         Q    And who is that man?

17         A    Earl Ball.

18         Q    Okay. And the other two women that appear?

19         A    My mother R██ and T██████ T███████.

20         Q    Is there any, any, anything about T█████ that

21   you are able to identify her?

22         A    Well, she has the rose tattoo on her breast.

23         Q    Now the pictures that Mr. Ball do not appear in,

24   who took those pictures?

25         A    Earl took the ones that he's not in.

224

1    Q    And the ones that he's in, who took those?

2    A    It would have either been my mother or T██████.

3    Q    Did his wife Jeannie participated in any of this?

4    A    No, sir, she did not.

5    Q    Okay.  There's a -- I'm going to refer to the

6    final numbers here, 3-G.  And take a look at how you appear in

7    3-G.  How old do you think you were in that photo?

8    A    I'm guessing 12, 13.

9    Q    Okay.  And on your right is T██████ with the

10   tattoo on her breast?

11   A    Yes, sir.

12   Q    And the other lady is your mother?

13   A    Yes, sir.

14   Q    Okay.  On your left.

15   A    Yes, sir.

16   Q    Were all these pictures taken about the same

17   time?  Can you tell that?  Or were they taken at different

18   times?  Just looking at the way you appear in the pictures.

19   A    They were -- you know, it might have been like a

20   month or two later maybe.  They were at different times.  It

21   wasn't the same day.

22        THE COURT:  Were they taken the same year?

23        THE WITNESS:  I would say yes.

24        MR. FLANNIGAN:  And I'd offer State's Exhibit 12

25   into evidence at this time.

225

1           MS. BECHMAN:  No objection, your Honor.

2           THE COURT:  12 may be admitted.

3           MR. FLANNIGAN:  If I can show it to the jury?

4           THE COURT:  You may.

5           THE COURT:  Are you going to wait until they look

6    at it, counsel?

7           MR. FLANNIGAN:  Well, I --

8           THE COURT:  I would like you to proceed.

9           MR. FLANNIGAN:  All right.

10          Q    BY MR. FLANNIGAN:  Let me ask you whatever

11   happened to T███████, T██████o?

12          A    I do not know.  She was just one day not there.

13   She was gone.

14          Q    And where did you live at the time she was gone?

15          A    I believe she disappeared when we were living in

16   Point Roberts, Washington.

17          Q    Okay.  Now let's take this slowly.  You were up

18   in Canada when, when these pictures were taken?

19          A    Yes, sir.

20          Q    Okay.  And then when did you move to Point

21   Roberts, Washington?

22          A    I would say '78, '79.  We were living there when

23   Mount Saint Helens blew up.

24          Q    Okay.  Did you still have the place up in Langley

25   at that time?



# EXHIBIT X

FILED
.Time_____M

DEC 1 6 1999

DENISE I. LUNDIN
CLERK SUPERIOR COURT
BY _____DEPUTY

OFFICE DISTRIBUTION
APPEALS
BONDS: REFUND/FORFEITURE
FINE/PATTY-FEES/RESTITUTION
CHANGE OF VENUE
JURY FEES
ATTORNEY:APPT & CLAIMS
SUPPORT
DIVISION
MAILED
12-16-99
MEED
CASE: STATE OF ARIZONA

**SUPERIOR COURT OF ARIZONA**
COUNTY OF COCHISE
Date **December 15, 1999**

vs.                                         **EARL BALL**

                                                                    296

MINUTE ENTRY ACTION: **EVENT CODE 910 JURY TRIAL - VERDICT**          CASE NO.: CR98000345

JUDGE **HONORABLE JAMES L. CONLOGUE**          DENISE L. LUNDIN, CLERK
DIVISION **FIVE** (Division One Case)
COURT REPORTER Merle Briefer          By **Dorothy A. Pederson (12/16/99)**, Deputy
ADDRESS & PHONE          Docketed by ___MEED___

PRESENT:          State present by Gerald Till, Deputy County Attorney
                  Defendant present and by Donna Bechman, Deputy Public

Verdicts were reached at 3:45 p.m.

At 4:00 p.m. the jury returned to the courtroom under the charge of the bailiff, and were seated in the box. Also

present are respective counsel and the Defendant.

In response to inquiry by the Court, the jury acknowledged through their foreman that they have agreed upon

verdicts. Upon direction of the Court, the verdicts so agreed upon were duly received, recorded and read by the clerk:

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant, EARL BALL, **NOT GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #3G, in which a minor is engaged in exploitative exhibition or other sexual conduct on or about the 2nd day of June, 1998.

