Cygnus Systems, Inc. v. Microsoft Corporation, et al  Doc. 57 Att. 3

# EXHIBIT UU

Dockets.Justia.com

LAW OFFICES OF
**HARRIETTE P. LEVITT**
485 SOUTH MAIN AVENUE
TUCSON, ARIZONA 85701
(520) 624-0400
FAX (520) 620-0921
PIMA COUNTY COMPUTER No. 34320

Bar Number 7077
Attorney for   Defendant

DEC - 1 2000

Clerk
DENISE

**FILED**

Time_____

NOV 2 9 2000

DENISE A. LUNDIN
CLERK SUPERIOR COURT
BY_____ DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCHISE

STATE OF ARIZONA,

        Plaintiff,

        vs.

EARL BALL,

        Defendant.

NO. CR98000296/345

**ORDER FOR APPOINTMENT
OF COUNSEL**

(Assigned to Judge Desens)

Pursuant to the foregoing motion, and good cause appearing therefor,

IT IS HEREBY ORDERED appointing Harriette P. Levitt as attorney for Defendant

on his appeal in the above-entitled matter.

DATED this 29th day of November, 2000.

_____
HONORABLE STEPHEN DESENS

Copy of the foregoing mailed
this 31st day of October, 2000, to:

David P. Flannigan, Esquire
Cochise County Attorney
P. O. Drawer CA
Bisbee, Arizona 85603

