# Exhibit C

Dockets.Justia.com

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. **CR 04-1712-TUC-JMR** |
| | ) | **CR 04-1747-TUC-JMR** |
| Plaintiff, | ) | |
| | ) | Tucson, Arizona |
| vs. | ) | May 24, 2007 |
| | ) | |
| JAY BERNARD GILLILAND, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**BEFORE: THE HONORABLE HECTOR C. ESTRADA, MAGISTRATE JUDGE**

### TRANSCRIPT OF PROCEEDINGS

### CHANGE OF PLEA

**APPEARANCES:**
For the Plaintiff:
        U.S. Attorney's Office Tucson
        By: **Eric J. Markovich**, Esq.
        405 West Congress Street, Suite 4800
        Tucson, Arizona 85701

For the Defendant:
        Kendall Law Firm
        By: **Charles Norman Kendall**, Esq.
        1777 North Frank Reed Road, Suite 1
        Nogales, Arizona 85621

Transcriptionist:
Candy L. Potter
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

1          THE CLERK:  Case number CR 04-1712 and CR 04-1747,

2   USA versus Jay Bernard Gilliland, on for felony change of plea.

3          Counsel, please state your appearance.

4          MR. MARKOVICH:  Good morning again, Judge,

5   Eric Markovich for the United States.

6          THE COURT:  Good morning.

7          MR. KENDALL:  Good morning, Your Honor, Charles

8   Kendall for Mr. Gilliland, who is present and in custody.

9          THE COURT:  Good morning.

10         Mr. Gilliland, these proceedings are going to be

11  conducted after you've been placed under oath.  Once you've

12  been placed under oath, if you were to answer falsely to any

13  question that was asked of you, you could be charged with a

14  separate offense of perjury or making false statements.  And if

15  you were convicted of that offense you could be punished for it

16  apart from whatever might happen under the terms of this Plea

17  Agreement that I have before me.

18         Do you understand, sir?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Would you pull that microphone just a

21  little closer to you?  Thank you.

22         Now, during this proceeding if you didn't understand

23  me or hear me, you'd like me to explain something or repeat it,

24  or you'd like to take some time out to speak to Mr. Kendall,

25  just say so, we can deal with it at that time.  All right?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Very well.  Will you please stand, sir,

3     and raise your right hand to be sworn in?

4          (The defendant is sworn)

5          THE CLERK:  Be seated, please.

6          THE COURT:  Is your true and correct name Jay Bernard

7     Gilliland?

8          THE DEFENDANT:  Yes, that's correct.

9          THE COURT:  Mr. Gilliland, I have here two one-page

10    consent forms that relate to two different cases.  One is

11    CR 04-1712 and the other is CR 04-1747.  And it appears that

12    your signature is on both of these consent forms.

13          Did you, in fact, sign these consent forms, sir?

14          THE DEFENDANT:  Yes, sir, I did.

15          THE COURT:  Prior to signing them were they explained

16    to you, read to you by your attorney, Mr. Kendall?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  When he did that did you have any problems

19    understanding him?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  Let me explain to you what the effect is

22    of your signing both of these consent forms pertaining to both

23    of these cases.

24          Your matter -- matters, rather, are assigned to

25    Judge Roll.  And under our rules you have the right to have

UNITED STATES DISTRICT COURT

1  every hearing, including this one here, before Judge Roll.  But

2  by your signing these consent forms you're agreeing to appear

3  before me here today for purposes of entering pleas of guilty

4  in both these cases and nothing else.  Once we're done here

5  today I'll refer both matters back to Judge Roll for purposes

6  of a sentencing.

7         Is that how you understand it, sir?

8         THE DEFENDANT:  Yes, sir.

9         THE COURT:  Is that what you wish done?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Very well then.

12        How old are you, sir?

13        THE DEFENDANT:  Thirty-nine.  Sorry.

14        THE COURT:  And how many years of schooling -- I'm

15  sorry?

16        THE DEFENDANT:  Thirty-eight.

17        THE COURT:  And how many years of schooling have you

18  had?

19        THE DEFENDANT:  Twelve years of -- through high school

20  and then -- and I have a bachelor of science in administration

21  of justice, associate of applied science in administration of

22  justice, and a certificate -- law enforcement certificate from

23  a community college.  All together maybe 16 years.

24        THE COURT:  All right.  And what kind of work do you

25  do?

THE DEFENDANT:  I was employed by -- prior to my arrest I was employed by the Bureau of Customs and Border Protection as a canine enforcement officer at the Nogales port of entry.

THE COURT:  Mr. Gilliland, I have here before me an 11-page Plea Agreement.  It appears your signature is on page 10.  Did you, in fact, sign this Plea Agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Prior to signing it was it explained to you and read to you by your attorney?