          /S/ Connie Smith
          Foreman

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant, EARL BALL, **NOT GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #3D, in which a minor is engaged in exploitative or other sexual conduct, on or about the 2nd day of June, 1998.

          /S/ Connie Smith
          Foreman


227
31

### (OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant, EARL BALL, **NOT GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #3F, in which a minor is engaged in exploitative exhibition or other sexual conduct on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

### (OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant, EARL BALL, **NOT GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #2A, in which a minor is engaged in exploitative exhibition or other sexual conduct on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

### (OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant, EARL BALL, **NOT GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #2C, in which a minor is engaged in exploitative or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

### (OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, **GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #11F, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

### (OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, **GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #11E, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd of June, 1998.

/S/ Connie Smith
Foreman

228

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, GUILTY of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #11D, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant, EARL BALL, GUILTY of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #11B, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, GUILTY of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #11C, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, GUILTY of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #2F, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, GUILTY of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #2H, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, **GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #10B, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, **GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #10D, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

(OMITTING THE FORMAL PARTS)

We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant EARL BALL, **GUILTY** of committing sexual exploitation of a minor by knowingly possessing a photograph, to-wit: item #11A, in which a minor is engaged in exploitive exhibition or other sexual conduct, on or about the 2nd day of June, 1998.

/S/ Connie Smith
Foreman

At the request of Ms. Bechman, the clerk polled the jury and received an affirmative response from each juror that the verdicts returned were in fact their verdicts.

The Court thanked the jury for their service, released them from the admonition, and excused them from further participation at this time. The jury left the courtroom.

The Court addressed respective counsel, out of the presence of the jury, regarding the Trial Regarding Allegations of Prior Convictions. Said trial will be held on DECEMBER 17, 1999, and the Court will advise counsel of the time of same.

**IT IS ORDERED: REMANDING** the Defendant to the custody of the Cochise County Sheriff's Department until further Order of the Court.

Sentencing will be set by separate Minute Entry Order upon the conclusion of the Trial Regarding Prior Convictions.

230

Proceedings concluded at 4:20 p.m.

xc:    Gerald Till, Deputy County Attorney
       Donna Bechman, Deputy Public Defender
       CCSO/Jail

231

# EXHIBIT Y

FILED

Time_____M

JAN 1 0 2000

DENISE I. LUNDIN
CLERK SUPERIOR COURT
BY _meediala_DEPUTY

OFFICE DISTRIBUTION
[ ]   APPEALS
[ ] \ BONDS: REFUND/FORFEITURE
[ ] \ FINES/ATTY. FEES/RESTITUTION
[ ] \ CHANGE OF VENUE
[ ] \ JURY FEES
[X]   MAILED  1~10-2000 slw

SUPERIOR COURT OF ARIZONA
COUNTY OF COCHISE

Date January 3, 2000

CASE:        STATE OF ARIZONA    vs.  EARL BALL

MINUTE ENTRY ACTION:   HEARING TO DETERMINE PRIOR CONVICTION AND DEFENDANT'S
MOTION FOR NEW TRIAL          CASE NO: CR98000296 MAIN CASE (CR98000345)

JUDGE HONORABLE MATTHEW W. BOROWIEC           DENISE I. LUNDIN, CLERK
DIVISION One
COURT REPORTER Merle R. Briefer              By Stephanie L. Williams 1/10/00, Deputy
ADDRESS & PHONE                              Docketed by _____

PRESENT:   State present by David P. Flannigan, Deputy County Attorney
Defendant present in person and by Donna M. Bechman, Deputy Public Defender

The above-entitled matter came before the court at 1:39 p.m. for hearing to determine prior conviction

and defendant's motion for new trial.

Mr. Flannigan requested the court take judicial notice of criminal file CR99000131.

The court acknowledged that he will take judicial notice of the same.

Mr. Flannigan called as a witness, SGT. JOSEPH KNOBLOCK, who was duly sworn, examined by Mr.

Flannigan and excused from the stand.

The state rests.

The defense rests.

Based on the file in this court and testimony presented, it is the FINDING and JUDGMENT of the court

that the defendant has been previously convicted of the crime of committing sexual conduct with a minor by

knowingly engaging in sexual intercourse or oral sexual contact with M███ W████████, a person under 18 years

of age on or about the 1st day of April, 1998,  sentencing having occurred on October 4, 1999, in Superior Court,

Cochise County and the judgment was signed that date by this court.

It is ORDERED setting the time for sentencing in this matter on TUESDAY, JANUARY 18, 2000, at

10:30 a.m. in Division One of this court.