368

```
1
2   Earl Ball, #153335
3   Eyman Complex - Rynning Unit
    P. O. Box 3100
4   Florence, Arizona 85232
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

369

# EXHIBIT VV

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCHISE

Cochise County Public Defender
Indigent Defense Coordinator

| | | |
|---|---|---|
| STATE OF ARIZONA,<br><br>       Plaintiff,<br><br>vs.<br><br>EARL BALL,<br><br>       Defendant. | **NOTICE<br>RE: APPOINTMENT<br>OF COUNSEL** | **CASE NO.**<br>**CR98000296/CR98000345** |

Pursuant to Administrative Order No. 2000-12, and a referral to the Indigent Defense Coordinator for appointment of counsel,

Gail Gianasi Natale, Esq. is hereby appointed to represent the Defendant, EARL BALL, in all further appellate proceedings.

DATED: March 13, 2002

xc:    Cochise County Attorney
       Gail Gianasi Natale, Esq.
       Harriette Levitt, Esq.
       Karina Rubio, Appeals Clerk

Distributed: 3/13/02

370

# EXHIBIT WW

No. 2-CA-CR 1999-0481-AP
No. 2-CA-CR 2001-0279-PR
(Consolidated)

# IN THE COURT OF APPEALS OF ARIZONA

## DIVISION TWO

**STATE OF ARIZONA,**

    **Plaintiff-Appellee,**

v.

**EARL BALL,**

    **Defendant-Appellant.**

Cochise County #CR 98000296
#CR 98000345

*2 Copies*

## APPELLANT'S SUPPLEMENTAL OPENING BRIEF

GAIL GIANASI NATALE
Arizona Bar Number 010389
817 North Second Street
Phoenix, Arizona 85004
Attorney for Appellant

371

No. 2-CA-CR 1999-0481-AP
No. 2-CA-CR 2001-0279-PR
(Consolidated)

## IN THE COURT OF APPEALS OF ARIZONA

## DIVISION TWO

STATE OF ARIZONA,

     Plaintiff-Appellee,

  v.

EARL BALL,

     Defendant-Appellant.

Cochise County #CR 98000296
#CR 98000345

## APPELLANT'S SUPPLEMENTAL OPENING BRIEF

GAIL GIANASI NATALE
Arizona Bar Number 010389
817 North Second Street
Phoenix, Arizona 85004
Attorney for Appellant

372

# TABLE OF CONTENTS

Page

Table of Citations ................................................. iii

Statement of the Case .............................................. 1

Statement of Facts ................................................. 2

Issues Presented for Review ........................................ 10

Argument .......................................................... 11

1.  The aggravated sentence imposed by the trial court violated the Sixth
Amendment ..................................................... 11

2.  The trial court lacked jurisdiction to try Ball for the crime of sexual
exploitation of a minor because the State of Arizona commenced the case more
than seven years after it discovered the violation ......................... 16

3.  The trial court should have excluded the testimony of Ball's wife, L████
█████ B███ .................................................... 18

4.  The trial court should have suppressed Ball's statements to the police
because the police did not honor his requests to speak with counsel and not to be
recorded ....................................................... 20

5.  When the jury heard that the videotape showed Ball having sex with his
daughter, the judge should have declared a mistrial ...................... 24

6.  The trial court should not have allowed Reverend Tim Thacker, Ball's
minister, to testify because Thacker's testimony revealed information disclosed in
the context of giving spiritual advice ................................ 26

7.  The trial court should have suppressed the items seized pursuant to the
search warrant because the affidavit contained materially false information  ... 28

-i-

(373)

Conclusion ..................................................... 31

Certificate of Compliance ......................................... 31

Certificate of Service ............................................. 32

374

# TABLE OF CITATIONS

## CASES

*Apprendi v. New Jersey*
530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blakely v. Washington*
542 U.S. ___, 124 S. Ct. 2531 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-15

*Church of Jesus Christ of Latter-Day Saints v. Superior Court*
159 Ariz. 24, 764 P.2d 759 (App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Cook v. Cook*
209 Ariz. 487, 104 P.3d 857 (App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Culombe v. Connecticut*
367 U.S. 568 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Doe v. Roe*
191 Ariz. 313, 955 P.2d 951, 960 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Edwards v. Arizona*
451 U.S. 477 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Franks v. Delaware*
438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Griffith v. Kentucky*
479 U.S. 314 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Illinois v. Gates*
462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re Appeal in Maricopa County Juvenile Action No. J-88515*
139 Ariz. 260, 678 P.2d 445 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

375

*Nolde v. Frankie*
192 Ariz. 276, 964 P.2d 477 (1998) ................................................ 17

*People v. Campobello*
348 Ill. App. 3d 619, 810 N.E.2d 307 (Ill. App. 2004) ...................... 27

*People v. Delph*
94 Cal. App. 3d 411, 156 Cal. Rptr. 422 (1979) ........................... 18

*Price v. Maxwell*
140 Ariz. 232, 681 P.2d 384 (1984) ................................................ 17

*Scott v. Hammock*
870 P.2d 947, 955-56 (Utah 1994) ................................................ 27

*State ex rel. McDougall v. Superior Court*
191 Ariz. 182, 953 P.2d 926 (App. 1997) ................................... 28

*State ex rel. Woods v. Cohen*
173 Ariz. 497, 844 P.2d 1147 (1992) ............................................. 18

*State v. Bailey*
160 Ariz. 277, 772 P.2d 1130 (1989) ............................................ 24

*State v. Bible*
175 Ariz. 549, 858 P.2d 1152 (1993) ............................................ 24

*State v. Brown ex rel. McMullen*
209 Ariz. 200, 99 P.3d 15 (2004) ................................................. 12

*State v. Buccini*
167 Ariz. 550, 810 P.2d 178 (1991) ............................................. 29

*State v. Carter*
145 Ariz. 101, 700 P.2d 488 (1985) ............................................. 29

376

*State v. Chiappetta*
210 Ariz. 40, 107 P.3d 366 (App. 2005) ................................. 11

*State v. Edwards*
111 Ariz. 357, 529 P.2d 1174 (1974) ................................. 30

*State v. Escobar-Mendez*
195 Ariz. 194, 986 P.2d 227 (App. 1999) ........................... 16, 17

*State v. Estrada*
209 Ariz. 287, 100 P.3d 452 (App. 2004) ............................. 20

*State v. Fell*
203 Ariz. 186, 52 P.3d 218 (App. 2002) ........................... 16, 19

*State v. Ferguson*
149 Ariz. 200, 717 P.2d 879 (1986) ................................ 22

*State v. Finch*
202 Ariz. 410, 46 P.3d 421 (2002) .................................. 21

*State v. Hall*
120 Ariz. 454, 586 P.2d 1266 (1978) ................................ 22

*State v. Hensley*
137 Ariz. 80, 669 P.2d 58, 65 (1983) ................................ 22

*State v. Jackson*
208 Ariz. 56, 90 P.3d 793 (App. 2004) ........................... 16, 17

*State v. Jimenez*
165 Ariz. 444, 799 P.2d 785 (1990) ................................ 22

*State v. Johnson*
183 Ariz. 358, 903 P.2d 1116 (App. 1995) ........................... 12

377

*State v. Jordan*
114 Ariz. 452, 561 P.2d 1224 (1976) .................................... 22

*State v. Lamar*
205 Ariz. 431, 72 P.3d 831 (2003) ..................................... 24

*State v. Lewis*
115 Ariz. 530, 566 P.2d 678 (1977) .................................... 30

*State v. Pitre*
210 Ariz. 93, 107 P.3d 939 (App. 2005) ............................. 14, 15

*State v. Resendis-Felix*
209 Ariz. 292, 100 P.3d 457 (App. 2004) ............................... 12

*State v. Rosengren*
199 Ariz. 112, 14 P.3d 303 (App. 2000) ................................ 20

*State v. Routhier*
137 Ariz. 90, 669 P.2d 68 (1983) ...................................... 21

*State v. Salazar*
181 Ariz. 87, 887 P.2d 617 (App. 1994) ................................ 25

*State v. Sands*
145 Ariz. 269, 700 P.2d 1369 (App. 1985) ........................... 18, 26

*State v. Sepahi*
206 Ariz. 321, 78 P.3d 732 (2003) ..................................... 11

*State v. Stuard*
176 Ariz. 589, 863 P.2d 881 (1993) .................................... 26

*State v. Sullivan*
130 Ariz. 213, 635 P.2d 501 (1981) .................................... 24

378

*State v. Thues*
203 Ariz. 339, 54 P.3d 368 (App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*State v. Timmons*
209 Ariz. 403, 103 P.3d 315 (App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*State v. Tschilar*
200 Ariz. 427, 27 P.3d 331 (App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*State v. Watkins*
126 Ariz. 293, 614 P.2d 835 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*State v. White*
194 Ariz. 344, 982 P.2d 819 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*State v. Williams*
209 Ariz. 228, 99 P.3d 43 (App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Tankersley v. State*
724 So. 2d 557 (Ala. Crim. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Harvey*
991 F.2d 981 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28

*Waters v. O'Connor*
209 Ariz. 380, 103 P.3d 292 (App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## STATUTES

A.R.S. § 12-120.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
A.R.S. § 13-107(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
A.R.S. § 13-107(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
A.R.S. § 13-604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
A.R.S. § 13-701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
A.R.S. § 13-702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15
A.R.S. § 13-3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 13, 17, 35
A.R.S. § 13-4031 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

379

A.R.S. § 13-4062(3) ................................................. 26
A.R.S. § 13-4062(A)(1) .............................................. 18
A.R.S. § 13-701(C)(1) ............................................... 13
A.R.S. § 13-702(C)(11) ........................................... 13, 15
A.R.S. § 13-702(C)(9) ............................................... 13
A.R.S. § 25-101(A) .................................................. 19
A.R.S. § 25-101(C) .................................................. 19
A.R.S. § 25-112 ..................................................... 19
Idaho Code § 32-202 ................................................. 19

## RULES

Ariz. R. Crim. P. 31.4 ............................................... 2
Ariz. R. Crim. P. 31.13 .............................................. 2
Ariz. R. Crim. P. 32 ................................................. 2
Ariz. R. Evid. 404(b) ................................................ 24

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. IV ............................................... 28
U.S. Const. amend. V ............................................. 21, 22
U.S. Const. amend. VI ........................................... 13, 15
U.S. Const. amend. XIV .............................................. 21

## LEGISLATIVE MATERIALS

2001 Ariz. Sess. Laws, ch. 183, § 1 ................................. 16

380

# Statement of the Case

This case is a consolidated appeal and petition for review of denial of post-conviction relief in two criminal cases. On June 19, 1998, Earl Ball was indicted by a Cochise County Grand Jury on one count of sexual exploitation of a minor in violation of A.R.S. § 13-3553(A)(2) ["the 296 case"].[1] Later, Ball was charged with sixteen other counts of sexual exploitation of a minor ["the 345 case"]. The two cases were consolidated for trial on January 7, 1999.[2] On August 23, 1999 a jury convicted Ball of two counts of sexual exploitation of a minor stemming from his possession of two videotapes depicting minors engaged in sexual activity.[3] The jury hung with respect to fifteen other counts involving photographs depicting minors engaged in sexual activity.[4] On October 4, 1999, the trial court sentenced Ball to two consecutive aggravated ten-year terms of imprisonment for these convictions.[5] Upon retrial of the fifteen counts involving photographs in the 345 case, the jury convicted Ball of ten of those counts on December 15, 1999.[6] On October 16, 2000, the trial court sentenced Ball to ten

---

[1] CCSC Trial Dkt. No. 3. ("CCSC" refers to "Cochise County Superior Court").
[2] CCSC Trial Dkt. No. 54.
[3] CCSC Trial Dkt. No. 138.
[4] *Id.*
[5] CCSC Trial Dkt. No. 154; TR 10/4/99, at 11. (The construction "TR <date>" refers to a transcript of a hearing held on the date indicated.)
[6] TR 12/15/99, at 9-13.

1

9.25-year aggravated terms to run concurrent to each other and with the previous sentences imposed in the 296 case and the 345 case.

On February 28, 2000, Ball filed a *pro se* notice of post-conviction relief from all convictions under Rule 32 of the Arizona Rules of Criminal Procedure.[7] The trial court summarily dismissed his petition on June 4, 2001.[8] On July 3, 2001, Ball filed a *pro se* petition for review of the denial of his *Rule 32* petition with this Court.[9]

This Court has consolidated the appeals and petition for review pursuant to *Ariz. R. Crim. P.* 31.4(b). This Court has jurisdiction pursuant to A.R.S. §§ 12-120.21 and 13-4031 and *Ariz. R. Crim. P.* 31 and 32.

## Statement of Facts

On March 23, 1989, Detective James Allaire of the Cochise County Sheriff's Department applied for a warrant to search Earl Ball's home.[10] In his affidavit, Detective Allaire alleged that Ball had "video cassette tapes… containing sexual acts involving Earl Ball, D█████ B██, and underage J██████████ (B██."[11] According to Detective Allaire, Ball's son M██████ told him that "these

---

[7] CCSC PCR Dkt. No. 1.
[8] CCSC PCR Dkt. No. 19.
[9] CCSC PCR Dkt. No. 20.
[10] CCSC Trial Dkt. No. 145, Exh. B.
[11] *Id.*



2

tapes are kept in the RV [Ball] sleeps in."[12] The warrant issued, but Detective
Allaire did not execute the warrant.[13] The reason he gave was that "the motor
home was gone and the complainant's statement were [sic] determined to be
false."[14] Instead, M█████ B██ was charged with making a false report.[15]

On May 22, 1998, Detective Joe Knoblock of the Cochise County
Sheriff's Office interviewed M██ W████████. The previous September, when
she was 17, W████████ had run away from her home in Oro Valley to live with
Ball in Pearce.[16] While staying at the Ball home, she told Detective Knoblock that
she had seen the videotapes and photographs at issue in this case.[17] She also told
him she saw marijuana, cocaine, guns, and parts of stolen trucks on Ball's
property.[18] On the basis of these statements, Detective Knoblock obtained a
warrant to search Ball's property.[19]

On June 2, 1998, Detective Knoblock executed the search warrant at
Ball's home.[20] The officers seized a "videotape containing pornographic contents"
from a locked cabinet under a sink in a travel trailer on Ball's property.[21] They

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] TR 8/18/99, at 38.
[17] TR 8/18/99, at 8.
[18] TR 8/18/99, at 57.
[19] TR 8/18/99, at 7.
[20] CCSC Trial Dkt. No. 43, Exh. 1.
[21] *Id.*

3



also seized a photo album from a safe in Ball's home.[22]  On July 30, 1998,

Detective Knoblock executed another search warrant at Ball's home, where he

retrieved eleven more videotapes.[23]

On June 11, 1998, Detective Knoblock interviewed Ball.[24]  At the

beginning of the interview, Detective Knoblock read Ball the *Miranda* warnings.[25]

Ball immediately requested to speak with an attorney.[26]  Detective Knoblock

acknowledged Ball's request and stated he would be ending the interview.[27]  Ball

replied, "Now that you turned the tape off, if you want to talk, we'll talk."[28]

Detective Knoblock had not, in fact, turned off the tape recorder.  Even though

Ball had expressed a desire to speak to Knoblock only after consulting an attorney

and only if the conversation would not be recorded, Detective Knoblock persisted

with his interview.  During this interview, Ball admitted that he knew he possessed

the videotapes in question.[29]  He also admitted that the tape depicted a minor

engaged in sexual activity.[30]

---

[22] TR 8/18/99, at 8.

[23] CCSC Trial Dkt. No. 59, Exh. 1.

[24] CCSC Trial Dkt. No. 102, Exh. 32.

[25] CCSC Trial Dkt. No. 102, Exh. 32, at 1.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] CCSC Trial Dkt. No. 102, Exh. 32, at 2.

[30] CCSC Trial Dkt. No. 102, Exh. 32, at 3.

(384)

While incarcerated at the Cochise County Jail in Bisbee, Ball received spiritual guidance from Reverend Tim Thacker of the Broken Arrow Church. Thacker visited Ball at the jail on at least five and as many as seven different occasions.[31] Thacker specifically went to visit Ball because he wanted to see if Ball "had repented and accepted Christ."[32] According to Thacker, Ball "had accepted Christ as his savior"[33] and "want[ed] to make everything right in his life."[34] Ball had even agreed to be baptized by Thacker.[35] On one of these visits, Ball admitted to Thacker that he had the videotapes in his possession.[36] As an expression of gratitude for Thacker's spiritual guidance, Ball agreed to let Thacker use his trailer and his saddles for some missionaries of the Broken Arrow Church.[37]

Based on Thacker's testimony at the preliminary hearing, the trial judge limited Thacker's testimony at trial. Thacker was forbidden to testify concerning Ball's "lifestyle and morality or immorality... and how it affects him spiritually or mentally and his desire to talk about that."[38] Thacker was also forbidden to testify about Ball's "knowledge of the existence of the tapes."[39]

---

[31] TR 8/12/99, at 23.
[32] TR 8/12/99, at 23.
[33] TR 8/12/99, at 23.
[34] TR 8/12/99, at 23-24.
[35] TR 8/12/99, at 30.
[36] TR 8/12/99, at 27.
[37] TR 8/12/99, at 23, 24; TR 8/19/99, at 78.
[38] TR 8/12/99, at 33.
[39] TR 8/12/99, at 34.

5



However, Thacker *was* permitted to testify about any "business deals" he had with Ball.[40]

  The court dealt with three pre-trial motions at a hearing on August 12, 1999. First, counsel sought to suppress the evidence found on Ball's property because the affidavit for the search warrant contained materially false information.[41] Counsel argued that Detective Knoblock's affidavit was misleading.[42] Detective Knoblock left out of his affidavit the fact that W█████████ left her home voluntarily to be with Ball voluntarily.[43] Because Detective Knoblock's statements were not credible, counsel argued, the search warrant lacked probable cause.[44] The judge denied this motion.[45]

  Second, counsel moved to suppress Ball's statements to the police on the grounds that he made the statements involuntarily.[46] Counsel argued that "Detective Knoblock's continued interview after using the ruse of shutting off the tape renders the interview inadmissible."[47] The trial judge denied this motion.[48]

---

[40] TR 8/12/99, at 35.
[41] CCSC Trial Dkt. No. 83.
[42] TR 8/12/99, at 106.
[43] *Id.*
[44] TR 8/12/99, at 107.
[45] TR 8/12/99, at 108.
[46] TR 8/12/99, at 93.
[47] TR 8/12/99, at 94.
[48] TR 8/12/99, at 99.

6



Third, counsel sought to preclude certain evidence as prior bad acts under *Rule* 404(b). Counsel asked the trial court to exclude the audio portion of the videotapes,[49] to exclude references to J█████as Ball's daughter,[50] and to prevent W████████from testifying that Ball took nude photographs of her as well.[51] The trial court excluded all this evidence at counsel's request.[52]

On August 18, 1999, the first day of the first trial, M██ W█████████ testified. On cross-examination, trial counsel asked W█████████ if Ball had said anything to her about sex with children being depicted on the videotape.[53] She said that he did.[54] Defense counsel then impeached W████████with a statement she made during an earlier interview, when W█████████denied that Ball told her the tape depicted sex with children.[55] The prosecutor objected,[56] and the court inquired into the basis of the objection. The court asked █████████to clarify what she had said during the earlier interview.[57] Confused about which statement the judge was attempting to clarify, W█████████ blurted out, "He [Ball] told me that it was sex with his daughter."[58] A few seconds later, W█████████ repeated that Ball had

---

[49] TR 8/12/99, at 54.
[50] TR 8/12/99, at 68.
[51] TR 8/12/99, at 64.
[52] TR 8/12/99, at 69, 69, 67.
[53] TR 8/18/99, at 46.
[54] *Id.*
[55] TR 8/18/99, at 47.
[56] *Id.*
[57] TR 8/18/99, at 48.
[58] TR 8/18/99, at 49.

7



told her that the tape depicted "sex with J████."[59] Because the judge had already excluded testimony on this point, trial counsel asked for a mistrial.[60] The judge denied the request.[61]

On August 19, 1999, Ball's wife, L████████ B███, testified at trial.[62] She admitted that she appeared in the pornographic pictures found at Ball's home.[63] She admitted that she was either 11 or 12 when the pictures were taken.[64]

On August 30, 1999, the trial court granted Ball's motion to dismiss the State's allegation of prior convictions.[65] This ruling forbade the trial court from using Ball's criminal history to enhance his sentence.

On October 4, 1999, the trial court sentenced ball for the two videotape convictions in the 296 case. The court found that Ball was neither a dangerous nor a repeat offender under A.R.S. § 13-604. Nevertheless, the trial court sentenced him to two consecutive aggravated 10-year prison terms.[66] The judge based this sentence on the

> unrepenting and abiding lifestyle of Mr. Ball, such that his conduct
> was something in which he believed he was entitled, and the manner
> in which he used women and children, his habitually sexually abusive

---

[59] TR 8/18/99, at 50.
[60] *Id.*
[61] TR 8/18/99, at 52.
[62] TR 8/19/99, at 40-67.
[63] TR 8/19/99, at 41.
[64] TR 8/19/99, at 43.
[65] TR 8/30/99, at 6.
[66] TR 10/4/99, at 10.

8



lifestyle, the psychological and emotional harm to victims, [and] his preying and influencing younger persons to get involved in these sexual activities.[67]

On October 16, 2000, the trial court sentenced Ball for the ten photograph convictions in the 345 case. The court found that Ball was not a dangerous offender, but that he was a repeat offender under A.R.S. § 13-604. The court sentenced Ball to ten concurrent 9.25-year aggravated prison terms for each count of conviction.[68] The judge based these sentences on Ball's criminal history "prior to the video taping and the photographing," "the emotional harm to the victim,"[69] the fact that Ball was "married to the victim subsequent to the production of the photos" and Ball's "articulated remorse."[70]

---

[67] TR 10/4/99, at 9-10.
[68] TR 10/16/00, at 34.
[69] TR 10/16/00, at 33.
[70] TR 10/16/00, at 34.

9



# Issues Presented

1. *Blakely*. In Arizona, the Sixth Amendment forbids enhancing a criminal defendant's sentence beyond the presumptive level unless the defendant admits certain facts that support an aggravated sentence or a jury finds those facts beyond a reasonable doubt. Here the trial court imposed aggravated sentences on the basis of facts that Ball did not admit and a jury did not find. Did Ball's sentence violate the Sixth Amendment?