THE DEFENDANT:  Yes.

THE COURT:  Did you yourself have an opportunity to review the Plea Agreement, sir?

THE DEFENDANT:  Yes, I did.

THE COURT:  Any questions as to what's contained in this Plea Agreement, sir?

THE DEFENDANT:  No, sir.

THE COURT:  Let's go over the terms of your agreement. This Plea Agreement says that you agree to plead guilty to Count 1 of the Indictment in CR 04-1712, which accuses you of conspiracy.  That's an agreement between you and at least one other to possess with the intent to distribute cocaine.  And also to Count 12 of the Indictment in CR 04-1747, which accuses you of possession of child pornography.

Is that what you understand you're pleading guilty to,

1    sir?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Now, there's two considerations regarding

4    punishment.  One is what does the statute say the judge has the

5    discretion to do, the other is what's been negotiated on your

6    behalf by your attorney.

7           As far as the cocaine charge, the conspiracy to

8    possess with intent to distribute cocaine is concerned, a judge

9    has the discretion to impose a sentence all the way up to

10   $2 million, a term of incarceration of anywhere between five to

11   40 years.  Whatever period of incarceration was served it would

12   be followed by not more than five years of supervised release.

13          Insofar as the possession of pornography case is

14   concerned, a fine, maximum of $250,000, up to ten years of

15   incarceration, and a lifetime term of supervised release.

16          Is that what you understand to be the maximum

17   punishments that are possible, sir?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  There's also a $100 special assessment

20   that must be imposed for each count that a person is found

21   guilty of.  So in your case, two counts, $200.

22          Do you understand, sir?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Now, your attorney, Mr. Kendall, has

25   negotiated a Plea Agreement on your behalf that calls for

1  ranges of punishment depending in which any one of three

2  criminal history categories you might find yourself in.  What

3  determines in which category a person finds themselves in

4  depends on points that that person might have for sentences in

5  their past.

6          I don't know what category -- excuse me -- what

7  category you're going to find yourself in because I don't have

8  the reports, and I'm also not the person that imposes sentence.

9          If you were in the most lenient category of one, this

10  Plea Agreement contemplates 108 to 135 months of incarceration.

11  Category II, 121 to 151 months of incarceration.  In Category

12  III, 135 to 168 months of incarceration.

13          Is that what you understand to be the ranges that

14  apply depending in which Criminal History Category you would

15  find yourself in, sir?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And do you understand, counsel, that

18  whatever he gets in either one of these two counts, given that

19  there's two CRs, it will be concurrent?

20          MR. MARKOVICH:  Yes, sir.

21          MR. KENDALL:  Judge, the guideline calculations are

22  based on the grouping rules, and the guidelines say that the

23  ranges will encompass both cases.

24          THE COURT:  All right then.  Thank you.

25          Now, whatever remaining counts there are, sir, will be

1    dismissed at the time of sentencing.  Is that what you

2    understand to be the case, sir?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  The Government also will not pursue

5    charges relating to possession of firearms and chemicals found

6    apparently at your home and in a storage locker.

7            Again, is that what you understand to be the case?

8            THE DEFENDANT:  Yes.

9            MR. KENDALL:  Your Honor, there is one additional

10   term --

11           THE COURT:  Sure.

12           MR. KENDALL:  -- that we were going to put on the

13   record.  That the Government knows of no other charge --

14   pending charges or cases in other districts against my client.

15           THE COURT:  All right.

16           MR. MARKOVICH:  That is the case, Your Honor.  I don't

17   know of any other cases.  Mr. Gilliland has a state case in

18   Santa Cruz County.  But other than that -- and that's for all

19   intents and purposes done.  But I don't know of any other

20   pending investigations or charges.

21           THE COURT:  Thank you.

22           In addition, you shall seek sex offender counseling as

23   directed by the probation officer, register as a sex offender

24   pursuant to A.R.S. 13-3821 within ten days of beginning any

25   term of supervised release or probation.

1        Do you understand, sir?

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:  If you move from the state of Arizona

4 you're also required to register as a sex offender pursuant to

5 the state laws of any new residence that you might take up in

6 another state.

7        Do you understand, sir?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  You also agreed to forfeit all right,

10 title and interest in property that's listed on page 4, numbers

11 1 and 2.  Specifically an ABS desktop computer and accompanying

12 hard disk drives, and 30 compact disk recordables and ZIP drive

13 diskettes and or floppy diskettes of various brands.

14        Do you understand, sir?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  You agree to submit to a psychosexual

17 assessment prior to the sentencing in your case.