It is further ORDERED an updated report to involve the new conviction shall be prepared.


232

The court acknowledged that the state's response to the defendant's motion for new trial is in the court's

file,

Ms. Bechman presented argument in support of the defendant's motion for new trial.

Mr. Flannigan presented argument in response.

It is ORDERED the defendant's motion for new trial shall be taken under advisement.

Proceedings terminated at 1:55 p.m.

xc: County Attorney-Flannigan
    Public Defender-Bechman
    APO

(233)

EARL BALL
Defendant/Petitioner *In Pro Se*
c/o Cochise County Adult Detention Center
203 N. Judd
Bisbee, AZ 85603

FILED

00 JUL 27 PM 1:02

DENISE D LUNDIN
CLERK OF SUPERIOR COURT
BY _____

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IF AND FOR THE COUNTY OF COCHISE

STATE OF ARIZONA,

        Plaintiff,

vs.

EARL BALL,

        Defendant/Petitioner. )

NO.   CR98000296
        CR98000345

Motion to waive counsel
(Oral argument requested)

    **COMES NOW** the Defendant/Petitioner, EARL BALL, *in pro se*, and files this motion to waive counsel pursuant to ruler 6.1 (C) Arizona rules of criminal procedure.

    **RESPECTFULLY SUBMITTED** this *25th* day of July 2000.

*Earl Ball*

EARL BALL, Defendant, *In Pro Se*

A copy of the foregoing Mailed/delivered
this *25th* Day of *July*, 2000, to:

Division I Judge

Cochise County Public Defender's Office
Bisbee, Arizona, 85603

Timothy Dickerson, Esq.

Cochise County Attorney's Office PO Drawer CA

(234)

# EXHIBIT Z

Eo Y

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCHISE

STATE OF ARIZONA,             )
                              )
   Plaintiff,              )
                              )
      vs.                   )          CR98000345
                              )
EARL BALL,                    )
                              )
   Defendant.              )

COURT REPORTER'S TRANSCRIPT OF PROCEEDINGS

Motions Hearing/Sentence of Imprisonment

October 16, 2000

BEFORE: HON. HOWARD FELL

COPY

APPEARANCES:

On Behalf of the State of Arizona:
David Flannigan, Deputy County Attorney

Defendant Present In Pro Per, with Advisory Counsel,
Mark Suagee, Cochise County Public Defender and
Donna Bechman, Deputy Public Defender

CYNTHIA A. REED
Certified Court Reporter
# 50094
Cochise County Superior Court
Division II
P.O. Box W
Bisbee, AZ  85603
(520) 432-9340

235

1   contact anyone to even file these motions ahead of time.

2   And, as I read the statute, it said that at any time, and up

3   to and including the sentencing, the motion could be filed.

4   That's why I didn't get too excited about it till now.

5           THE COURT: All right. Did you have witnesses in

6   mind, other than you speaking on your behalf, with regard to

7   mitigation?

8           THE DEFENDANT: Maybe one or two, yes.

9           THE COURT: Maybe?

10          THE DEFENDANT: Yes, sir. I'm not sure. They're

11  relatives. That's where I needed the advisory counsel

12  consultation.

13          THE COURT: All right. And have you had an

14  opportunity to talk with Mr. Suagee or Ms. Bechman about

15  that?

16          THE DEFENDANT: No, sir, I have not.

17          THE COURT: All right. What else, Mr. Ball? Is

18  there anything else?

19          THE DEFENDANT: That's basically it, Your Honor.

20          THE COURT: All right. First, it's ordered that

21  the Defendant's motion to vacate judgment, as I articulated

22  in the petition that was previously filed, and I'm assuming,

23  Mr. Ball, that you're talking about the Petition for Post

24  Conviction Relief; am I correct?

25          THE DEFENDANT: Yes, sir.

1    THE COURT: That is denied. The Court further
2    finds that Mr. Ball, based on the Court's conversation with
3    Mr. Ball, the assessments made by Mr. Suagee and Ms. Bechman,
4    that Mr. Ball is competent to represent himself, that he
5    understands the nature of self representation, the
6    obligations that attach to it on his behalf, the
7    relinquishment or abandonment of the rights while being
8    represented by counsel, the Court finds that the Defendant's
9    waiver of counsel is knowingly, voluntarily and intelligently
10   made, and the waiver of counsel is accepted.

11   The Court, however, will appoint Mr. Suagee and Ms.
12   Bechman as advisory counsel for Mr. Ball, for the purposes of
13   proceeding with the State's attempt to prove its allegation
14   of prior convictions and for the purpose of sentencing.