2. **Statute of limitations.** The statute of limitations for possessing child pornography is seven years and begins to run when the state discovers the violation. The State of Arizona first discovered that Ball possessed the contraband in question in 1989. It commenced this prosecution in 1998. Was this prosecution timely?

3. **Spousal privilege.** Arizona law allows a husband to prevent his wife from testifying against him in a criminal case. Ball's wife L██████ B██ testified against him at trial. Her testimony included information discussed during the marriage. Did her testimony violate the anti-marital fact privilege?

4. **Involuntary statements.** The Fifth and Fourteenth Amendments forbid the police from taking statements from criminal suspects unless the suspect speaks to them voluntarily and only if the police scrupulously honor a suspect's request for counsel. Before talking to the police, Ball asked for a lawyer and only agreed to talk to the police if his conversation would not be recorded. The police did not honor either of these requests. Did the police violate Ball's rights?

5. **Mistrial.** The court must declare a mistrial when the jury hears testimony upon which they may not justifiably base its verdict and that testimony influenced the verdict. Here, the jury heard testimony that the videotape showed Ball having sex with his daughter. The judge specifically had excluded this type of testimony on this point in a pre-trial ruling. Should the judge have declared a mistrial?

6. **Clergy privilege.** Arizona law allows a penitent to prevent his spiritual advisor from testifying as to the content of any communication made for purposes of spiritual guidance. Rev. Tim Thacker, Ball's minister, testified

10



against him at trial. The testimony revealed information gleaned through confession. Did Thacker's testimony violate the clergy-penitent privilege?

7. **Improper affidavit.** The Fourth Amendment forbids a magistrate from issuing a search warrant except on a showing of probable cause. Probable cause, in turn, must come from a truthful affidavit. But the affidavit that supported the search warrant here contained materially false information. Should the trial court have suppressed the items seized during the search?

# Argument

## 1. The aggravated sentence imposed by the trial court violated the Sixth Amendment.

This Court reviews a challenge to a defendant's sentence *de novo.*

*State v. Chiappetta*, 210 Ariz. 40, 46, 107 P.3d 366, 372 (App. 2005) (citing *State*

*v. Sepahi*, 206 Ariz. 321, 78 P.3d 732 (2003)).

"Other than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S.

466, 490 (2000). For purposes of the *Apprendi* rule, the "prescribed statutory

maximum" is "the maximum sentence a judge may impose solely on the basis of

the facts reflected in the jury verdict or admitted by the defendant." *Blakely v.*

*Washington*, 542 U.S. ___, 124 S. Ct. 2531, 2537 (2004). In Arizona, the

"prescribed statutory maximum" for purposes of the *Apprendi* rule is the

11

presumptive sentence established by Arizona's determinate sentencing scheme. *State v. Brown ex rel. McMullen*, 209 Ariz. 200, 203, 99 P.3d 15, 18 (2004).

As a threshold matter, Ball notes that this Court has the power to review his *Blakely* claim despite the fact that he did not make a *Blakely* objection at trial. This is so for two reasons. First, because this Court is now entertaining his direct appeal, principles of retroactivity do not stand in the way of reviewing Ball's *Blakely* claim. *Griffith v. Kentucky*, 479 U.S. 314, 322-23 (1987); *State v. Tschilar*, 200 Ariz. 427, 432, 27 P.3d 331, 336 (App. 2001).

Second, "[s]entencing a defendant outside constitutional limits creates an illegal sentence, which can constitute fundamental error." *State v. Resendis-Felix*, 209 Ariz. 292, 294, 100 P.3d 457, 459 (App. 2004) (citing *State v. Thues*, 203 Ariz. 339, 54 P.3d 368 (App. 2002)). "[O]verriding considerations concerning the integrity of the system will excuse a party's failure to raise the issue in the trial court." *Id.* (quoting *State v. White*, 194 Ariz. 344, 354, 982 P.2d 819, 829 (1999)). When a judge makes a determination reserved for a jury, and uses that determination to enhance the defendant's sentence, fundamental error has occurred. *State v. Johnson*, 183 Ariz. 358, 359, 903 P.2d 1116, 1117 (App. 1995).

The trial judge based all of the sentences in these cases on aggravating factors that no jury found and Ball did not admit. The juries in these cases found that Ball committed sexual exploitation of a minor in violation of A.R.S. § 13-3553



by knowingly possessing certain videotapes and photographs that depicted minors engaged in sexual activity.[71] Violating § 13-3553 is a class 2 felony. The presumptive sentence for a class 2 felony is five years in prison. A.R.S. § 13-701(C)(1). Under *Blakely*, therefore, without additional facts found by the juries or admitted by Ball himself, the trial judge could have imposed a prison term no longer than 5 years for each count.

But the prison terms actually imposed in these cases were substantially longer—10 years for each of the videotape counts and 9.25 years for each of the photograph counts. The trial court imposed 10-year sentences for the videotape counts because of Ball's "habitual sexually abusive lifestyle" and "the psychological and emotional harm to victims."[72] The trial court imposed 9.25-year sentences based in part on Ball's criminal history that took place "prior to the video taping and the photographing," which occurred in 1981.[73] Arizona sentencing law allows for aggravated sentences based on "emotional harm caused to the victim," A.R.S. § 13-702(C)(9), and when the "defendant was previously convicted of a felony within the ten years immediately preceding the date of the offense." A.R.S. § 13-702(C)(11). Under *Blakely*, the trial court could only have done so if these additional findings of fact met the strictures of the Sixth Amendment.

---

[71] TR 10/4/99, at 10; TR 10/16/00, at 34.

[72] TR 10/4/99, at 10.

[73] TR 10/16/00, at 33.



The jury convicted Ball of knowingly possessing contraband. This verdict required the jury to reach two conclusions—that what Ball possessed was contraband, and that Ball knew that it was contraband. Aggravating factors that are not implicit in the jury's verdict cannot support an aggravated sentence. *State v. Pitre*, 210 Ariz. 93, 99, 107 P.3d 939, 945 (App. 2005). No other finding was implicit in the jury's verdict—not a finding of emotional harm to the victim, nor of habitual sexual abuse, nor of "using" women and children, nor of preying upon or influencing younger persons.[74] For the trial court to rely on these factors in imposing an aggravated sentence violated *Blakely*.

This Court has held that, under *Blakely*, a judge may not use the emotional harm to the victim to enhance a criminal defendant's sentence when such a finding is not implicit in the jury's verdict. Emotional harm is "an inherently subjective determination," and a jury would not "have necessarily considered" emotional harm in rendering its verdict, "much less have found [it] beyond a reasonable doubt." *State v. Timmons*, 209 Ariz. 403, 407, 103 P.3d 315, 319 (App. 2005). Here, the trial judge's considering such a subjective factor as the emotional harm to the "victim" of Ball's possession of contraband was not implicit in the jury's verdict. *Cf. State v. Pitre*, 210 Ariz. 93, 98, 107 P.3d 939, 944 (App. 2005) (concluding that a finding of emotional harm to the victims was not implicit in the

---

[74] *See* TR 10/4/99, at 10.

14

jury's guilty verdict on aggravated assault charges). For the trial judge to have used this factor to enhance Ball's sentence violated the Sixth Amendment.

Likewise, the trial court's reliance on Ball's criminal history before 1981 in sentencing him to aggravated terms for conduct that took place in 1998 violated Arizona law and *Blakely*. The trial court did not find that Ball had had any prior convictions.[75] Accordingly, none could enhance his sentence under A.R.S. § 13-702(C)(11). Furthermore, since a finding of prior convictions was not implicit in the jury's verdict, using those prior convictions to enhance Ball's sentence violated *Blakely*. Because the aggravating factors used to enhance Ball's sentence were neither implicit in the jury's verdict, admitted by Ball himself, nor found by a jury beyond a reasonable doubt, the aggravated sentences imposed by the trial court violate Ball's Sixth Amendment right under *Blakely*.

---

[75] TR 8/30/99, at 6.

15



## 2. The trial court lacked jurisdiction to try Ball for the crime of sexual exploitation of a minor because the State of Arizona commenced the case more than seven years after it discovered the violation.

This Court must "construe the statute of limitation at issue here 'liberally in favor of the accused and against the prosecution.'" *State v. Jackson,* 208 Ariz. 56, 59, 90 P.3d 793, 796 (App. 2004) (quoting *State v. Escobar-Mendez,* 195 Ariz. 194, 197, 986 P.2d 227, 230 (App. 1999)). The interpretation of the statute of limitations is subject to *de novo* review. *Id.* (citing *State v. Fell,* 203 Ariz. 186, 188, 52 P.3d 218, 220 (App. 2002)).

In 1998, when the State of Arizona began this prosecution against Ball, Arizona law provided a seven-year limitations period for the crime of sexual exploitation of a minor. A.R.S. § 13-107(B)(1).[76] This limitations period began either when the state actually discovered the crime or when that discovery "should have occurred with the exercise of reasonable diligence, whichever occurs first." *Id.* § 13-107(B). A prosecution commences when the state files an information or complaint or obtains an indictment. *Id.* § 13-107(C). A statute of limitations is jurisdictional in criminal cases; it "limit[s] the power of the sovereign to act against the accused." *State v. Escobar-Mendez,* 195 Ariz. 194, 197, 986 P.2d 227, 230

---

[76] It was not until 2001 that the Arizona Legislature repealed the statute of limitations for violations of A.R.S. § 13-3553. *See* 2001 Ariz. Sess. Laws, ch. 183, § 1.

(App. 1999) (citing *Price v. Maxwell,* 140 Ariz. 232, 234, 681 P.2d 384, 386 (1984)).

The discovery requirement of Arizona's criminal statute of limitations is analogous to the common-law discovery rule applicable in civil cases. *See State v. Jackson,* 208 Ariz. 56, 66, 90 P.3d 793, 803 (App. 2004). Under the civil discovery rule, "the limitation period... begins... when 'the plaintiff knows or with reasonable diligence should know the facts underlying the cause.'" *Id.* (quoting *Doe v. Roe,* 191 Ariz. 313, 322, 955 P.2d 951, 960 (1998)). In the context of a sexual abuse case, this means that the statute of limitations begins to run when the state learns of "the conduct constituting the sexual abuse and the identity of the abuser." *Nolde v. Frankie,* 192 Ariz. 276, 283, 964 P.2d 477, 484 (1998).

In 1989 when Detective Allaire obtained his search warrant, the State of Arizona discovered that Ball was committing the crime of sexual exploitation of a minor as defined in A.R.S. § 13-3553. Detective Allaire's affidavit informed a Cochise County Justice of the Peace that Ball possessed videotapes depicting him engaged in sexual conduct with an underage girl. Through Detective Allaire's affidavit, the State learned of the conduct constituting the crime of sexual exploitation of a minor and the identity of the person engaged in that exploitation. The seven-year limitations period provided by Arizona law began to run at that

(397)

time. Accordingly, when the Cochise County Superior Court indicted Ball on June 19, 1998, it lacked jurisdiction to prosecute Ball for these crimes.

## 3. The trial court should have excluded the testimony of Ball's wife, L██████ ███████ B██.

This Court reviews a trial court's ruling on the exercise of an evidentiary privilege for abuse of discretion. *State v. Sands*, 145 Ariz. 269, 274, 700 P.2d 1369, 1374 (App. 1985).

When one spouse does not consent to the testimony, the other spouse may not testify in a criminal case regarding "any communication made by one to the other during the marriage." A.R.S. § 13-4062(A)(1). This rule is known as the anti-marital fact privilege. It "forbid[s] any testimony, not just damaging testimony, as to events which occurred during the marriage unless the non-testifying spouse consents." *State ex rel. Woods v. Cohen*, 173 Ariz. 497, 502, 844 P.2d 1147, 1152 (1992). The mere fact that the State calls one spouse to testify in a criminal case where the other spouse is the defendant triggers the privilege. *Id.*

The anti-marital fact privilege "exists by virtue of legislative fiat." *State v. Watkins*, 126 Ariz. 293, 298, 614 P.2d 835, 840 (1980). "It is for the legislature to determine whether [a] relationship[], because of [its] commonness in today's society or for other policy reasons, deserve[s] the statutory protection afforded the sanctity of the marriage union." *People v. Delph*, 94 Cal. App. 3d 411,

18

(398)

416, 156 Cal. Rptr. 422, 425 (1979). This Court must defer to the Legislature's judgment when determining who qualifies as a "spouse" for purposes of the anti-marital fact privilege. Because it has decided which relationships qualify as a "marriage" under Arizona law, the Legislature implicitly also determines who qualifies for the anti-marital fact privilege. *See Watkins*, 126 Ariz. at 298, 614 P.2d at 840.

Arizona law recognizes the validity of Ball's marriage to L▉▉

▉▉▉ B▉▉. Ball married her in Idaho when he was 42 years old and she was 16. This was a valid marriage under Idaho law. *See* Idaho Code § 32-202 (allowing a 16-year-old to marry with parental consent). Arizona law recognizes valid marriages from other states that are not "void and prohibited" under Arizona law. A.R.S. § 25-112; *Cook v. Cook*, 209 Ariz. 487, 488-89, 104 P.3d 857, 858-59 (App. 2005). Only marriages between "parents and children, including grandparents and grandchildren of every degree, brothers and sisters of the one-half as well as the whole blood..., between uncles and nieces, aunts and nephews..., between first cousins," and "between persons of the same sex" are "prohibited and void" in Arizona. A.R.S. § 25-101(A), (C). Where a statutory scheme forbids only certain members of a class of potentially proscribable items, that scheme does not outlaw those members of the class that the legislature did not mention. *State v. Fell*, 203 Ariz. 186, 189, 52 P.3d 218, 221 (App. 2002) (noting canon of *expressio unius est*



*exclusio alterius*). Because a marriage where one party is only sixteen years old is not "void and prohibited" under Arizona law, Arizona law recognizes such marriages performed in other states as valid.

Arizona law recognizes the validity of Ball's marriage to L███ ███ B██. On June 18, 1998, L██ initiated divorce proceedings against Earl, but they were dismissed without prejudice.[77] On April 14, 2000, Earl initiated divorce proceedings against L███, but these too were dismissed without prejudice.[78] It appears, then, that Earl is even now lawfully married to L███. Because he expected her to testify about events that occurred during the marriage, Earl invoked the anti-marital fact privilege to preclude L███ from testifying against him. The trial court erred in allowing her to testify.

## 4. The trial court should have suppressed Ball's statements to the police because the police did not honor his requests to speak with counsel and not to be recorded.

This Court reviews the trial court's decision to suppress evidence for abuse of discretion. *State v. Estrada*, 209 Ariz. 287, 288, 100 P.3d 452, 453 (App. 2004) (citing *State v. Rosengren*, 199 Ariz. 112, 14 P.3d 303 (App. 2000)).

The Constitution affords criminal suspects certain protections when dealing with the police. Once a criminal suspect has "expressed his desire to deal

---

[77] CCSC No. DO98-00530 (dismissed May 4, 2000).
[78] CCSC No. DO00-00315 (dismissed November 1, 2001).



with the police only through counsel," the Fifth Amendment forbids the police from interrogating him "until counsel has been made available to him" or "the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The Due Process Clause of the Fourteenth Amendment forbids using a suspect's statement to the police against him when that statement was not "the product of an essentially free and unconstrained choice by its maker." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Using Ball's statements to Cochise County Sheriff's Department officers against him violated both these constitutional provisions.

When a criminal suspect asks for a lawyer during custodial interrogation, he is asserting that "he is not competent to deal with the authorities without a lawyer." *State v. Routhier*, 137 Ariz. 90, 97, 669 P.2d 68, 75 (1983) (citing *Edwards*.) Once the suspect requests counsel, "all questioning must cease." *State v. Finch*, 202 Ariz. 410, 414, 46 P.3d 421, 425 (2002) (citing *Edwards*, 451 U.S. at 482). If the questioning does not cease, the trial court must suppress the defendant's statement. *In re Appeal in Maricopa County Juvenile Action No. J-88515*, 139 Ariz. 260, 263, 678 P.2d 445, 448 (1984).

When Detective Knoblock began his interview with Ball on June 11, 1998, the first thing he did was read Ball the *Miranda* warnings.[79] Then Detective

---

[79] CCSC Trial Dkt. No. 102, Exh. 32, at 1.



Knoblock asked Ball, "Would you like to answer some of my questions?"[80] Ball immediately responded, "I would like to speak with an attorney."[81] Despite this unequivocal request to speak with counsel before police questioning continued, Detective Knoblock did not immediately cease his interview with Ball. The trial court should have suppressed Ball's statement to the police because it violated his Fifth Amendment right to counsel under *Miranda* and *Edwards*.

When assessing whether a criminal suspect has voluntarily spoken with the police, Arizona courts "start with the presumption that confessions resulting from custodial interrogation are inherently involuntary; to rebut that presumption, the state must show by a preponderance of the evidence that the confession was freely and voluntarily made." *State v. Jimenez*, 165 Ariz. 444, 448-49, 799 P.2d 785, 789-90 (1990). The police may not induce a confession by means of "a direct or implied promise, however slight." *State v. Ferguson*, 149 Ariz. 200, 207, 717 P.2d 879, 886 (1986) (citing *State v. Hensley*, 137 Ariz. 80, 87, 669 P.2d 58, 65 (1983)). If the defendant relies on the police's explicit or implicit promise in making his confession, his confession is involuntary. *State v. Hall*, 120 Ariz. 454, 457, 586 P.2d 1266, 1269 (1978) (citing *State v. Jordan*, 114 Ariz. 452, 455, 561 P.2d 1224, 1227 (1976)).

---

[80] *Id.*
[81] *Id.*

22



Ball relied on Detective Knoblock to scrupulously honor his request for counsel after being read the *Miranda* warnings. He naturally assumed that once he requested counsel, the interview would end and Detective Knoblock would stop recording their conversation. Detective Knoblock even said, "Mr. Ball requested his attorney, we'll be ending the interview. Thank you."[82] This prompted Ball to reply, "Now that you've turned the tape off, if you want to talk, we'll talk."[83] Detective Knoblock repeated that Ball had asked for an attorney and that he "[didn't] want a tape."[84] Detective Knoblock knew that Ball was only willing to speak to him from that point on because Knoblock had ended the interview and turned off the tape recorder. But Detective Knoblock in fact had not turned it off. Because Ball relied on Detective Knoblock's explicit assertion that he had turned it off in talking to the police, and Detective Knoblock had not, in fact, turned it off, Ball's confession was involuntary. The trial court should have suppressed the statement.

. . .

---

[82] CCSC Trial Dkt. No. 102, Exh. 32, at 1.
[83] *Id.*
[84] *Id.*



## 5. When the jury heard that the videotape showed Ball having sex with his daughter, the judge should have declared a mistrial.

This Court reviews a trial court's decision to grant or not to grant a mistrial for abuse of discretion. *State v. Williams*, 209 Ariz. 228, 239, 99 P.3d 43, 54 (App. 2004).

The trial court must declare a mistrial when "the testimony call[s] to the jurors' attention matters that they would not be justified in considering in reaching their verdict," and that testimony probably influenced the verdict. *State v. Lamar*, 205 Ariz. 431, 439, 72 P.3d 831, 839 (2003) (citing *State v. Bailey*, 160 Ariz. 277, 279, 772 P.2d 1130, 1132 (1989)). "This inquiry is designed to assist the judge in deciding whether the remarks were improper and, if so, whether the remarks denied defendant a fair trial." *Bailey*, 160 Ariz. at 279, 772 P.2d at 1132.

The trial judge's pretrial ruling excluding testimony that the videotape depicted Ball having sex with his daughter vitiated Ball's right to a fair trial. In general, "evidence of other acts is inadmissible to prove" that the defendant has acted in conformity with a certain character trait. Ariz. R. Evid. 404(b); *State v. Bible*, 175 Ariz. 549, 575, 858 P.2d 1152, 1178 (1993). The court may not admit evidence of prior criminal activity "to show that the defendant is a bad person or has a propensity for committing crimes of a similar nature." *State v. Sullivan*, 130 Ariz. 213, 217, 635 P.2d 501, 505 (1981). While other "sexually aberrant acts [can

24

(404)

be] probative of present sexual propensity," before the court may admit evidence of those other acts it must "balance the probative value of the evidence against its potential for unfair prejudice, confusion, or waste of time." *State v. Salazar*, 181 Ariz. 87, 91, 887 P.2d 617, 621 (App. 1994).

The trial judge excluded references at trial to Ball having sex with his daughter on tape because he recognized the danger of unfair prejudice that could result from such testimony. Ball was charged with possession of child pornography. This crime has two elements—that the pornography in question depicted minors engaged in sexual activity, and that he knowingly possessed that material. A.R.S. § 13-3553(A)(2). Other than the fact that the tape depicted minors engaged in sexual activity, no information about the content of the video was relevant. Testimony that the tape depicted Ball having sex with his daughter would certainly "create disgust and antagonism toward [Ball], and result[] in overwhelming prejudice against him." *United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993). The judge's ruling *before trial* to exclude this testimony was proper.

But the judge's pretrial ruling did not have the intended prophylactic effect. Despite the ruling, the jury nevertheless heard W██████ say that the videotape depicted Ball having sex with "J████,"[85] "his daughter."[86] When this

---

[85] TR 8/18/99, at 50.
[86] TR 8/18/99, at 49.



bad character evidence emerged, the judge should have granted Ball's motion for a mistrial[87] in order to protect Ball's right to a fair trial. The trial judge had already ruled that the jury may not justifiably rely on the fact that the tape depicted Ball having sex with his daughter in rendering its verdict. *See State v. Stuard*, 176 Ariz. 589, 601, 863 P.2d 881, 893 (1993). Nevertheless, the jury heard it. That fact served only to antagonize and inflame the jury, and thus to deny Ball a fair trial. The trial judge should have granted Ball's motion for a mistrial.