18        THE DEFENDANT:  Yes.

19        THE COURT:  And described in -- on page 4, paragraph

20 11, is what that particular psychosexual assessment may

21 include.  You said you've had an opportunity to review the Plea

22 Agreement have you not, sir?

23        THE DEFENDANT:  Yes.

24        THE COURT:  And you understand what I'm referring to;

25 is that correct, sir?

```
 1          THE DEFENDANT:  I believe so.

 2          THE COURT:  All right.  Well --

 3          MR. KENDALL:  For the record, Your Honor, he's also

 4   undergoing one from Santa Cruz County Tuesday of next week.

 5          THE COURT:  All right.  The assessment is to include

 6   but shall not be limited to physiological testing as directed

 7   by the probation department.  And will be performed by

 8   Psychological and Consulting Services or by such other provider

 9   as may be approved of in writing and in advance by the

10   probation department.

11          All reports and information from that assessment shall

12   be released to the probation department.

13          You also agree to contribute to the cost of that

14   assessment in an amount to be determined by the probation

15   department, after they've reviewed any financial and other

16   information in connection with the presentence investigation in

17   your case.

18          Do you understand, sir?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  That may require that the sentencing date

21   of this case, which I'm going to be giving you in a few

22   minutes, have to be continued in order to be able to accomplish

23   all of this.  Do you understand, sir?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Now, there's going to be specific
```

```
1    conditions of supervised release.

2         You're to submit to search of person, property,

3    vehicles, business, residence, conducted in a reasonable manner

4    and at a reasonable time by or at the direction of the

5    probation officer.

6         Do you understand, sir?

7         THE DEFENDANT:  Yes, sir.

8         THE COURT:  But again, register as a sex offender at

9    the Sheriff's Office in the county of residence and provide

10   verification to the probation officer.  Do you understand, sir?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Participate in sex offender treatment as

13   directed by the probation officer.  Submit to risk assessment,

14   including physiological testing.  Contribute to the cost of

15   that treatment in an amount to be determined by the probation

16   officer.

17        And sex offender assessment and treatment is to be

18   conducted by a therapist approved by the probation office who

19   will release all reports to the probation officer.

20        Do you understand, sir?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  You're to participate in a mental health

23   program as directed by the probation officer, follow the rules

24   of that program, contribute to the cost of treatment in an

25   amount to be determined by the probation officer.
```

1          Do you understand, sir?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  If you volunteer for any services you

4     shall advise the organization of your conviction.  Do you

5     understand, sir?

6          THE DEFENDANT:  Yes.

7          THE COURT:  You shall not possess any sexually

8     stimulating or sexually oriented material as deemed

9     inappropriate by the probation officer and/or treatment staff

10    or patronize any place where such material or entertainment is

11    available.  Do you understand, sir?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And you should also understand, sir, based

14    on my experience in here, that could also include such things

15    as having those insert fliers that come in newspapers or

16    magazines regarding sales at Sears, Penney's or any other

17    department store.  So you should be aware that that's the kind

18    of thing that the probation department will be looking for.

19         Do you understand, sir?

20         THE DEFENDANT:  Could you repeat that for me?

21         THE COURT:  Sure.  In newspapers and in magazines they

22    have insertions indicating that there are sales.  Invariably in

23    those insertions of sales there are children who are in those

24    things, and the probation department may consider those types

25    of insertions or possession of those types of materials as

UNITED STATES DISTRICT COURT

1  potential material that you're not supposed to have.

2  Do you understand, sir?

3  THE DEFENDANT:  Yes.

4  THE COURT:  In their assessment, in their evaluation.

5  Do you understand, sir?

6  THE DEFENDANT:  Yes, sir.

7  THE COURT:  You shall not have any contact with any

8  child under the age of 18 without prior written permission of

9  the probation officer.  And shall report immediately but not

10  later than eight hours to the probation officer any

11  unauthorized contact with any child.  Do you understand, sir?

12  THE DEFENDANT:  Yes, sir.

13  THE COURT:  You shall maintain an appropriate

14  appearance at all times, which includes the wearing of

15  undergarments and appropriate outer clothing in the home or

16  places where others might be present.  Do you understand, sir?

17  THE DEFENDANT:  Yes, sir.

18  THE COURT:  Not enter the premises or loiter anywhere

19  near where victims reside, except under the circumstances

20  approved in advance in writing by the probation officer.  Do

21  you understand, sir?

22  THE DEFENDANT:  Yes.

23  THE COURT:  The victims and/or the parents or

24  guardians may have access to information related to your

25  custody, release, residence, whereabouts and treatment

1    throughout your period of supervision.

2          The defendant shall not obtain the services of a

3    prostitute.

4          You shall reside in a residence approved of in advance

5    by the probation officer.

6          Do you understand thus far, sir?

7          THE DEFENDANT:  Yes.

8          THE COURT:  You shall not contact the victims or the

9    victim's family.  And the probation officer will verify

10   compliance.