15   With regard to the Defendant's request for a
16   mitigation hearing, the Court will hear what Mr. Ball has to
17   say during the sentencing proceeding, and after having
18   consulted with Mr. Suagee and/or Ms. Bechman, I'll determine
19   whether or not to continue the sentencing for purposes of
20   hearing witnesses in mitigation. But I want to proceed -- at
21   least get started with it today, Mr. Ball. So, that, I
22   believe, takes us to the State's attempt to prove the prior
23   conviction or convictions; is that correct, Mr. Flannigan?

24   MR. FLANNIGAN: Yes, sir.

25   THE COURT: All right, Mr. Ball. Are you ready to

237

1    THE DEFENDANT:  The only cost that I'm aware of,
2  Your Honor, is that L████ told me, over the years, she had to
3  go to counseling for drug rehabilitation and alcohol
4  rehabilitation.  Some of it was mandated by the State of
5  Texas --

6    THE COURT:  But nothing with regard to --

7    THE DEFENDANT:  No, sir.  She never, at any time
8  over the years, presented me with the bill or even indicated
9  that she had one.

10    THE COURT:  Mr. Flannigan?

11    MR. FLANNIGAN:  One second, Judge.  I don't believe
12  so.  It didn't come through our office.

13    THE COURT:  Okay.  Thanks.  Go ahead and have a
14  seat, Mr. Ball.  All right, Mr. Ball.  The Court has
15  considered the following aggravating factors.  First of all,
16  let me say, pursuant to Rule 26.7, the Court feels that the
17  Court has given Mr. Ball ample opportunity to present
18  mitigation in his behalf.  The Court has accepted statements
19  of Mr. Ball as if witnesses had been present, and the Court
20  will consider those statements and the information provided
21  by Mr. Ball in imposing sentence.

22    The Court has considered the following aggravating
23  factors:  Your criminal history prior to the video taping and
24  the photographing; the emotional harm to the victim.

25    The Court has considered the following mitigating

(238)

1 factors: You were married to the victim subsequent to the

2 production of the photos and your articulated remorse.

3 It is the judgment of the Court, with regards to

4 Count 6 through 16, Sexual Exploitation of a Minor, the

5 Defendant be sentenced to the Arizona Department of

6 Corrections for the presumptive term of 9.25 years, followed

7 by 16 months of community supervision.

8 Counts 6 through 16, shall run concurrently, one

9 with the other. It is further the order of the Court that

10 the sentence imposed in CR98000345 run concurrently with the

11 sentences already imposed in CR99000131, 000296 and Count I

12 of 98-000345.

13 Mr. Ball is ordered to pay $450 in attorney's fees,

14 a one-time $20 time payment fee. He is given credit for 586

15 days of presentence incarceration credit.

16 Mr. Ball, you have a right to file an appeal. Do

17 you have something to say?

18 THE DEFENDANT: Yes, Your Honor.

19 THE COURT: What?

20 THE DEFENDANT: There is a slight error in the

21 calculations of the dates.

22 THE COURT: What is it?

23 THE DEFENDANT: I haven't calculated it, Your

24 Honor, but it's about another hundred and some days, because

25 I didn't go to DOC until August 25th, and this is predicated



1  appropriate, at this time, to appoint Harriet Levitt to

2  handle the PCR?

3      THE COURT: Let's go back on the record in 000131,

4  000296 and 000345. The Court, having previously appointed

5  Mr. Dickerson, was it -- to represent Mr. Ball?

6      MS. BECHMAN: And then Ms. Levitt substituted in.

7      THE COURT: Right. To represent Mr. Ball in

8  Petitions for Post Conviction Relief in the three case

9  numbers that the Court has articulated, and Mr. Dickerson

10  having a conflict, because, apparently, he is seeking public

11  office?

12      MS. BECHMAN: He was at the time, Judge.

13      THE COURT: And the Court, having been presented

14  with a stipulation, permitting Harriet Levitt, of Tucson,

15  Arizona, to substitute in for Mr. Dickerson. It is so

16  ordered. Harriet Levitt will be attorney for any Post

17  Conviction Relief filed on behalf of Mr. Ball in all three

18  case numbers. Mr. Dickerson is relieved of any further

19  responsibility, as is the Legal Defender's Office.

20      MS. BECHMAN: Public Defender.

21      THE COURT: I'm sorry. Public Defender.

22      THE DEFENDANT: And I would like to inquire of the

23  Court, at this time, Your Honor, the status of the PCR that

24  I've already filed?

25      THE COURT: You know, I don't even know, Mr. Ball.