## 6. The trial court should not have allowed Reverend Tim Thacker, Ball's minister, to testify because Thacker's testimony revealed information disclosed in the context of giving spiritual advice.

This Court reviews a trial court's ruling on the exercise of an evidentiary privilege for abuse of discretion. *State v. Sands*, 145 Ariz. 269, 274, 700 P.2d 1369, 1374 (App. 1985).

Under Arizona's priest-penitent privilege, a person making a "confession" to a "clergyman or priest" may forbid the clergyman or priest from testifying "as to any confession made to the clergyman or priest." A.R.S. § 13-4062(3); *see also Church of Jesus Christ of Latter-Day Saints v. Superior Court*, 159 Ariz. 24, 28, 764 P.2d 759, 763 (App. 1988). The term "clergyman" is "not limited to members of religious organizations having an ordained clergy." *Waters*

---

[87] TR 8/18/99, at 50.



*v. O'Connor*, 209 Ariz. 380, 384, 103 P.3d 292, 296 (App. 2004) (footnote omitted). The privilege applies to communications "directed to a clergyman in his or her capacity as a spiritual leader within his or her religious denomination." *Id.* at 385, 103 P.3d at 297 (citing *Scott v. Hammock*, 870 P.2d 947, 955-56 (Utah 1994)).

The priest-penitent privilege protects against the disclosure of "any information which has been obtained by [the clergy member] in [his] professional character or as [a] spiritual advisor." *People v. Campobello*, 348 Ill. App. 3d 619, 635, 810 N.E.2d 307, 321 (Ill. App. Ct. 2004) (quoting 735 Ill. Comp. Stat. 5/8-803). All that is necessary is that the clergy member be acting as a spiritual advisor when the communication took place. The person making the communication need not be a "penitent" at the time. *Tankersley v. State*, 724 So. 2d 557, 560 (Ala. Crim. App. 1998).

Because the person making the communication need not be a "penitent" in order for the privilege to apply, the trial court should not have allowed Reverend Thacker to testify at all. Thacker admitted that he visited Ball at the Cochise County Jail on several occasions in order to render spiritual advice. Thacker wanted to purchase Ball's trailer, saddles, and other equipment in order to provide some missionaries with his church a place to stay. When Ball allowed Thacker to use these items, he was demonstrating that his desire to repent and be baptized was sincere. Thacker's conversations with Ball about buying the trailer

27



and other items thus reflected Ball's desire for spiritual advice. Accordingly, the clergy-penitent privilege forbade Thacker from testifying about those arrangements at trial.

## 7. The trial court should have suppressed the items seized pursuant to the search warrant because the affidavit contained materially false information.

This Court reviews the trial court's determination of probable cause *de novo*. *State ex rel. McDougall v. Superior Court*, 191 Ariz. 182, 185, 953 P.2d 926, 929 (App. 1997).

The Fourth Amendment demands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." Implicit in this requirement is the "obvious assumption" that the affidavit will contain a "*truthful* showing*" before the warrant will issue. *Franks v. Delaware*, 438 U.S. 154, 164, 165 (1978) (emphasis in original) (quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)). The information must "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* at 165. In view of the magistrate's role in "determin[ing] independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." *Id.* (citations omitted).

A criminal defendant may attack the truthfulness of the affidavit offered to support a search warrant. To obtain a hearing, he must show three things. First, he must show that the affidavit contained a false statement. *Id.* at 155. Second, he must show that the affiant either intentionally included the false statement or did so with reckless disregard for the truthfulness of the statement. *Id.* at 166. Third, he must show that the false statement was "necessary to the finding of probable cause." *Id.* If at the hearing

> the allegation of perjury or reckless disregard is established by a preponderance of the evidence, and with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. *Id.*

Once the reviewing court excises the misstatements, it reviews the magistrate's probable cause determination *de novo* based on the remaining statements. *State v. Buccini*, 167 Ariz. 550, 556, 810 P.2d 178, 184 (1991). The remaining statements must support a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In Arizona this means that "a reasonably prudent person," based on the remaining statements, "would be justified in concluding that the items sought are connected with the criminal activity and that they would be found at the place to be searched." *Id.* (quoting *State v. Carter*, 145 Ariz. 101, 110, 700 P.2d 488, 497 (1985)). If after excising the false statements the trial court's probable

29

(409)

cause finding is deficient, the reviewing court must suppress the evidence uncovered by the search warrant.

The information in the affidavit must come from "reasonably trustworthy sources." *State v. Lewis*, 115 Ariz. 530, 532, 566 P.2d 678, 680 (1977). It is not enough that the information in the affidavit gives rise to "mere suspicion" that the target of the warrant has committed a crime. *State v. Edwards*, 111 Ariz. 357, 360, 529 P.2d 1174, 1177 (1974). The magistrate must at least implicitly make a credibility determination before granting a search warrant.

The magistrate should not have believed Detective Knoblock's affidavit. The affidavit claimed that M███ W████████ "ran away from home and went to live" with Ball.[88] But W████████ did not immediately go to live with Ball. Instead, she went with him to Laughlin, Nevada, for a week or so.[89] The magistrate should have wondered why a 17-year-old girl would voluntarily go to live with a 60-year-old man. M███'s credibility was in doubt. As such, the search warrant lacked probable cause, and the trial court should have suppressed the evidence obtained under it.

---

[88] CCSC Trial Dkt. No. 83, Exh. 3, at 2.
[89] CCSC Trial Dkt. No. 83, Exh. 21, 3-4.



# Conclusion

For the foregoing reasons, counsel asks this Court to grant review of

the petition for review and reverse the judgment of the Cochise County Superior

Court.

Respectfully submitted this second day of May, 2005.

Gail Gianasi Natale, #010389
817 North Second Street
Phoenix, AZ 85004
602-258-1778
Attorney for Appellant

# Certificate of Compliance

Under *Rule* 31.13 of the Arizona Rules of Criminal Procedure, counsel

certifies that this document is double-spaced, printed in **14-point Times New**

**Roman** font, and contains 7,058 words.

Gail Gianasi Natale, #010389

# Certificate of Service

The original and six copies of this brief were filed this second day of May, 2005, with the Arizona Court of Appeals, Division Two, 400 West Congress Street, Tucson, Arizona 85701and two copies of this brief were sent by U.S. Mail to: John L. Saccoman, Assistant Attorney General, Criminal Appeals Section, Arizona Attorney General's Office, 1275 West Washington Street, Phoenix, Arizona 85007 and one copy of this brief was sent by U.S. Mail to: Earl Ball #153335, ASPC—Florence, South Unit, P.O. Box 8400, Florence, Arizona 85232.

Gail Gianasi Natale, #010389
Attorney for Appellant

413

# EXHIBIT XX

# IN THE COURT OF APPEALS OF ARIZONA

## DIVISION TWO

---

STATE OF ARIZONA,

*Respondent-Appellee,*

vs.

EARL BALL,

*Petitioner-Appellant.*

---

Appeal from the Superior Court of Arizona
in and for the County of Cochise
CR98-00296
CR98-00345

# REPLY BRIEF OF APPELLANT

**GAIL GIANASI NATALE**
(Ariz. Bar No. 010389)
817 North Second Street
Phoenix, Arizona 85004
(602) 258-1778
*Attorney for Appellant*



# Table of Contents

Argument ...............................................................................................1

1. The *Blakely* error in this case is palpable and demands relief. ......................1

    A. Ball did not forfeit this claim, nor could he have forfeited it. .............1

    B. "Harm to the victim" was not a fact necessary to sustain the conviction here; hence it was not implicit in the jury's verdict. ............................3

        1. Parsing the elements of the crime of which Ball was convicted, we can see that harm to the victim is not a fact necessary to sustain his conviction. .......................................................................4

        2. Harm to the victim is not implicit in the jury's verdict here merely because child pornography laws exist to protect children against exploitation by sexual predators. ...........................................6

    C. There is a reasonable doubt as to whether the jury would have failed to find that victims were harmed by Ball's possessing the child pornography in question. ..................................................................................9

2. Ball could not forfeit his right to appeal his claim against the trial court's jurisdiction. .....................................................................................10

    A. By definition, the trial court's lack of jurisdiction to convict Ball of these crimes means that it lacked the power to do so. ................................10

    B. Accordingly, Ball cannot waive his claim that the trial court did not have the power to punish him. ......................................................................11

3. Despite the State's thoughtful objections, the anti-marital fact privilege applies to this case. ....................................................................................12

    A. Under the test employed in criminal cases, judicial estoppel does not apply here. ......................................................................................13

i

(4I5)

B. The crime with which the State charged Ball does not defeat the privilege claimed here. ...............................................................................15

5. Ball did not invite the error that supports his claim of mistrial. .................16

Conclusion ...............................................................................17

Certificate of Compliance ...............................................................18

Certificate of Service ...................................................................19



# Argument

## 1. The *Blakely* error in this case is palpable and demands relief.

The Sixth Amendment demands that either a jury must pass on or the defendant must admit every fact legally necessary to the sentence the trial court imposes. *Blakely v. Washington*, 542 U.S. 296, ___, 124 S. Ct. 2531, 2537 (2004). Here, the trial judge violated the *Blakely* rule by imposing a sentence based on his perceived "harm" to the "victim" of this crime. This violated *Blakely*. Furthermore, this error was not harmless because the finding of harm to the victim could not have been implicit in the jury's determination that Ball knowingly possessed some contraband and because the jury acquitted Ball of some of the charges.

### A. Ball preserved his *Blakely* claim; he did not forfeit it.

*Blakely* implements the Sixth Amendment right to jury trial in the context of the facts necessary to impose an aggravated sentence under Arizona law. *See generally State v. Brown ex rel. McMullen*, 209 Ariz. 200, 99 P.3d 15 (2004) [hereinafter *Brown II*]. When he accepts a plea bargain, of course, a criminal defendant waives the right to jury trial. In those situations due process requires that the defendant waive the right to jury trial knowingly, voluntarily, and

1

intelligently. *Boykin v. Alabama*, 395 U.S. 238 (1969). But Ball did not accept a plea bargain. He thus asserted his right to jury trial—and the State honored that right. By arguing that Ball has forfeited review of his *Blakely* claim, the State now seeks to deprive him of the right to a jury.

The right to jury *trial* and the right to jury factfinding at *sentencing* are distinct rights that require distinct waivers. *State v. Brown ex rel. McMullen*, 210 Ariz. 534, 542, 115 P.3d 128, 136 (App. 2005) [hereinafter *Brown III*]. In *Brown III*, a defendant who had pleaded guilty before *Blakely* was decided appealed his aggravated sentence as violating *Blakely*. Although in pleading guilty the defendant there had made certain factual admissions, this Court nevertheless held that "he did not intentionally relinquish his right to have a jury decide the facts necessary to establish the aggravating circumstances." *Id.* (citing *United States v. Jones*, 108 F.3d 668, 675-76 (6th Cir. 1997)). Put another way, this Court refused to "infer such an intent from the mere fact that some admissions were made." *Id.*

Unlike Brown, Ball exercised his right to jury trial. It would be a curious thing if a defendant who *waived* his right to jury trial could nevertheless have a jury determination of sentencing facts but a defendant who *exercised* his right to jury trial could somehow lose out on that right. Yet the State argues that that is exactly what should happen here.

418

The State's arguments for waiver run contrary to both law and logic. Ball asserted his right to jury trial; hence, there is every reason to believe that he would have asserted that right when it came time for sentencing. A defendant who was sentenced before *Blakely* was decided preserves his *Blakely* claim by demanding a jury trial. *State v. Timmons*, 209 Ariz. 403, 405-06, 103 P.3d 315, 316-17 (App. 2005). By asserting his right to jury *trial*, Ball did everything he needed to do to preserve his right to a jury determination of aggravating facts at *sentencing*. This Court must therefore determine whether the *Blakely* error in this case was harmless. *See id.* at 407, 103 P.3d at 319 ("*Blakely* error is subject to a harmless error analysis.") (citing *State v. Resendis-Felix*, 209 Ariz. 292, 295, 100 P.3d 457, 460 (App. 2005)).

**B. "Harm to the victim" was not a fact necessary to sustain the conviction here; hence, it was not implicit in the jury's verdict.**

*Blakely* contemplates that reviewing courts will formalistically determine whether a jury has passed on all the facts legally necessary to the sentence by parsing the elements of the crime of conviction as set forth by the legislature. Here, harm to the victim is not a fact necessary to support a conviction for sexual exploitation of a minor. Even though the legislature may have found child pornography to be a noxious evil when it enacted the law criminalizing the sexual exploitation of minors, that fact has no place in the formalistic *Blakely* analysis.

3

419

This Court must reject the State's contention that a finding of harm to the victim is implicit in the conviction here.

## (1) *Parsing the elements of the crime of which Ball was convicted, we can see that harm to the victim is not a fact necessary to sustain his conviction.*

The *Blakely* rule is a formalistic one. *Blakely* requires additional jury factfinding only if the jury, in rendering its verdict, has not passed on all the facts necessary to the punishment. If a fact necessary for an aggravated sentence is not also one necessary for the guilty verdict, then the jury must engage in additional factfinding before the judge may impose an aggravated sentence. *Brown III*, 210 Ariz. at 540, 115 P.3d at 136. Serious physical injury, for example, is not a fact implicit in a conviction for *attempted* murder. "[A]ll that is required to sustain an attempted murder conviction is evidence of 'some overt act or steps taken toward the commission of [murder] and an intent to commit the crime.'" *State v. Cleere*, 210 Ariz. 212, 214, 109 P.3d 107, 109 (App. 2005) (quoting *State v. Routhier*, 137 Ariz. 90, 99, 669 P.2d 68, 77 (1983)). It is possible to "take an intentional step toward committing... murder without exerting or threatening to exert physical force on another person." *State v. Williams*, 183 Ariz. 368, 382, 904 P.2d 437, 451 (1995). Thus, the jury must engage in additional factfinding before the judge can impose an aggravated sentence for attempted murder on the basis of serious physical injury to the victim. *Cleere*, 210 Ariz. at 214, 109 P.3d at 109.

4

Similarly, parsing the elements of the crime of aggravated robbery led this Court to conclude that the aggravating factor of "presence of accomplices" was implicit in the jury's verdict. *State v. Timmons*, 209 Ariz. 403, 406 n.1, 103 P.3d 315, 318 n.1 (App. 2005). Under Arizona law, "[a] person commits aggravated robbery if in the course of committing robbery..., such person is aided by one or more accomplices actually present." A.R.S. § 13-1903(A). A jury may not convict a person of aggravated robbery unless it concludes that one or more accomplices were actually present during the robbery. Thus, in every conviction for aggravated robbery, the jury has already passed on the aggravating factor of "presence of an accomplice" under A.R.S. § 13-702(C)(4). *See Timmons*, 209 Ariz. at 406 n.1, 105 P.3d at 318 n.1.

Under the same formalistic approach, it is incorrect to say that the aggravating factor of harm to the victim is implicit in the jury's verdict of guilty for the crime of sexual exploitation of a minor under A.R.S. § 13-3553(A)(2). As relevant here, a person "commits sexual exploitation of a minor by knowingly... possessing... any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." A.R.S. § 13-3553(A)(2). "'Exploitive exhibition,'" in turn, refers to "the actual or simulated exhibition of the genitals or pubic or rectal areas of any person for the purpose of sexual stimulation of the viewer." A.R.S. § 13-3551(4). Certain aspects of the definition of "sexual conduct"

5

also require that the depiction be for the viewer's sexual stimulation. A.R.S. § 13-3551(9)(d)-(f). Thus, in convicting Ball of sexual exploitation of a minor, the jury found:

(1) that the pictures depicted minors;

(2) that the pictures depicted the genitals of one or more minors;

(3) that the pictures were for the sexual stimulation of the viewer;

(4) that Ball possessed these pictures; and

(5) that he knew he possessed such pictures.

The jury did not find that victims were harmed, because that is not a fact essential for conviction under the statute. The State's argument that the jury did find harm to the victims cannot stand in light of the formalistic analysis required by *Blakely*.

**(2) *Harm to the victim is not implicit in the jury's verdict here merely because child pornography laws exist to protect children against exploitation by sexual predators.***

Sexual exploitation of a minor is a heinous crime, and the government has a compelling interest in eradicating it. For this reason, the Supreme Court has held that laws forbidding the distribution of child pornography, *New York v. Ferber*, 458 U.S. 747 (1982), and the possession of child pornography, *Osborne v. Ohio*, 495 U.S. 103 (1990), do not violate the First Amendment. Ball has conspicuously

6

(422)

*not* argued that the law under which he was convicted was outside the State's power to enact, or was unconstitutionally overbroad, because such a challenge would certainly fail. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002); *State v. Hazlett*, 205 Ariz. 523, 73 P.3d 1258 (App. 2003). Nevertheless, in order to justify Ball's aggravated sentence, the State offers the facts that support its compelling interest in enacting the law outlawing the sexual exploitation of minors as facts that it claims to be implicit in the jury's conclusion that Ball is guilty of the crime of sexual exploitation of a minor.

When it makes law, the legislature frequently takes into account certain facts that counsel either for or against enacting the law under consideration. Should the law come under judicial scrutiny later on, these so-called "legislative facts" can help a court decide whether the government has met its constitutional burden of proof. *See generally United States v. Morrison*, 529 U.S. 598, 612-15 (2000); *United States v. Lopez*, 514 U.S. 549, 563-65 (1995). Ball does not dispute that the legislature believed that "the use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of" children when it enacted the law forbidding the sexual exploitation of minors. *Osborne v. Ohio*, 495 U.S. 103, 109 (1990) (quoting *New York v. Ferber*, 458 U.S. 747, 758 (1982)). For this reason, Ball has no quarrel with the State's power to enact the statute under which he was convicted.

(423)

Ball vigorously disputes, however, that the legislature required a jury to find that a person actually *harmed* a child in order to sustain a conviction for sexual exploitation of a minor. In light of the harm children might suffer at the hands of pornographers and molesters, the State cannot be faulted for "attempting to stamp out this vice at all levels of the distribution chain." *Osborne*, 495 U.S. at 110. But if the State's attempt to stamp out a vice involves criminal punishment, then the process by which it imposes that punishment must comport with the constitutional requirements of notice and jury factfinding. *See Blakely*, 124 S. Ct. at 2537; *id.* at 2546 (O'Connor, J., dissenting). Legislative facts are not law; hence, the legislature has not formally notified the public that those facts can subject it to criminal liability. Thus "harm to the victim" is not a fact that the Arizona Legislature requires in order to sustain a conviction for sexual exploitation of a minor.

The State's argument that a finding of "harm to the victim" is implicit in the crime of possession of contraband gives rise to a host of other problems. This is particularly true where the contraband at issue is drugs or guns—inanimate objects not so easily traced to a particular person as the child pornography at issue here. Who would be the "victim" of *those* crimes? How would the state go about notifying the public that "harm" to the "victims" of those crimes could be used to aggravate the sentence for possessing the contraband in question? Would the

(424)

legislature readily amend the criminal code to allow juries to find "harm to the victim" in the manner the Attorney General suggests? This Court could avoid these questions—better left to the legislature in any event—by rejecting the State's contention that "harm to the victim" is implicit in a conviction for possessing contraband.

**C. There is a reasonable doubt as to whether the jury would have failed to find that victims were harmed by Ball's possessing the child pornography in question.**

The *Blakely* error here is not harmless, because there is a reasonable doubt as to whether the jury would have found that the possession of the child pornography here was harmful to the victims. The jury here certainly could have concluded that there was no "harm to the victim" here because, as the State concedes, the jury acquitted Ball of some of the charges. When the jury acquits of a greater charge but convicts of a lesser included offense, as with kidnapping and unlawful imprisonment, it is reasonable to conclude that the jury had a reasonable doubt as to the existence of the element that the two crimes do not have in common. *See State v. Henderson*, 210 Ariz. 561, 569, 115 P.3d 601, 609 (2005). Here, the jury acquitted Ball of the possession counts that involved depictions of his wife before they were married. We can reasonably conclude that the jury did