11         You are restricted from engaging in any occupation,

12   business or profession where you have access to children

13   without prior approval of the probation officer in writing.

14         You shall not loiter within 100 feet of school yards,

15   parks, playgrounds, arcades or other places primarily used by

16   children under the age of 18.

17         Do you understand thus far, sir?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Now loitering means loitering.  It does

20   not mean that if you're in a vehicle and you're driving past a

21   school or park that you're in violation.  It means loitering

22   near any one of those places.  Do you understand, sir?

23         THE DEFENDANT:  Yes.

24         THE COURT:  You shall not date or socialize with

25   anybody that has children under the age of 18 without prior

1  permission of the probation officer.

2      Shall not reside with any child under the age of 18

3  without prior written approval of the probation officer.

4      And depending on the outcome of the psychosexual

5  evaluation, you may be allowed supervised visits with any of

6  your own children.

7      Do you understand thus far, sir?

8      THE DEFENDANT:  Yes.

9      THE COURT:  You shall not possess or use computers

10  with access to any on-line computer service at any location,

11  including places of employment, without the prior written

12  approval of the probation officer, and this includes any

13  internet service provider, bulletin board system or any other

14  public or private network or e-mail system.

15      Do you understand thus far, sir?

16      THE DEFENDANT:  Yes, sir.

17      THE COURT:  Upon your release you shall reside and

18  actively participate in a Community Correction Center for up to

19  one year or until discharged by the probation officer.  This

20  placement is to facilitate your transition into the community

21  and to facilitate treatment for sexual deviance.

22      And you should understand that if you violate any of

23  the conditions of your supervise release, the supervised

24  release may be revoked.

25      Do you understand, sir?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  And upon revocation, not withstanding any

3    provision of this agreement, you may be required to serve a

4    term of imprisonment or your sentence may otherwise be altered.

5            Do you understand, sir?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Do you agree to be bound by these various

8    terms, sir?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  You should, however, still understand that

11   Judge Roll in this case is not bound by these terms.  If he

12   finds a particular term inappropriate, he would give either you

13   or the U.S. Attorney an opportunity to withdraw from the Plea

14   Agreement.

15           So to illustrate what I'm talking about, depending on

16   which criminal history you might find yourself in, if he

17   thought that you deserved or merited more than what that

18   particular Criminal History Category calls for under the terms

19   of your agreement, he'd allow to you withdraw from the Plea

20   Agreement.

21           Do you understand?

22           THE DEFENDANT:  Yes.

23           THE COURT:  If he thought you deserved or merited less

24   than what that range called for in that Criminal History

25   Category, he'd allow the U.S. Attorney an opportunity to

1  withdraw from the Plea Agreement.  Do you understand, sir?

2         THE DEFENDANT:  Yes.

3         THE COURT:  But if he accepts the terms of this

4  agreement and imposes a sentence in accordance with the terms

5  of your agreement, he would have bound himself to the same

6  terms that you and the U.S. Attorney have bound yourselves to

7  and you could not appeal that.

8         So if you were anticipating the bottom end of the

9  range that applies to you but he instead gave you the maximum

10  of that range, that maximum is still within the terms of your

11  agreement and you cannot appeal.  Do you understand, sir?

12         THE DEFENDANT:  Yes, sir, I'm aware of that.

13         THE COURT:  Now, there's going to be other

14  consequences obviously as a result of your pleading guilty here

15  besides incarceration.  Because at least one of the offenses

16  you're pleading to are drugs, you could be denied certain

17  federal benefits in the future, whatever they may be, such as

18  public housing, scholarships, aid or assistance to family, food

19  stamps.  Do you understand, sir?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  And obviously a consequence would be if

22  you were to get in trouble again in the future, this conviction

23  here that you've got for these two offenses can be used to

24  aggravate or give you more time in that future offense.

25         Do you understand, sir?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, is anyone forcing, threatening or

3   obligating you to come to court to sign this agreement and

4   enter pleas of guilty?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Aside from the terms and promises that

7   I've explained to you are contained within this Plea Agreement,

8   any other promises made to you that we haven't discussed but

9   has induced you to come to court to sign this agreement and

10  enter pleas of guilty?

11         THE DEFENDANT:  No.

12         THE COURT:  Now your attorney, Mr. Kendall, is very

13  competent, capable and able.  Has he gone over the reports in

14  your case, sir?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Has he explained to you the statute, the

17  guidelines and the terms of your agreement?