9

not believe the pictures were harmful to her beyond a reasonable doubt. Accordingly, the *Blakely* error here was not harmless beyond a reasonable doubt.

## 2. Ball could not forfeit his right to appeal his claim against the trial court's jurisdiction.

Even though more than seven years elapsed between the State's discovery of the evidence of the crimes here and Ball's convictions, the State nevertheless contends that its courts have the power to convict him in spite of a legislative judgment that they do not. This Court's recent ruling on the subject further confuses the matter.

### A. Because the trial court lacked jurisdiction to try Ball, it lacked the power to punish him by *definition*.

"[A] criminal statute of limitation is not a mere limitation on the remedy [as in civil cases], but a limitation upon the power of the sovereign to act against the accused. It is jurisdictional." *Price v. Maxwell*, 140 Ariz. 232, 234, 681 P.2d 384, 386 (1984). Consistent with this clear rule, this Court has recently held that a prosecution that commences only two years after the state actually discovers the violation may go forward. *State v. Jackson*, 208 Ariz. 56, 67, 90 P.3d 793, 804 (App. 2004). The burden-shifting approach the *Jackson* court adopted did not, however, clarify the meaning of "jurisdictional" with regard to statutes of

10

limitations. Here the State is exploiting this confusion to argue that, even though it brought the prosecution at issue here more than seven years after it discovered the violation in question, the trial court nevertheless had the power to convict Ball.

Until the Arizona Supreme Court or the Arizona Legislature determine otherwise, this Court is bound by the prevailing decisional law. Accordingly, this Court must construe criminal statutes of limitations as operating to deprive trial courts of *power* to adjudicate time-barred prosecutions. Just as a trial court in Arizona has no power to proceed against a defendant charged with a crime that did not take place in Arizona, *see State v. Willoughby*, 181 Ariz. 530, 892 P.2d 1319 (1995), it has no power to proceed against a defendant charged with a crime that the applicable statute of limitations deems to be stale. *See Stogner v. California*, 539 U.S. 607, 615 (2003) (noting that a criminal statute of limitations deprives courts of the "power to impose" punishment). If the statute of limitations had elapsed against the State here, then it had no authority to prosecute Ball, and the trial court had no power to punish him.

**B. Accordingly, Ball cannot waive his claim that the trial court did not have the power to punish him.**

If a trial court lacks the power to do something, yet does it anyway, an appellate court must reverse the trial court's actions, because the trial court has abused its discretion to act. *Jackson*, 208 Ariz. at 59, 90 P.3d at 796. In such a

11

(427)

situation, allowing the lower court's action to stand in the face of its impotence to act runs counter to the due process concerns that govern the exercise of judicial power. Nevertheless, the State argues that Ball forfeited his claim against the trial court's jurisdiction by waiting until after his trial was over to object to it.

Arizona has adopted a "minority view" that a statute-of-limitations claim is jurisdictional rather than an affirmative defense. *Jackson*, 208 Ariz. at 61 n.9, 90 P.3d at 798 n.9. Affirmative defenses are things that the defendant must raise at trial or forfeit later. *See, e.g., National Homes Corp. v. Totem Mobile Home Sales, Inc.*, 140 Ariz. 434, 438, 682 P.2d 439, 443 (App. 1984) (personal jurisdiction); *State v. Gonzales*, 27 Ariz. App. 308, 554 P.2d 904 (1976) (speedy trial). By negative implication, the *Jackson* court's ultimate conclusion that the state need not rebut the defendant's limitations claim by proof beyond a reasonable doubt is further evidence that the statute of limitations is not an affirmative defense. *Jackson*, 208 Ariz. at 62, 90 P.3d at 799. This Court has the power to rule on this claim in order to correct the trial court's improper exercise of judicial power.

## 3. Despite the State's thoughtful objections, the anti-marital fact privilege applies to this case.

Because Ball is still married to L███ ███ █████, she should not have testified at his trial over his objection. Here, Ball is not making a factually

12

inconsistent argument; hence, judicial estoppel does not apply. Sexual exploitation of a minor is not a crime committed by one spouse against the other, and so the anti-marital fact privilege applies.

## A. Under the test employed in criminal cases, judicial estoppel does not apply here.

Judicial estoppel prevents a party that prevailed on a particular question in a prior proceeding from asserting an inconsistent position in a subsequent proceeding on the same question. *State v. Towery*, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996). In *Towery*, the defendant asked the court to apply judicial estoppel to prevent the State from arguing that his "one admission about one crime" "help[ed] prove two unrelated criminal acts." *Id.* at 181, 920 P.2d at 303. In the end, the *Towery* court avoided concluding whether judicial estoppel prevented the State from adopting these factually inconsistent positions "in light of the overwhelming evidence of" the defendant's guilt. *Id.* at 184, 920 P.2d at 306.

The *Towery* court considered deploying judicial estoppel because at the defendant's two prior trials, the issue was whether he admitted robbing the convenience store he was charged with robbing. *Id.* at 182-83, 920 P.2d at 304-05. The question at the two trials was "the same" because "Defendant's admission could pertain to only one of the crimes." *Id.* at 182, 920 P.2d at 304.

13

429

Claiming the anti-marital fact privilege necessarily involves asserting that the claimant of the privilege is married to the person against whom he seeks to assert it. If a person asserts that privilege against two separate people, he makes two different assertions—that he is married to each person against whom he asserts the privilege. For purposes of judicial estoppel, then, the relevant question here is, "Is the claimant married to the person against whom he seeks to assert the privilege?", just as in *Towery* the relevant question was, "Did the defendant admit the crime with which he was charged?" Asserting a privilege against one wife in one appeal and against a different wife in a different appeal poses does not give rise to judicial estoppel because under the test articulated by the *Towery* court the issue does not involve the "same question."

So that this Court may resolve the judicial estoppel question in the State's favor, the State naturally asks this Court to deploy a common-sense assumption: that a person may be married to only one other person at a time. It reminds this Court that bigamy—defined as marrying someone knowing one is already married to someone else—is illegal in Arizona. *See* A.R.S. § 13-3606(A). The laws regulating marriage in general and bigamy in particular certainly codify widespread cultural norms. *See Reynolds v. United States*, 98 U.S. 145 (1878); *see also Standhardt v. Superior Court*, 206 Ariz. 276, 286 n.15, 77 P.3d 451, 461 n.15 (App. 2003) (justifying the ban on marriage between gay and lesbian people on the

14

basis of the notion of "traditional marriage"). But that common-sense assumption based on widespread cultural norms cannot be part of the judicial estoppel analysis under the *Towery* court's test. Judicial estoppel does not, therefore, foreclose the claim Ball is making now.

## B. The crime with which the State charged Ball does not defeat the privilege claimed here.

The State argues that notwithstanding judicial estoppel, Ball cannot claim the anti-marital fact privilege in this case because he was charged with committing sexual exploitation of a minor—against his wife! *See* A.R.S. § 13-4062(1) ("These exceptions [to the marital privilege] do not apply in a criminal action for a crime committed by the husband against the wife...."). This is a naked attempt to salvage its unpersuasive *Blakely* argument that harm to the "victim" was implicit in the jury's guilty verdict on a charge of possession of contraband.

The State also argues that the privilege does not apply where "a child's... abuse... is in issue." A.R.S. § 8-805(B). "Abuse" here includes, among other things, sexual exploitation of a minor. A.R.S. § 8-801(2)(a). But we must construe the conflicting privilege statutes in the criminal and juvenile codes in harmony with each other. *See Baker v. Gardner*, 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988). We must therefore arrive at the conclusion that, at the very least, committing sexual exploitation of a minor by possessing photographs depicting

15

(431)

one's wife cannot implicate the privilege.. In fact, the jury *acquitted* Ball of those counts involving photographs of his wife. Thus, he did not commit this crime "against" his wife, nor a "child" within the meaning of the juvenile code. This Court must evaluate the merits of Ball's privilege claim.

## 5. Ball did not invite the error that supports his claim of mistrial.[1]

The State cites a portion of the transcript to support its claim that Ball invited the error that gives rise to his claim of mistrial. The trial court had ordered the parties not to bring up the actual subjects depicted on the videotape. During M▇▇ W▇▇▇▇▇▇'s testimony, the trial judge asked the question that spurred her to admit that the tape depicted Ball having sex with his daughter. All trial counsel did was seize upon the court's implicit rescission of its own pre-trial order. Once trial counsel adequately clarified that W▇▇▇▇▇▇ was saying the tape depicted Ball having sex with his daughter, he immediately asked for a mistrial. In the portion of the hearing referred to in the Attorney General's brief, it was clearly the trial judge and not Ball's counsel who asked the question that spawned the improper admission. In short, Ball did not invite the error here.

---

[1] So that this Court's staff attorneys may match up the responses in this brief to the arguments the State has made, which in turn correspond to Ball's previous arguments, Ball has purposely numbered this argument "5."

432

# Conclusion

For the foregoing reasons, Ball asks this Court to reverse his convictions, or at the very least remand for a new sentencing hearing.

Gail Gianasi Natale
Attorney for Appellant

433

# EXHIBIT YY

FILED
01 JUL 25 AM 11:24

CLERK

.LED BY CLERK

JUL 2 4 2001

COURT OF APPEALS
DIVISION TWO

COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

ORDER

2 CA-CR 99-0481
2 CA-CR 01-0279-PR
Department B
Cochise County
Cause Nos. CR98000296/CR98000345

RE: STATE OF ARIZONA v. EARL BALL

On the court's own motion,

ORDERED: The stay of appeal is vacated, jurisdiction is revested in this court, and the above-entitled appeal is reinstated.

FURTHER ORDERED: Appeal 2 CA-CR 99-0481 and Petition for Review 2 CA-CR 01-0279-PR are hereby consolidated for all purposes on appeal. All further pleadings filed with this court shall reflect all cause numbers as follows:

2 CA-CR 99-0481
2 CA-CR 01-0279-PR Cons.

FURTHER ORDERED: Appellant's Opening Brief for the consolidated case is due within 40 days after this court's notice that the record is complete for the petition for review portion of the consolidated case.

Chief Judge Espinosa and Judge Druke concurring.

DATED: July 24, 2001

Joseph W. Howard
Presiding Judge

434

# EXHIBIT ZZ

E-Filed

Box
2045

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

AUG 31 2006

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,                    )
                                         )        2 CA-CR 1999-0481   99-1557
            Appellee/Respondent,         )        2 CA-CR 2001-0279-PR  Saccomar
                                         )        (Consolidated)
            v.                           )        DEPARTMENT B
                                         )
EARL BALL,                               )        MEMORANDUM DECISION
                                         )        Not for Publication
            Appellant/Petitioner.        )        Rule 111, Rules of
_____)        the Supreme Court

APPEAL AND PETITION FOR REVIEW
FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause Nos. CR98000296 and CR98000345

Honorable Matthew W. Borowiec, Judge
Honorable Howard Fell, Judge Pro Tempore

AFFIRMED
REVIEW GRANTED; RELIEF DENIED

---

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and John L. Saccoman                          Phoenix
                                                      Attorneys for Appellee

Gail Gianasi Natale                                                Phoenix
                                                      Attorney for Appellant

Earl Ball                                                         Florence
                                                      In Propria Persona

---

E S P I N O S A, Judge.



¶1     Earl Ball was convicted of twelve counts of sexual exploitation of a minor stemming from his possession of twelve items of child pornography. On appeal, Ball argues the trial court erred by permitting a former spouse to testify against him, denying his motion to suppress his statements, denying his motion for mistrial, permitting a pastor to testify in violation of the priest-penitent privilege, and failing to suppress evidence seized pursuant to a warrant Ball contends was invalid. Ball also argues the court had no jurisdiction over his offenses because the statute of limitations had run and contends he is entitled to relief from his aggravated sentences pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). In a consolidated petition for review, Ball challenges the grand jury process that led to his indictment, rulings by both trial judges in the case, and the statute under which he was convicted. He also contends his trial counsel was ineffective. We find no merit in the appeal or the petition for review.

### Factual Background

¶2     We view the evidence and any reasonable inferences therefrom in the light most favorable to sustaining the convictions. *See State v. Henry*, 205 Ariz. 229, 68 P.3d 455 (App. 2003). In June 1998, a Cochise County deputy sheriff searched Ball's residences pursuant to a warrant. Based on evidence seized during the searches, Ball was indicted in two criminal cases. The first indictment, filed in June 1998, was for a single count of sexual exploitation of a minor, based on his possession of a videotape.[1] The second indictment,

---

[1]This indictment was remanded twice for a redetermination of probable cause. However, the charge was the same on each subsequent indictment.

2

436

filed in July 1998, was for an additional sixteen counts of sexual exploitation of a minor, based on Ball's possession of a second videotape and fifteen still photographs. All seventeen counts were class two felonies and alleged the minors depicted were under fifteen years of age.[2] The cases were later consolidated for trial.

¶3      After a jury trial in August 1999, Ball was found guilty of two counts of sexual exploitation of a minor for possessing the two videotapes. The jury was unable to reach a verdict on the fifteen counts relating to the still photographs. Ball was sentenced for the two convictions in October 1999, receiving an aggravated, ten-year prison term on each conviction, to be served consecutively.[3] Ball filed a motion to vacate the judgment on those convictions, which the trial court denied after a hearing.

¶4      In December 1999, Ball was retried on the fifteen counts of possessing the still photographs. He was convicted of ten counts and acquitted of the remaining five. After Ball waived his right to counsel and the state proved he had one prior felony conviction, he was sentenced to concurrent, presumptive 9.25-year prison terms on each conviction, to be served concurrently with the previously imposed sentences. This appeal and petition for review followed.

---

[2] Ball filed myriad motions, both procedural and substantive, prior to trial. We address only those relevant to the issues raised on appeal and in the petition for review.

[3] At the October 1999 sentencing hearing, a 1.5-year prison term was also imposed for a felony conviction in another case. This court upheld that sentence in *State v. Ball*, No. 2 CA-CR 1999-0480 (memorandum decision filed April 29, 2004).

## *Blakely* Relief

¶5        Ball first argues all his sentences for sexual exploitation of a minor were aggravated in violation of the holding in *Blakely*. The state claims Ball waived any right to *Blakely* relief by failing to raise the issue at his sentencing hearing. But this claim is specious, given that Ball was sentenced in October 1999, well before either *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), or *Blakely* was decided. *Blakely* relief is available to any defendant whose appeal was pending on June 24, 2004, the date the decision was filed. *See State v. Miranda-Cabrera*, 209 Ariz. 220, 99 P.3d 35 (App. 2004).

¶6        Ball was found guilty of violating A.R.S. § 13-3553(A)(2) and sentenced to consecutive, aggravated, ten-year prison terms. The state proved Ball had one prior felony conviction after his second trial, making the 9.25-year prison terms he received presumptive sentences under A.R.S. § 13-604(B). Because *Blakely* is not implicated when a defendant receives presumptive sentences, we address only Ball's aggravated sentences. *See State v. Johnson*, 210 Ariz. 438, 111 P.3d 1038 (App. 2005).

¶7        Section 13-3553(C) provides, as it did when Ball committed these crimes, that a person convicted under it be sentenced pursuant to A.R.S. § 13-604.01 if the minor is "under fifteen years of age."[4] *See* 1996 Ariz. Sess. Laws, ch. 112, § 3. Neither Ball nor the state has mentioned that, at trial, the jury was given a stipulation that the victim, J., had been between the ages of ten and twelve at the time the videotapes were made. Former

---

[4]Had Ball been sentenced under A.R.S. § 13-604.01, the presumptive term for the first two offenses would have been seventeen years.



§ 13-604.01(C), now (D), set the presumptive sentence at seventeen years for an adult with no predicate felony convictions.[5] 1997 Ariz. Sess. Laws, ch. 179, § 1. Because Ball stipulated to J.'s age, and the jury was instructed that the stipulation was binding, it could not have found that J. was fifteen years of age or older, which would have removed Ball from the dangerous crimes against children statute. *See* A.R.S. § 13-3553(B); 1996 Ariz. Sess. Laws, ch. 112, § 3; *see also Boynton v. Anderson*, 205 Ariz. 45, 66 P.3d 88 (App. 2003) (a crime may be punishable under § 13-604.01 without being designated a dangerous crime against children if certain enumerated circumstances exist). Thus, the statutory maximum sentence Ball could have received was seventeen years. *See* former A.R.S. § 13-604.01(C); 1997 Ariz. Sess. Laws, ch. 179, § 1. But, because the trial court determined, contrary to the plain language of former § 13-3553(B), that the offenses were not dangerous crimes against children, it sentenced Ball to ten-year terms.[6] Thus, the error that occurred in Ball's sentences was in his favor and does not warrant *Blakely* relief. *See Johnson; Miranda-Cabrera.*

### Statute of Limitations

¶8      Ball next argues the trial court lacked jurisdiction over his offenses because the seven-year statute of limitations for sexual exploitation of a minor had expired before he was

---

[5]Because Ball's offenses were completed offenses instead of preparatory, they were dangerous crimes against children "in the first degree." *See* former A.R.S. § 13-604.01(K)(1), 1997 Ariz. Sess. Laws, ch. 179, § 1.

[6]The state filed notices of cross-appeal after each trial, asserting the trial court had erred by refusing to sentence Ball under A.R.S. § 13.604-01, but failed to assert a cross-appeal in its brief. Accordingly, we do not address this issue.

5

indicted in 1998.[7] Ball contends the limitation period was triggered by the issuance in 1989 of a warrant to search his property. The state responds that, because the warrant was not served, the limitation period never commenced. The state also notes the 1989 warrant mentioned only videotapes and, thus, could not have begun the limitation period for the still photographs.

¶9         Ball fails to challenge any particular ruling by the trial court, merely asserting "[t]he trial court lacked jurisdiction to try [him]." The record shows that Ball sought a continuance a few days before trial to " investigat[e] . . . the issue of whether these charges are barred by the statute of limitations." After a hearing on the motion, the trial court denied Ball's request for a continuance, determining that possession of the materials was a continuing offense, and therefore, the limitation period had not run. Ball has not argued the trial court erred in determining his possession of the materials were continuing offenses.

¶10        Ball claims that, because the state did not exercise the "reasonable diligence" required by A.R.S. § 13-107(B) to determine if a crime had been committed in 1989, the court lacked jurisdiction to try him, relying on *State v. Jackson*, 208 Ariz. 56, 90 P.3d 793 (App. 2004). However, Ball did not make this argument to the trial court until his motion to vacate the judgment was filed after his first trial. The court denied that motion without comment. The state points out that Ball did not properly appeal from the denial of his motion to vacate judgment. When an appellant "fail[s] to file a notice of appeal from the denial of

---

[7]The statute of limitations for this offense was deleted in 2001. *See* 2001 Ariz. Sess. Laws, chs. 183, § 1, 271, § 1.

6



his motion to vacate within 20 days after the ruling on the order as required by Rules 31.2(a) and 31.2(d)[,] Ariz. R. Crim. P., 17 A.R.S., we have no jurisdiction to proceed with the merits of [the] argument." *State v. Wynn*, 114 Ariz. 561, 563, 562 P.2d 734, 736 (App. 1977).[8] Accordingly, we cannot address the trial court's denial of Ball's motion to vacate judgment.

## Marital Privilege

¶11        Ball asserts the trial court erred by permitting L. to testify, arguing she was married to him in 1981 and the antimarital fact privilege applied to bar her testimony.[9] The state contends L. testified only about events that had occurred before she married Ball, and the privilege was therefore inapplicable.[10] However, in his briefs, Ball cites only L.'s testimony at his first trial in August 1999, to which he did not object. Ball did not file a motion to preclude L.'s testimony until November 1999, before his second trial began. He has cited no testimony from the second trial in his arguments on appeal.

---

[8]We note that Rule 24.2, Ariz. R. Crim. P., 17 A.R.S., has recently been amended to require a separate notice of appeal, although it did not when Ball's motion was filed. *See* 207 Ariz. L (2004).