18         THE DEFENDANT:  I'm sorry?

19         THE COURT:  Has he gone over with you the statute, the

20  guidelines and the terms of your agreement?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  I would imagine he might have also told

23  you what he intends to present at the time of sentencing to

24  Judge Roll regarding what the appropriate sentence should be in

25  your case, has he not?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  You should understand that doesn't bind

 3    Judge Roll.  He's got to hear from the probation officer, the

 4    U.S. Attorney, your attorney, and yourself if you wish to say

 5    something or wish to submit something such as letters prior to

 6    the sentencing before he would impose that sentence.  Do you

 7    understand, sir?

 8              THE DEFENDANT:  Yes, sir.

 9              THE COURT:  You should understand as well that if you

10    chose not to testify -- not to say anything or not to submit

11    something at the time of sentencing, that could not be held

12    against you for purposes of determining what the sentence

13    should be.  Do you understand, sir?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Now, have you had any alcohol, drugs or

16    medication within the last 48 hours?

17              THE DEFENDANT:  I had a Wellbutrin pill.

18              THE COURT:  And do you think that's affecting your

19    ability to think clearly right now, sir?

20              THE DEFENDANT:  No, sir.

21              THE COURT:  Any physical injuries or emotional or

22    psychological problems or issues in the recent past that might

23    affect your ability to think clearly here today?

24              THE DEFENDANT:  No, sir.

25              THE COURT:  Have you had any problems understanding me
```

1   or your attorney thus far?

2           THE DEFENDANT:  No, I have not.

3           THE COURT:  Do you feel that you're thinking clearly

4   right now?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Are you signing this Plea Agreement

7   voluntarily?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Now, you should understand, Mr. Gilliland,

10  that in both of these matters you have a right to have a trial.

11  And when a person does have a trial that person has many

12  rights.  If instead you go forward with pleas of guilty in both

13  these cases you won't be going to trial and you'll be giving up

14  most of those rights.

15          The one right you're not going to give up is the right

16  to have an attorney to represent you.  That is, if you wanted

17  trials, Mr. Kendall would represent you at either one of those

18  trials.  If you go forward with pleas of guilty, he'll continue

19  to represent you up to and including the sentencing in your

20  case.

21          Do you understand, sir?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Nonetheless, let me explain to you what

24  rights you're giving up.

25          When someone is accused of committing a crime or

1   crimes the very first right that that person has is the right

2   to remain silent.  No one can make you say anything about what

3   you have or have not done in your cases.

4        And because of that right to remain silent, you have

5   the right not to incriminate yourself.  That is, give us

6   information that indicates what you've done wrong.

7        Invoking those two rights, you then have the right to

8   have a trial where you would fight or litigate the charges

9   against you.  Do you understand, sir?

10        THE DEFENDANT:  Yes.

11        THE COURT:  At that trial it is your right to be

12   presumed innocent of the charges.  The law doesn't assume

13   simply because you've been accused of something that you must

14   therefore be guilty.  The law presumes that you're innocent of

15   those charges at your trial.  And at that trial or trials you

16   have no obligation to prove that you are innocent.  Do you

17   understand, sir?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  Someone has the burden and obligation of

20   proving your guilt at either one or both of those trials, and

21   that's the U.S. Attorney.  And it is your right to make the

22   U.S. Attorney prove those charges against you beyond a

23   reasonable doubt.  And that's a substantial obligation that

24   they must meet against any defendant, including yourself if you

25   wanted to have a trial.

1        Now, at that trial they would call witnesses, have

2    those witnesses placed under oath.  And through those witnesses

3    they would introduce a variety of evidence.  They would

4    introduce testimony, photos, fingerprints, tape recording,

5    reports and documents, physical evidence, the drugs and or any

6    of that computer equipment that you've got, diskettes and so on

7    as part of the physical proof against you.

8        Do you understand, sir?

9        THE DEFENDANT:  Yes.

10       THE COURT:  It is anything that they think is

11   appropriate in proving the charges against you.  And anything

12   that the judge deems is admissible and competent and reliable

13   evidence.  Do you understand, sir?

14       THE DEFENDANT:  Yes.

15       THE COURT:  Now that variety of evidence would be

16   presented and submitted to a jury of 12 people.  And they would

17   have to convince all 12 jurors unanimously of your guilt.

18       And at that trial it is your right and through your

19   attorney along with the use of your attorney to help select who

20   those jurors are.  You also have the right to confront the

21   witnesses that they would call.  That is, to be seated there in

22   open court right next to your attorney, to see who they are,

23   hear what they say under oath.

24       You have the right to cross-examine those same

25   witnesses through your attorney.  Mr. Kendall would ask

 1    questions of those witnesses on your behalf to see if they tell

 2    the truth or not, to determine whether they can recall or

 3    remember accurately, or even to see if there's a reason or a

 4    motive for the things that they might say against you under

 5    oath.

 6              Do you understand, sir?

 7              THE DEFENDANT:  Yes, sir.

 8              THE COURT:  Now, at that trial it is your right to

 9    testify.  You're not obligated to.  No one can make you do that

10    if you didn't want to.  And regardless of whether you

11    testified, you have the right to present evidence, and

12    presenting evidence includes calling witnesses under what's

13    called a subpoena, which is a court order, and that person or

14    persons would have to be there.

15              Again, you are not obligated to present evidence and

16    no one can make you do that if you didn't want to.  Do you

17    understand, sir?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  And the reason for that is what I said

20    earlier, the law presumes that you're innocent of any of those

21    charges at your trial.  And at that trial the law does not

22    impose upon you any obligation to testify or to present

23    evidence in order to prove your innocence.

24              And if at that trial you had chosen not to testify or

25    chosen not to present evidence, that jury of 12 people that

1 were selected, before they could return with a unanimous

2 verdict, whether it's guilty or not guilty, they would receive

3 an instruction from the judge, essentially an order that tells

4 them they are not to consider that you didn't testify or that

5 you did not present evidence in their arriving at their

6 decision.  Do you understand, sir?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  But in a few minutes I'm going to be

9 asking you some questions about what you've done.  At some

10 point I want to ask as to both counts, how do you plead, guilty

11 or not guilty.  And once you say the word "guilty" out loud,

12 you're no longer being silent, you've given up your right to be

13 silent.  By pleading guilty you've now incriminated yourself,

14 given up your right not to incriminate yourself.  And in giving

15 up those two rights you are also giving up your right to be

16 presumed innocent of those charges.

17        Do you understand, sir?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  And you're also saying by virtue of

20 pleading guilty that you don't wish to have a trial or that the

21 U.S. Attorney's obligated to prove your guilt beyond a

22 reasonable doubt by convincing a jury of 12 people unanimously

23 of your guilt.  And thus if you don't have trials, you're not

24 in a position to help select who those jurors are.  You're not

25 in a position to be able to confront and cross-examine the