[9]Prior to the August trial, Ball had filed a motion invoking spousal privilege to keep a woman he had allegedly married in 1996 from testifying about events during their marriage. Relying on this, the state argues he is estopped from raising the issue, an argument we need not address in light of our resolution of the issue.

[10]Section 13-4062(1), A.R.S., includes both the antimarital fact privilege and the marital communications privilege. Ball has not sought to invoke the communications privilege. *See Ulibarri v. Superior Court*, 184 Ariz. 382, 909 P.2d 449 (App. 1995) (antimarital fact and marital communications privileges are distinguishable).



¶12        The existence of an evidentiary privilege is a question of law, which we review *de novo. Blazek v. Superior Court*, 177 Ariz. 535, 869 P.2d 509 (App. 1994). To determine the limits of a privilege codified in a statute, "we look to the words, context, reason and spirit of the statute." *Id.* at 539, 869 P.2d at 513. Section 13-4062(1), A.R.S., contains the antimarital fact privilege, which prohibits either spouse from appearing as a witness against the other "as to events occurring during the marriage" without the consent of the nontestifying spouse. However, a spouse may appear and testify about events occurring before or after the marriage. *See State ex rel. Woods v. Cohen*, 173 Ariz. 497, 844 P.2d 1147 (1992).

¶13        Ball focuses his argument on the validity of his marriage to L., but we need not address that issue because L.'s testimony was limited to events that occurred before their marriage, which were not subject to the privilege, *see* § 13-4062(1), as Ball concedes. And, as noted above, Ball has not cited any of L.'s testimony at his second trial. "Evidence elicited in violation of a privilege denies the accused a substantial procedural right only when actual prejudice is shown." *Cohen*, 173 Ariz. at 502, 844 P.2d at 1152. Because Ball has not identified any testimony given after he sought to invoke the privilege, much less explained the harm it caused, we cannot say the trial court erred in admitting L.'s testimony. *See Cohen; Blazek.*

8

## Motion to Suppress Statements

¶14        Ball next challenges the trial court's refusal to suppress the statements he made to police detectives after his arrest, arguing they were both involuntary and taken in violation of his Fifth Amendment right to counsel. The state responds that Ball reinitiated contact with the detectives after he had requested an attorney and voluntarily spoke to the detectives after an audio tape recorder was turned off, which justified the trial court's ruling. We review a ruling on a motion to suppress evidence for an abuse of discretion, considering only the evidence presented at the suppression hearing in the light most favorable to sustaining the trial court's factual findings. *State v. Esser*, 205 Ariz. 320, 70 P.3d 449 (App. 2003). We review *de novo* the trial court's legal conclusions, *id.*, but review its determination on the voluntariness of a defendant's statement for clear and manifest error. *State v. Trostle*, 191 Ariz. 4, 951 P.2d 869 (1997).

¶15        Ball asserts, and the record confirms, that he requested an attorney during his initial conversation with the detectives. When the detective turned off the recorder following the request for an attorney, Ball then said: "Now that you turned the tape off, if you want to talk, we'll talk." The detective reminded Ball that he had asked for an attorney, and Ball replied: "We can still talk. You know." Ball then spoke at length with the detectives, referring to his former law enforcement experience and saying, "I don't know what is going to happen when I get a lawyer, but I want to tell you right now," and "[y]ou've already Mirandized me so what's the [use] in bull shitting."

9



¶16        When a defendant reinitiates contact with police officers after requesting an attorney, "show[ing] a desire for a discussion about the investigation," the defendant waives his or her rights, and any ensuing statements are admissible. *State v. Smith*, 193 Ariz. 452, ¶ 23, 974 P.2d 431, 437 (1999). In *Smith*, the defendant requested an attorney, but then said, "I don't see why I shouldn't just tell you." *Id.* Our supreme court held that the statement showed Smith's "desire to discuss the investigation" and made his confession admissible. *Id.* ¶ 26. Ball clearly articulated his desire to speak to the detectives without an attorney even before he referred to what might happen when he had an attorney. Ball's reinitiation of the discussion waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), and the trial court did not err in refusing to suppress his statements on that basis.

¶17        Ball also contends his statements were involuntary because the tape recorder had not been turned off when he believed it had been. Although he attempts to portray turning off the recorder as a promise by the detectives, the record shows Ball never requested that the tape recorder be turned off. The record also shows the prosecutor avowed, without contradiction by Ball, that the audio recorder had actually been turned off but that a visible video camera in the room had also recorded the interview. Ball simply failed to address the issue of a video recording below or on appeal. We note that, during the interview, Ball said: "[N]o matter what I say . . . because the tape recorder ain't on. You are still making notes. Okay." To determine if a confession was voluntary, a court looks to the totality of the circumstances surrounding it and determines if "the defendant's will was overborne." *State v. Newell*, 212 Ariz. 389, ¶ 39, 132 P.3d 838, 843 (2006). We cannot say on this record that

10



the trial court committed clear and manifest error in determining Ball had voluntarily confessed to the detectives.

## Motion for Mistrial

¶18    Ball contends the trial court erred by denying his motion for a mistrial, which was based on the alleged violation of a pretrial ruling that J. would not be identified as his daughter. The state contends Ball invited the error and cannot seek relief from his own actions. We will uphold a trial court's denial of a motion for mistrial absent a clear abuse of discretion. *State v. Dann*, 205 Ariz. 557, 74 P.3d 231 (2003).

¶19    Before trial, the court had ordered that the jury not be told that J., the young girl in the videotapes, was Ball's daughter. At trial, during the cross-examination of witness M., defense counsel attempted to impeach her with a prior statement. After counsel asked a series of confusing questions, which apparently misstated questions asked of M. at a pretrial interview, the trial court asked M. to clarify whether her answer at trial was true. Her response was, "He told me that it was sex with his daughter." Defense counsel did not object to that answer and continued his cross-examination, which culminated with the question, "Now, your testimony is he said it was sex with [J.]?" After M. replied, "Yes," defense counsel moved for a mistrial. The court denied the motion, stating "I didn't think that's any more prejudicial than any of the other stuff."

¶20    A trial court has broad discretion in ruling on a motion for mistrial, and we will not disturb a court's ruling on such a motion absent a clear abuse of discretion. *State v. Murray*, 184 Ariz. 9, 906 P.2d 542 (1995). "A declaration of a mistrial is the most dramatic

11



remedy for trial error and should be granted only when it appears that justice will [otherwise] be thwarted." *State v. Adamson*, 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983). Whether to grant a mistrial motion is "largely within the discretion of the trial court[,] which must evaluate the situation and decide if some remedy short of mistrial will cure the error." *Id*.

¶21        We agree with Ball that the jury's knowledge of the relationship between him and J. was prejudicial, but we disagree that Ball has shown he suffered any undue prejudice from it. Ball was charged with seventeen counts of possessing child pornography, and the still photographs and portions of videotapes were shown to the jury. As the trial court implicitly found, any additional prejudice from the evidence that the pornographic images Ball had possessed were of his own daughter was incremental and marginal. "[B]ecause the trial judge is in the best position to assess the impact of a witness's statements on the jury, we defer to the trial judge's discretionary determination." *State v. Dann*, 205 Ariz. 557, ¶ 43, 74 P.3d 231, 244 (2003). Thus, we cannot say the only appropriate remedy was a mistrial. Accordingly, we see no abuse of the trial court's discretion in denying the motion. *See Murray; Adamson.*

### Priest-Penitent Privilege

¶22        Ball next argues that Thacker, a minister, should not have been permitted to testify because his testimony violated Arizona's priest-penitent privilege in A.R.S. § 13-4062(3). The state asserts Ball has waived the claim and it lacks merit in any event because Ball failed to sustain his burden of showing the information was privileged. Because the state has failed to support its waiver argument, we review Ball's claim on its merits. *See*

12



Ariz. R. Crim. P. 31.13(c)(1)(vi), 17 A.R.S. The existence of an evidentiary privilege is a question of law that we review *de novo. Blazek v. Superior Court,* 177 Ariz. 535, 869 P.2d 509 (App. 1994). Section 13-4062(3) protects "any confession made to [a] clergyman . . . in his professional character in the course of discipline enjoined by the church to which the clergyman . . . belongs."

¶23        Before trial, the court ruled that Thacker could testify about "the business transfer" dealings he had had with Ball, but not about "the conscience thing."[11] Thacker subsequently testified about personal property he had acquired from Ball and identified the travel trailer where one videotape was found as one Ball had let him use after Ball was arrested. Ball has made no showing how these transactions would be privileged, and his unsupported argument that his "allow[ing] Thacker to use these items . . . demonstrat[ed] that his desire to repent and be baptized was sincere" lacks merit. The trial court did not err in permitting Thacker to testify about the unprivileged business dealings he had had with Ball after his arrest. *See Blazek.*

### Invalid Search Warrant

¶24        Ball next challenges the trial court's refusal to suppress the evidence seized pursuant to the search warrant because the affidavit used to obtain the warrant contained an allegedly false statement. The state responds the affidavit contained no false information and the warrant was valid. "A reviewing court must presume a search warrant is valid; it is the

---

[11]We note that, during the hearing on Ball's motion to preclude Thacker's testimony, Thacker said: "I felt like [Ball's inculpatory statement] was a manipulation" intended to prevent Thacker from testifying.



defendant's burden to prove otherwise." *State v. Crowley*, 202 Ariz. 80, ¶ 7, 41 P.3d 618, 621 (2002). "A trial court's task is to determine whether the totality of the circumstances indicates a substantial basis for the magistrate's decision." *State v. Hyde*, 186 Ariz. 252, 272, 921 P.2d 655, 675 (1996). We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Crowley*.

¶25 Although Ball argues the affidavit contained false information, he identifies no false statement by the affiant; instead, it appears the basis of his complaint is that "[t]he magistrate should not have believed [the detective's] affidavit" because "[M.'s] credibility was in doubt." This is so, he claims, because "the magistrate should have wondered why a 17-year-old girl would voluntarily go to live with a 60-year-old man." Ball cites no authority for this vague proposition, and we are aware of none. Because Ball did not meet his burden of showing the warrant was defective, the trial court properly denied his motion. *See Crowley*.

### Post-Conviction Relief

¶26 In his petition for post-conviction relief filed pursuant to Rule 32, Ariz. R. Crim. P., 17 A.R.S.,[12] Ball raised numerous claims, including that the state had failed to present exculpatory evidence to the grand jury, trial judges had abused their discretion in rulings, neither the legislature nor Ball had intended his possession of the videotapes and photographs to be a crime, the statute of limitations had run before he was prosecuted, the

---

[12]In his petition for review, Ball argues issues related to a third case, which is not before us. We do not address those issues.

14



statute under which he was convicted was an *ex post facto* law as applied to him, and his trial counsel had been ineffective. The trial court summarily denied the petition, finding every issue precluded except the ineffective assistance of counsel claim. The court ruled Ball had failed to state a colorable claim that counsel had been ineffective. We review a trial court's grant or denial of post-conviction relief only for an abuse of the court's discretion. *State v. Morgan*, 204 Ariz. 166, 61 P.3d 460 (App. 2002).

¶27        The trial court correctly concluded that each of Ball's claims except the ineffective assistance of counsel claim was waived or precluded under Rule 32.2(a). First, "[t]o obtain review of a denial of redetermination of probable cause, a defendant must seek relief before trial by special action." *State v. Murray*, 184 Ariz. 9, 32, 906 P.2d 542, 565 (1995). The only exception to this rule is when the state "knew [the indictment] was partially based on perjured, material testimony." *Id.* In those cases, the defendant may challenge the indictment on appeal. Ball argued only that material exculpatory evidence was withheld, not that perjured testimony was presented to secure his indictment. Therefore, the trial court properly found this claim was precluded. *See Murray.*

¶28        Ball raised additional broad claims about a number of the trial court's rulings, including the ruling that the statute of limitations had not run on the offenses. But he raised these claims on appeal, and we have addressed them on their merits. Rule 32.2(a)(1) precludes post-conviction relief on a claim based on any ground that could have been raised on appeal. The trial court did not abuse its discretion in finding the claims precluded.

15



¶29 Next, Ball challenges A.R.S. § 13-3553, the statute under which he was convicted, on two grounds. He claims that, regardless of the language of the statute, the legislature did not intend to criminalize the possession of child pornography. He also argues the statute as applied to him was an *ex post facto* law because he possessed the materials before the word "possessing" was added to the statute. Neither of these claims falls within the scope of Rule 32.1. *See Canion v. Cole*, 210 Ariz. 598, 115 P.3d 1261 (2005) (petitioner bears burden of raising post-conviction claims that are within provisions of Rule 32); *State v. Carriger*, 143 Ariz. 142, 145, 692 P.2d 991, 994 (1984) ("The type of issues a petitioner may raise in a Rule 32 petition are limited by court rule."). Because they are outside the scope of Rule 32, these claims were required to have been raised on appeal, and the trial court properly found them precluded. *See* Ariz. R. Crim. P. 32.2(a)(3).

¶30 We next turn to Ball's claim of ineffective assistance of trial counsel. The trial court found Ball had not stated a colorable claim of ineffective assistance of counsel because he failed to allege any facts demonstrating his attorney's representation had fallen below the prevailing objective standard of competence. Ball's petition for post-conviction relief merely stated he "believes there may have been ineffective assistance of counsel" without saying how counsel had erred. As the trial court correctly found, Ball's petition had not stated a colorable claim. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984); *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985). In his petition for review, Ball describes instances in which he believes counsel was ineffective. However, we do not address claims presented for the first time in a petition for review. *See State v. Ramirez*, 126 Ariz. 464, 616

16

P.2d 924 (App. 1980). Accordingly, we cannot say the trial court abused its discretion in summarily dismissing Ball's petition for post-conviction relief. *See Morgan.*

### Disposition

¶31        Based on the foregoing, we affirm Ball's convictions and sentences. Although we grant Ball's petition for review, we deny relief.

_____

PHILIP G. ESPINOSA, Judge

CONCURRING:

_____

PETER J. ECKERSTROM, Presiding Judge

_____

J. WILLIAM BRAMMER, JR., Judge

17

451

# EXHIBIT AAA

R.O. yrs
Box

e-filed

99-1557
Daccamany

10/5/06

COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

O R D E R

2 CA-CR 1999-0481
2 CA-CR 2001-0279-PR Cons.
Department B
Cochise County
Cause No. CR98000296/CR98000345

RE: STATE OF ARIZONA v. EARL BALL

Pursuant to Motion Requesting Extension of Time to File Petition for Review,

ORDERED: Time for filing Petition for Review pro se in compliance with Ariz. R. Crim. P. 31.19(c) (copy attached) is extended to and including January 03, 2007.

DATED: October 05, 2006

Jeffrey P. Handler
Clerk of the Court

452

2 CA-CR 1999-0481
2 CA-CR 2001-0279-PR Cons.
Cochise County Superior Court Number CR98000296/CR98000345

Copies to:

ARIZONA ATTORNEY GENERAL
1275 W. Washington
Phoenix, AZ 85007

John L. Saccoman
Assistant Attorney General
1275 W. Washington
Phoenix, AZ 85007-2997

Gail Gianasi Natale
817 N. 2nd Street
Phoenix, AZ 85004

Edward G. Rheinheimer
COCHISE COUNTY ATTORNEY
P.O. Drawer CA
Bisbee, AZ 85603-0170

Earl Ball #153335
ASPC - South Unit
P.O. Box 8400
Florence, AZ 85232



# EXHIBIT BBB

1 | EARL BALL
ADC#153335
2 | ASPC-Florence/South Unit
P. O. Box 8400
3 | Florence, AZ 85232

4 | PRO SE

5 | ## COURT OF APPEALS

6 | ## STATE OF ARIZONA

7 | ## DIVISION II

8

9

10 | Earl Ball,                                    ) Court of Appeals No.
                                                  )    2 CA-CR 1999-0481
11 |                    Petitioner,                )    2 CA-CR 2001-0279-PR CONS
                                                  )
12 |          Vs.                                  ) Cochise County Cause No.
                                                  )    CR 98000296
13 | HONORABLE Thomas E. Collins, Judge of the     )    CR 98000345
                                                  )
14 | Superior Court of the, State of Arizona, in and for )
                                                  )
15 | the, County of Cochise,                       )
                                                  )
16 | And                                           )
                                                  )
17 | STATE OF ARIZONA                              )
                                                  )
18 | Real Part in Interest                         ) **MOTION FOR
                                                  ) RECONCIDERATION**
19 |                                               )
                                                  )
20 |                                               )
                                                  )
21

22 |          **COMES NOW the Petitioner,** Earl Ball in Pro Se, and files this Motion

23 | pursuant to Rule 31.19(A), 31.20 and 35.4 Rules of Criminal Procedure, and

24 | requests this court to reconsider the Decision Order issued on August 31, 2006.

25

# Factual Background

On August 31, 2006 the Court of Appeals rendered its memorandum decision in this case; thereafter on September 29, 2006 Petitioner filed a motion requesting a 90 day extension of time to file a petition for review, because of the voluminous material to be reviewed. The Court granted the motion giving Petitioner until January 3, 2007 to file the petition for review. After a partial review of the material, Petitioner believes that a Motion for Reconsideration would be the appropriate action, and therefore respectfully asks this court to accept and review this motion.

# Issues Presented For Reconsideration

## 1. Blakely Relief

At the time Petitioner's Attorney stipulated to J's age, Judge Borowiec had previously rule in State V Bernhardt CR-98000447 that A.R.S. 13-604.01 did not apply to possession under 13-3553(A)(2). The State did not object to Trial Courts ruling in that case, and that ruling stands to this date! In May of 1999 Petitioner's Attorneys filed a motion to dismiss allegations pursuant to A.R.S. 13-604.01 with the Honorable Charles Irwin, and on August 24, 1999 Judge Borowiec granted Petitioner's motion (copy attached). The Arizona constitution Article 6, section 13 states:

> the judgment, decrees, orders and proceedings of any session
> of the Superior Court held by one or more Judges SHALL have
> the same force and effect as if all the Judges of the Court
> had presided.
> the process of the court SHALL extend to all parts of the state.
> (effective December 9, 1960)

Among the reasons the state did not assert a cross appeal in its brief was

455

because J would not support the State's position.

How can this court hold that one defendant POSSESSING hundreds of child pornographic pictures be exempt from A.R.S. 13-604.01 while another is not? As this Court has held that Blakely is available to this Petitioner, and in view of the above claim, "Blakely should be applied to Petitioner's sentence!

## 2. STATUE OF LIMITATIONS

Defendant has previously asserted that possession of all 12 items was NOT a crime. Under both "296" and "345", at the time Petitioner is first alleged to have committed all elements of the crime, as far as when the stat first became aware that Petitioner was alleged to have been in possession of one or more "visual depictions" involving a minor. March 23, 1989, Cochise County Detective Allaire acquired a search warrant for Defendant's property to look for such visual depictions, but the warrant was never executed at the choice of the law enforcement officer. Although two persons (L███ and D██████) were interviewed by the detective and denied that there was any strange sexual activity at the house (although one claimed to be Defendant's wife and one was Defendant's live-in girlfriend at the time and with full knowledge of each other), and the detective knew the family and knew of the co-habitation by Defendant with more than one woman at a time, yet the detective chose not to pursue the



investigation any further. In fact, Detective Allaire had indicated that there were

"no grounds for serving the warrant" when in fact the warrant should have been

served at that time. For the state to wait ten years to search for evidence it had

knowledge of ten years prior is reprehensible and a violation of the statue of

limitations.

"The purpose of the statue of limitations is to limit the suspect's exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. U.S. v. Marion, 925.Ct.455,404U.S.307,30L.Ed.2d468(Dist. Col.), Toussie V. U.S., 90S.Ct.858,397U.S.112,25L.Ed.2d156(N.Y.) The statue of limitations balances the government's interest in prosecution with the need to protect those who may lose their means of defense. U.S. v. Otto, 742F.2d104, cert. Denied 105S.Ct.978, 469U.S. 1196,83L.Ed.2d980(C.A. Pa.) The statue of limitations provides a safeguard against possible prejudice resulting from delay and the prosecution of stale charges." Marion, id.; Toussie, id.