```
 1   witnesses that would be called.  And you're not in a position
 2   to testify or present evidence if that's what you wanted to do
 3   at your trial.
 4           Do you understand you're giving up all of those rights
 5   as well by pleading guilty here today, sir?
 6           THE DEFENDANT:  Yes.
 7           THE COURT:  Is that what you wish to do?
 8           THE DEFENDANT:  Yes, sir.
 9           THE COURT:  Very well then.
10           Mr. Markovich, if you'd explain to Mr. Gilliland what
11   the elements of both offenses are and what the Government would
12   have proven in both cases beyond a reasonable doubt had this
13   matter proceeded to trial.
14           And Mr. Gilliland, I'd like you to listen to what
15   Mr. Markovich of the U.S. Attorney's Office is going to say,
16   because I'm going to ask you some questions based on the
17   information that he's about to give us.
18           Thank you.
19           MR. MARKOVICH:  Your Honor, the elements of Count 1 in
20   04-1712, the possession with the intent to distribute cocaine
21   is that the defendant agreed with at least one other person to
22   commit the crime of possession with the intent to distribute
23   cocaine as charged in the Indictment.
24           And the defendant became a member of the conspiracy
25   knowing its object was possession with the intent to distribute
```

1   cocaine, and intending to accomplish the object of it.

2          And the controlled substance involved was

3   approximately 2 kilograms of cocaine.

4          The elements in Count 1 in 04-1747, possession of

5   child pornography, are that the defendant possessed a computer,

6   disk or any other material that contained images that the

7   defendant knew -- excuse me, contained visual images that the

8   defendant knew depicted minors, that being persons under the

9   age of 18 engaged in sexually explicit conduct.  The defendant

10  knew that the images depicted minors engaged in such conduct.

11  And the visual depictions is -- or I'm sorry, are of minors.

12  And that the visual depictions have either been shipped or

13  transported in interstate or foreign commerce by any means

14  including the use of computer or the internet.

15         If these cases were to go to trial the Government

16  could prove that on or about July 20th of 2004 at or near

17  Tucson, Mr. Gilliland was arrested in his vehicle which

18  contained approximately 2 kilograms of cocaine.  He knew that

19  cocaine was in his vehicle because he had just received it from

20  another individual.

21         He was -- the plan was to attempt to sell or trade one

22  kilogram of the cocaine for a quantity of marijuana and

23  transport the other kilogram of cocaine and the marijuana to

24  Virginia where it would be resold by other co-conspirators.

25         Also, the Government could show that from a time

1    unknown to on or about July 20th, 2004, Mr. Gilliland had

2    access to and used a computer in his home in Patagonia.  The

3    computer was seized from his home by law enforcement on July

4    20th, 2004, as were various floppy disks and CDRs.  The disks

5    and the CDs contained tens of thousands of images and movies

6    depicting minors engaged in sexually explicit conduct.

7    Mr. Gilliland knew the disks and CDs contained such images.

8         And among the images that were on the computer files

9    were those indicated in Count 1 of the Indictment.  The files

10   contain images and clips of various prepubescent children

11   appearing to be under the age of 18 at the time of the images

12   engaging in various acts of sexually explicit conduct with

13   other children, adults, and in some cases alone.  The images

14   and clips also depict minors engaged in sadistic and

15   masochistic conduct with adults.

16        And there are at least 100 images portraying

17   identified children who were victims of sexual abuse.  Many of

18   the images depict children that appear to be under the age of

19   12.

20        And the Government could show that these images moved

21   through interstate commerce via the internet.

22        THE COURT:  Thank you.

23        MR. KENDALL:  Your Honor.

24        THE COURT:  Yes.

25        MR. KENDALL:  As to my client's admission on the

1  facts, we have one caveat on the second offense.  He has not

2  had an opportunity to recently review the floppy disks and the

3  CDRs, so he does not have direct knowledge regarding the tens

4  of thousands of images and that every image included

5  conduct -- depicted children engaging in sexually explicit