"The applicable statue of limitations is the primary guarantee against bringing overly stale criminal charges. Such statute represents legislative assessment of relative interest of the State and the Defendant in administering and receiving Justice, they are made for the repose of society and the protection of those who may have lost their means of Defense." Marion, id.

"Any exception to the statute of limitations or a statute tolling or suspending its operation is to be construed narrowly or strictly against the state. U. S. v. Scharton,52.Ct.416,285U.S.518 766L.Ed.917(Mass). Where a statute increases the period of limitations to particular crimes it is to be construed strictly, to apply only to cases shown to be clearly within it purpose. U.S. v. McElvain, 47S.Ct.219,272U.S.633,71L.Ed.451(Ill).

"Unless a statute of limitations is clearly retrospective in its terms it does not apply to crimes which have been previously committed. Martin v. Superior Court in and for Yuma County, 65P.2d652, 135Ariz.99(Ariz). Once the statutory period begins to run, unless the statute of limitations contains an exception to the running or condition that will toll its operation, the running of the statute of limitations is not interrupted except by the filing of the indictment or other sufficient procedure to commence prosecutions of the offense. State v. Locke, 81S.E.401 73W.Va.713(W.Va)."



County Attorney David Flannigan, in state's motion, to dismiss October 14,1999, stated,

**"there are no cases involving continuous possession interpreting the Arizona Statute of Limitations."** In state v. Behl (160A530), the court stated, "the cardinal rule of statutory interpretation is to determine and give effect to the legislative intent behind the statute. Calvert v. Farmer's Ins. Co., 144Arizona 291(1985). In interpreting a statute, courts should seek a sensible construction which accomplishes the legislative intent and, if possible, avoid absurd consequences, State v Cain," the court went on to say, "in order to harmonize the statutes in question, we would have to supply wording of own into the statutes which would have an amending effect. Amendments are solely legislative prerogatives."

Even where there are definite expressed exceptions to toll the statute of limitations, the exceptions refer only to those conditions which existed at the time that the right of actions or cause for prosecution first accrued. Locke,id.

**"The statute of limitations began to run in child sexual abuse cases where a responsible adult acquired the requisite knowledge while acting in his official or professional capacity."** State v.Rosenberger, 630N.E.2d435m 90Ohio App.3d735,628N.E. 2d1392,68Ohio St.3d1473 (9thDist).

"Where a statute of limitations may prevent the beginning of the statute of limitations where the accused is concealing his crime, it is well settled that the period of limitations does rum from the discovery of the crime or of the offender's guilt **or from the time that the offense is made know to certain public officer's.** State v. Guillott, 9So.2d235,2001.a935(La)."

This is precisely the situation herein, that if Defendant did commit a crime, it was know to the state at the time that Detective Allaire obtained a search warrant in 1989 -- ten years earlier than his arrest and indictment.

"Where there is doubt as to the running or tolling of the statute of limitations, the limitation period is to be construed in favor of the defendant. U.S.

458

v. Gilbert,136F.3d1451(11thCir.1998).  Pursuant to U.S. v. Wathers, the statute of limitation in a criminal case must be held to affect not only the remedy of law, but also operates as a **jurisdictional limitation on the power to prosecute and punish.**"

The question to be answered here is whether the statute of limitations bars the prosecution for offense after "actual discovery by the state or the political subdivision having jurisdiction of the offense or discovery...**which should have occurred with the exercise of reasonable diligence."**

In 1997 the Arizona Legislature enacted A.R.S. section 13-107 (previously 13-106) which established "time limitations."  The time "prescribed a five-year time limitations for the commencement of a prosecution of a felony."  1978 the legislature amended A.R.S. section 13-107, "prescribing a seven-year statute of limitations for felonies...committed on or after the...codes effective date of October 1, 1978"Id In 1985 the legislature again amended section 13-107: this time concentrating on subsection (F) which dealt with the dismissals of "complaint, indictment, or information FILED BEFORE THE PERIOD OF LIMITATIONS HAS EXPIRED..." Johnson v. Tucson City Court, 156Airz.284, 751P.2d600 (App.1988).  Another amendment to A.R.S. section 13-107 occurred in 1997 which inserted the following sub-section (E)

THE PERIOD OF LIMITATIONS DOES NOT RUN FOR A SERIOUS OFFENSE AS DEFINED IN SECTION 13-604 DURING ANY TIME WHEN



THE IDENTITY OF THE PERSON WHO COMMITS THE OFFENSE IS UNKNOW."

In HCZ v. First Franklin filed February 8, 2001, court of Appeals, No 1CA-CV00-0170, Division One Department d., the court held

"...In this appeal, we must decide whether the word "shall" as used in A.R.S. section 12-1198(A) is mandatory or directory. We hold that the Legislature's use of the word "shall" in this section is mandatory..."

"When 'shall' is used in the directory sense, it may indicate desirability, preference or permission. See Arizona Downs v. Arizona Horsemen's Fund., 130Ariz.550,554,63P.2d1053, 1057(1981) (citations omitted). The essential difference between a mandatory and a directory provision is that failure to comply with a directory provision does not invalidate the proceeding to which it relates, while failure to follow a mandatory provision does. See Dept of Revenue v. S. Union Gas Co., 119Ariz.512,514,582P.2d158,160(1978)(citations omitted).

"In determining the appropriate construction of "shall" in this context, we turn to establish rules of statutory construction. The primary rule of statutory construction is to find and give effect to legislative intent. Mail Boxes v. Indus.Comm'n, 181Ariz.119,121,888P.2d777,779(1995) (citation omitted). The best and most reliable index of a statute's meaning is its language. Rineer v. Leonardo, 194Ariz45,46,977P.2d767,768(1999) (citation omitted). Words are given their ordinary meaning unless the context of the statute requires otherwise. See A.R.S. 1-213(1995): Bustos v. W. M. Grace Dev.,192Ariz.396,398, 966P.2d1000,1002(App. 1997) (citations omitted).

"The ordinary meaning of 'shall' in a statute is to impose a mandatory provision. Ins Co. of N.Am. v. Superior Court, 166Ariz.82,85,800P.2d585, 588(1990);Navajo County Juv. Action no. JV-94000086,182Ariz.568,570, 898P.2d517,519(app.1995):Phoenix Newspapers, Inc. v. Superior Court, 180Ariz. 159,161,882P.2d1285,1287(App.1993)."

"If the word 'shall' is mandatory, then the word 'must' as definitive in 13-107 must be controlling, therefore 'as a mandatory provision it invalidates the proceeding.' Clearly the state did discover, **or should have discovered** with reasonable diligence, facts which it turned a blind eye to more than seven years prior to the initiation of these cases...

(Fact Sheet for H.B.2407-prepared by Senate Staff, March 20, 1997) (emphasis added). This fact sheet was given to the members of the Senate Judiciary Committee and indicates "legislative history" and interpretation similar to that relied on by the Arizona Supreme Court in rendering their decision in Price

v. Maxwell, 140 Ariz.232 682P.2d384(1984) (En Banc.) (at page 234 referring to the Senate staff analysis of H.B.2025,7 March 1978, at page 4).

"It appears the legislative intent was to allow an extension to the statute of limitations only when the information, indictment or complaint is defective, and not for any and all errors which might occur during the prosecution of an offense.

In further support, the Arizona Supreme Court, En Banc., stated:

"The state argues that section 179 does not apply because the statute of limitations is purely procedural and is not a defense on the merits. **We find the argument specious... Any inquiry into the technical nature of the statute of limitations is simply not relevant.** Accordingly, we hold that counts two through six of the indictment are barred by the applicable statute of limitations and should be dismissed." Martin v. Superior Court, 135 Ariz.99,659P.2d652(1983)(En Banc.)(emphasis added).

And finally, if the legislature had intended the statute to be tolled for any other reason, it would have stated so, as it has in Senate Bill 1488: published February 2, 2001.

SB 1488 SEXUAL OFFENSES; TIME LIMITATIONS

A Prosecution for crimes which may be commenced at any time, removing any deadline for prosecution, now including any sexual offense that is a class 2 felony, including sexual conduct with a minor, sexual assault of a spouse, molestation of a child, continuous sexual abuse of a child and **sexual exploitation of minor** (commercial or not). Burns & 8. title 13 (See Exhibit H) (emphasis added)

In **Reinesto v. Superior Court of the State of Arizona,** in and for the County of Navajo (1995), the court stated: "First, the plain language of the statute does not support the state's argument. As we noted in Vo, Arizona is a 'code state', and this court is legislatively precluded from creating new crimes by expanding the common law through judicial decision." Vo, 172 Ariz. At204,836P.2dat417;see also State v. Womack, 74Ariz.108,112,847P.2d609,613 (App.1992). "Defining criminal behavior and establishing penalties for violating criminal laws are functions of the legislature, not the judiciary." ONLY THE LEGISLATURE MAY CREATE CRIMES. Thus, the court's function is limited to interpreting statutory language to determine what conduct the legislature has proscribed in light of its intent and the wording of a statute. See Womack, 174Ariz.At112,847P.2dat613. In interpreting

(461)

statutes, we must give words their fair meaning "to promote justice and effect the objects of the law.." A.R.S. 13-104. When the meaning of a statute is unclear or subject to more than one interpretation the rule of lenity requires us to resolve any ambiguity in favor of the defendant. Vo, 172Ariz. At200,836P.2dat413; State v. Pena, 140Ariz545,549-50,683P.2d744,748-49 (App. 1983), approved 140Ariz.544,683P.2d743(1984).

"Based on the foregoing, we accept jurisdiction and grant relief by ordering the superior court to dismiss the indictment against petitioner."

Clearly the statute of limitations is applicable to the case at bar, and

these prosecutions should be dismissed with prejudice.

3. EX POST FACTO

The trial court erroneously held that Defendant's alleged crimes

are continuing offenses. Defendant claims that as to counts 7,8,9,10,11,12,13,14,

15 and 16 under case 345, they cannot be continuing offenses as they are not

crimes. Arizona Constitution Art.2 Sec.25, United States Constitution Art 1 Sec 9,

cl.3.

These constitution provisions state in pertinent part that "a legislature is prohibited by an ex post facto clause from making criminal an act that was innocent when performed. Similarly, because it would operate like an ex post facto law, a court is barred by the Due Process clause from reaching the same result by judicial construction. Bowie v. City of Columbia, Keeler v. Superior Court of Amador County. "Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed" violates the ex post facto clauses of the Arizona and the United States Constitutions. Calder v. Bull, 3 U.S.(3Dall.)386,at390, 1L.Ed.648(1798); California Dept of Corrections v. Morales, 514 U.S.499, at506N.3, 115S.Ct.1597,at1602N.2, 131L.Ed.2d598(1995). See also State v. Cocio, 147Ariz.277,at284,709P.2d1336, at 1343(1985)." The Arizona Legislature may not enact a law which imposes any additional or increase penalty for a crime after its commission.

462

"A law is ex post facto if it makes criminal that which was innocent when first committed, or alters any rules of evidence by allowing for the receipt of less or different proof than required at the time of the commission of the act, or deprives the accused of a substantial right of immunity possessed at the time of the commission of the act. State v. Beltran, 170Ariz.406,852P.2d27(App.Div.1, 1992); State v. Sanders,604P.2d20,124Ariz.318. U.S.v.Lydell N.,124F3d1170 (9th Cir.1997).

There are two basic elements which are necessary for a criminal law to be ex post fact: (1) it is retroactive (applying to acts occurring before its enactment);and (2) it is disadvantageous to the Defendant. State v. Yellowmexican, 142Ariz.205,688P.2d1097 (App. 1984), approved 142Ariz91,688P.2d983, citing Weaver v. Graham, 450U.S.24 at 29, 101S.Ct.960 at964 (1981); U.S. v. Lydell N., supra." That indeed is the case in the matter at bar.

Here Defendant's initial possession of the visual material described was not a crime, and cannot be retroactively made into a crime. "Due process is violated when legal consequences are altered for conduct which occurred before the enactment of the change in the law. Moreover, if a statute is punitive, it may not be applied retroactively. Arizona Dept. of Public Safety v. Superior Court In and for Maricopa County (Falcone), 190Ariz.490,949P.2d983, (App.,Div.1, 1997) 190Ariz.490,949P.2d983, review denied 102Ariz.276,964P.2d477; Saucedo v. Superior Court In and For the County of La Paz, 190Ariz.226,946P.2d908 App;,Div.1, 1997). The court must treat the change in the statute as punitive if the legislative intent was punitive. Arizona Dept. of Public Safety v. Superior Court In and For Maricopa County, supra."

As in Saucedo v. Superior Court, No 1 CA-SA97008, Court of Appeals,

that the trial court determined that the offense was continuing in nature. If

Defendant was in possession in 1981 (page 2 line 19 PCR) and the legislature did

not add "possession" as a prohibited act for the purposes of A.R.S.13-3553 until

the 1983 Amendment H.B.2127 (which was the year in which Linda Ball was 19

years old and had been married to Defendant for two years) then the court also may

not do so by judicial construction. In Saucedo, the appeals court held,

"that Proposition 102, which laced any statement as to intended retrospective application, could not be given retrospective application by the Arizona courts and judges. To do so was a violation of the ex post facto law of both the Arizona and Federal Constitutions. Constitutional measures are construed to operate prospectively unless they clearly state an intent to the contrary to be applied retroactively. American Fed'n of Labor v. American Sash & Door Co., 67Ariz.20,39 189P.2d912,925(1948). Therefore a court may not expand the scope of a crime by judicial decision to punish a defendant for an action that was **not criminal** when it was performed, Vo v. Superior Court In and For the County of Maricopa, 836P.2d408,172Ariz.195, review denied."

The legislature has also clearly direct that Defendant not be sentence under laws amended after he committed the offense. A.R.S.1-246 provides:

"When the Penalty for an offense is prescribed by one law and altered by a subsequent law, the penalty of such second law shall not be inflicted for a breach of the law committed before the second took

effect. But the offender shall be punished under the law in force when the offense was committed."

## CONCLUSION

For the foregoing reasons, Petitioner therefore respectfully requests this court reconsider its ruling, and remand this case for re-sentencing or other appropriate actions.

Respectfully Submitted this 2 8 day of November, 2006.

By _Earl Ball_
EARL BALL Pro-Se

464

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 31.13 Arizona Rules of Criminal Procedure, the undersigned certifies that this Petition is proportionately spaced and has a type face of 14 points with a typeface in Times New Roman and contains 3297 words according to the processing systems used to prepare this brief.

## CERTIFICATE OF SERVICE

I hereby certify on the 28 day of November, 2006, I caused the original and four (4) copies of this petition to be mailed to:

Court of Appeals
Division II
State of Arizona
400 West Congress
Tucson, Arizona 85701-1374

In addition, one (1) copy of this petition was mailed to:

John L. Saccoman
Assistant Attorney General
1275 West Washington Street
Phoenix, Arizona 85007-2926

Respectfully submitted this 28 day of November, 2006.

By _Earl Ball_

EARL BALL Pro-Se

465

FILED

Time_____

AUG 25 1999 _____M

DENISE I. LUNDIN
CLERK SUPERIOR COURT
BY_____
DEPUTY

SUPERIOR COURT OF ARIZONA
COUNTY OF COCHISE
DATE: August 24, 1999

AUG 1999
Received
COCHISE COUNTY
PUBLIC DEFENDER

[ ] APPEALS
[ ] BONDS: REFUND/FORFEITURE
[ ] FINE/RATTY FEES/RESTITUTION
[ ] CHANGE OF VENUE
[ ] JURY FEES
[ ] ATTORNEY: APP'T & CLAIMS
[ ] SUPPORT
[ ] DIVISION

8-26-99

---

**CASE: STATE OF ARIZONA, Plaintiff, vs. EARL BALL, Defendant.**

**MINUTE ENTRY ACTION: DECISION ON DEFENDANT'S MOTION TO DISMISS ALLEGATION FILED, PURSUANT TO A.R.S. § 13-604.01.**

**CASE NO: CR98000296 MAIN CASE (CR98000345)**

---

| JUDGE: HONORABLE MATTHEW W. BOROWIEC | DENISE I. LUNDIN, CLERK |
| DIVISION: ONE | By Stephanie L. Williams, Deputy, 08/24/99 |
| | Docketed by _____ |

---

IN CHAMBERS:

Defendant moved this court to dismiss allegations pursuant to A.R.S. § 13-604.01 in the various counts in the above numbered actions, relying on rulings in State v. Jansing, 186 Ariz. 63, 918 P.2d 1081 (App. 1996), and State v. Williams, 175 Ariz. 98, 854 P.2d 131 (1993). Both cases, interpreting legislative intent, make the point that the cited statute applies only to "crimes in which a child is the target of the criminal conduct."

Defendant argues as to the cases extant the defendant is charged with knowingly possessing videos and photographs only, implying there is no particular child the target of the criminal conduct, and therefore, no child victim.

The court notes that A.R.S. § 13-604.01.L.1.(g), lists "sexual exploitation of a minor" as one of the offenses within the definition of "dangerous crime against children." The court also notes that A.R.S. §§ 13-3552 and 13-3553 are the only statutes dealing with sexual exploitation of a minor, the former being a commercial sexual exploitation, which by its terms actually requires an interaction with a minor person. A.R.S. § 13-3553, likewise may by its terms require the involvement of a minor person in subsection A.1., thereof, but subsection A.2., deals only with . . . "distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual or print medium in which minors are engaged in exploitive exhibition or other sexual conduct."

The court finds that subsection A.2., of A.R.S. § 13-3553, does not relate to crimes in which a child is the target of the criminal conduct, said conduct being the knowing possession of pornographic material. By reason thereof, it is

**ORDERED**, defendant's motion is **GRANTED**.

Cc: County Attorney--Flannigan
    Public Defender--Bechman/Suagee
    APO

# EXHIBIT CCC

E-Filed

99-1557
Saccoman

12/13/06

COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

O R D E R

December 13, 2006

RE:   STATE OF ARIZONA v. EARL BALL
      2 CA-CR 1999-0481
      2 CA-CR 2001-0279-PR Cons.
      Cochise County Superior Court Cause Nos. CR98000296/CR98000345

The following action was taken by the Court of Appeals for the State of
Arizona, Division Two, Department B on December 12, 2006,

      ORDERED:  Motion for Reconsideration is DENIED.

      Presiding Judge Eckerstrom, Judge Brammer and Judge Espinosa
participated in the determination of this matter.

_____
Peter J. Eckerstrom
Presiding Judge

Copies to:

ARIZONA ATTORNEY GENERAL
1275 W. Washington
Phoenix, AZ 85007

John L. Saccoman
Assistant Attorney General
1275 W. Washington
Phoenix, AZ 85007-2997

Gail Gianasi Natale
817 N. 2nd Street
Phoenix, AZ 85004

Edward G. Rheinheimer
COCHISE COUNTY ATTORNEY
P.O. Drawer CA
Bisbee, AZ 85603-0170

Earl Ball #153335
ASPC - South Unit
P.O. Box 8400
Florence, AZ 85232

(467)

# EXHIBIT DDD

Box
2046
Earl Ball #153335
ASPC-Florence/South Unit
P.O. Box 8400
Florence, AZ 85232
PRO SE

IN THE SUPREME COURT

STATE OF ARIZONA

Earl Ball,                                    ) Supreme Court No.:
                                              )
            Petitioner,                       )
                                              ) Court of Appeals No.
      and                                     )   2 CA-CR 1999-0481
                                              )   2 CA-CR 2001-0279-PR CONS
The State of Arizona,                         )
                                              ) Cochise County Cause No.
            Respondent                        )   CR 98000296
                                              )   CR 98000345
                                              )
                                              )
_____              PETITION FOR REVIEW

        COMES NOW the PETITIONER, Earl Ball, in pro se representation, and
files this Petition pursuant to Arizona Rules of Criminal Procedure, Rule 31.19 (c),
31.20, and 35.4...Appellant requests that the Arizona Supreme Court review the
decision of the Arizona Court of Appeals in the above entitled cause entered
August 31, 2006. This Petition is based on the following Memorandum of Points
and Authorities.

(468)

## Factual Background

On August 31, 2006 the Court of Appeals rendered it memorandum decision in this case, thereafter on September 29, 2006 Petitioner filed a motion requesting a 90-day extension of time to file a petition for review; because of the voluminous material to be reviewed. The Court granted the motion giving Petitioner until January 3, 2007 to file the petition for review. After a partial review of the material, Petitioner believed that a Motion for Reconsideration was the appropriate action, and therefore filed a Motion for Reconsideration on November 28, 2006 with the Arizona Court of Appeals, Division II. Petitioner now files this Petition for Review.

## Issues Presented For Review

### 1. Blakely Relief

At the time Petitioner's Attorney stipulated to J's age, Judge Borowiec had previously ruled in State V. Bernhardt CR-98000447 that A.R.S. 13-604.01 did not apply to possession under 13-3553(A)(2). The State did not object to the Trial Court's ruling in that case, and that ruling stand to this date! In May of 1999 Petitioner's Attorneys filed a motion to dismiss allegations pursuant to A.R.S. 13-604.01 with the Honorable Charles Irwin, and on August 24, 1999 Judge Borowiec Granted Petitioner's motion (copy attached hereto as Exhibit "A").

### LAW AND ARGUMENT:

**I. BECAUSE PERSONAL POSSESSION OF VISUAL MATERIAL IS NOT AN OFFENSE "COMMITTED AGAINST A MINOR", THE ALLEGATION PURSUANT TO §13-604.01 MUST BE DISMISSED.**



In 1993, the Arizona Supreme Court, in <u>State v. Williams</u>, 175 Ariz. 98,854P.2d131, analyzed §13-604.01, and in addressing the question of whether the statute requires proof that the enumerated offense be specifically and directly **committed against** a minor before the enhanced penalties could apply, answered that question squarely in the **affirmative**, and rejected the State's argument that mere conviction of one of the enumerated offenses automatically constitutes conviction of a dangerous crime against children whenever the victim is under the age of fifteen years.