6  conduct.  He is admitting that there were at least 100 separate

7  images.

8            I think that's okay.

9            MR. MARKOVICH:  Judge, I don't have a problem with

10  Mr. Gilliland admitting the Government could prove that and he

11  doesn't have reason to dispute it, as long as he does admit

12  that the CDs contained child pornography, regardless of the

13  amount.

14            MR. KENDALL:  We don't have direct knowledge of the

15  numbers of images, Your Honor.

16            THE COURT:  All right.  Mr. Gilliland, have you heard

17  what Mr. Markovich has said that you've done, sir?

18            THE DEFENDANT:  I'm sorry, sir?

19            THE COURT:  Have you heard what Mr. Markovich said

20  that you did here, sir?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  And permit me to ask some questions, sir.

23            Back on July 20 of 2004 near Tucson were you driving a

24  vehicle at that time, sir, when you were stopped?

25            THE DEFENDANT:  Well, yes.  I had parked the vehicle

1  and I think I may have been moving it, just barely moving it

2  out of the parking space when I was pulled over, if you will.

3          THE COURT:  And at that time you were arrested, did

4  your vehicle contain two kilograms of cocaine?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Were you aware that that vehicle had that

7  cocaine in it?

8          THE DEFENDANT:  Where?

9          THE COURT:  Were you aware that it was in there?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And where did you obtain that cocaine?

12          THE DEFENDANT:  It was given to me by an informant,

13  confidential informant named Archie Gregory.

14          THE COURT:  Did you have an agreement with that

15  informant that you were to get that cocaine and distribute it

16  in some way, sir?  Sell it?

17          THE DEFENDANT:  Yes.  Yes.

18          THE COURT:  And you made that agreement with that

19  informant?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And it was my understanding that you were

22  going to sell one kilogram of this cocaine for a quantity of

23  marijuana in exchange?

24          THE DEFENDANT:  I was actually going to trade the one

25  kilogram to the informant Archie Gregory for I believe 40

1 | pounds of marijuana.

2 | THE COURT: And the other kilogram was to be

3 | transported to Virginia where you intended to have it resold by

4 | other individuals?

5 | THE DEFENDANT: Yes, by another individual, yes.

6 | THE COURT: And were you going to make any money as a

7 | result of either one or both of those transactions?

8 | THE DEFENDANT: Yes.

9 | THE COURT: Which one of the transactions or both of

10 | them?

11 | THE DEFENDANT: I would have made money off both of

12 | them.

13 | THE COURT: Now apparently on that same day, July 20,

14 | 2004, some computers and computer materials and computer

15 | equipment and computer related things were confiscated from

16 | your home; is that correct, there in Patagonia?

17 | THE DEFENDANT: Yes, sir.

18 | THE COURT: Would you agree that there were various

19 | floppy disks and CDRs confiscated then from your home, sir?

20 | THE DEFENDANT: Yes, sir.

21 | THE COURT: And would you agree that any one of those

22 | floppy disks and CDRs contained minors engaged in sexually

23 | explicit conduct?

24 | THE DEFENDANT: Yes, sir.

25 | THE COURT: Did you -- were you aware that they

UNITED STATES DISTRICT COURT

1    contained some of those images, sir?

2          THE DEFENDANT:  Yes.  I was roughly aware of it.  I

3    didn't -- I didn't know how many images or what the images

4    were, but I knew that it -- that it was sexually explicit

5    conduct.

6          THE COURT:  How did you come about having possession

7    of those, sir?  Did you get it through the internet?

8          THE DEFENDANT:  No, sir -- well, no, sir.  Mr. Gregory

9    gave it to me.

10          THE COURT:  And did -- he didn't force those CDs,

11    floppy disks and CDRs on you, did he, sir?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Okay.  Did he give them to you with your

14    understanding and knowledge that they contained those images?

15          THE DEFENDANT:  Yes, that they contained some -- some

16    images that were illegal, that's what he had told me.

17          THE COURT:  Would you agree that some of those images

18    contain prepubescent children, sir?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  That they were engaged in various acts of

21    sexually explicit conduct with other children, adults and in