In interpreting §13-604.01 "to promote justice and effect the objects of the law" and to fulfill the intent of the legislature that wrote it," the court in <u>Williams</u> noted that the Arizona legislature:

> ...did not define a dangerous crime against children as one of the listed crimes where the victim is under fifteen years of age. Instead, it chose the **more limiting language "committed against a minor under fifteen years of age"**...which, fairly construed, suggests that the **conduct aims, targets** or focuses on a victim under the age of fifteen. (<u>State v. Williams, supra,</u> 854 P.2d131 at 133-135, emphasis supplied).

The <u>Williams</u> court, in refusing to apply §13-604.01 to the defendant, who had been convicted of aggravated assault after a drunk driving accident in which a 14 year old boy was thrown from his vehicle and severely injured, stated that the statute clearly "refers to crimes in which a child is <u>the target</u> of the criminal conduct". (Ibid. at 134, emphasis supplied). In the instant case, although the specific "conduct" attributed to Mr. Ball in possessing these videotapes and photographs may easily be considered reprehensible and   an assault upon public decency, it <u>cannot</u> be said that a child was "victimized" by the act of possession.

Similarly, in <u>State v. Jansing</u> (App. Div.I 1996) 186 Ariz. 63 918 P.2d 1081, wherein the defendant's young son was critically injured as a result of an automobile accident which occurred while the defendant was driving under the



2

influence of alcohol, the court advised:

> As reprehensible as defendant's conduct may have been, it was not
> directed at her son...
> ... (T)he trial court erred by ruling that the aggravated assault against
> her son was a dangerous crime against children within the meaning of
> A.R.S, §13-604.01. (Ibid. at 10877-1099).

Here, where the charged conduct of possession of child pornography was "not directed against or aimed at" a minor child or children, but constitutes instead an offense against public decency, the allegation filed pursuant to §13-604.01 must fail.

How can this court hold that one defendant POSSESSING hundreds of child pornographic pictures be exempt from A.R.S. 13-604.01 while another is not? As this Court had held that Blakely is available to this Petitioner, and in view of the above claim, "Blakely should be applied to Petitioner's sentence!"

## 2. STATUE OF LIMITATIONS
### Law & Argument:

**I. BECAUSE THE STATE OF ARIZONA DISCOVERED, OR
SHOULD HAVE DISCOVERED, AS EARLY AS MARCH OF
1989, THE EXISTENCE OF THE TWO HOMEMADE
VIDEOTAPES DEPICTING J▇▇▇▇ENGAGED IN SEXUAL
ACTIVITY WITH MR. BALL AND ▇▇▇▇▇▇ THE COURT
WAS WITHOUT JURISDICTION TO RENDER JUDGEMENT
BASED ON INDICTMENTS FILED IN 1998.**

A.R.S §13-107 at the time provided in pertinent part:

**B.** Except as otherwise provided in this section, prosecutions for other offenses must be commenced within the following periods **after actual discovery by the state** or the political subdivision having jurisdiction of the offense **or discovery...which should have occurred with the exercise of reasonable diligence,** whichever first occurs:
    1. For a class 2 through class 6 felony, seven years

**C.** For purposes of subsection B, a prosecution is commenced when an indictment, information or complaint is filed.
[Emphasis supplied].



3

The law in Arizona on this issue is abundantly clear and equally well-settled that the seven year statute of limitations is jurisdictional, rendering a court without power to act upon the matter; further, such statutes are unquestionably to be *"construed liberally in favor of the accused and against the prosecution."* (State v. Fogel (1972) 16 Ariz. App. 246,248,492 P.2d 742,744).

In "1998" the Arizona criminal statutes of limitations begin to run "when the State, or a political subdivision of the State having jurisdiction, actually discovers **or should have discovered that the offense occurred."** (State v. Escobar-Mendez (Ariz. App. Div.1 1999) 1999 WL 924460, 1 CA-CR 97-0999, February 25, 1999). In the instant case, it is indisputable that Cochise County Sheriff's Department is a "political subdivision of the state":

Detective Allaire's first report, dated March 23, 1989 (and attached hereto as Exhibit "B",) discloses that the detective participated in an investigation initiated when Earl Ball's son M▮▮▮ then age 15 years old, ran away from home.

Based upon the information provided by M▮▮▮ B▮▮ Detective Allaire sought and obtained a Search Warrant (see Affidavit and Search Warrant dated March 23, 1989, attached hereto as Exhibit "C".) The Affidavit and Search Warrant attested to the fact (under oath) that the detective was "satisfied there is probably cause to believe that" on the premises of the Ball residence on Quinn Road in the Kansas Settlement area, there existed "**2 video cassettes taped at home containing sexual activity involving Earl Ball, D▮▮▮ B▮▮ and an under age J▮▮▮ B▮▮.**" The Warrant was duly signed by the Justice of the Peace, Justice Court, Precinct No. 4.

Just over one year later, a second attempt was made to encourage the sheriff's department to investigate improper sexual activity involving a child at the



Ball household in May of 1990, after E.J. B███, Earl Ball's younger son, ran away from home and reported to Sheriff's deputies that he had been physically abused. Detective Allaire's report, #90-1092 (attached hereto as Exhibit "D"), indicates that in May of 1990, the detective made contact with members of the Ball family, then living on Kinsey Road in the Kansas Settlement area.

Because the State of Arizona, by and through the Cochise County Sheriff's Department, *knew or should have known, through even minimal follow-up investigation in March of 1989 or, at the latest May of 1990,* of the existence of the two homemade videotapes the court was without jurisdiction to conduct the trial of the consolidated matters, and the jury was without legal authority to render a verdict.

As stated in Snow v. Superior Court, supra 183 Ariz. At 324, in a Rule 8 context:

> **...the State must show either that it has exercised due diligence to locate the defendant or that the defendant has attempted to avoid apprehension or prosecution.**

Because there is absolutely no evidence to suggest that Mr. Ball was attempting to avoid apprehension, but indeed was living openly with his family in Cochise County from 1988 until his arrest in 1998, it is incumbent upon the State to demonstrate "due diligence". Given that "characteristic of cases of inadequate diligence is the state's failure to pursue significant leads" (State v. Armstrong, supra.), and in light of the fact that no effort was apparently made to serve the search warrant or to interview Mr. Ball or J█████, it can hardly be said that the state exercised *any* diligence at all in this regard.

> **II. THE STATUTE OF LIMITAIONS FOR THIS OFFENSE BEGAN TO RUN WHEN THE CRIME WAS COMPLETE; THEREFORE, THE "DOCTRINE OF CONTINUING OFFENSES" MAY NO BE USED TO CIRCUMVENT THE LAW WHICH MANDATES RETRAINT IN LABELING CRIMES AS "CONTINUING OFENSES".**

(473)

5

The Supreme Court, as well as numerous federal jurisdictions, urging "restraint in labeling crimes as continuing offenses" have long since recognize the "tension between the doctrine of continuing offenses and the policy of repose embodied in statutes of limitations" (United States v. Bailey (U.S. Dist. Col. 1980) (444 U.S. 394, 414, 100 S.Ct. 624, 6 36, 62 L.Ed.2d575), and the leading case in this area, Toussie v. United States (U.S.N.Y. 1970) 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156, reversing the lower court,

In Toussie, where the defendant fell within the age group of males required to register for the draft, but willfully failed to do so, the Supreme Court held that the indictment alleging failure to register, which was filed in excess of the five-year statute of limitations period, was barred, and that the defendant could not be held to have committed a continuing offense, despite the fact that he continued to fail to register throughout the relevant time period, stating: "While it is true that the regulation does in explicit terms refer to registration as a continuing duty, we cannot give it the effect of making this criminal offense a continuing one." (Ibid. 397 U.S. at 120-121, 90 S.Ct. at 863).

Similarly, here, where the State may arguably be accurate in its suggestion that Mr. Ball was continuously in possession of the videotapes from the time they were made until the time they were seized in June of 1998, that alone is insufficient to render this offense a "continuing" one for purposes of extending the statute of limitations period. **This is true because offenses are typically presumed to be complete "as soon as every element in the crime occurs, and the statue of limitations begins to run from that date."** (Ibid., 397 U.S. at 114-115, 90 S.Ct. at 860; see also Pendergast v. United States (1943) 317 U.S. 412, 418, 63, S.Ct. 268, 271, 87 L.Ed. 368). Where, as here, the elements of possession of the videotapes were completed as of the date the State first gained knowledge,

474

6

## 3. MARITAL PRIVILEGE

Procedural Background:

On December 6, 1999, during hearing on pre-trial motions *in limine*, the Court entertained argument from counsel with respect to Defendant's previously filed "Motion to Preclude Testimony of L██ ████ B██". The Motion was premised on the fact that L██ ████ B██ and Earl Ball were married on February 9, 1981 and have never divorced; resulting in Mr. Ball's assertion of the spousal testimonial privilege at his trial on charges he possessed 15 photographs depicting L██, as a minor engaging in sexual conduct. Deputy County Attorney David Flannigan responded that the evidence at trial would establish that the photographs were taken prior to the marriage, and that therefore the privilege did not apply. Accordingly, the Court denied defendant's Motion and assertion of the spousal testimonial privilege. The State observed that Mr. Ball had previously advised detectives that his marriage to L██████ B██ had been "annulled"; Mr. Ball was under the impression from L██ herself that she had the marriage annulled. It was not until L██ testified on August 19, 1999 that she had never had the marriage annulled and was still married to Mr. Ball that Mr. Ball fully realized the status of the marriage. Mr. Ball has never taken steps to dissolve the marriage, nor, apparently, has L██; therefore, the court must rely on the evidence, which is a marriage certificate (the validity of which the State does not dispute)Further, the State's expert witness, Dr. Dean Ettinger, a pediatrician, was asked by the State to assess a chronological age for L██ as she appeared in the pornographic still photographs. In Dr. Ettinger's opinion, L██ is most likely "one year on either side of 15", or in the range of 14-16 years of age. Dr. Ettinger went on to view wedding photos of L██ taken on the occasion of her wedding to Earl Ball in 1981 when she was sixteen years of age, and opined that L██ was older in the pornographic photos than in the wedding photos.

7

475

1    Just prior to the Court's final instructions to the jury, a note was received
2    from a juror containing three questions (see transcript, December 14, 1999,
3    attached hereto as Exhibit "E" and incorporated herein). The Court advised that, as
4    to the first two questions (regarding the marriage of a minor and emancipation);
5    answers would be provided by way of the Court's final instructions. The Court
6    advised the jurors that, as to the third question, no answer would be forthcoming.
7    After the jury was excused to begin deliberations, counsel for Mr. Ball inquired of
8    the Court as to the nature of the juror's third question, and the Court related that
9    the query read:

10       *Oh, they want to know if it is true that a wife may not be forced to testify against
         her husband but may choose to do so.* (See Exhibit "E" at 4:11-14).

11       Defense counsel responded that the juror's question gave rise to precisely
12   the issue which Mr. Ball's motion *in limine* sought to address: the assertion by one
13   spouse of the prohibition of the other from testifying concerning events which
14   occurred **during the marriage**. The Court responded to defense counsel's
15   concerns:

16       *Well, I'll tell you what. If the jury comes out with a verdict that he was in fact
         married to her, I will strike her testimony.* (See Exhibit "E" at 4:22-25)
17

18       Thereafter, the jury returned a verdict, on December 15, 1999, that *"he was*
19   *in fact married to her,"* finding Mr. Ball *"not guilty"* on Counts one through five,
20   and after additional jury instructions "Guilty" on Counts six through fifteen. It is
21   Mr. Ball's position, as the verdict makes clear, that the jury believed that, as to
22   Counts one through five, the "minor" and Mr. Ball were married, as the defense
23   had asserted; indeed, the defense had conceded at trial each element of the offense,
24   and sought only a finding from the jury that Mr. Ball and the minor were married
25   at the time the photographs were taken. Consequently, the jury heard testimony

8



1 from a spouse concerning events which had occurred during her marriage over the
2 adamant objection of the other spouse, Mr. Ball, and the Court's comment *"I will*
3 *strike her testimony"*, becomes directly relevant, and is the precise and indeed
4 only remedy available upon retrial.[1]

5 ## LAW & ARGUMENT:

6 A.R.S. §13-4062 states:

7
8 "A person shall not be examined as a witness in the following cases: 1. A husband for or against his wife without her consent, nor a wife    against her husband without his consent."

9
10
11
12
13 In State v. Williams 650F.2d1202, the Arizona Supreme Court En Banc stated: "the defendant and Rita Sipler were married at **"the time of trial"**, thus under 13-4062, the defendant had a right to prevent his wife from testifying against him. The Court further stated, nor is this rule one which was made by the courts and which they are, therefore, free to rescind when they conclude it no longer serves its purpose. In Arizona, our legislature has chosen to retain the martial privilege despite this court's strong disapproval of the privilege: **nevertheless, we continue to enforce the mandate of the legislature."**

14 As stated above, Mr. Ball properly asserted his spousal-testimonial privilege
15 prior to trial, but his spouse, L██████ B██, was permitted over objection to
16 testify against him concerning events which occurred **during the marriage.**

17 A new trial is the proper remedy where evidence was erroneously admitted
18 over objection (Hawkins v. Allstate (1087) 152 Ariz. 490, 733 P.2d 1073), such as
19 is the case where privileged communications are admitted over timely objection by
20 the privilege-holder (See Buffa v. Scott (1985) 147 Ariz. 140, 708 P.2d 1331).

21 Mr. Ball accordingly submits that his trial was unfair, and that the court
22 erred in admitting evidence which was privileged, after clear and unambiguous
23 assertion of the privilege. A new trial is required.

24
25

---

[1]Indeed, Public Defender Mark Suagee spoke with juror number 7, Mr. Joshua Wolf, after the jury was discharged, and he confirmed that the jury believed that the photographs which were the subject of the first five counts were taken <u>after</u> the marriage.


477

7

## CONCLUSION:

By law, the County Attorney is obligated to present exculpatory evidence to the Grand Jury (when the Grand Jury so requests) and must present "clearly exculpatory" evidence. **Tribus v. Davis,** 189 Ariz. 621, 624, 944P, 2d 1235, 1239 (1997), quoting State v. Coconino County Superior Court, 139 Ariz. 422, 425, 678 P.2d 1386, 1389 (1984). **"Clearly exculpatory evidence is evidence of such weight that it would deter the Grand Jury from finding the existence of probable cause."** Herrell v. Sargeant, 189 Ariz. 627, 631, 944 P.2d 1241, 1245 (1997), quoting State v. Coconino County Superior Court, supra.

In **Crimmins v. Superior Court,** 137 Ariz. 39, 668P.2d 882 (1983), this Court held that a defendant has a "due process" right to a "fair and impartial" presentation of the evidence before the Grand Jury, 137 Ariz. At 41, and dismissed an indictment for failure to present evidence within **the State's possession** that was **clearly** exculpatory. Justice Feldman, concurring, went further and held:

> "...**dismissal should be with prejudice. By withholding important factual information and necessary legal advice in the case which present obvious issues of fact and law relevant to the determination of probably cause, the prosecution deprived the defendant of his right to an independent Grand Jury and effectively controlled the result. I would dismiss the indictment because of the prosecutorial misconduct.** See, United States v. Semange, supra, (137 Ariz. At 43-45) (emphasis added).

The act of a prosecutor which interfered with the inquiry by informing the Grand Jurors that there questions were not relevant amounted to a denial of a substantial procedural right. To bar the legitimate inquiry of the Grand Jury on a point (does) deny the defendant a substantial procedural right. Nelson, at 276. In Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 11173, 3L.Ed2d 1217 (1959) the U.S. Supreme Court Stated that:

> "...a conviction obtained through use of false evidence, known to be such by representatives of the State **must fall under the Fourteenth Amendment** (citations omitted). **The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.** (citations omitted) 360 U.S. at 269 (70 S.Ct. at 1177)."

(478)

/0

In the Grand Jury proceedings of June 19, 1998, County Attorney Chris Roll was asked by Grand Juror Wilson about the statute of limitations-specifically whether the statute of limitations for initiating prosecution had already passed. County Attorney Roll stated: "the charge in the indictment is possession of the video tape."

At the April 2, 1999 Grand Jury proceedings, Deputy County Attorney David Flannigan was asked by the foreman, "is there any statute of limitations? Being it was a minor, there isn't any?" Deputy County Attorney Flannigan responded: **"there is a statute of limitations which is generally seven years in a criminal case.** It may not run until the State finds out about the events." In the Grand Jury proceedings of May 14, 1999 County Attorney Roll was asked by Grand Juror Smith, "Craig Smith. One question. Is there a statute of limitations under sexual crimes?" County Attorney Roll replied, **"the statute of limitations is generally seven years. Although it begins to toll once it's discovered."**

Prosecutor Roll's misstatement of the law and unresponsive answer to a juror's question, coupled with the **omission of the 1989 search warrant** which omitted facts of significance, rendered the presentation of the case against Defendant less than fair and impartial. Properly informed as to the facts of the 1989 search warrant, (as the law requires A.R.S. 21-412) the Grand Jury could have decided the propriety and legal effect of the charges. After all, if the exculpatory information had been provided by the police, (as it was) the law requires that it be presented to the Grand Jury (Trebus 621). By failing to present exculpatory evidence the prosecutors' conduct significantly infringed upon the ability of the Grand Jury to exercise its independent judgment. United States v. Cedarquist, 641 F.2d 1347, 1353 (9th Cir. 1981).

11



Any restriction placed on the presentation of evidence by the prosecutor is in fact a restriction placed on the Grand Jury.

In Nelson v. Royalston, 137 Ariz. 272, 669P.2d 1349 (1983), the prosecutor failed to correct a witness that gave misleading, if not perjured testimony, before the Grand Jury. The Court of Appeals ordered the case remanded for new findings of probable cause, finding a due process violation. The court in Royalston, Id., at 1354.

For the reasons stated above, it is submitted that Mr. Ball was denied a fair trial, in that his wife was permitted to testify concerning event which occurred during the marriage over Mr. Ball's timely objection. Construing the applicable seven year statute of limitations liberally in favor of Earl Ball and against the State, and following the well established presumption against defining an offense as a "continuing" one, it can hardly be disputed that the court was without "jurisdiction" to conduct trial in CR98000296 and CR98000345, further considering the *ex post facto* clause (**Calder v. Bull 3 U.S. (3d.II) 386, at 390 1 L. Ed. 648 (1798)**. The Jury's verdict was there fore contrary to the Law. While it may be that "every statute of limitations, of course, may permit a rogue to escape" (Pendergast v. United States (1943) 317 U.S. 412, 418, 63 S.Ct. 268, 271, 87 L.Ed.368), it is equally abhorrent to permit the State to suggest the statute of limitations should be tolled because of it s own inexcusably dilatory conduct.

Respectfully submitted this _12th_ day of January, 2007.

By _Earl Ball_
Earl Ball Pro-Se

12

480

# CERTIFICATE OF COMPLIANCE

Pursuant to rule 31.12 Arizona Rules of Criminal Procedure, the undersigned certifies that this Petition is proportionately spaced and has a type face of 14 points with a typeface in Times New Roman and contains 3,298 words according to the processing systems used to prepare this brief.

# CERTIFICATE OF SERVICE

I hereby certify on the _12th_ day of January, 2007, I caused the original and ~~six~~ _SEVEN_ (7) copies of this Petition to be mailed to::

Court of Appeals
Division II
State of Arizona
400 West Congress
Tucson, Arizona 85701-1374

In addition, one (1) copy of this petition was mailed to:

John L. Saccoman
Assistant Attorney General
1275 West Washington Street
Phoenix, Arizona 85007-2926

Respectfully submitted this _12th_ day of January, 2007..

By _Earl Ball_
Earl Ball Pro-Se

481

# EXHIBIT EEE

BOX
20 yrs.

99-557
J Saccoman



## Supreme Court

**STATE OF ARIZONA**

402 ARIZONA STATE COURTS BUILDING
1501 WEST WASHINGTON STREET
PHOENIX, ARIZONA 85007-3231

TELEPHONE: (602) 452-3396

RACHELLE M. RESNICK
CLERK OF THE COURT

KATHLEEN E. KEMPLEY
CHIEF DEPUTY CLERK

June 25, 2007

RE: **STATE OF ARIZONA v EARL BALL**
Arizona Supreme Court  No. CR-07-0017-PR
Court of Appeals Division Two  Nos. 2 CA-CR 99-0481 and
2 CA-CR 01-0279 PRPC (Consolidated)
Cochise County Superior Court  Nos. CR98000296 and
CR98000345

GREETINGS:

The following action was taken by the Supreme Court of the State of
Arizona on June 25, 2007, in regard to the above-referenced cause:

**ORDERED: Petition for Review = DENIED.**

**A panel composed of Chief Justice McGregor, Justice Ryan and Justice
Bales participated in the determination of this matter.**

Record returned to the Court of Appeals, Division Two, Tucson, this
25th day of June, 2007.

Rachelle M Resnick, Clerk

TO:
John L Saccoman, Assistant Attorney General, Arizona Attorney
    General's Office
Edward G Rheinheimer, County Attorney, Cochise County Attorney's
    Office, Main Office
Gail Gianasi Natale, Gail Gianasi Natale Attorney at Law
Earl Ball, ADOC #153335, Arizona State Prison, Florence - South/SPU
West Publishing Company
Lexis Nexis
Jeffrey P Handler, Clerk, Court of Appeals, Division Two, Tucson
kg

482