22    some cases alone?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Would the images also include sadistic and

25    masochistic conduct with adults?

1          THE DEFENDANT:  I believe so.  I'm not sure.  I don't

2     know that I've seen that myself.  I've been -- I heard it

3     alleged, I believe in the second Indictment it's alleged.  And

4     I'm not sure that I've actually seen that.  But --

5          THE COURT:  Are you saying that you didn't see any of

6     the images on any of the floppy disks or CDRs?

7          THE DEFENDANT:  No.  I did see some of them, but not

8     all of them.  I didn't see all of the images.  And there's a

9     number of images alleged that I've simply never seen.

10          THE COURT:  Would you have any reason to dispute that

11     the U.S. Attorney could prove that those images are contained

12     in those floppy disks and CDRs?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Would you agree that those images had to

15     move through interstate commerce via the internet in order to

16     find themselves memorialized in those floppy disks and CDRs?

17          THE DEFENDANT:  Yes, most likely I would imagine they

18     did.

19          THE COURT:  All right.  Both counsel satisfied with

20     that factual basis?

21          MR. KENDALL:  Yes.

22          MR. MARKOVICH:  Yes, Your Honor.

23          THE COURT:  Very well.

24          Mr. Gilliland, before I take your pleas, have you been

25     satisfied with the services and the representation that you

1  received from Mr. Kendall while your matter has been pending?

2          THE DEFENDANT:  Yes, sir, very much so.

3          THE COURT:  Very well then.  Mr. Gilliland, how then

4  do you plead to Count 1 of the Indictment in CR 04-1712,

5  conspiracy to possess with intent to distribute cocaine, guilty

6  or not guilty, sir?

7          THE DEFENDANT:  Guilty, Your Honor.

8          THE COURT:  How do you plead to Count 1 of the

9  Indictment of CR 04-1747, possession of child pornography,

10  guilty or not guilty, sir?

11          THE DEFENDANT:  Guilty, Your Honor.

12          THE COURT:  Mr. Kendall, do you believe that

13  Mr. Gilliland understands the nature and the consequences of

14  his guilty pleas, understands the rights he's giving up in both

15  matters and did so voluntarily and willingly?

16          MR. KENDALL:  Yes, Your Honor.

17          THE COURT:  I'm going to make a finding,

18  Mr. Gilliland, and sign this Plea Agreement, that you've

19  entered pleas of guilty knowingly, intelligently and

20  voluntarily, and that there exists a sufficient factual basis

21  in both matters for which he's entered pleas of guilty.

22          I'm going to recommend to Judge Roll that he accept

23  the terms of your agreement as well as your pleas of guilty.

24          And it's ordered that your matter be set for

25  sentencing on August 30, 8:45 a.m., August 30, 8:45 a.m.

1     I'm also going to order that a presentence report be

2  prepared in your case.

3     Obviously sometime in the very near future somebody

4  from the probation office will be speaking with you.  They're

5  going to ask you a series of questions, and you should

6  cooperate with that person, answer his or her questions.  As a

7  result of that interview they're going to prepare a presentence

8  report.  Your attorney, the U.S. Attorney and Judge Roll will

9  have a copy of it.  I'm sure Mr. Kendall will go over it with

10  you sometime before sentencing.  And he also knows what other

11  things can be done on your behalf to get information about you

12  and your case before Judge Roll sometime prior to the

13  sentencing.

14     Mr. Gilliland, do you have any questions of me or of

15  your attorney at this time, sir?

16     THE DEFENDANT:  No, sir.

17     THE COURT:  Very well.  Good luck, sir.

18     Counsel have anything further?

19     MR. KENDALL:  No, Judge.  Thank you.

20     MR. MARKOVICH:  That's all.

21     THE COURT:  Thank you for your time, Counsel.

22

23                          -oOo-

24

25

1

2

3

4

5

6                    C E R T I F I C A T E

7

8          I, CANDY L. POTTER, court-approved transcriber,

9    certify that the foregoing is a correct transcript from the

10   official electronic sound recording of the proceedings in the

11   above-entitled matter.

12

13         DATED at Phoenix, Arizona, this 4th day of April,

14   2008.

15

16

17

18                              s/Candy L. Potter
19                              Candy L. Potter

20

21

22

23

24

25

UNITED STATES DISTRICT COURT